UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x
                                          :   No.: 21 MC 97 (AKH)
                                          :
                                          :   **THIS DOCUMENT RELATES TO:**
IN RE SEPTEMBER 11 LITIGATION             :
                                          :   *Falkenberg v. AMR Corp, et al.*
                                          :   **02 CV 7145 (AKH)**
                                          :
                                          :   *Teague v. AMR Corp, et al.*
                                          :   **03 CV 6899 (AKH)**
---------------------------------x

**DEFENDANT AMERICAN AIRLINES, INC.'S RESPONSE TO PLAINTIFFS'
STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56.1**

Defendant American Airlines, Inc. ("American"), by its attorneys, Condon & Forsyth LLP and Debevoise & Plimpton LLP, submits this Response to Plaintiffs' Statement of Material Facts pursuant to Local Rule 56.1(b) of the United States District Court for the Southern District of New York.

**RESPONSE**

1.  American admits that on September 11, 2001 Leslie Ann Whittington was a passenger on board American Flight 77 and in the course of "international transportation" by successive air carriers as that term is defined in Article 1(2) of the Warsaw Convention.

2.  American admits only that on September 11, 2001 Leslie Ann Whittington was engaged in "international transportation" as that term is defined in Article 1(2) of the Warsaw Convention but denies that 14 CFR § 1.1 has any applicability to her transportation.

3.  American admits that Leslie Ann Whittington's "international transportation" on September 11, 2001 was to be performed by successive air carriers, American and Qantas Airlines.

1

4. American admits that on September 11, 2001 Leslie Ann Whittington was killed while a passenger on board American Flight 77 during the course of her "international transportation" from the United States to Australia.

5. American admits only that Leslie Ann Whittington's death on September 11, 2001 was caused by an "accident" as that term is used in Article 17 of the Warsaw Convention.

6. American admits only that Leslie Ann Whittington died on September 11, 2001 while she was a passenger on board American Flight 77.

7. American admits that on September 11, 2001 Sandra D. Teague was a passenger on board American Flight 77 and in the course of "international transportation" by successive air carriers as that term is defined in Article 1(2) of the Warsaw Convention.

8. American admits only that on September 11, 2001 Sandra D. Teague was engaged in "international transportation" as that term is defined in Article 1(2) of the Warsaw Convention but denies that 14 CFR § 1.1 has any applicability to her transportation.

9. American admits that Sandra D. Teague's "international transportation" on September 11, 2001 was to be performed by successive air carriers, American and Qantas Airlines.

10. American admits that on September 11, 2001 Sandra D. Teague was killed while a passenger on board American Flight 77 during the course of her "international transportation" from the United States to Australia.

11. American admits only that Sandra D. Teague's death on September 11, 2001 was caused by an "accident" as that term is used in Article 17 of the Warsaw Convention.

12. American admits only that Sandra D. Teague died on September 11, 2001 while she was a fare paying passenger on board American Flight 77.

13. American admits only that the Warsaw Convention entered into force in the United States on October 29, 1934, but denies the allegation in footnote No. 1 to Statement No. 13 to the extent it alleges that the United States was a party to the Hague Protocol before July 31, 2003.

14. American admits that Australia became a party to the Warsaw Convention on October 30, 1935.

15. American admits that it signed the IATA Intercarrier Agreement on Passenger Liability (IIA), the Agreement on Measures to Implement the IATA Intercarrier Agreement (MIA) and the Provisions Implementing the IATA Intercarrier Agreement (IPA) To Be Included In The Conditions of Carriage and Tariffs on July 8, 1996.

16. American admits that the IATA Intercarrier Agreement has been incorporated into American's tariffs since November 1996.

17. American admits that Montreal Protocol No. 4 entered into force in the United States on March 4, 1999, but American denies the remaining allegations in Statement No. 17 to the extent they allege that the Hague Protocol was in force in the United States before July 31, 2003. *See Avero Belgium Ins. v. Am. Airlines, Inc.*, 423 F.3d 73 (2d Cir. 2005).

18. American admits that Montreal Protocol No. 4 (to amend the Warsaw Convention as amended by the Hague Protocol) entered into force in Australia on June 14, 1998.

19. American admits that the Hague Protocol entered into force in the United States on December 14, 2003.

20. American admits that the Hague Protocol entered into force in Australia on August 1, 1963.

21.  American admits that on and before to September 11, 2001 American was a commercial air carrier engaged in the business of carrying passengers for hire and operated regularly scheduled passenger flights.

22.  American denies the allegations in Statement No. 22 to the extent they make broad generalizations of American's responsibilities that go beyond what was required by 18 C.F.R. Part 108 on September 11, 2001. American admits only that it was subject to the requirements of 18 C.F.R. Part 108 as it existed on September 11, 2001.

23.  American admits the allegations in Statement No. 23.

24.  American admits that on September 11, 2001 American was operating pursuant to its Air Carrier Standard Security Program.

25.  American denies every allegation in Statement No. 25 because the allegations are inconsistent with the state of FAA mandated aviation security as it existed on September 11, 2001. American also denies every allegation in Statement No. 25 because Plaintiffs do not support their conclusory allegations with any statements of fact. Instead, Plaintiffs rely entirely on statements contained in the *Final Report of the National Commission on Terrorist Attacks Upon the United States* (the "9/11 Commission Report"). The Court, however, has yet to determine which, if any, of the Commission's findings, are admissible as factual evidence in these litigations. It is, therefore, premature to conclude that there are no genuine issues of fact to be tried concerning American's "all necessary measures" defense, based solely on the findings of the Commission. Indeed, many of the statements of purported fact in Statement No. 25 contain hearsay and double hearsay that have not been determined to be reliable or admissible. Nor were any of the statements made by persons who have been subject to cross-examination.

Furthermore, to the extent that they may be treated as evidence of fact, the findings of the Commission establish that genuine issues remain to be tried as to whether American took "all necessary measures" to avoid the hijacking and crash of Flight 77 on September 11, 2001. The 9/11 Commission Report and the Commission's *Staff Monograph on the "Four Flights and Civil Aviation Security"* (2005) (hereinafter "Aviation Monograph") both contain a multiplicity of statements that offer substantial support for a necessary measures defense. For example, the Commission issued findings that:

- The terrorists were instructed to use weapons that were either permitted aboard the cabins of commercial aircraft or were undetectable by airport checkpoints, *see* 9/11 Commission Report at 84; *see also* Aviation Monograph at 101, n. 408 (none of the blades or knife housings recovered from the crash sites were longer than 3.5 inches);

- Multiple items, such as Swiss army knives, trade tools, pocket utility knives, letter openers and darts, that were at least as lethal as box cutters were permitted into the sterile area under the Checkpoint Operations Guide ("COG") approved by the Federal Aviation Administration ("FAA"), *see* 9/11 Commission Report at 84, 476, n.57; Aviation Monograph at 73-74;

- Many deadly or dangerous items would not set off a magnetometer calibrated to the FAA-mandated specifications or be visible on the FAA-required X-ray equipment, *see id.* at 84; *see* 9/11 Commission Report at 84; Aviation Monograph at 84;

- The Computer Assisted Passenger Prescreening ("CAPPS") program was applied correctly on September 11 and correctly selected passengers, including some of the hijackers, for additional scrutiny, *see* Aviation Monograph at 72;

- The additional screening applied to a CAPPS selectee was limited to the selected passenger's checked bags, not his or her carry-on bags or person, and was aimed at detecting explosives, not small knives, *see* 9/11 Commission Report at 84; Aviation Monograph at 2;

- The FAA had made a considered policy decision not to ban all small knives, *see* 9/11 Commission Report at 83; Aviation Monograph at 74;

- The FAA-mandated Common Strategy required crews to cooperate with hijackers on the assumption that hijackers were nonsuicidal and would present negotiable demands, *see* 9/11 Commission Report at 85; Aviation Monograph at 49, 81; and

- In the years before 9/11, the Government considered nonsuicidal sabotage as the greatest threat of a lethal terrorist attack on civil aviation, *see* 9/11 Commission Report at 82, 457, n.91; Aviation Monograph at 57-58.

Each of these statements creates a disputed issue of material fact, because they show that American may well have taken all reasonable measures that were mandated by the federal government and were reasonably calculated to meet the terrorist threat anticipated by the Government on September 11, 2001.

American also denies every allegation in Statement No. 25 because the allegations are the subject of outstanding discovery. Specifically, whether the unknown items that the terrorists allegedly used to hijack Flight 77 were prohibited items as defined by the FAA-required Air Carrier Standard Security Program ("ACSSP") and the COG is a subject of continuing discovery. Whether these items were detectable by the security equipment the FAA required and calibrated is also a subject of continuing discovery. Indeed, Plaintiffs have not responded to outstanding discovery requests that seek the evidence relating to the allegations they make in Statement No. 25. Without this evidence, the Court cannot make a determination of whether American took "all necessary measures" to avoid the hijacking and crash of Flight 77 on September 11, 2001.

Furthermore, Statement No. 25 does not identify anyone who allegedly was carrying a "box cutter" aboard Flight 77.

Statement No. 25 also states that handwanding was "marginal," without any indication whether "marginal" meets the requirements of the ACSSP and COG and, furthermore, the person making the statement has not been subject to cross-examination.

Statement No. 25 also contains purported facts that are unfairly prejudicial and not relevant to Plaintiffs' claims or American's Article 20(1) defense.

26. American admits that a Boeing 757-200 aircraft is capable of incorporating more than 60 seats. American denies the remaining allegations in Statement No. 26 because Plaintiffs do not identify which depositions contain instances of alleged screening failures relating to Flight 77. Furthermore the allegations in Statement No. 26 are without citation to authority, violate Local Rule 56.1(d) and should be stricken from Plaintiffs' Statement of Material Facts.

27. American admits that on September 11, 2001, Leslie Ann Whittington was a fare-paying passenger engaged in "international transportation" from the United States to Sydney, Australia. She was ticketed and on board American Flight 77 to Los Angeles and ticketed to connect to a Qantas Airlines flight to Australia.

28. American admits that on September 11, 2001, Sandra D. Teague was a fare-paying passenger engaged in "international transportation" from the United States to Sydney, Australia. She was ticketed and on board American Flight 77 to Los Angeles and ticketed to connect to a Qantas Airlines flight to Australia.

29. American denies every allegation in Statement No. 29 except admits that it conducted security at the subject airport on September 11, 2001 pursuant to 18 C.F.R. Part 108.

30. American denies every allegation in Statement No. 30. American has not yet conducted adequate discovery of the Government to attempt to ascertain the basis of the allegations in Statement No. 30 and it is unable to comment on unidentified reports from the Department of Transportation, the Federal Aviation Administration or the Government Accountability Office relating to investigations of unknown airports conducted on unidentified dates. On its face, Statement No. 30 is not relevant to the events of September 11, 2001. Any reference to what may have happened on dates other than September 11, 2001 is irrelevant and unfairly prejudicial. Furthermore, the allegations in Statement No. 30 are without citation to

authority, violate Local Rule 56.1(d) and should be stricken from plaintiffs' Statement of Material Facts.

31.  American denies every allegation in Statement No. 31 because Plaintiffs do not support any of their conclusory allegations with any statements of fact. Instead, Plaintiffs again rely on statements contained in the 9/11 Commission Report, which the Court has not determined is admissible evidence. It is, therefore, premature to conclude, as Plaintiffs urge the Court to do, that there are no genuine issues to be tried based solely on the findings of the Commission. Moreover, the findings of the 9/11 Commission themselves throw into dispute Plaintiffs' assertion that the September 11 terrorists "penetrated" the aviation security system. The 9/11 Commission Report and the Aviation Monograph both contain multiple statements that offer substantial support for the contrary conclusion – namely, that the terrorists circumvented, rather than breached, the federally mandated aviation security system. For instance, the Commission determined that the terrorists were instructed to use weapons that were either permitted inside the sterile area and aboard aircraft or that were undetectable by airport checkpoints. *See* 9/11 Commission Report at 84; *see also* Aviation Monograph at 101, n. 408. The Commission also concluded that the FAA-ordered CAPPS program was correctly applied to the hijackers on September 11, *see* Aviation Monograph at 72, but that the FAA-required program was aimed at detecting explosives, not the small knives allegedly used by the September 11 terrorists. *See* 9/11 Commission Report at 84; Aviation Monograph at 2. Each of these findings by the Commission creates disputed issues of material fact, both because they suggest that the terrorists did not "penetrate" the aviation security system as Plaintiffs allege and because they show that American may well have taken all reasonable measures that were mandated by the federal government and were reasonably calculated to meet the terrorist threat.

American also denies every allegation in Statement No. 31 because the allegations therein are the subject of outstanding discovery initiated by both Plaintiffs and American. American denies that the terrorist hijackers "penetrated" airline and airport security system because discovery relating to this allegation is outstanding.  Furthermore, whether the unknown items that were alleged to have been carried on to Flight 77 were prohibited (or permissible) items as defined by the ACSSP and the COG or were detectable by the security equipment mandated and calibrated by the FAA is subject to outstanding discovery.  Statement No. 31 also does not identify who allegedly carried a prohibited item aboard American Flight 77 on September 11, 2001.  American denies the allegations in Statement No. 31 to the extent they allege that the crew of Flight 77 should have violated its FAA-approved ACSSP by deviating from the "Common Strategy" when confronting a hijacker. American also specifically denies the allegation in Statement No. 31 that Plaintiffs' decedents suffered "fear of impending death" because Plaintiffs have introduced no evidence to support this allegation and because this allegation is not relevant to a case governed by the Warsaw Convention or Virginia law. American admits that Leslie Ann Whittington and Sandra D. Teague died while passengers aboard American Flight 77.

Dated: New York, New York
       May 7, 2007

                                    CONDON & FORSYTH LLP
                                    7 Times Square
                                    New York, New York  10036
                                    Tel.:  (212) 490-9100
                                    Fax:  (212) 370-4453

                                By: _____
                                    Desmond T. Barry, Jr., Esq. (DB 8066)

                             -and-

                                    DEBEVOISE & PLIMPTON LLP
                                    919 Third Avenue
                                    New York, New York 10022
                                    Tel.: (212) 909-6000
                                    Fax: (212) 909-6836

                                By: _____
                                    Roger E. Podesta, Esq. (RP 1749)

                                Attorneys for Defendant
                                AMERICAN AIRLINES, INC.