UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
|  | No.:  21 MC 97 (AKH) |
| IN RE SEPTEMBER 11 LITIGATION | **THIS DOCUMENT RELATES TO:** |
|  | *Falkenberg v. AMR Corp, et al.* **02 CV 7145 (AKH)** |
|  | *Teague v. AMR Corp, et al.* **03 CV 6899 (AKH)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### FED.R.CIV.P. 56(f) AFFIDAVIT OF DESMOND T. BARRY, JR. IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

STATE OF NEW YORK    )
                          ss:
COUNTY OF NEW YORK  )

      DESMOND T. BARRY, JR., being first duly sworn, deposes and says:

      1.      I am an attorney and member of the firm of Condon & Forsyth LLP, co-counsel for defendant American Airlines, Inc. ("American") this litigation.  I have participated in the defense of this litigation since its inception and am fully familiar with all prior pleadings and proceedings.

      2.      I submit this Affidavit, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, in opposition to Plaintiffs' Motion for Summary Judgment.

      3.      American may avoid unlimited presumptive liability under the Warsaw Convention by proving under Article 20(1) that it took "'all necessary measures' to avoid the damage or that it was impossible to take such measures."  American is unable at this time to present the necessary facts to oppose Plaintiffs' Motion because the discovery essential to American's Article 20(1)

1

"all necessary measures" defense is far from complete and because the Court must first decide the law and standard of care by which American's conduct on and before September 11, 2001 must be judged.

4.      Plaintiffs have attempted to interject in support of their Motion certain purported facts that are unsupported and subject to outstanding discovery requests. Plaintiffs rely on generic references in government reports to make the broad-brush allegation that American should be strictly liable for unlimited damages under the Warsaw Convention because it must have failed to take "all necessary measures" to prevent the terrorist hijacking and crash of Flight 77. Moreover, Plaintiffs rely on these government reports, even though the Court has yet to determine which, if any, of their findings are admissible evidence of fact. Plaintiffs also rely on the observations of an alleged "expert" who has not been subjected to cross-examination and on unidentified government reports about unknown airports that were tested on unknown dates.

5.      The majority of the discovery American seeks to respond to Plaintiffs' Motion lies with the Government. At the very least, American is entitled to ascertain from the Government: (1) what information agencies of the United States had about the potential for suicidal terrorist hijackings of commercial aircraft before September 11, 2001 but did not convey to American; (2) how the terrorists planned and carried out the September 11 terrorist attacks; and (3) whether Federal Aviation Administration ("FAA") regulated screening equipment was capable of detecting the items the terrorists allegedly brought through the Dulles Airport checkpoint before boarding American Flight 77. This information is crucial to American's Article 20(1) "all necessary measures" defense and is the subject of outstanding discovery of the Government served by both Plaintiffs and the Aviation Defendants.

2

6.    Plaintiffs also continue to pursue discovery from the Government regarding the investigation into the terrorist attacks and from defendants relating to the screening equipment that was used at Dulles on the morning of September 11, 2001. Plaintiffs also seek depositions of American and screening company personnel involved with Flight 77 passengers. Indeed, Plaintiffs seek from the Government the same discovery and evidence that American needs to respond to their premature motion.

7.    Some of the evidence that American seeks from the Government to respond to Plaintiffs' Motion and sustain its Article 20(1) "all necessary measures" defense includes:

- The information and analysis that led the FAA, the FBI, and other government agencies responsible for protecting the nation against terrorist attacks on civil aviation before September 11 to establish the security procedures followed by American on September 11;

- The information and analysis that led the FAA, the FBI, and other government agencies responsible for protecting the nation against terrorist attacks on civil aviation before September 11 to not adopt different or additional procedures that Plaintiffs now claim should have been implemented by American;

- All pre-September 11 threats to civil aviation;

- All communications among government agencies and American regarding threats to civil aviation;

- How the FAA determined who should be on "no fly" lists;

- The creation of the prohibited and restricted items list, including the FAA's 1993 proposal to ban all knives which the FAA ultimately rejected;

- Whether the various government agencies considered changing the "Common Strategy" before the September 11 terrorist attacks;

- All government agencies' pre-September 11 knowledge about the terrorist hijackers and the efforts to locate and detain the hijackers;

- The manner in which the September 11 attacks were planned and carried out;

3

- How the September 11 hijackers understood the limitations of the existing aviation security system and how they were instructed to use items that were permissible or undetectable by airport checkpoints;

- How the terrorists familiarized themselves with the FAA-mandated checkpoint screening guidelines and how the terrorists learned, among other things, what the screening procedures were and what constituted "permissible items" that would be allowed to be carried on board an aircraft, including knives with blades that were less than four inches long;

- How the terrorists made test runs to determine what items they could get through the screening checkpoints;

- Expert discovery relating to whether checkpoint screening equipment, which was set at levels mandated by the FAA, was able to detect those "dangerous items" that Plaintiffs allege were used to take over Flight 77;

- The findings from the Red Team investigations or tests of airport passenger screening checkpoint performance, concerning the effectiveness of airport security before September 11; and

- The government's investigation into the September 11 attacks.

8.    American and the Aviation Defendants have continually sought discovery from the FAA and the Transportation Security Administration ("TSA") relating to the terrorist attacks through Freedom of Information Act ("FOIA") requests, document requests and Rule 30(b)(6) deposition notices.

9.    In addition to discovery requests propounded to the FAA and TSA, American and the Aviation Defendants submitted a prioritized list of requests for records to the FBI and Plaintiffs submitted their own list of additional requests to the FBI. Many of these requests relate directly to Flight 77 and the responsive documents and testimony will aid the trier of fact in deciding American's "all necessary measures" defense.

4

10.     Plaintiffs have served discovery upon American and the Aviation Defendants to determine whether the security equipment at Dulles was capable of detecting prohibited items. Plaintiffs also have asked for additional depositions of screeners and ticket agents who were working at Dulles on September 11, 2001.

11.     On April 30, 2007, the Aviation Defendants filed a motion for an order permitting focused discovery from the Government. The memorandum of law in support of that motion describes the evidence the Aviation Defendants seek and how they intend to obtain the discovery. If the Court grants the motion, American anticipates relying on the evidence that will be obtained from the Government to show that American took "all necessary measures" to avoid Plaintiffs' damages, or that it was impossible to do so.

12.     This litigation is in the early stages of liability discovery and American still awaits a significant amount of evidence from Plaintiffs and the Government that is essential to its Article 20(1) "all necessary measures" defense. As the Court is aware, much of this evidence contains Sensitive Security Information that must be vetted by the TSA before production.

13.     Plaintiffs' Motion for Summary Judgment in these two cases governed by the Warsaw Convention is premature. American is entitled to discover evidence essential to its Article 20(1) "all necessary measures" defense before it can adequately oppose plaintiffs' motion.

In support of American's opposition to Plaintiffs' Motion for Summary Judgment, I attach true and correct copies of the following exhibits:

| Ex. | Description |
|---|---|
| A. | Checkpoint Operations Guide applicable to American Airlines on September 11, 2001 ("COG"). |
| B. | Air Carrier Standard Security Programs applicable to American Airlines on September 11, 2001. |
| C. | Security Directive SD 97-01, dated October 27, 1997. |
| D. | Information Circular IC-99-13, dated December 23, 1999. |
| E. | Plaintiffs' Joint Master Discovery – Screening Equipment (Newark and Dulles), dated February 26, 2007. |

I declare under penalty of perjury that the foregoing is true and correct.

Desmond T. Barry, Jr. (DB 8066)

Sworn to before me this
7 day of May 2007

Notary Public

TINA M. ZOCCALI
Notary Public, State of New York
No. 01ZO6059025
Qualified in Rockland County
Commission Expires May 21, 20 07

6

Confidential - Do Not Copy or Disclose

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

# PREFACE

The **CHECKPOINT OPERATIONS GUIDE (COG)** is designed to provide technical and administrative guidance for passenger screening personnel. The screening techniques and procedures will provide nationally standardized methods for checkpoint security screeners.

The information in the guide is a synopsis of standards and statutory requirements established by the **Federal Aviation Administration**, the **Air Transport Association, the Regional Airline Association**, and the **Aviation Security Contractors Association.**

The generic term **passenger** is used to indicate any person passing through a checkpoint; the term **supervisor** is used to identify the person of authority on-duty at the checkpoint at a given time. The term **bag** is also used generically to denote any parcels or luggage that a passenger presents for inspection.

The **COG** is as inclusive as possible, however some situations do not lend themselves to specific procedures. Screeners, supervisors and managers must keep in mind that some day-to-day situations will occur that require on-site decisions. **NO ACTION** should ever be taken that could compromise the aviation security process. All problem situations should be resolved by the most experienced screener or supervisor available and/or referred to the responsible airline.

## COPYRIGHT AND RESTRICTED USE NOTICES

☞ Copyright 1994 by the Air Transport Association of America and the Regional Airline Association. All rights reserved.

The **CHECKPOINT OPERATIONS GUIDE (COG)** is the property of the Air Transport Association of America (ATA) and the Regional Airline Association (RAA). Only airlines and/or individuals who are affiliated with ATA or RAA are permitted to use or duplicate any part of the COG. All other persons are expressly forbidden to use or duplicate any part of the COG without specific written permission from ATA or RAA.

The material contained in the **COG is CONFIDENTIAL** and the control of this material is restricted to security screening personnel.

---

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002359

AALTSA 009505

Confidential - Do Not Copy or Disclose

# CONTENTS                                                    SECTIONS

EMERGENCY PROCEDURES                               1

SCREENERS                                          2

SUPERVISORS                                        3

PASSENGERS                                         4

HAND-CARRIED ITEMS                                 5

SPECIAL PROCEDURES                                 6

TESTING PROCEDURES                                 7

MANAGEMENT RESPONSIBILITIES                        8

ALERT ITEMS                                        9

SITE SPECIFIC                                     10

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002360

AALTSA 009506

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

# EMERGENCY PROCEDURES - 1

The following situations are **violations of Federal Law** requiring an immediate response by security checkpoint screening personnel.

If the screening process reveals an explosive or incendiary device, a firearm, or other dangerous device that is an **OBVIOUS THREAT**, screeners and/or supervisors should use the following procedures:

- attempt to retain control of the object.

- if the item is in the x-ray chamber, stop the x-ray machine.

- do not attempt to remove the item from the x-ray machine.

- request that the passenger remain at the checkpoint.

- do not touch weapons, explosives, explosive devices, or incendiary devices.

- immediately notify the airport police and the airline Ground Security Coordinator. The police will take custody of the item and initiate the proper law enforcement action.

- if the person(s) leaves the checkpoint, keep the person(s) under observation.

- obtain the person's description and the direction of movement for the police.

---

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee

1 - 1

**AA - KEAN COMM**
002361

AALTSA 009507

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# EMERGENCY PROCEDURES - 1

## BREACH OF SECURITY BY A PASSENGER

*EXAMPLE:*    A passenger breaks through a security checkpoint into the sterile area without being properly screened.

**RECOMMENDED ACTION:**    KEEP THE PERSON UNDER OBSERVATION
NOTIFY POLICE, AIRLINE GSC and
SCREENING CONTRACTOR MANAGEMENT

## FALSE, MISLEADING OR THREATENING STATEMENTS BY A PASSENGER

*EXAMPLES:*    "Did you see the gun in my bag?" or "I might have a bomb in that bag." or "The only way I'm going to get there is to hijack the plane."

**RECOMMENDED ACTION:**    KEEP THE PERSON UNDER OBSERVATION
NOTIFY POLICE, AIRLINE GSC and
SCREENING CONTRACTOR MANAGEMENT

## DETECTION OF A WEAPON OR OTHER THREAT ITEM DURING X-RAY INSPECTION

*EXAMPLE:*    A knife with an over-sized blade is visible on the x-ray screen.

**RECOMMENDED ACTION:**    KEEP THE PERSON UNDER OBSERVATION
NOTIFY POLICE, AIRLINE GSC and
SCREENING CONTRACTOR MANAGEMENT

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

1 - 2

AA - KEAN COMM
002362

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## EMERGENCY PROCEDURES - 1

## DETECTION OF A WEAPON OR OTHER THREAT ITEM DURING A BAG SEARCH

*EXAMPLE:*          A screener finds a disassembled handgun in a carry-on bag.

**RECOMMENDED ACTION:**          KEEP THE PERSON UNDER OBSERVATION
NOTIFY POLICE, AIRLINE GSC and
SCREENING CONTRACTOR MANAGEMENT

## DETECTION OF THREAT ITEM DURING A HAND-HELD METAL DETECTOR INSPECTION

*EXAMPLE:*          A screener locates a handgun in an ankle holster.

**RECOMMENDED ACTION:**          KEEP THE PERSON UNDER OBSERVATION
NOTIFY POLICE, AIRLINE GSC and
SCREENING CONTRACTOR MANAGEMENT

## DETECTION OF THREAT ITEM DURING A PAT-DOWN SEARCH

*EXAMPLE:*          A screener finds a knife hidden in a passenger's waist band.

**RECOMMENDED ACTION:**          KEEP THE PERSON UNDER OBSERVATION
NOTIFY POLICE, AIRLINE GSC, and
SCREENING CONTRACTOR MANAGEMENT

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

1 - 3

AA - KEAN COMM
002363

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINSTRATION.

## EMERGENCY PROCEDURES - 1

**SPECIAL NOTE:**

**NEVER attempt to physically restrain a passenger.**  In an emergency situation all screeners who witness the event must get a complete and accurate description of the person or persons involved in the incident.

**Screeners should be able to answer the following questions:**

- what was the person's approximate weight?

- what was the person's approximate height?

- what was the person's hair color?

- what was the person wearing? (type of clothing and color)

- did the person have any distinctive physical characteristics such as scars, tattoos, a limp or missing limbs?

- did the person have any other identifiable features that would aid the police in identification?

- was the person's ticket or ticket folio visible?
  If so, what airline issued it?

- in which direction did the person go after leaving the checkpoint?

- was the person carrying anything?

- did the person leave anything at the checkpoint?

**In time-critical but non-emergency events** such as a POWER OUTAGE or an EQUIPMENT FAILURE, the CSS/SIC must instruct screening personnel to use manual screening procedures and IMMEDIATELY notify the airline GSC and, if applicable, the screening contractor's on-site manager.

---

Checkpoint
Operations
Guide-7/94

The document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

1 - 4

AA - KEAN COMM
002364

AALTSA 009510

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

**SCREENERS - 2**

## SCREENER DUTY ASSIGNMENTS

### X-RAY MACHINE OPERATOR

The x-ray machine operator is responsible for:

- acting in a professional manner to reinforce passenger confidence in the screening process.

- operating the x-ray machine as recommended by the manufacturer in using the machine's features properly.

- avoiding being distracted by passengers, co-workers or non x-ray machine related activity.

- ensuring that each x-ray image is viewed sufficiently to determine that the item being x-rayed:

  (1) contains NO THREAT and may be PASSED.
  (2) is a POSSIBLE THREAT that requires a BAG CHECK.
  (3) contains an OBVIOUS THREAT requiring the use of EMERGENCY PROCEDURES.

- wearing his or her x-ray dosimeter as required by the Federal Aviation Administration.

- notifying his or her immediate supervisor of unusual problem situations and/or obvious threats.

- notifying his or her immediate supervisor of x-ray equipment problems or failure.

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited
without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation
Administration or designee.

AA - KEAN COMM
002365

AALTSA 009511

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## SCREENERS - 2

### WALK-THROUGH METAL DETECTOR MONITOR

**The entry lane monitor is responsible for:**

- monitoring passengers as they move through the walk-through metal detector.

- inspecting items placed in the divest container.

- conducting hand-held metal detector inspections and/or pat-down searches as required.

- notifying his or her immediate supervisor of unusual/problem situations and/or obvious threats.

### X-RAY MACHINE LOADER

**The x-ray machine loader is responsible for:**

- ensuring that carry-on items are positioned on the x-ray machine conveyor belt to obtain the best possible x-ray image.

May also be responsible for assisting with passenger requested bag checks, assisting the x-ray operator in re-x-raying a bag, performing pat-down searches of physically impaired persons and children in strollers or child carriers.

### BAG CHECK SCREENER

**The bag check screener is responsible for:**

- conducting bag searches as requested by the x-ray machine operator or passenger to ensure that an item not cleared by x-ray inspection does not contain weapons or other dangerous items.

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002366

AALTSA 009512

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SCREENERS - 2

### CHECKED BAGGAGE SCREENER

**The checked baggage screener is responsible for:**

- conducting x-ray searches of checked baggage as required by the air carrier.

- notifying his or her immediate supervisor and/or GSC of illegal firearms, explosive devices, incendiary devices or other obvious threats detected during checked baggage inspection.

- conducting bag searches of checked baggage that cannot be cleared by x-ray inspection.

### EXIT LANE MONITOR

**The exit lane monitor is responsible for:**

- monitoring passengers as they exit the sterile area into the airport's public area.

- ensuring that un-screened passengers do not enter the sterile area by way of the exit lane.

- ensuring that screened passengers do not have physical contact with un-screened passengers.

- referring armed LEO's to the CSS.

**SPECIAL NOTE:** The FAA **does not** require the exit lane monitor to be a certified screener, however only certified screeners may perform any additional duties. (i.e. screening wheelchair passengers, children in strollers, concessionaire, janitorial and airline carts, etc.)

---

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

2 - 3

AA - KEAN COMM
002367

AALTSA 009513
AAL 014306

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SUPERVISORS - 3

# CHECKPOINT SECURITY SUPERVISOR
# (CSS)/SCREENER-IN-CHARGE (SIC)

The CSS and/or SIC is a checkpoint's on-site manager. In this capacity the
supervisor is responsible for all checkpoint activities while he or she is on-duty. In
addition to ensuring that screeners are working effectively and efficiently as a team,
the supervisor is responsible for ensuring that the necessary records are accurately
maintained including: **(1) THE SCREENING EQUIPMENT OPERATIONAL TEST
LOG (2) THE INCIDENT LOG AND (3) SCREENER TRAINING RECORDS.**

It is also the supervisor's responsibility to intervene as required on a case-by-case
basis to resolve non-routine situations. (i.e. incident reports for lost or damaged
property or personal injury)

## SUPERVISORY DUTIES

The primary responsibility of the CSS and SIC is to actively supervise screeners,
apply immediate corrective action when required, and manage incidents.  The CSS
or SIC must:

- ensure proper screening techniques are being used and that screeners are
  being rotated as required.

- manage incidents until the arrival of the LEO and/or GSC.

- immediately notify the LEO and GSC when a criminal act against civil
  aviation is suspected.

- ensure that deadly or dangerous weapons and other prohibited objects are
  not handled until the LEO/GSC arrives.

- control or monitor persons when appropriate, without using physical
  restraint and without jeopardizing his or her safety, or that of others.

- collect witness information and retain evidence pending arrival of the LEO.

- represent the airline in handling passenger complaints.

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited
without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation
Administration or designee.

AA - KEAN COMM
002368

3 - 1

AALTSA 009514

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## SUPERVISORS - 3

- verify the credentials of non-passenger armed officers.

- ensure periodic operational testing of screening equipment as required.

- know how to immediately contact the GSC of each airline utilizing the checkpoint.

- respond to the daily GSC security reviews.

- promptly notify the GSC of all checkpoint incidents, irregularities and discrepancies.

**The checkpoint security supervisor (CSS)**

**shall:**

- represent the airline with passengers.
- supervise screeners.
- resolve problems and conflicts.
- manage incidents.
- actively intervene, on a case-by-case basis, to resolve problems.
- ensure effective, vigilant, cautious and courteous screening.
- actively control all screening activities at the checkpoint.

**shall not routinely:**

- conduct x-ray screening.
- load bags on the x-ray conveyor belt.
- conduct bag checks.
- control the exit lane.
- be primarily responsible for operation of the metal detectors.

**The CSS** attire must be distinctive from other clothing or uniforms worn by non-supervisory screeners or other employees at the airport. Acceptable attire is that which will immediately identify the CSS to LEO's and the public. A qualified CSS must not wear CSS clothing when working as a screener.

---

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

3 - 2

AA - KEAN COMM
002369

AALTSA 009515

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

# SUPERVISORS - 3

## SUPERVISORS - CATEGORY X, I and II AIRPORTS

**CONCOURSE** and **HOLD AREA PLAN SCREENING** - A **Checkpoint Security Supervisor (CSS)** must be available at the screening point at all times of operation, with the exception of meal periods, scheduled breaks and emergency situations beyond the control of the airline. During meal times, breaks and emergency situations that would result in the CSS's absence from the checkpoint, the CSS shall designate a screener **(designated screener)** to act in his/her behalf and shall advise the designated screener of his/her whereabouts so that the designated screener is able to summon the CSS for assistance at all times.

The requirement to provide a CSS is irrespective of whether fixed-post or alternative law enforcement response is provided by the airport operator.

**GATE PLAN SCREENING** - A **designated Screener-in-Charge (SIC)** is required for gate plan screening checkpoints.

## SUPERVISORS - CATEGORY III and IV AIRPORTS

A **designated Screener-in-Charge (SIC)** is required for category III and IV airport screening checkpoints.

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002370

AALTSA 009516

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# SUPERVISORS - 3

## SUPERVISOR CHECKLISTS

### PRE-SHIFT • CHECKPOINT

- Is the COG (Checkpoint Operations Guide) available at the checkpoint?
- Has the x-ray unit passed the REQUIRED Step-Wedge test?
- Has the walk-through metal detector passed the REQUIRED OTP test?
- Have hand-held metal detectors passed the NECESSARY test?
- Has the communication and/or alarm systems been tested?
- Have these tests been recorded in the Operational Test Log?
- Is all other checkpoint equipment operable?
- Are the REQUIRED information/warning signs posted for:
    - Carriage of weapons?
    - Hazardous materials?
    - X-ray?
    - Information notices?
- Is the checkpoint area clean and presentable?
- Is the checkpoint lighting adequate?
- Is your uniform distinctive from the screener's uniform?

### PRE-SHIFT • SCREENER BRIEFING

- Are all screeners aware of current security directives and information circulars?
- Are all screeners aware of special events that could effect screening operations?
- Are screeners aware of their responsibilities if OJT is to take place during their duty hours?

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002371

3 - 4

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION

# SUPERVISORS - 3

## PERSONNEL MANAGEMENT

- Are all screeners wearing their dosimeters?
- Are the proper number of screeners present?
- Are the screeners neat, well groomed and wearing the proper uniform?
- Are all screeners physically capable of performing assigned duties?
- Are all screeners mentally capable of performing assigned duties?
- Do all screeners know their position assignments?
- Do all screeners know their shift duty hours?
- Are there obvious or potential personality conflicts between on-duty screeners?
- Are all screeners fully trained or are there screeners on OJT?

## ON-DUTY SCREENER

Are screeners using the proper procedures when:

- Monitoring the walk-through metal detector?
- Performing a hand-held metal detector inspection?
- Operating the x-ray machine?
- Performing bag checks?
- Rotating positions?

Are screeners:

- Courteous?
- Tactful?
- Cautious?
- Vigilant?

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002372

3 - 5

AALTSA 009518
AAL 044244

Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## SUPERVISORS - 3

### ON-THE-JOB TRAINING

**Screener on-the-job training (OJT)** is on-site practical training under the direct supervision of a qualified journeyman screener and/or supervisor to further familiarize new screeners with the equipment, procedures and duties. During this phase of training, supervisors will evaluate a "new-hire's" screening techniques, work habits, and attitude to ensure that their performance is satisfactory.

During OJT, FAA regulations require that screeners not be allowed to work in situations where they are required to make independent judgments as to whether a person and/or their hand-carried items may be allowed to enter the sterile area.

To complete OJT, and be certified as a **FULL DUTY SCREENER,** a screener must successfully identify all of the FAA/industry approved test devices under **realistic conditions.**

FAA regulations require that new screeners be monitored by supervisory personnel during their initial 40 duty hours. The purpose is to ensure that new screeners know and understand the job requirements and procedures, and to provide instruction and practical guidance as appropriate.

### DETAINING A PASSENGER

If a checkpoint supervisor feels that a passenger should not be allowed beyond the screening checkpoint, the supervisor should immediately notify the airport police and the GSC. A supervisor should consider creating a false but believable story (a ruse) to keep the passenger at the checkpoint until the police arrive.

**Situations that could necessitate this are:**

- a passenger refusing inspection of carry-on items.
- a passenger acting in an unruly manner.
- a passenger who makes a bomb or hijack threat.
- detection of an obvious threat.

---

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002373

3 - 6

AALTSA 009519

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

**SUPERVISORS - 3**

**SPECIAL NOTE: A supervisor or a screener should try to keep the passenger under observation but never attempt to physically restrain the person. This is a job for the police.**

## INCIDENT MANAGEMENT

The CSS or SIC is responsible for managing unusual events that occur at a checkpoint. These events are referred to as incidents. An incident may be defined as any event or occurrence that may result in criminal charges being filed against the person(s) perpetrating the event or occurrence. If there is an incident, the supervisor should immediately inform the airline GSC.

**SPECIAL NOTE:** Some screening contractors and/or airlines may have a wider definition of circumstances to be considered an incident. (i.e. lost or stolen articles, passenger complaints, passenger refusing to be screened, etc.)

## INTERVIEWING WITNESSES

If there is an incident, it is the supervisor's responsibility to gather witness information needed to prepare an incident report. A witness is anyone (a passenger, screener, airport or airline employee) who might have information about the incident.

The interview should be conducted in a non-threatening, non-aggressive manner so witnesses will not feel threatened or be uncooperative in providing statements. An effective technique is to point out the importance of their statement in recreating an accurate picture of the events that occurred.

**The supervisor interview should include:**

- descriptions of people and/or objects involved in the incident.
- an account of what occurred in the witnesses' own words.
- the witnesses' locations at the time of the incident.
- other kinds of information as dictated by the situation.

This information should be written down on the **ATA/RAA Incident Report** form.

Checkpoint Operations Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

**AA - KEAN COMM** 002374

3 - 7

AALTSA 009520

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# SUPERVISORS - 3

**The Incident Report must contain a description of:**

- **who** was involved in the incident.
- **what** occurred.
- **where** the incident occurred.
- **when** the incident occurred.
- and if possible, **why** the incident occurred.

### It must include:

- an accurate account of the events before, during and after the incident summarized by the supervisor.
- witnesses' statements dictated to the supervisor or written by the witness.
- the witnesses' names.
- witnesses' work and home addresses.
- witnesses' work and home telephone numbers.
- names of screeners who were on-duty.

**The Incident Report form must be completely filled out and witness statements must be signed and dated by the witness and countersigned by the supervisor.**

## COLLECTING EVIDENCE

Supervisors must identify and save all materials that could be evidence in case of future legal action. Evidence should be controlled and held for the airport police and handled as little as possible.

## THEFT ACCUSATION BY PASSENGER

The supervisor is responsible for handling screening related complaints and/or theft allegations. If there is an accusation of theft at the checkpoint by a passenger, contact the GSC to determine if the police should be called.

Checkpoint Operations Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM 002375     3 - 8

AALTSA 009521

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SUPERVISORS - 3

**SPECIAL NOTE:**

With the exception of information provided to airport police **immediately** after an incident, prior to the arrival of the GSC, screeners and supervisors must **refer all questions to the airline GSC. Immediately after an incident a screener and/or supervisor may provide all necessary information to the airport police. However, all questions from other parties must be referred to the appropriate airline GSC. The GSC must be present whenever screeners and/or supervisors give verbal or written statements.**

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

3 - 9

**AA - KEAN COMM**
**002376**

AALTSA 009522

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

**PASSENGERS - 4**

## SCREENING PROCEDURES - PASSENGERS

### PASSENGER RIGHTS

It is important that all screening personnel understand that all passengers have certain rights pertaining to the screening process.

**They are:**

- the right to refuse screening.

- the right to refuse the inspection of their hand-carried items.

- the right to **WITHDRAW PERMISSION** for the screening of themselves and/or their hand-carried items **AT ANY TIME, UNLESS** an **OBVIOUS THREAT** has been identified.

**SPECIAL NOTE: If any passenger exercises any of these rights, neither the passenger nor his or her hand-carried items may enter the sterile area.**

Checkpoint Operations Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002377

4 - 1

AALTSA 009523

Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## PASSENGERS - 4

## WALK-THROUGH METAL DETECTOR PROCEDURES

The use of the following procedures will ensure that all passengers are screened with a **STANDARD ROUTINE.**

**SPECIAL NOTE:** Screeners may encounter passengers with implanted medical devices such as heart pacemakers or pregnant women who have been advised by their doctors that they should not undergo electronic metal detector searches. (see pages 4-10 through 4-17)

**The procedure for walk-through metal detector screening is as follows:**

- direct the passenger to place any hand-carried item large enough to conceal a weapon, explosive device or other restricted article onto the x-ray machine conveyor belt for x-ray inspection and/or submit the item for hand inspection.

- direct the passenger to divest himself or herself of any metal objects in pockets or that can be removed from their person or clothing (i.e. jewelry such as pins, broaches, bracelets, and metal pens) paper money should be removed from the clip and retained by the passenger.

- place these items in the checkpoint divest container.

- carefully inspect the items in the divest container.

- place the divest container in a location where the passenger can see it while he or she is passing through the metal detector.

- direct the passenger to walk through the metal detector at their normal walking speed and gait. (Note: a passenger's normal walking speed and gait may be affected by age or physical condition.)

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002378

4 - 2

AALTSA 009524

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## PASSENGERS - 4

**DO NOT** allow passengers to pass through the metal detector very slowly, very fast or in any other unusual manner. (i.e. arms spread, arms extended forward or to the rear, hopping, skipping, spinning, long-stepping, leg-dragging or backwards)

**SPECIAL NOTE:** Requesting passengers to divest themselves of metal items may be done after the passenger has caused the metal detector to alarm if approved by the responsible airline.

### IF THERE IS NO ALARM:

- DIVESTED ITEMS MAY BE RETURNED.

- PASSENGER MAY ENTER THE STERILE AREA.

### IF THE METAL DETECTOR DOES ALARM:

- DIRECT THE PASSENGER TO RE-EXAMINE POCKETS AND/OR CLOTHING FOR ADDITIONAL METAL OBJECTS.

- REPEAT DIVEST PROCEDURES.

- DIRECT THE PASSENGER TO WALK THROUGH THE METAL DETECTOR A SECOND TIME.

### IF THERE IS NO ALARM ON 2nd PASS:

- DIVESTED ITEMS MAY BE RETURNED.

- PASSENGER MAY ENTER THE STERILE AREA.

### IF THE METAL DETECTOR DOES ALARM ON 2nd PASS:

- PASSENGER MUST BE REFERRED FOR HAND-HELD METAL DETECTOR SEARCH. THE CAUSE OF ALL ALARMS MUST BE DETERMINED BEFORE THE PASSENGER IS ALLOWED TO ENTER THE STERILE AREA.

The document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002379

4 - 3

AALTSA 009525

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## PASSENGERS - 4

## HAND-HELD METAL DETECTOR PROCEDURES



### SCREEN AROUND THE CLOCK

HAND-HELD METAL DETECTOR searches should be performed in a circular **"clockwise"** path as the screener moves around the passenger's body.

**Before performing a hand-held metal detector search the screener must:**

- ask and receive the passenger's permission to conduct the search.

- ask the passenger to remove bulky over-garments that would interfere with the search.  These garments must be x-rayed or hand inspected.

- retain control of divested and/or hand-carried items that have cleared x-ray inspection.

- ensure that divested and/or hand-carried items remain in full view of the passenger during the search.

- ensure that the search is done in a location that will not interfere with traffic passing through the checkpoint's walk-through metal detector.

---

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

4 - 4

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## PASSENGERS - 4

- test the hand-held metal detector to ensure that it is operating properly (i.e. pass the unit over a metal object to ensure that it alarms).



**When conducting a hand-held metal detector inspection the screener must:**

- direct the passenger to face forward and spread his or her arms.



- use the metal detector unit as specified by the manufacturer.
- NEVER touch the passenger's body with the hand-wand.
- use the same search path and procedures every time.

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited
without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation
Administration or designee.

AA - KEAN COMM
002381

4 - 5

AALTSA 009527

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## PASSENGERS - 4

- start at the top of the head, moving down and around the passenger's body in a clockwise direction until the passenger's body has been completely outlined.



Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

4 - 6

AA - KEAN COMM
002382

AALTSA 009528

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## PASSENGERS - 4

- use the active area of the hand-held metal detector parallel to the
  passenger's body, move the detector from the passenger's shoulder down,
  then up, in 2 to 3 inch wide tracks until the front area of the passenger's
  body has been completely inspected.



This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited
without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation
Administration or designee.

AA - KEAN COMM
002383

AALTSA 009529

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## PASSENGERS - 4

- move around the passenger and repeat the procedure on the passenger's back.



SPECIAL NOTE: To ensure that the search is thorough, screen all the way to the passenger's feet (the inside and outside of each foot - front and back). By the time a screener has completed a hand-held metal detector inspection he or she should have neared the floor eight times (see diagram).



Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

4 - 8

AA - KEAN COMM
002384

AALTSA 009530

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# PASSENGERS - 4

**If the hand-held metal detector alarms, the screener must:**

- ensure that the cause of each alarm is positively identified.

- ask the passenger to remove any metal object(s) in the area of the alarm.

- verify that the object is not a dangerous or restricted item.

- resume at the point where the alarm was discovered.

- continue the procedure until the passenger has been completely screened and the sources of all alarms are identified and cleared.

**SPECIAL NOTES:**

- Pay particular attention to the foot and ankle areas. Weapons can be hidden in these areas. In some airports, metal in the floor may cause the hand-held unit to alarm requiring the feet and ankles to be cleared with a pat-down search.

- If the passenger is wearing an oversize belt buckle, ask the person to undo the buckle and inspect both the back of the buckle and the waist area behind the buckle.

**When the source of any hand-held metal detector alarm cannot be identified, a pat-down inspection is required.**

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002385

AALTSA 009531

Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## PASSENGERS - 4

## CONDUCTING A PAT-DOWN SEARCH

There are 2 types of pat-down searches, a WHOLE BODY PAT-DOWN SEARCH and a PAT-DOWN SEARCH LIMITED TO THE AREA OF AN ALARM. In both situations, wherever possible the screener should use the back of his or her hands to conduct the search. In conducting a pat-down search a "common sense" approach must be applied to accommodate the passenger's health, safety and dignity.

## SCREEN AROUND THE CLOCK

A PAT-DOWN search path should be **"clockwise"** around, then top to bottom on the passenger's body. Pat-down searches must be performed using the same procedure every time to ensure that nothing is missed.



---

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

4 - 10

AA - KEAN COMM
002386

AALTSA 009532

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## PASSENGERS - 4

### WHOLE BODY PAT-DOWN SEARCH

If a passenger cannot be cleared by, or will not agree to, a walk-through and/or
hand-held metal detector inspection, a whole body pat-down search is necessary.
(i.e. passengers in wheelchairs, pregnant women, passengers with implanted
medical devices)

**The search should be done tactfully, with discretion, and a second screener
should act as a witness.**

### WHOLE BODY PAT-DOWN SEARCH PROCEDURES

**Screeners conducting whole body pat-down searches MUST:**

- ask for and receive the passenger's permission.

- **be the same sex as the passenger being searched.**

- ask the passenger to remove any heavy outer clothing (i.e. overcoats,
  bulky jackets, hats etc. for x-ray or hand inspection).

- ask the passenger to empty the contents of his or her pockets. These
  items should be inspected and cleared by the screener independently. If
  x-ray inspection is necessary, these items should be processed using
  standard x-ray screening procedures.

- direct the passenger to face forward and spread his or her arms.

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited
without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation
Administration or designee.

4 - 11

AA - KEAN COMM
002387

AALTSA 009533

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

AA - KEAN COMM
002388

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191.et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

## Pat-down Search Key Points

### MALE PASSENGER

- COLLAR
- UNDER ARMS
- ARMS
- UPPER TORSO
- INSIDE JACKET
- SMALL OF BACK
- LOWER TORSO
- WAIST
- LEGS
- ANKLES
- SHOES



## PASSENGERS - 4

4 - 12

AALTSA 009534

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

AA - KEAN COMM
002389

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

Checkpoint
Operations
Guide-7/94



## FEMALE PASSENGER

- HAT
- HAIR
- SHOULDER PADS
- COLLAR
- ARMS
- BREASTS
- UNDER ARMS
- UPPER TORSO
- INSIDE JACKET
- WAIST
- SMALL OF BACK
- LOWER TORSO
- LEGS
- HEM OF SKIRT
- ANKLES
- BOOTS / SHOES

## Pat-down Search Key Points

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

## PASSENGERS - 4

4 - 13

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

# PASSENGERS - 4

**Screeners conducting pat-down inspections should use the following procedures:**

## HAIR AND NECK

- passengers with short hair only require visual inspection.

- passengers with long hair or hair-styles in which a weapon could be hidden, must have his or her hair and neck patted-down.

- passengers wearing a turban, bandanna or other head covering, must remove it so the hair can be patted-down.

## SHOULDERS AND ARMS

- the screener should ask the passenger to raise his or her arms to the side. If the passenger is wearing short sleeves, it is not necessary to check further than the end of the sleeve.

- passengers wearing long sleeves should be patted-down by encircling the passenger's nearest arm with the hands and fingers, moving from the shoulder downward to the bottom of the arm in one motion. Repeat the action on the other arm.



---

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

4 - 14

AA - KEAN COMM
002390

AALTSA 009536

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## PASSENGERS - 4

### CHEST, UNDERARMS, AND BACK

- with the passengers arms still raised, use the backs of the hands. Start at the top of the shoulder and move the hands downward to the waist in overlapping paths, until the entire torso has been searched. When screening female passengers, the pat-down must be conducted efficiently but very tactfully in the breast area.

- the area of the back, near the waist, caused by the curvature of the spine and the areas under the armpits, where weapons can be concealed should receive special attention.



- if the passenger is wearing a suit coat, sport jacket or other light over garment, pat down the area of the garment that pulls away from the passenger's body.

### WAIST, THIGHS, AND LEGS

- place thumbs between the passenger's belt and waist, and circle the waist.

- if necessary, crouch or kneel and with the backs of the hands start at the waist and move downward to the trouser cuffs or skirt bottom in overlapping paths until the passenger's entire lower body has been searched. Repeat for the other leg.

---

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

4 - 45

AA - KEAN COMM
002391

AALTSA 009537

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## PASSENGERS - 4

### CROTCH

- with the passenger's permission, the crotch area should be checked with a metal detector.

### FEET & SHOES

- normally, passengers should not be asked to remove their shoes. Screeners should check shoe or boot bottoms and boot tops by hand. If concealment is suspected, the item in question should be x-rayed. Sandals do not need to be checked.

### PAT-DOWN SEARCH LIMITED TO AREA OF SPECIFIC ALARM

When a hand-held metal detector search of a passenger cannot resolve the source of an alarm, a limited pat-down search is necessary. A limited pat-down search requires the consent of the passenger. These searches should be limited to the area of the passenger's body where the alarm cannot be resolved.

- If the area of the search is not sensitive, with the passenger's permission, the search may be conducted by a screener of the opposite sex.

### IF THE SOURCE OF THE ALARM CANNOT BE RESOLVED BY A PAT-DOWN INSPECTION, NOTIFY THE AIRPORT POLICE AND THE GSC OF THE AIRLINE ON WHICH THE PASSENGER IS TICKETED.

The document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

4 - 16

AA - KEAN COMM
002392

AALTSA 009538

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## HAND-CARRIED ITEMS - 5

## SCREENING HAND-CARRIED ITEMS

All carry-on items that enter the sterile area must be screened with the exception of the special situations noted in section 6.  This can be done either by X-RAY INSPECTION, a MANUAL SEARCH or a combination of both techniques.

All passengers have the "right" to request that any item be searched by hand.

### X-RAY INSPECTION

Each x-ray image to be evaluated by the x-ray machine operator will fall in to one of three categories: **NO THREAT, POSSIBLE THREAT or OBVIOUS THREAT.**

If an x-ray image has no shadow areas that could be a weapon or mask a weapon, the item is **NO THREAT** and may be **PASSED.**

If an x-ray image has unidentifiable shadow areas that could be a weapon, part of a weapon or mask a weapon it must be classified as a **POSSIBLE THREAT** and a **BAG SEARCH** must be performed.

If an x-ray image reveals a weapon or other dangerous object, it is an **OBVIOUS THREAT.  CALL FOR ASSISTANCE** from a supervisor and/or notify the airport police and the appropriate GSC.  Attempt to keep the passenger under observation at all times.

### If the **OBVIOUS THREAT** item:

- is inside of the x-ray chamber, stop the x-ray machine and keep the item in the x-ray chamber, away from the passenger, until airport police arrive.

- has already passed through the x-ray machine, retain control of the item until airport police arrive.

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002393

5 - 1

AALTSA 009539

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## HAND-CARRIED ITEMS - 5

**Screeners performing x-ray inspection must:**

- place the article to be screened on the x-ray machine conveyor belt so the widest, flattest surface of the object is in the path of the x-ray beam.

- ensure that the x-ray image displayed on the monitor is as clear and sharp as possible. If necessary, adjust the monitor's brightness and contrast controls to enhance the x-ray image.

- use x-ray machine controls in accordance with the manufacturer's operating instructions.

- view each x-ray image long enough to determine into which category it should be classified.

- if available, use the x-ray machine features that will enhance questionable areas of the x-ray image.

## CONDUCTING A BAG SEARCH (Manual Inspection)

Manual inspection is required for any item that cannot be cleared by x-ray inspection or when specifically requested by a passenger instead of x-ray inspection.

**Screeners performing a manual inspection must:**

- ask and receive the passenger's permission for the bag to be inspected.

- restrict the passenger's access to the contents of the bag and keep the contents of the bag out of public view.

- NOT allow the passenger to place his or her hands into the bag until the search has been completed and the bag has been cleared.

Checkpoint
Operations
Guide-Rev 006-

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002394

5 - 2

AALTSA 009540
AAL 014222

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## HAND-CARRIED ITEMS - 5

### SCREEN AROUND THE CLOCK

Perform all bag searches in a circular, **"clockwise"**
path. If every search is done using the same systematic
procedure each time, it will help ensure that nothing
is missed.



Screeners must be extremely cautious where they place their
hands. **LOOK BEFORE YOU TOUCH ... TOUCH WHERE YOU ARE LOOKING.**

- start the manual search on the outside of the bag. Look for any sign that
  could indicate that the bag has been tampered with ████████
  ████████████████████████████████

- check the outside of "soft" bags by feeling for any out-of-the-ordinary
  ████████████

- open and check inside all exterior pockets and zipper compartments.
  If nothing appears to be out-of-the-ordinary the
  screener may open the bag.

- check the interior of the bag in a clockwise
  direction.

- feel the top, sides and bottom of the inside of the
  bag for any sign that the interior of the bag has
  been altered. ████████████████████████
  ████████ Space that cannot be accounted for may be a hidden
  compartment.

- check all layered or rolled clothing by squeezing or unrolling it to ensure
  that nothing has been hidden inside.



This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited
without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation
Administration or designee.

AA - KEAN COMM
002395

5 - 3

AALTSA 009541

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

# HAND-CARRIED ITEMS - 5

- check ▮▮▮▮▮ of items like stuffed toys, cigarette cartons and aerosol cans. If any item seems ▮▮▮▮▮▮▮ refer it to a supervisor. ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- leaf through the pages of books to ensure nothing is hidden inside.

- examine the exterior, interior and contents of backpacks and garment bags in a clockwise sequence in the same manner as any other piece of luggage.

- disregard very small items that are too small to conceal a weapon or the components of a weapon.

- thank the passenger for his or her cooperation when the search has been completed.

- if the search is being conducted because of an unidentifiable area on the x-ray image, that area should receive special attention. When the unidentifiable object is located, the areas behind, under and around the object also must be searched to ensure that the object was not used to hide a threat. The search should continue until the entire bag has been cleared.

## PASSENGER REQUESTED HAND INSPECTION

Some passengers are concerned about the effects of x-rays on computers, electronic devices, audio tape, videotape, computer disks, cameras and film. Assure the passengers that x-ray units used in the United States have no effect on these items. ALL AVERAGE SPEED, CONSUMER CAMERA FILM CAN BE X-RAY INSPECTED WITHOUT HARM.

Scientific film, x-ray film and very high speed film (ISO 1,000 or higher), should be hand inspected.

Checkpoint
Operations
Guide-Rev 006-

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002396

5 - 4

AALTSA 009542

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

# HAND-CARRIED ITEMS - 5

## CAMERAS, FILM AND CAMERA BAGS

If a passenger requests that a camera bag be hand inspected, ask the passenger to remove the sensitive contents (i.e. the camera and/or film) that the person wishes to have hand inspected. **The bag should then be cleared by x-ray inspection.** This will ensure that if there is anything hidden in the bag it will be detected.

**To hand check a camera and/or film, the screener should:**

- request that the passenger remove the lens cap.

- look into the lens and through the viewfinder on all reflex cameras. If nothing has been hidden inside the camera you will see an image.

- feel ███████ the camera, if it seems to be ██████████ the passenger should be asked to open the camera for further inspection.

## ELECTRONIC DEVICES

Lap-top computers, video cameras, CD or cassette players, cellular telephones, radios, or other electronic devices should be cleared by x-ray inspection using standard x-ray screening procedures.

**However, if the passenger requests a hand inspection the screener performing the hand inspection should:**

- ask the **passenger** to remove the device from its carrying case.

- x-ray the device's carrying case.

- ask the passenger to "power-up" lap-top computers and/or other electronic devices to avoid possible liability if the device malfunctions.

- observe that the unit is operational and note the passenger's familiarity with its operation.

- check ███████ the device.

- check for signs of tampering on the exterior of the device.

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002397

AALTSA 009543

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## HAND-CARRIED ITEMS - 5

If the device cannot be **powered-up**, a more thorough search should be conducted under the direction of the supervisor. Unresolved problems with electronic devices should be referred to the airline GSC.

### CONTRABAND

A screener may observe something that, although it is not included within the primary mission of the screening process, is suspected to be illegal (i.e. controlled or illegal drugs, drug paraphernalia, large quantities of cash, etc.). These articles are referred to as CONTRABAND.

The screener should not attempt to hold the passenger or confiscate the items. However, airlines are prohibited from knowingly transporting contraband. The screener making the discovery should immediately notify a supervisor and provide a description of the passenger and their direction of travel. The supervisor should notify the appropriate authorities.

### GUIDELINES FOR ITEMS THAT MAY NOT PASS INTO THE STERILE AREA

### RESTRICTED ITEMS

Restricted items are things or substances that pose a potential danger. Even though they are not firearms or explosive devices, they are not permitted in the passenger cabin of an aircraft. (i.e. toy or replica guns, martial arts devices, swords, sabers or hunting knives, etc.) The supervisor must be notified if an item in this category is encountered.

Passengers **may** be given the option of having these items transported as checked baggage.

---

Checkpoint
Operations
Guide-Rev 006-

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002398

5 - 6

AALTSA 009544
AAL 011227

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

# HAND-CARRIED ITEMS - 5

## HAZARDOUS MATERIALS

HAZARDOUS MATERIAL, often referred to as "HAZMAT" are materials that are
dangerous to transport on-board an aircraft. (i.e. flammable liquids and matches in
large quantities, aerosol deterrent devices such as Mace, acids or other corrosives,
containers of propane gas, fireworks, bleaches and toxic materials such as poisons
or insecticides)

Passengers **may not** take items in this category on an airplane as checked baggage
without the express permission of the airline.

## WEAPONS AND EXPLOSIVE DEVICES

Items in this category (i.e. flare pistols, revolvers, long guns, automatic weapons,
long bladed knives, explosives and explosive devices, etc.) may not enter the sterile
area.  The checkpoint supervisor, airport police, airline GSC and screening company
management (if applicable) must be notified if an item in this category is
encountered.

Items on the following chart may not be allowed to enter the sterile area.  In some
cases it may be difficult for screeners and/or supervisors to make a clear-cut
determination as to the category of a specific item.  Knives with blades under 4
inches, such as Swiss army knives, scout knives, pocket utility knives, etc. may be
allowed to enter the sterile area.  However, some knives with blades under 4 inches
could be considered by a reasonable person to be a "menacing knife" and/or may be
illegal under local law and should not be allowed to enter the sterile area.  ANY
QUESTIONABLE ITEM SHOULD BE REFERRED TO A GSC.

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited
without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation
Administration or designee.

AA - KEAN COMM
002399

5 - 7

AALTSA 009545

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## HAND-CARRIED ITEMS - 5

### Items NOT allowed to enter the sterile area:

| ITEM | NOTIFY: CSS RESTRICTED | GSC HAZMAT | LEO WEAPON |
|---|---|---|---|
| Acids | | ■ | |
| Ammunition | | ■ | |
| Automatic weapons | | | ■ |
| Axes | ■ | | |
| BB guns | | | ■ |
| Batteries (wet cell) | | ■ | |
| Billy clubs | ■ | | |
| Blackjacks | ■ | | |
| Blasting caps | | | ■ |
| Bows & arrows | ■ | | |
| Box cutters | ■ | | |
| Brass knuckles | ■ | | |
| Bull whips | ■ | | |
| Butane gas | | ■ | |
| Caustic materials | | ■ | |
| $CO_2$ cartridges | | ■ | |
| Cattle prods | ■ | | |
| Compressed air guns | | | ■ |
| Dry ice (4.4 lbs.) | | ■ | |
| Dynamite | | | ■ |
| Fire extinguishers | | ■ | |
| Fireworks | | ■ | |
| Flammable liquids | | ■ | |
| Flare pistols | | | ■ |
| Gasoline | | ■ | |
| Gun lighters | ■ | | |

Checkpoint
Operations
Guide-Rev 006-

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002400

AALTSA 009546

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

# HAND-CARRIED ITEMS - 5

## Items NOT allowed to enter the sterile area:

| | NOTIFY: | CSS | GSC | LEO |
|---|---|---|---|---|
| ITEM | | RESTRICTED | HAZMAT | WEAPON |
| Gun powder | | | ███████ | |
| Hammers | | ███████ | | |
| Hand grenades | | | | ███████ |
| Hatchets | | ███████ | | |
| Hunting knives | | ███████ | | |
| Ice axe / Ice pick | | ███████ | | |
| Insecticides | | | ███████ | |
| Kerosene | | | ███████ | |
| Knives (blades over 4" or menacing) | | | | ███████ |
| Kubatons | | ███████ | | |
| Lighter fluid | | | ███████ | |
| Mace | | | ███████ | |
| Martial arts devices | | ███████ | | |
| Matches (large quantity) | | | ███████ | |
| Meat cleavers | | ███████ | | |
| Numchucks | | ███████ | | |
| Oxygen tanks | | | ███████ | |
| Paints | | | ███████ | |
| Paint thinner | | | ███████ | |
| Pellet guns | | | | ███████ |
| Pepper spray | | | ███████ | |
| Pistols | | | | ███████ |
| Plastic explosives | | | | ███████ |
| Portable power drills | | ███████ | | |
| Portable power saws | | ███████ | | |
| Radioactive material | | | ███████ | |

Checkpoint
Operations
Guide-Rev 006-

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited
without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation
Administration or designee.

5 - 9

AA - KEAN COMM
002401

AALTSA 009547

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

# HAND-CARRIED ITEMS - 5

## Items NOT allowed to enter the sterile area:

| | NOTIFY: | CSS | GSC | LEO |
|---|---|---|---|---|
| ITEM | | RESTRICTED | HAZMAT | WEAPON |
| Religious knives | | ■ | | |
| Replica weapons | | ■ | | |
| Revolvers | | | | ■ |
| Rifles | | | | ■ |
| Road Flares | | | ■ | |
| SCUBA knives | | ■ | | |
| SCUBA tanks | | | ■ | |
| Sabers | | ■ | | |
| Shot guns | | | | ■ |
| Spear guns | | ■ | | |
| Starter pistols | | | | ■ |
| Straight razors | | ■ | | |
| Stun guns | | | | ■ |
| Swords | | ■ | | |
| Tear gas | | | ■ | |
| Throwing stars | | ■ | | |
| Toy transformer robots (forms toy gun) | | ■ | | |
| Toy weapon | | ■ | | |
| Turpentine | | | ■ | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Checkpoint
Operations
Guide-Rev 006-

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002402

5 - 10

AALTSA 009548

Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# HAND-CARRIED ITEMS - 5

## Items that may be permitted into the sterile area:

| APPROVED ITEMS |
| --- |
| Baseball bats |
| Bowling balls |
| Cameras |
| Camcorders |
| Cricket bats |
| Darts |
| Golf clubs (two) |
| Fishing poles |
| Hockey sticks |
| Horse shoes |
| Knitting needles |
| Laptop / notebook computers |
| Letter openers |
| Parachutes - without cartridge |
| Personal audible alarms |
| Pocket utility knives (less than 4" blade) |
| Pool cues |
| Restraining devices |
| ~~Scissors~~ |
| Ski poles |
| Trade tools |
| Umbrellas |

## SPECIAL NOTE:

Some airlines may not allow some of these items on-board some flights, due to the size of the object and/or available storage space in the aircraft cabin.

The document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002403

AALTSA 009549

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

## EXCEPTIONAL SCREENING

The airline GSC may direct the use of intensified security procedures. This is most often due to a SECURITY INFORMATION CIRCULAR or SECURITY DIRECTIVE issued to the airline by the FAA or intelligence developed by the airline security department.

Screeners **may** be required to verbally question passengers during screening. The questions are designed to determine if passengers are absolutely certain of the contents in their carry-on baggage.

Additional procedures may include subjecting articles to another x-ray examination both in the horizontal and vertical positions; and/or requiring passengers to remove batteries from electric or electronic devices. The batteries may either be checked to the destination or surrendered at the checkpoint.

## SPECIAL SCREENING SITUATIONS

### PRIVATE SCREENINGS

Passengers carrying unusually valuable or sensitive materials may request a PRIVATE SCREENING. The passenger and/or hand-carried items will be inspected out of view of other passengers. This procedure will vary depending on the physical design of the screening point, but generally it will be in a closed room or office. The standard procedure requires that two screeners and/or supervisors be present during a private screening.

### ARMED FEDERAL, STATE, and LOCAL LAW ENFORCEMENT OFFICERS

Armed federal, state or local officers, **traveling as passengers,** must present ▮▮▮▮ documentation ▮▮▮▮ credentials to the checkpoint supervisor. After verification they may be allowed to pass through checkpoints ▮▮▮▮ .

Checkpoint
Operations
Guide-Rev 006 8/99

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002404

6 - 1

AALTSA 009550

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

Armed federal, state or local officers **who are not passengers,** are allowed to pass through the checkpoint ███████████████ upon presentation and verification of ███ credentials by the checkpoint supervisor.

**SPECIAL NOTE:** Local requirements regarding specific procedures ████████████ ████████████████████████████ may vary from airport-to-airport. If applicable, details regarding these procedures should be placed in Section 10, SITE SPECIFIC.

### PASSENGERS UNDER ESCORT

Certain dignitaries, VIP'S, witnesses under protective custody or prisoners in-transit may be escorted by either armed or unarmed federal, state or municipal escorts. Armed LEO escorts must be processed as previously outlined. If the person(s) being escorted is not cleared by undergoing a PRIVATE SCREENING, he or she must be processed using standard screening procedures.

### SPECIAL NOTES:

Dignitaries being escorted by the U.S. Secret Service or the U.S. State Department Security and their carry-on items are considered to have met FAA screening requirements.

Security personnel accompanying foreign dignitaries must have airline documentation if they are traveling armed. They should be processed in the same manner as other armed LEO'S.

### TO VERIFY A PHOTO ID YOU MUST ENSURE THAT THE ID:

- has a full-face photo that matches the appearance of the passenger.
- shows the name of the law enforcement organization.
- has the name and signature of the passenger.

---

Checkpoint
Operations
Guide-Rev 006 8/99

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

6 - 2

AA - KEAN COMM
002405

AALTSA 009551

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# SPECIAL PROCEDURES - 6

## TO VERIFY A DOCUMENT, YOU MUST ENSURE THAT:

- the passenger's name on the document matches the passengers photo ID.

- the document has the correct date of travel.

- the document is signed by an airline representative.

## AIRPORT POLICE

At many airports, on-duty, uniformed officers with proper credentials, serving as airport police may pass through the checkpoint without full screening.

## SCREENING FLIGHT CREWMEMBERS

Federal regulations require that flight crews must go through the complete screening process if they pass through a checkpoint.

Hand-wand and consent pat-down searches should be same sex searches. Crewmembers do not need to remove their hats during the search unless there is an alarm.

Screwdrivers, flashlights, wrenches or other hand tools carried in a flight crewmember's flight bag should be considered "tools of the trade" and do not need to be subjected to additional inspection.

## SPECIAL NOTE:

On-duty flight crews may sometimes seem impatient because they go through this process a number of times each day. Any disputes involving the screening process with flight crewmembers should be referred to the appropriate airline.

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002406

AALTSA 009552

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

### CLASSIFIED MATERIAL & DIPLOMATIC POUCHES



### EXTRAORDINARY ITEMS

Some religious articles, medical, lifesaving and scientific items, legal evidence, and crematory containers (burial urns) may be exempt from x-ray inspection and/or hand inspection if they cannot be opened without damaging or violating the contents.

Prior arrangements must have been made with the airline on which the passenger is traveling.

The passenger must have documentation to verify the contents of the item to be exempt and personal identification. The passenger should be processed using standard screening procedures.

### INFANTS AND SMALL CHILDREN

Passengers with infants in child carriers should remove the child from the device and carry the infant through the walk-through metal detector. The child carrier should be cleared by x-ray inspection.

Be alert to ensure that child carriers are not placed on the x-ray machine conveyor belt until the child has been removed. Some passengers who are not familiar with the passenger screening process do not understand that the procedure is used to clear the carrier, not the child.

Checkpoint Operations Guide-Rev 006 8/99

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002407

6 - 4

AALTSA 009553

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# SPECIAL PROCEDURES - 6

If the person accompanying the infant cannot, or would prefer not to remove the child, (i.e. a sleeping child) both the infant and the carrier must be cleared with a pat-down inspection. Particular attention should be given to the area under the child and all blankets and covers to ensure that they are clear.

Children in strollers should be removed from the stroller and, if possible, walk through the metal detector.

If the child cannot walk, he or she should be carried through the walk-through metal detector by the person accompanying the child.

The stroller should be cleared using standard hand search procedures. Special care should be taken to ensure that pockets or containers on the stroller, and the underside of the stroller are inspected.

## PHYSICALLY IMPAIRED PASSENGERS

The screening process can be a difficult, physically demanding and/or an embarrassing experience for physically impaired passengers. Screeners must ensure that these passengers are thoroughly screened while being sensitive to the passenger's physical condition.

**WHEELCHAIR PASSENGERS** should be asked if it is possible for them to walk through the metal detector, or stand far enough away from the metal wheelchair to allow a hand-held metal detector search. If one of these options is practical, the passenger should be processed using the appropriate method.

If this is not possible, permission must be obtained from the passenger to perform a whole body pat-down search. Always search the wheelchair to make sure that there are no weapons or explosive devices concealed in any part of the chair. Hand-carried items should be screened using standard operating procedures.

The same procedures should be used to process passengers on gurneys, stretchers or carts.

Some passengers with disabilities, whether or not accompanied by service animals, may not appear to have a disability. In these cases contact the airline GSC for clearance.

Checkpoint
Operations
Guide-Rev 006 8/99

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

6 - 5

AA - KEAN COMM
002408

AALTSA 009554

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

**PASSENGERS WITH DISABILITIES** traveling **WITHOUT SERVICE ANIMALS** should be processed using standard procedures.

**PASSENGERS WITH DISABILITIES** traveling **WITH SERVICE ANIMALS (to include GUIDE DOGS)** should be asked to drop the animal's harness handle and command the animal to "stay". The passenger should walk (or be assisted) through the metal detector and processed using standard screening procedures. The passenger should then command the animal to come through the metal detector. The metal in the animal's harness may cause the metal detector to alarm. Visually inspect the animal. If a pat-down inspection of the animal is necessary, work with the passenger to determine how this can be accomplished. Never attempt to remove the animal from the control of the passenger.

**VISUALLY IMPAIRED PASSENGERS** must divest themselves of metal canes or other guide devices before walking (or being assisted) through the walk-through metal detector.

**HEARING IMPAIRED PASSENGERS** and **PASSENGERS** with **LANGUAGE BARRIERS** should be processed using standard screening procedures. Face the passenger and speak clearly and slowly. Pointing or pantomiming the necessary actions and/or movements which may be useful to help communicate with the passenger.

Some **ELDERLY PASSENGERS** may move slowly, and/or have vision, hearing or speech problems. Some may have not flown before or only infrequently and are not familiar with passenger screening. A patient, direct and friendly approach is an effective method of assisting these passengers.

**PASSENGERS** with **PACEMAKERS** or **OTHER IMPLANTABLE MEDICAL DEVICES** may prefer not to walk through the metal detector. These passengers can be processed by hand-wanding the body areas away from the device. A pat-down search can clear the area where the device is implanted. The passenger has the option of requesting a whole body pat-down search.

Checkpoint
Operations
Guide-Rev 006 8/99

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002409

6 - 6

AALTSA 009555

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

### AIRLINE, VENDOR and CUSTODIAL CARTS, EQUIPMENT and SUPPLIES

In some airports, AIRLINE ELECTRIC CARTS are used to transport selected
passengers between gates.  If the cart leaves the sterile area, the cart, the
passengers and their carry-on items must be re-screened to pass through another
screening checkpoint.

VENDOR AND CUSTODIAL EQUIPMENT AND SUPPLIES must also be processed
to enter the sterile area.  If possible, standard screening procedures should be used.
X-ray inspection of vendor and custodial supplies can clear most items.  Larger
items should be hand inspected.  Special attention should be given to carts, dollies,
and hand trucks to ensure that nothing has been hidden in or under the frames.

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited
without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation
Administration or designee.

AA - KEAN COMM
002411

AALTSA 009557

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

## EXPLOSIVE TRACE DETECTION EQUIPMENT - (ETD)

Some airports use **EXPLOSIVE TRACE DETECTION EQUIPMENT** as part of the passenger screening process. This equipment is used to screen for explosive substances that could indicate the presence of an **IMPROVISED EXPLOSIVE DEVICE (IED)** that could be difficult to detect using standard screening procedures. Trace detection equipment is an extension of the screening process that is less of an intrusion into a passenger's privacy than a whole bag search.

Trace detection equipment is capable of detecting extremely small amounts of explosive substances that may be on a passenger's hand-carried or checked bags.

A **radiation survey** is required for some trace detection devices to ensure that the standards set by the *Nuclear Regulatory Commission are being met*. **The original copy of this survey, or a notice of exemption** from this requirement, must be **maintained with each trace detection device.**

All sampling, testing and alarm resolution must be performed by a screener who has been trained to FAA standards and has been qualified to operate the specific type of trace detection equipment being used.

Trace detection equipment cannot detect handguns, knives and restricted or hazardous materials. Therefore, **all items MUST be x-rayed** for deadly or dangerous weapons **prior to screening with trace detection equipment.**

If a **passenger specifically requests that a bag or item not undergo x-ray inspection it must undergo a whole bag search** to ensure that it does not contain knives, guns or other restricted or hazardous material.

If the **x-ray machine operator requests a bag search**, this inspection must be done **in addition to trace detection screening.**

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002412

AALTSA 009558

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

### WHEN TRACE DETECTION SCREENING MAY BE USED

- In conjunction with x-ray inspection, **instead of the continuous bag search requirement for 2 or less x-ray machines.**

- To screen **electronic/electrical devices not cleared by x-ray inspection.**

- To assist in clearing the **checked baggage** of persons identified as **"selectees"** who are **boarding INTERNATIONAL flights.**

- In conjunction with a bag search of **carry-on bags that cannot be cleared by x-ray inspection.**

- To clear checked bags that have **caused an alarm on an Explosive Detection System (EDS) or Advanced Technology (AT)** equipment that the FAA has assessed as being effective.

- **To screen suspect bags or items as requested by the air carrier or a LEO.**

- To screen **other items required by a FAA Security Directive.**

### SPECIAL NOTES:

When trace detection inspection is being used instead of continuous bag search, **the trace inspection must be continuous.**

**If a trace detection device is** inoperable for 1 hour, continuous bag search of at least 1 bag from the 3 x-ray machines **previously supported by trace inspection** must be resumed.

If a trace detection device is **inoperable for 8 hours, full continuous bag search procedures must be resumed.** (i.e. **1 bag** from **each** x-ray machine)

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

6 - 10

AA - KEAN COMM
002413

AALTSA 009559

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

If it is necessary for a screener **to open a passenger's bag it must be done in the presence of the passenger, with the passenger's consent.**

When trace detection screening is performed at the checkpoint, the **screener must carry the bag** to the trace detection equipment area and ensure that he or she is **accompanied by the passenger**.

During the trace detection inspection process, screeners must **maintain control of the bag** to be screened until it has been cleared or until all alarms are resolved. Under no circumstances should the passenger be allowed to touch or reach into the bag until it has been cleared.

### SCREENER - PASSENGER COMMUNICATIONS

Some passengers may not have seen trace detection equipment screening before and may be curious about the process. It is important not to talk about specific elements of the trace detection process or equipment.

**If a passenger inquires about trace detection screening,** the screener should respond with a general statement such as:

"As a part of the increased aviation security measures, your bag (or computer, or package, etc.) must undergo secondary screening."

### Typical Questions and Answers:

| | |
|---|---|
| **If the passenger asks** | - "What are you doing?" |
| **The screener would answer** | - "Using a new type of security equipment to ensure that no explosive devices get past the checkpoint." |
| **If the passenger asks** | - "Why did you pick my bag (computer, tape player, radio, etc.)?" |
| **The screener would answer** | - "Because we can clear it faster than by using other screening procedures." |

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002414

AALTSA 009560

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# SPECIAL PROCEDURES - 6

| | |
|---|---|
| **If the passenger asks** | - "How long will it take? |
| **The screener would answer** | - "Not long, just a minute or two." |
| **If the passenger asks** | - "What is this equipment?" |
| **The screener would answer** | - "A new type of security equipment that can detect trace amounts of explosives." |

## TAKING A SAMPLE

- Using the **"wipe"** technique, sample a bag's ████████████ ████████████████████████

- The exterior of each bag must be sampled separately to prevent loss of the trace sample on uncontaminated surfaces.

- **Samples from electronic/electrical items should be taken from the** ████ ████████████████████████████████████

- **Do not open computers and do not sample computer keyboards or screens.** The pressure required to obtain a sample could cause damage to the computer.

- **Do not take samples from camera lenses or other delicate or fragile items** that could be scratched or damaged during the sampling.

Checkpoint
Operations
Guide-Rev 004-6/98

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002415

6 - 12

AALTSA 009561

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

# SPECIAL PROCEDURES - 6

## TESTING A SAMPLE

Once the screener has obtained a sample it must be tested in accordance with the manufacturer's operating procedures for the specific type of trace detection equipment being used.

**CLEAR OR PASS RESULTS** being cleared by an x-ray and/or a bag search and a "Clear" or "Pass" explosive trace detection equipment result, the passenger's bags are cleared.

## ALARM RESOLUTION PROCEDURES - HAND-CARRIED ITEMS

If the **ETD alarms**, the screener must **notify the supervisor** immediately.

On bags that have **NOT BEEN REFERRED BY AN X-RAY OPERATOR FOR SECONDARY SCREENING OR SELECTEE CHECKED BAGGAGE:**

- If the alarm indicates ▓▓▓▓▓ the supervisor should attempt to resolve the alarm by **questioning the passenger** ▓▓▓▓▓

- The questioning should not suggest an acceptable answer. ▓▓▓▓▓

- A ▓▓▓▓▓ alarm can be considered to be **resolved** if the passenger indicates ▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited
without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation
Administration or designee.

AA - KEAN COMM
002416

6 - 13

AALTSA 009562

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6



Although these medicines can cause the ETD to alarm they are not a threat and the passenger may be cleared into the sterile area after the proof of medication is verified.

If the **alarm** indicates an explosive ███████████ or if the passenger indicates that he or she ████████████████ the screener must:

- **Clear the trace equipment** in accordance with the manufacturer's standard operating procedures, then, in the presence of the passenger, **take a second sample** from the ████████████ with a clean sample collector.

- ████████████████████████

- ████████████████████████

- If there is **no alarm from the second** sample, the **bag may be cleared.**

AA - KEAN COMM
002417

AALTSA 009563

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

- If there is an alarm from the sample taken ███████ of the bag and/or any electrical or electronic items found within the bag, the supervisor should:

  1. **Determine if the person is a passenger,** and find out his or her **name and flight information. (if applicable)**

  2. **Notify the GSC** of the nature of the **alarms** and the **passenger's name** and flight information. **(if applicable)**

  3. **Direct the screener** to perform **a whole bag search** in the presence of the passenger.

If the bag search does not reveal a deadly or dangerous item, the **GSC will make the decision** as to whether the passenger's **checked baggage** requires additional screening and if the **LEO should be notified.**

- If the passenger to whom the bag belongs **leaves the area prior to clearance** of the bag, the airline GSC and LEO must be notified immediately. Further inspection or testing of the bag is prohibited unless authorized by a LEO.

- In situations when an alarm cannot be resolved, the bag must not be allowed to enter the sterile area unless it is cleared by a QUALIFIED GSC or a LEO in accordance with local procedures.

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002418

AALTSA 009564

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

### TRACE DETECTION INSPECTION of CHECKED BAGGAGE

All trace detection inspection of checked baggage must be performed in an area that is out of public view.

### WHEN **NOT** USED IN CONJUNCTION WITH AN EDS OR AT

Trace detection inspection of checked baggage, **not used in conjunction with an EDS or AT, is limited to** the baggage **of selectees boarding INTERNATIONAL flights.**

**The exterior** of each checked bag to be cleared **must be sampled and analyzed.**

- If the exterior sample **does not result in an alarm, the interior of the bag(s) must be sampled and analyzed** in the presence of the passenger.

- Although **the passenger should be directed to open the bag(s), the screener must maintain control of the bag(s)** once it is opened.

- **All electric and electronic** items found inside checked bags must be **sampled separately.**

- **If there is no alarm(s) on the interior samples, the bag(s) may be cleared**.

- If there **is an alarm** from an interior sample, **the GSC must be notified** and the suspect bag must be subjected to a two (2) plane x-ray inspection.

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002419

6 - 16

AALTSA 009565

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

### WHEN USED IN CONJUNCTION WITH AN EDS OR AT

If the trace detection inspection is being performed as a result of an unresolved alarm by an EDS or AT, **the exterior** of the bag to be cleared **must be sampled and analyzed.**

- If there **is an alarm** from the exterior sample, the airline **GSC and a LEO must be summoned** immediately and **no further processing** should be done **until the LEO authorizes it.**

- If the exterior sample **does not result in an alarm,** the item(s) inside the bag that has been identified as suspect by an EDS or AT **must be sampled and analyzed** in the presence of the passenger.

- Although **the passenger should be directed to open the bag(s), the screener must maintain control of the bag(s)** once it is opened.

- **Electronic or electrical items** that are **not identified by the EDS or AT** as suspect **do not require sampling.**

- **If there is no alarm** on the object(s) that initiated the EDS or AT alarm, **the bag may be cleared.**

- **If the object that caused the alarm on the EDS or AT, causes a trace alarm** the airline GSC and a LEO must be notified immediately. **Further screening** of that object is **prohibited unless authorized by a LEO.**

- **If authorized by a LEO the suspect bag(s)** should be subjected to a **two (2) plane x-ray inspection.**

**SPECIAL NOTE:**
**If the passenger leaves the search area** prior to clearance of the bag, **or if a deadly or dangerous weapon or IED is discovered** in the bag, the screener should **retain control of the bag and summon a LEO and GSC immediately.**

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002420

AALTSA 009566

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

### RECORDING AN ALARM

- If there is an alarm the screener must print a record of the alarm.

- The supervisor must attach the alarm printout to the Alarm Recording Form along with a written description of how the alarm was resolved. If there is no printer or if it is inoperable, the alarm must be recorded manually.

### CONTAMINATION



Contamination can occur ███████ with trace detection equipment ████████

Contamination can also occur as a result of careless handling of testing and calibration materials.

### To avoid contamination:

Checkpoint Operations Guide-Rev 004-6/98

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002421

6 - 18

AALTSA 009567

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6



## COMMUNICATING ALARM INFORMATION

**A positive alarm means that the bag cannot be cleared and must be subjected
to additional screening procedures.**

Special care must be taken in communicating alarm information to LEOs and GSCs.
Unless a bag has been opened and positive identification of an IED or other deadly
or dangerous weapon has been made, screeners and supervisors should not
assume the presence of an explosive device.

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited
without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation
Administration or designee.

AA - KEAN COMM
002422

6 - 19

AALTSA 009568
AAL 014261

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

## EXPLOSIVE DETECTION SYSTEMS - (EDS)

**FAA CERTIFIED EXPLOSIVE DETECTION SYSTEMS** can assist the operator in the detection of improvised and manufactured explosive devices that might be difficult to detect using standard checked baggage screening equipment and procedures.

All sampling, testing and alarm resolution must be performed by a screener who has been trained to FAA standards and has been qualified to operate the specific type of EDS equipment being used.

All supervisors and operators involved in the EDS screening must understand the alarm resolution procedures, including how to summon law enforcement support, if required.

### WHEN CERTIFIED EXPLOSIVE DETECTION SYSTEMS MAY BE USED

- To screen **checked bags/items of persons identified as "selectees"**.

- To screen **other items authorized by a FAA Security Directive or the ACSSP**.

- To screen **other items requested by the air carrier, a LEO or the FAA**.

### ALARM RESOLUTION PROCEDURES

If an **OBVIOUS THREAT and/or an IED is discovered in the bag**, the bag should be kept in the EDS and **a GSC and a LEO must be contacted immediately.**

A bag that has caused an alarm **must not** be accepted for transport until the cause of the alarm has been satisfactorily resolved.

The operator must use the manufacturer's standard operating procedures for employing machine specific features (zoom, color enhancement, more slices, etc.) to attempt to determine the cause of the alarm.

---

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002423

AALTSA 009569
AAL 044262

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# SPECIAL PROCEDURES - 6

The EDS operator **must maintain physical control of the item being screened at all times. Passengers may not have access to their baggage during an EDS inspection, or after the bag has been cleared.**

If the operator **is able to resolve** the source of the alarm to ensure that the bag does not contain any prohibited items with the EDS, **the bag can be cleared.**

### ALARM BAGS THAT CANNOT BE CLEARED WITH AN EDS

Alarm bags that **cannot be resolved** with an EDS must be subjected to further inspection with **trace detection** equipment or a **bag search** limited to the area of the alarm. Since both procedures will require the bag to be opened, **the passenger must be present** and the inspection must be performed in an area that is out of public view.

### USING TRACE DETECTION EQUIPMENT TO ASSIST IN CLEARING AN ALARM

**The exterior** of the bag to be cleared **must be sampled and analyzed.**

- If there **is an alarm** from the exterior sample, the airline **GSC and a LEO must be summoned** immediately and **no further screening of that item** should be done **until it is authorized by a LEO.**

- If the exterior sample **does not result in an alarm**, the item(s) inside the bag that has been identified as suspect by an EDS **must be sampled and analyzed** in the presence of the passenger.

- Although **the passenger should be directed to unlock and open the bag, the screener must maintain control of the bag** once it is opened.

- **Electronic or electrical items** that are not identified by the EDS as suspect **do not require sampling.**

- **If there is no alarm** on the object(s) that initiated the EDS alarm, **the bag may be cleared.**

Checkpoint Operations Guide-Rev 005-3/99

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

6 - 21

AA - KEAN COMM
002424

AALTSA 009570

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

- **If the object that caused the alarm on the EDS, causes a trace alarm** the airline GSC and a LEO must be notified immediately. **Further screening** of that object is **prohibited unless authorized by a LEO.**

**Electronic or electrical items** found inside of the bag must be processed as if they were separate, individual items.

If the person to whom the item belongs leaves the area prior to clearance of the item a GSC and a LEO must be contacted immediately.

All personnel involved in EDS screening must understand the local procedures for requesting law enforcement support. If a LEO is summoned, he or she will assume exclusive control of the unresolved item until it is cleared. Further search or testing of the item is prohibited unless authorized by a LEO.

Final resolution of all unresolved alarms will be made by the LEO in accordance with local procedure.

### SPECIAL NOTES - FILM

"Cat Scan" based EDSs can damage unprocessed photographic film. Passengers must be advised that all unprocessed film should be removed from their baggage.

Passengers who remove the film before EDS processing **may not return** the film to the luggage after the baggage has been cleared.

Checkpoint
Operations
Guide-Rev 005-3/99

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002425

6 - 22

AALTSA 009571

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# SPECIAL PROCEDURES - 6

## SCREENING AIR CARGO

Every day hundreds of tons of air cargo are transported on airline flights that are also carrying passengers. This cargo includes both small "over-the-counter" parcels and larger shipments that are generally processed through the airline's air cargo facility.

In the majority of instances, the air cargo is shipped by companies who have established a business relationship with the airlines. This cargo can be transported without being screened after it has been processed by the airline.

In instances where the **SHIPPER IS NOT KNOWN** to the airline, ███████████ ██████████████████████ The goal is to inspect the contents of every shipment in this category to the extent necessary to ensure that it does not contain EXPLOSIVES, INCENDIARY (flammable) MATERIAL and/or HAZARDOUS MATERIALS.

Regardless of whether the screening is done at a security screening checkpoint in the terminal building, or at an airline air cargo facility, the same basic screening procedures apply.

### GENERAL PROCEDURES

- The parcel/item to be inspected must be moved by a representative of the air carrier to the location where it will be inspected.

- The person conducting the inspection must be informed by the air carrier representative of the contents of the shipment as stated on the **air waybill.**

- The person conducting the screening must **physically control** the parcel/item at all times during the screening process.

- If it is necessary to open the parcel/item for inspection, the parcel should be opened and re-sealed in the presence of the shipper.

- After the parcel/item has been cleared, the **shipper may not have further access to the shipment.**

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002426

AALTSA 009572
AAL 014365

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6



- **HUMAN ORGANS** and by-products, **HUMAN BLOOD** and by products, emergency **LIFE SAVING DRUGS**, and **HUMAN REMAINS**

- **LIVE ANIMALS**

- **Unloaded FIREARMS** may be shipped as air cargo under specified conditions.   If the parcel/item contains a **declared firearm**, the air carrier representative must notify the person conducting the inspection prior to screening.

    If an **undeclared firearm** is detected during screening, the person conducting the inspection must control the parcel/item and **notify the appropriate airline GSC.**

## X-RAY INSPECTION

The x-ray operator must be informed of the contents of the shipment as stated on the air waybill before the parcel/item is inspected.

To clear a parcel/item, the operator must view the image long enough to evaluate it and classify it into one of three categories:

**NO THREAT** - Items falling into the "NO THREAT" category must:

- ensure that contents of the container match what is shown on the air waybill

- have no opaque areas that could be or hide a possible threat.

These items **may be cleared for transport.**

---

Checkpoint
Operations
Guide-Rev 006-8/99

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002427

6 - 24

AALTSA 009573
AAL 011266

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# SPECIAL PROCEDURES - 6

**POSSIBLE THREAT** - If there is a questionable area on the x-ray image that:

- the operator cannot identify
- does not match what is shown on the air waybill.

These items **must be opened and manually inspected.**

If an electric or electronic item is detected inside of the parcel/item, it must be considered a possible threat and manually inspected using the standard screening procedures for these items.

**OBVIOUS THREAT** - If explosives, incendiary materials or hazardous materials are observed:

- keep the parcel/item in the x-ray machine
- **notify a LEO and the appropriate airline GSC**.

## MANUAL INSPECTION

MANUAL INSPECTION must be performed if:

- X-RAY EQUIPMENT IS NOT AVAILABLE
- AN ITEM CANNOT BE CLEARED BY X-RAY
- X-RAY INSPECTION INDICATES THAT THE CONTENTS OF THE PARCEL/ITEM DO NOT MATCH THE AIR WAYBILL.

If a parcel/item is opened for inspection, the shipper must be present. The parcel/item should be inspected using the following procedures:

- Position the parcel/item so that the shipper's access to the contents will be restricted and the contents of the parcel restricted from the view of others.

- Examine the exterior of the parcel/item for any unusual or suspicious marks that could indicate tampering. Notify a supervisor if anything appears to be out-of-the-ordinary. If the exterior of the parcel/item appears to be normal, the parcel/item must be opened so that the contents can be manually inspected.

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002428

AALTSA 009574

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

- Inspect the interior of the parcel/item using a circular, "clockwise" search path to ensure that nothing is missed.

- Be extremely cautious when conducting a manual inspection. LOOK BEFORE YOU TOUCH and TOUCH WHERE YOU ARE LOOKING.

- If the search is being conducted because of an unidentifiable area on the x-ray image, that area should receive special attention. When the unidentifiable object is located, the areas behind, under and around the object also must be searched to ensure that the object was not used to hide a threat.

Things that should receive special attention during manual inspection include:

- An indication that the interior of the parcel/item has been tampered with.
- Unaccounted for space that could be a hidden compartment.
- Any items that seem ███████████████
- Electric or electronic items detected inside of the parcel/item, that must be inspected separately.

The person performing the manual inspection must evaluate the contents of the parcel/item and determine if the air cargo is:

**NO THREAT** – The parcel/item may be considered "NO THREAT" and **be cleared for transport** if:

- the contents of the container match the air waybill
- the contents contain no explosive, incendiary or hazardous materials
- there are no undeclared or loaded firearms.

**POSSIBLE THREAT** – The parcel/item must be considered a POSSIBLE THREAT and **the airline GSC must be notified** if:

- the contents of the parcel/item cannot be cleared using manual search procedures and requires additional inspection
- hazardous materials are discovered
- the contents of the parcel/item do not match the air waybill.

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002429

AALTSA 009575
AAL 014369

Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## SPECIAL PROCEDURES - 6

**OBVIOUS THREAT** - The parcel/item must be considered an OBVIOUS THREAT and the LEO **and the appropriate airline GSC must be notified** if:

- explosives or incendiary materials are discovered.

### TRACE DETECTION EQUIPMENT INSPECTION

IF TRACE DETECTION EQUIPMENT IS AVAILABLE, **it may be used in addition to x-ray or manual inspection** to assist in clearing the parcel/item. Trace detection equipment samples should be taken from ████████████ of the parcel/item ████████

████████████████████████████████████████

### EXPLOSIVE DETECTION SYSTEMS (EDS)

EDS, including **CTX and AT** equipment that the FAA has assessed as being effective, **may be used** to assist in inspecting air cargo.

If EDS equipment is used to screen air cargo, the processing should be done using **standard CTX or AT alarm processing procedures, with the EDS** ████

████████████████████████████████████████

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002430

AALTSA 009576

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## TESTING PROCEDURES - 7

# CHECKPOINT EQUIPMENT TESTING PROCEDURES

## FAA TESTING • WALK-THROUGH METAL DETECTOR

When a metal detector is put into service, the FAA will conduct a test to establish the minimum operational setting. The FAA will periodically test the unit to ensure that it is functioning properly at that setting. The FAA sticker on the metal detector shows the test date, the sensitivity setting, and the initials of the FAA special agent who conducted the test.

A metal detector also must be tested by the FAA whenever it is moved to a new location, or has had the sensitivity setting adjusted.

If the FAA cannot complete a test within 4 days, the airline may request authorization to use the unit pending completion of the test. Upon receipt of this authorization and if the unit can pass the operational test requirement, it may be used for screening.

A walk-through metal detector that fails an FAA test must be adjusted or replaced within 4 days. If the unit is not adjusted or repaired within 4 days to meet the required standards, it must not be used for screening.

## FAA TESTING • X-RAY INSPECTION SYSTEMS

X-ray systems must be approved by the FAA prior to installation and use.

The x-ray systems must meet imaging capabilities as follows:

Systems used to inspect carry-on baggage, small parcels or checked baggage must distinguish ▮-gauge wire under the▮ step using a Test Step Wedge.

If only ▮-gauge wire can be seen at the required step, the system may be used but must be adjusted within 48 hours to distinguish ▮-gauge wire.

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002431

AALTSA 009577
AAL 014270

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## TESTING PROCEDURES - 7

If only ▮-gauge wire can be seen at the required step, the system may be used but must be adjusted within 24 hours to distinguish ▮-gauge wire.

If ▮-gauge wire cannot be seen at the required step, the use of the system shall be discontinued immediately, and the system shall not be used until it has been adjusted or repaired to distinguish ▮-gauge wire.

A radiation survey shall be conducted for each x-ray machine when it is initially installed and at least every 12 months. If an x-ray device fails to meet the required radiation standards, its use shall be immediately discontinued until appropriate corrective action is completed.

## AIRLINE/VENDOR OPERATIONAL TESTING • WALK-THROUGH METAL DETECTOR

To assure there is no undetected deterioration in the effectiveness of the device, an operational test shall be conducted each time the machine is put into service; or at least once each 24 hours if in continuous operation. Continuous operation of a metal detector consists of the period of time from its being turned on and put into operational use until it has been turned off.

A metal detector which has been turned off for any reason shall be tested using the operational test when it is again put into service.

Additionally, a metal detector which has been left unattended for any period of time in an area where it is accessible to unauthorized persons, shall be tested using the operational test prior to reuse.

An operational test piece (OTP) shall be used to perform the test. The person conducting the test should divest himself or herself of all extra metal (rings, wristwatches, coins, etc.) before starting the test. The operational test piece must be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002432

7 - 2

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## TESTING PROCEDURES - 7

The device must alarm on all ▮▮▮▮ passes to be in satisfactory operating condition. A device which fails to alarm as required is not in satisfactory operating condition and shall not be used until the sensitivity is adjusted to a level where the device alarms as required.

Under certain conditions, equipment malfunctions ▮▮▮▮▮▮▮▮▮▮ may cause ▮▮▮▮▮▮▮▮▮▮ operational problems.  The walk-through metal detector may be adjusted in response to these problems if the FAA is notified immediately of the adjustment.

The walk-through metal detector must NEVER be operated at a sensitivity that does not meet the operational test requirement.

Results of each test of a walk-through metal detector must be recorded in the **ATA/RAA Operational Test Log** and maintained for at least 30 days.

## AIRLINE/VENDOR OPERATIONAL TESTING • HAND-HELD METAL DETECTOR

Each time a hand-held detector is used for screening it must be tested to ensure that the device is operating at an effective level.  To test a hand-held detector hold it within 2 to 4 inches of a metal object (a metal wrist watch, keys, etc.).  A properly operating device will indicate the detection of metal by audio alarm as the unit nears the test object.

The testing of the hand-held metal detectors at a checkpoint must be noted in the **ATA/RAA Operational Test Log** and maintained for at least 30 days.

## AIRLINE/VENDOR OPERATIONAL TESTING • X-RAY INSPECTION SYSTEMS

The airline or screening contractor shall conduct a daily test of each system using the Test Step Wedge before using the system.  The GSC must be notified if the system being tested is unable to distinguish ▮▮-gauge wire under the ▮▮ step. Results of tests shall be recorded and maintained for at least 30-days.

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002433

AALTSA 009579

Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## TESTING PROCEDURES - 7

The x-ray system shall not be used unless the required signs are conspicuously posted at the screening point and on the x-ray system.

All screeners and supervisors working at a screening point where an x-ray machine is used must wear their individual dosimeter at all times while they are on-duty.

### REPORTING EQUIPMENT DEFICIENCIES

IMMEDIATELY notify the airline responsible for the checkpoint where the malfunctioning equipment is located. Delayed notice can often mean that one or more phases of passenger screening will have to be performed manually until the equipment is repaired.

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

7 - 4

AA - KEAN COMM
002434

AALTSA 009580

Case 1:03-cv-06800-AKH    Document 82-3    Filed 05/07/2007    Page 20 of 64
Confidential - Do Not Copy or Disclose    Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## TESTING PROCEDURES - 7

## CHECKPOINT SCREENER TESTING PROCEDURES

The following FAA/INDUSTRY approved test devices should be used in all screener tests:

- AN ENCAPSULATED HANDGUN
- A SIMULATED HAND GRENADE
- A SIMULATED PIPE BOMB
- A SIMULATED DYNAMITE BOMB
- A TOY CAP PISTOL
- A SET OF THREE X-RAY OPAQUE GEOMETRIC SHAPES
- AN OPERATIONAL TEST PIECE (OTP)

The FAA/INDUSTRY devices used to test passenger screening with metal detection equipment are the encapsulated handgun and the OTP.

The FAA/INDUSTRY test devices used to test the X-ray inspection of carry-on items are: the encapsulated handgun, the simulated hand grenade, the simulated pipe bomb, the simulated dynamite bomb, and the x-ray opaque geometric shapes.

The FAA/INDUSTRY devices used to test the hand inspection of carry-on items are: the simulated hand grenade, the simulated pipe bomb, the simulated dynamite bomb, and the toy cap pistol.

Checkpoint Operations Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002435

7 - 5

AALTSA 009581

Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## TESTING PROCEDURES - 7

### FAA SCREENER TESTING

The FAA conducts periodic, unscheduled tests to ensure that checkpoint personnel are effectively screening passengers and their carry-on items using approved procedures and techniques.

Screeners and supervisors should respond to the discovery of a test object exactly as they would to the discovery of an actual weapon; including retaining control of the test object and notification of the airport police.

The test is complete when the FAA special agent identifies himself or herself with appropriate photo identification.

### REMEDIAL TRAINING:

Any screener who fails an FAA operational test must be given remedial training.

- If a screener fails an FAA operational test at a category X, I or II airport, the screener must be removed from that screening function for remedial training. The CSS may assume the duties of the screener who is removed for the balance of that shift.

- If a screener fails an FAA operational test at a category III or IV airport, the screener can continue until the end of the shift if there is not another fully qualified screener available before remedial training.

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002436

7 - 6
AALTSA 009582

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## TESTING PROCEDURES - 7

### AIRLINE/VENDOR • SCREENER PRACTICAL TESTING

Initial certification for a full-duty screener is required prior to the screener assuming independent unsupervised duties.  This includes documenting classroom instruction and the successful detection of all approved FAA test objects and devices under **realistic conditions.**

This must include:

- the detection by hand inspection of the simulated dynamite bomb, **the** simulated pipe bomb, the simulated hand grenade and the toy cap pistol.

- the detection of the encapsulated handgun during a walk-through metal detector test.

- the detection by x-ray examination of the simulated dynamite bomb, the simulated pipe bomb, the simulated hand grenade, the encapsulated handgun, and the opaque test objects.

If a screener fails to detect any of these test objects, he or she should be given no more than two additional opportunities to re-test.

In addition to the yearly recurrent classroom training, all checkpoint supervisors must be re-tested every 6 months.

An on-going program of detection testing must be routinely conducted to the extent that all screeners are re-certified on all test objects every 6 months.

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited
without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation
Administration or designee.

AA - KEAN COMM
002437

7 - 7

AALTSA 009583

Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## TESTING PROCEDURES - 7

### AIRLINE TESTING

To ensure the integrity of the checkpoint security screening system, the **Airline Testing Program** has been established to perform periodic testing which is analyzed monthly. The testing program uses the FAA/INDUSTRY approved test objects.

Supervisors should respond to the discovery of a test object exactly as they would to the discovery of an actual weapon. However, if the person conducting the test produces appropriate credentials and you verify that the item is a test object, the airport police do not need to be summoned.

### TESTING PROTOCOL AND CONTROL OF TEST OBJECTS

The following test procedures must be used to conduct a checkpoint test at an active checkpoint to ensure that test objects remain under the control and observation of the person conducting the test at all times:

- Test objects must be kept in a locked container at all times when not in use.

- Test objects must be inventoried at the completion of each test and/or when the checkpoint is closed each day.

- A list of the test objects must be maintained and kept inside the locked container.

- Use only FAA-approved test objects. Confiscated weapons or restricted articles should be turned over to the airport police for disposal.

- No more than 1 (one) test object and 3 (three) other items should be placed in a bag that is to be used for a test.

---

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002438

7 - 8

AALTSA 009584

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH
Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## TESTING PROCEDURES - 7

- Do not use passenger/crew baggage, with or without permission, to conduct any test procedure.

- Do not place test objects on, around, or in-between "live" passenger baggage.

- A bag containing a test object must be placed at least 12 inches (1 foot) ahead of, or behind "live" passenger baggage.

- Control of a test bag must be maintained at all times during the test by the person conducting the test.

- Baggage containing a test object must be removed by the tester from the x-ray conveyor belt immediately after it clears the x-ray chamber regardless of the test result.

- Upon completion of the test, remove the test object from the bag and return it to a locked container.

- The CSS/SIC should monitor these procedures regardless of the person conducting the test.

- Results of the test must be noted on the Screener Training Records.

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002439

7 - 9

AALTSA 009585

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## TESTING PROCEDURES - 7

## SCREENING EQUIPMENT OPERATIONAL TEST LOG FORM

The following procedures should be used to record the test results of checkpoint equipment. Log entries should be completed in ink.

**Date column** — Record the complete month/day/year of the test. (i.e. 7/l/94)

**Time column** — The time should be written in military time. (i.e. 8:00 AM would be 0800 --- 8:00 PM would be 2000)

## X-RAY MACHINE OPERATIONAL TEST SECTION

**Unit # column** — record the x-ray machine's serial number.

**█ Gauge Wire column** — record the gauge and the Step Wedge level of the wire that can be seen on the x-ray monitor. (i.e. if the █ step of the █ gauge wire can be observed it would be recorded as █)

## WALK-THROUGH METAL DETECTOR OPERATIONAL TEST SECTION

**Unit # column** — record each metal detector's serial number.

**# of Passes column** — record the number of passes through each metal detector.

**# of Alarms column** — record the number of alarms from each metal detector.

**Sensitivity Setting column** — record the sensitivity setting of each metal detector.

Checkpoint Operations Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002440

7 - 10

AALTSA 009586

Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## TESTING PROCEDURES - 7

### SCREENING EQUIPMENT OPERATIONAL TEST LOG FORM (continued)

### OTHER SECTION

**Hand-held Detector column**   - record the word OK if hand-held units are working properly.

**NOTE:** The hand-held metal detector should also be **tested** (each time) before it is used to screen a passenger.

**Covert alarm column**   - record the word OK if the alarm system is working properly.

**Conducted by column** - print the initials of your first and last name.

If any of the units or systems do not perform properly, your supervisor and the airline GSC responsible for the checkpoint must be immediately notified.

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

7 - 11

AA - KEAN COMM
002441

AALTSA 009587

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## MANAGEMENT RESPONSIBILITIES - 8

# CHECKPOINT CONTRACTOR MANAGEMENT RESPONSIBILITIES

### FULL-DUTY SCREENER CERTIFICATION REQUIREMENTS

### To perform unlimited screening duties all personnel must:

- be 18 years or older.

- have no criminal convictions.

- pass a drug test.

- have a high school diploma or equivalent.

- be able to read, understand and carry out instructions in English.

- be able to read identification badges, credentials and labels on items presented for screening.

- be able to issue verbal directions in English.

- be a citizen of the United States or possess necessary authorization from the Immigration and Naturalization Service.

- be able to sit, stand, lift, and/or bend throughout a shift.

- be able to lift, carry and/or hold passenger baggage.

- be able to perceive each color used on a color x-ray and metal detector visual alarm.

- be able to hear and respond to the spoken voice and audible alarms generated by metal detection devices in the checkpoint environment.

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

**AA - KEAN COMM
002442**

AALTSA 009588

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# MANAGEMENT RESPONSIBILITIES - 8

- be able to distinguish ▓ gauge wire under the ▓ step of the test Step-Wedge.

- be able to reach all parts of a standing adult body with one hand or a hand held metal detector.

- have the manual dexterity necessary to operate an x-ray machine, metal detector, hand-wand, and to conduct bag searches including being able to open and close latches, zippers, and screw caps, inspect baggage contents and reach all sides of a bag.

## SCREENER STAFFING REQUIREMENTS AT CATEGORY X, I AND II AIRPORTS

Minimum screener staffing at **active passenger screening checkpoints within the U.S.** shall be as follows:

**CONCOURSE PLAN SCREENING** - Concourse plan screening is a checkpoint where the exit lane serves deplaning passengers and the checkpoint serves four or more boarding gates. At these locations, screeners shall perform only the duties of the specific screening position to which they are assigned at that moment. The two basic screening functions are: (1) the screening of carry-on items (x-ray and hand inspection of baggage) (2) the screening of persons (walk-through or hand-held metal detector and pat-down). Additionally, a person must be assigned to prevent unauthorized access to the sterile area through the checkpoint exit lane.

**HOLD AREA PLAN SCREENING** - Hold area screening is defined as a checkpoint where either the checkpoint is separated from the exit lane regardless of how many boarding gates the checkpoint serves or where the checkpoint serves three or less boarding gates.

Checkpoint
Operations
Guide-7/94

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

8 - 2

AA - KEAN COMM
002443

AALTSA 009589

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# MANAGEMENT RESPONSIBILITIES - 8

At these locations, staffing requirements are the same as above except that the CSS may be routinely assigned to prevent unauthorized access to the sterile area through the checkpoint exit lane in addition to actively intervening on a case-by-case basis to resolve problem situations and supervise screeners.

**GATE PLAN SCREENING** - A minimum of two screeners, one of whom is designated as Screener-In-Charge, (SIC) with additional duties as authorized, is required at each gate plan screening checkpoint at all times when the checkpoint is open.

**SPECIAL NOTES:** (1) During peak periods of activity, staffing levels may need to exceed this minimum; (2) Preventing unauthorized access to a sterile area is not a screening function. It may be accomplished mechanically (i.e. one way gates, video monitoring) or by an individual posted at the point of access. Such an individual need not be a fully qualified screener.

## SCREENER STAFFING REQUIREMENTS AT CATEGORY III AND IV AIRPORTS

Minimum staffing at **active passenger screening checkpoints within the U.S.** shall be as follows:

## CONCOURSE, HOLD AREA AND GATE PLANS

A minimum of two screeners, one of whom is designated as **Screener-in-Charge (SIC)**, is required at each screening checkpoint at all times when the checkpoint is open for screening. At these airports screeners shall perform only the duties of the specific screening position to which assigned at that moment. The two basic screening functions are the same as previously stated.

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# MANAGEMENT RESPONSIBILITIES - 8

## LOW ACTIVITY EXCEPTION IRRESPECTIVE OF SCREENING PLAN OR AIRPORT CATEGORY

Minimum screener staffing standards: The airline shall provide, at a minimum, either a screener and one assistant (who is not required to be a fully qualified screener) or an SIC alone where screening is conducted under the following conditions: (1) the two basic screening functions may not be conducted simultaneously. Each person and his or her carry-on items must be completely screened prior to another person and his or her carry-on items entering the screening process; (2) If the checkpoint is staffed only with an SIC, the exit lane must be closed while any person is being screened.

## COMMUNICATION WITH AIRLINE

The airline in charge of administering a checkpoint is directly responsible to the FAA for the checkpoint's operation. Although some decisions may be delegated to a screening contractor, personnel, duty hours, record-keeping, etc., the administrative, financial, and operational policies are made by the airline.

The airline's Ground Security Coordinator should be the point-of-contact for day-to-day communications between the screening contractor and the airline regarding operational security matters. Specifically, the GSC must be contacted in the event of:

- a checkpoint emergency.

- a non-emergency incident.

- an FAA inspection.

- an FAA test object failure.

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002445

AALTSA 009591

Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

# MANAGEMENT RESPONSIBILITIES - 8

## CHECKPOINT EMERGENCY

When there is a checkpoint emergency such as a BREACH OF SECURITY BY A PASSENGER, a FALSE, MISLEADING OR THREATENING STATEMENT BY A PASSENGER, or THE DETECTION OF A WEAPON OR OTHER THREAT ITEM **immediately contact the GSC.** State the nature of the event, the person(s) involved and the action taken. The GSC will determine the follow-up action. Screening personnel should provide specific incident related information to AIRPORT POLICE during or immediately after the event, the GSC is responsible for all follow-up communications with FAA or other officials.

## NON-EMERGENCY INCIDENT

The GSC should be notified to assist screening personnel with non-emergency incidents such as INOPERATIVE EQUIPMENT OR OTHER CHECKPOINT DEFICIENCIES, an ACCUSATION OF THEFT BY A PASSENGER, a SCREENING PROBLEM WITH A PASSENGER OR FLIGHT CREWMEMBER, or a SCREENING IRREGULARITY.

## FAA TEST OBJECT FAILURE

When a screener fails to detect an FAA test object, notify the GSC. The screening contractor should furnish the GSC with a written report stating the facts concerning the FAA test object failure and any back-up records and/or documentation. At no time should the screening contractor release documents or records to anyone except a representative of the airline.

This document is a record subject to the provision of 14 CFR 191 et. seq. Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002446

AALTSA 009592

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## MANAGEMENT RESPONSIBILITIES - 8

### ADMINISTRATIVE RESPONSIBILITIES

The FAA has extensive record keeping requirements regarding screener training and testing, equipment testing, and incident reporting.  As a representative of the airline, the screening contractor is responsible for the day-to-day administration of these records.  The FAA and the air carriers will periodically audit the screener records.

The forms contained in this section satisfy these FAA requirements.  These records must be carefully maintained by the screening contractor.  Particular attention should be given to ensure that entries are accurate in regard to times, dates, signatures and/or initials required to validate the records.

This document is a record subject to the provision of 14 CFR 191 et. seq.  Release of the information contained herein is prohibited without the express written approval of the Associate Administrator for Civil Aviation Security, Federal Aviation Administration or designee.

AA - KEAN COMM
002447

AALTSA 009593

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH



Air Transport Association

# SCREENER QUALIFICATION / TRAINING
## AND CERTIFICATION RECORD
## COVER SHEET



RAA

Regional Airline Association

Name _____

Home Address _____

Telephone ( ) _____ Date of Employment _____

Name of Contract Company _____

Airport Address _____

Telephone Contact ( ) _____

## QUALIFICATIONS

|  | Performed by | Date |
|---|---|---|
| Education/Work Experience Verified | _____ | _____ |
| Drug test Completed | _____ | _____ |
| Background Investigation Completed | _____ | _____ |
| Physical Qualifications Completed | _____ | _____ |
| Language Qualifications Completed | _____ | _____ |
| Citizenship/Resident Alien/Other | _____ | _____ |
| Employment Authorization Verified | _____ | _____ |
| CSS/SIC Qualified (if applicable) | _____ | _____ |

Corrective Lenses Required      YES [        ]      NO [        ]

## TRAINING

Date

Initial Classroom Training Completed _____

On The Job Training Completed _____

FULL Certification _____  LIMITED Certification _____

Certifying Manager Name/Company _____

Certifying Manager's Signature _____

Date of Screener Certification _____

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

**These Records May Not Be Released Without Express Consent Of The Air Carrier**
☞ Copyright by the Air transport Association of America and The Regional Airline Association.

AA - KEAN COMM
002448

AALTSA 009594

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH



Air Transport Association

# INITIAL SCREENER TRAINING – CLASSROOM



Regional Airline Association

Classroom training in accordance with the ACSSP Appendix IV. This classroom training was conducted in the English language without translation assistance, with special emphasis on the following:

- Screener Duties and Responsibilities

- Airline / Airport policies and Procedures

- Weapons / Dangerous Devices Guidelines

- Passenger / Property Screening Procedures,
  (Viewed either FAA or ATA Audio Visual Programs)

- X-Ray Explosive Detection Recognition Training

- Reviewed Checkpoint Operations Guide (COG)

- Need for Courteous, Vigilant and efficient Application of Passenger Screening

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

**Classroom Test Score** _____%

**Date Completed**          **Employee Signature**          **Instructor Signature**

_____     _____     _____

# SCREENER CERTIFICATION AND EMPLOYMENT QUALIFICATIONS

This is to certify that the above named individual has successfully completed all phases of initial training, testing and the first 40 hours of his or her duty as required by the FAA to be certified as a screener.

**Date Completed**          **Employee Signature**          **Certifying Manager/ Supervisor Signature**

_____     _____     _____

Rev 001-12/96

AA - KEAN COMM
002449

2 Page (s) of 8

AALTSA 009595
AAL 014288

Confidential - Do Not Copy or Disclose



## INITIAL SCREENER – OJT


Regional Airline Association

Air Transport Association

Name_____

The certifying manager has noted the following through periodic observation during the above mentioned employee's first 40 hours of duty; this employee:

- Has worked under close supervision of a fully qualified screener to further familiarize him/her with screening equipment, procedures and duties.
- Has successfully detected each FAA/industry approved test object **under realistic conditions**.

## OJT OBJECT CERTIFICATION TEST

| Weapon | Date | Tester Initials | Screener Initials |
|---|---|---|---|
| **X-RAY MACHINE** | | | |
| Encapsulated Gun | | | |
| Dynamite Bomb | | | |
| Pipe Bomb | | | |
| Round Opaque | | | |
| Rectangle Opaque | | | |
| Bar Opaque | | | |
| Grenade | | | |
| Other | | | |
| **METAL DETECTOR** | | | |
| Encapsulated Gun | | | |
| OTP | | | |
| Other | | | |
| **PHYSICAL SEARCH** | | | |
| Dynamite bomb | | | |
| Pipe Bomb | | | |
| Grenade | | | |
| Toy Gun | | | |
| Other | | | |

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

- Is familiar with all general screening procedures as well as special procedures at the particular airport where assigned.
- Is capable of making independent judgements using the following screening procedures: X-ray operation, manual search, walk through and hand-held metal detector searches.
- Is now capable of making independent judgements as to whether persons or property may enter the sterile area.

Significant comments noted during observation _____

## RECURRENT TRAINING

| Instructor Signature | Employee Signature/Date | Test Score |
|---|---|---|
| Instructor Signature | Employee Signature/Date | Test Score |
| Instructor Signature | Employee Signature/Date | Test Score |

Rev 001-12/96

AALTSA 009596
AAL 014389

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH





Regional Airline Association

# CSS / SIC INITIAL TRAINING

Name _____     Date Employed _____

Screener Certification Date _____     CSS / SIC Certification Date _____

Supervisor Classroom Training in accordance with ACSSP Appendix V. This classroom training was conducted in English without translation assistance, with special emphasis on the following:

- Supervisor Job Responsibilities
- Exceptional Screening and Special Situations
- Equipment testing Responsibilities
- Record Keeping
- Conflict Avoidance/Problem Resolution
- LEO Response System and Procedures
- Incident Management/Working With Management
- Checkpoint Supervision/Motivational Techniques
- Station Specifics

**Classroom Test Score** _____

| Date Completed | Employee Signature | Instructor Signature |
|---|---|---|
| _____ | _____ | _____ |

**Certifying Manager Signature** _____     **Date** _____

**Employed By** _____

THIS RECORD CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## ANNUAL CSS / SIC WRITTEN TEST

| Instructor Signature | CSS/SIC Signature / Date | Test Score |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

Rev 001-12/96

AA - KEAN COMM
002451

AALTSA 009597

Confidential - Do Not Copy or Disclose



# SCREENER ANNUAL EVALUATION



Regional Airline Association

**Name** _____  **Date Employed** _____

**Employed By** _____

**Location** _____

Per FAR 108.31, each certificate holder shall ensure that a Certified GSC conducts and documents an annual evaluation of each person assigned screening duties. That person's employment in a screening capacity may be continued only upon the determination that the person receives positive ratings as follows:

|  | YES | NO |
|---|---|---|
| Has the ability required to perform the assigned screening function since the last evaluation of those abilities. | _____ | _____ |
| Has a satisfactory record of performance and attention to duty. | _____ | _____ |
| Demonstrates the current knowledge and skill necessary to courteously, vigilantly and effectively perform screening functions. | _____ | |

**Comments:** _____

_____

_____

_____

_____

_____

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

**Certified GSC Signature** _____

**Employed By** _____

**Employee Signature** _____

**Date Evaluation Completed** _____ **Date Last Evaluation** _____

Rev 001-12/96

AA - KEAN COMM
002452

5 Page (s) of 8

AALTSA 009598

Confidential - Do Not Copy or Disclose




Air Transport Association

# ON GOING OBJECT TEST PROGRAM
## SCREENER / CSS / SIC



Regional Airline Association

**Name** _____

| Date | Method of Test (X-ray, Mag, Physical Search) | Test Object | Tester Name And Agency FAA/Airline/CO. | Employee Initials | Pass/ Fail | Remedial Training Date |
|------|------|------|------|------|------|------|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDER SECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

**Highlight Semi-Annual FAA Required Recurrent Weapons Test**

AA - KEAN COMM
002453

AALTSA 009599

Subj. to Protect Order 21MC97 AKH
Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC101 AKH


Air Transport Association

# CSS / SIC / GSC ANNUAL EVALUATION


Regional Airline Association

Check one:     CSS_____     SIC _____     GSC _____

Name _____

Employed By _____

Location _____

Person Conducting Evaluation _____

Employed By _____

1.  **Knowledge of Security Requirements and Procedures**

    Acceptable_____     Unacceptable_____

    Comments _____

    _____

2.  **Quality of Judgement as demonstrated during**

    (a) Routine security conditions

    Acceptable_____     Unacceptable_____

    Comments _____

    _____

    (b) Stressful or other non-routine period

    Acceptable_____     Unacceptable_____

    Comments _____

    _____

Strong Points _____

_____

Suggestions for improvement _____

_____

Employee Signature _____     Date _____

Evaluator Signature _____     Date _____

Evaluator Title _____     Evaluator Employed by _____

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OR THE TRANSPORTATION SECURITY ADMINISTRATION.

Rev 001-12/96

AA - KEAN COMM
002454

7 Page (s) of 8

AALTSA 009600

Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH



THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

Air Transport Association



Regional Airline Association

## AIR CARGO SECURITY - TRAINING

Name _____ Date Employed _____

AIR CARGO SECURITY Training in accordance with ACSSP Appendix XIX. This classroom training was conducted in English without translation assistance, with special emphasis on the following:

- General Procedures to be used when inspecting air cargo shipments.
- X-ray inspection of air cargo shipments.
- Manual Inspection of air cargo shipments.
- The use of Trace Detection Equipment.
- The use of EDS and AT Equipment.

**Classroom Test Score** _____

**Date Completed**              **Employee Signature**              **Instructor Signature**

_____              _____              _____

**Air Cargo Certification Date** _____

## ANNUAL AIR CARGO SECURITY RECURRENT TRAINING

| Instructor Signature | Screener Signature / Date | Test Score |
|---|---|---|
| Instructor Signature | Screener Signature / Date | Test Score |
| Instructor Signature | Screener Signature / Date | Test Score |
| Instructor Signature | Screener Signature / Date | Test Score |
| Instructor Signature | Screener Signature / Date | Test Score |
| Instructor Signature | Screener Signature / Date | Test Score |

AA - KEAN COMM
002455

8 Page (s) of

AALTSA 009601

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.



Air Transport Association



RAA
Regional Airline Association

# EXPLOSIVE TRACE DETECTION EQUIPMENT (ETD)

NAME _____

## INITIAL TRAINING - CLASSROOM

| | TEST SCORE | DATE COMPLETED | TRAINEE SIGNATURE | INSTRUCTOR COMPANY | INSTRUCTOR SIGNATURE |
|---|---|---|---|---|---|
| Barringer Ionscan | | | | | |
| Ion Track Itemiser | | | | | |
| Thermedics EGIS | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## OPERATOR QUALIFICATION TESTING (OQT)

| | PASS/FAIL | DATE | TRAINEE SIGNATURE | CERTIFYING SIGNATURE |
|---|---|---|---|---|
| Barringer Ionscan | | | | |
| Ion Track Itemiser | | | | |
| Thermedics EGIS | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## RECURRENT OR REMEDIAL TRAINING

| RECURRENT TRAINING (name equipment) | REMEDIAL TRAINING (name equipment) | REMEDIAL RETEST SCORE | DATE COMPLETED | TRAINEE SIGNATURE | INSTRUCTOR SIGNATURE |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Rev 004-6/98

1 Page(s) of 2

AA - KEAN COMM
002456

AALTSA 009602

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

Confidential - Do Not Copy or Disclose





Regional Airline Association

# BULK DETECTION SYSTEMS

NAME _____

## INITIAL TRAINING – CLASSROOM

|  | PASS/ FAIL | DATE COMPLETED | TRAINEE SIGNATURE | INSTRUCTOR COMPANY | INSTRUCTOR SIGNATURE |
|---|---|---|---|---|---|
| InVision CTX Model No. |  |  |  |  |  |
| Vivid VIS-M |  |  |  |  |  |
| EG&G Z-Scan |  |  |  |  |  |
| Quantum Magnetics Q-Scan |  |  |  |  |  |
| Heimann HI-SCAN |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

## OJT / OQT

|  | OJT DATE | INSTRUCTOR INITIALS | OQT PASS/ FAIL | OQT DATE | TRAINEE SIGNATURE | CERTIFYING SIGNATURE |
|---|---|---|---|---|---|---|
| InVision CTX Model No. |  |  |  |  |  |  |
| Vivid VIS-M |  |  |  |  |  |  |
| EG&G Z-Scan |  |  |  |  |  |  |
| Quantum Magnetics Q-Scan |  |  |  |  |  |  |
| Heimann HI-SCAN |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

## RECURRENT OR REMEDIAL TRAINING

| RECURRENT TRAINING (name equipment) | REMEDIAL TRAINING (name equipment) | RETEST PASS/FAIL | DATE COMPLETED | TRAINEE SIGNATURE | INSTRUCTOR SIGNATURE |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

Rev 004-6/98

AA - KEAN COMM
002457

2 Page(s) of 2

AALTSA 009603

Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH



# SCREENING EQUIPMENT
# OPERATIONAL TEST LOG



AIRPORT: _____     CHECKPOINT: _____

| | | X-RAY | | METAL DETECTOR | | | | OTHER | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Date | Time | Unit # | Gauge Wire | Unit # | # of Passes | # of Alarms | Sensitivity Setting | Hand-Held Detector | Covert Alarm | Conducted By |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

The CSS is responsible for conducting and logging the required tests at the start of each day and / or whenever a machine is turned off for any reason.

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

7/94

1 Page(s) of 1

AA - KEAN COMM
002458

AALTSA 009604

Confidential - Do Not Copy or Disclose





## INCIDENT REPORT

SECURITY SCREENING COMPANY _____

STATION_____ CHECKPOINT_____ AIR CARRIER _____

DATE_____ TIME _____

EMPLOYEE(S) INVOLVED _____

_____

NAME OF PERSON(S) INVOLVED _____

ADDRESS_____

PHONE NUMBER _____

WHAT HAPPENED_____

_____

_____

_____

_____

(ADDITIONAL SPACE ON 2ND PAGE)

ACTION TAKEN _____

_____

_____

_____

(ADDITIONAL SPACE ON 2ND PAGE)

WHO WAS NOTIFIED_____

_____

_____

(ADDITIONAL SPACE ON 2ND PAGE)

REPORT BY_____ TITLE _____

SUPERVISOR SIGNATURE _____

THIS REPORT SHOULD NOT BE RELEASED WITHOUT THE CONSENT OF THE AIR CARRIER
DISTRIBUTION: SCREENING COMPANY FILES / AIRLINE CUSTODIAN

7/94

1 Page(s) of 2

AA - KEAN COMM
002459

AALTSA 009605
AAL 014298

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

Confidential - Do Not Copy or Disclose


Air Transport Association


RAA
Regional Airline Association

### INCIDENT REPORT
### 2ND PAGE

**WHAT HAPPENED** _____

_____

_____

_____

_____

_____

_____

_____

_____

**ACTION TAKEN** _____

_____

_____

_____

_____

_____

_____

_____

**WHO WAS NOTIFIED** _____

_____

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

7/94

**2** Page(s) of 2

AA - KEAN COMM
002460

AALTSA 009606

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## ALERT ITEMS - 9

# GUNS THAT DON'T LOOK LIKE GUNS



**Boom Box Rifle**



**With cover removed
and detached barrel revealed**

AALTSA 009607

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## ALERT ITEMS - 9

# GUNS THAT DON'T LOOK LIKE GUNS



**Pager Gun**



**Stapler Pistol**



AALTSA 009608

Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## ALERT ITEMS - 9

## GUNS THAT DON'T LOOK LIKE GUNS

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

**ALERT ITEMS - 9**

# GUNS THAT DON'T LOOK LIKE GUNS

## .45 Semi Automatic Pistol



Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

## ALERT ITEMS - 9

# FAA TEST DEVICES

### PHOTOS                    X-RAY IMAGES



Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

**ALERT ITEMS - 9**

# FAA TEST DEVICES

**PHOTOS**                    **X-RAY IMAGES**



AALTSA 009612

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

## ALERT ITEMS - 9

# ELEMENTS OF AN EXPLOSIVE DEVICE



### THE POWER SOURCE

**Dry cell batteries are the most often used power sources for improvised explosive devices.**

### THE INITIATOR

**Electric blasting caps are usually 1 to 3 inches long and about the thickness of an ordinary pencil.**





### THE EXPLOSIVE CHARGE

**Black powder, liquid explosives, dynamite, TNT and plastic explosives have all been used in aviation related bombings.**

Checkpoint
Operations
Guide-7/94

AA - KEAN COMM
002467

9 - 7

AALTSA 009613

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

**ALERT ITEMS - 9**

## BOMBS THAT DON'T LOOK LIKE BOMBS



Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

**ALERT ITEMS - 9**

# BOMBS THAT DON'T LOOK LIKE BOMBS



Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

**ALERT ITEMS - 9**

# BOMBS THAT DON'T LOOK LIKE BOMBS



Confidential - Do Not Copy or Disclose

Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION AS THAT TERM IS DEFINED IN 49 C.F.R. PART 1520. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE UNDERSECRETARY OF THE TRANSPORTATION SECURITY ADMINISTRATION.

**ALERT ITEMS - 9**

# BOMBS THAT DON'T LOOK LIKE BOMBS



AALTSA 009617
AAL 014410

Confidential - Do Not Copy or Disclose

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

**ALERT ITEMS - 9**

# BOMBS THAT DON'T LOOK LIKE BOMBS



AALTSA 009618

Confidential - Do Not Copy or Disclose
Subj. to Protect Order 21MC97 AKH
Subj. to Protect Order 21MC101 AKH

THIS DOCUMENT CONTAINS SENSITIVE SECURITY
INFORMATION AS THAT TERM IS DEFINED IN 49
C.F.R. PART 1520. NO PART OF THIS DOCUMENT
MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE UNDERSECRETARY OF THE
TRANSPORTATION SECURITY ADMINISTRATION.

# REVISION RECORD

## Checkpoint Operations Guide (COG)

**When you receive a manual revision:**

1. Review the new material.
2. Ensure that all checkpoint personnel understand the new material.
3. Remove the old pages and discard (if applicable) and insert new pages.
4. Complete the following record form.

| REVISION # | DATE RECEIVED | RECEIVED BY | MANUAL LOCATION | DESCRIPTION |
|---|---|---|---|---|
| 001 9/95 | N/A | IN MANUAL | Section 9 Pgs. 8-12 | Alert Items |
| 002 9/95 | N/A | IN MANUAL | Section 5 Pg. 5 | Deleted Smelling Contents of Bottle |
| 12.01.96.001 | N/A | IN MANUAL | Section 8 (7 Pgs.) | Screener Training Records |
| 12/03/97 (Rev 003) | N/A | IN MANUAL | Section 6 Pgs. 9-22 | Trace Detection Equipment |
| 12/03/97 (Rev 003) | N/A | IN MANUAL | Section 8 (1 Pg.) | System/Device Training Record |
| Rev 004 6/98 Replacement | N/A | IN MANUAL | Section 6 Pgs. 9-22 | Trace Detection Equipment |
| Rev 004 6/98 Replacement | N/A | IN MANUAL | Section 8 (2 Pgs.) | Trace/Bulk Training Records |
| Rev 005 3/99 Replacement | N/A | IN MANUAL | Section 6 Pgs. 20-22 | Explosive Detection Systems (EDS) |
| Rev 006-Aug. 99 Replacement | NA | IN MANUAL | Section 5 Pgs. 1-11 | Hand Carried Items |
| Rev 006-Aug. 99 Replacement | NA | IN MANUAL | Section 6 Pg. 6 | Service Animals |
| Rev 006-Aug. 99 Addition | NA | IN MANUAL | Section 6 Pgs. 23-27 | Air Cargo Screening |
| Rev 006-Aug. 99 Addition | NA | IN MANUAL | Section 8 – added pg. 8 | Air Cargo Training Record follows Pg. 7 of Security Screener Training Records |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

AA - KEAN COMM
002473

AALTSA 009619

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

AIR CARRIER STANDARD SECURITY PROGRAM
TABLE OF CONTENTS

                                                          PAGE

I.    PURPOSE, APPLICABILITY, PERSONNEL, DEFINITIONS AND
      ABBREVIATIONS
      A.   Purpose ........................................ 10
      B.   Applicability .................................. 10
      C.   Personnel ...................................... 11
      D.   Definitions .................................... 11
      E.   Abbreviations .................................. 12

II.   SCREENING RESPONSIBILITIES AND PROCEDURES
      A.   Responsibilities ............................... 20
      B.   Checkpoint Staffing and Supervision at
           Category X, I and II Airports .................. 20
      C.   Checkpoint Staffing and Supervision at
           Category III and IV Airports ................... 24
      D.   Alternate Staffing Option Irrespective of
           Screening Plan or Airport Category ............. 25
      E.   Supervisory Screening Duties, Uniform
           and Equipment .................................. 25
      F.   Persons ........................................ 27
      G.   Carry-on Items ................................. 28
      H.   Discovery of an Explosive, Incendiary, or
           Deadly or Dangerous Weapon in a Carry-on Item........ 29
      I.   Declaration of Deadly or Dangerous Weapons ..... 29a
      J.   Denied Boarding or Access Into a Sterile Area ....... 29a
      K.   Exceptional Screening .......................... 29b
           1.   Authorized Carriage of Firearms ........... 29b
           2.   Nonpassenger Law Enforcement Officers ..... 29b
           3.   Air Carrier Employees ..................... 29b
           4.   Diplomatic Immunity--Persons/Pouches ...... 29b
           5.   Private Screening ......................... 29c
           6.   Screening of Handicapped Persons .......... 29c
           7.   Screening of Classified Material and
                Persons Transporting Classified Material ...... 29c
           8.   Medical, Lifesaving, Evidentiary, or
                Scientific Items and Crematory Containers ..... 29d
           9.   Religious Articles ........................ 29d
           10.  Duty-Free Items ........................... 29e
           11.  Charter Flights ........................... 29e
           12.  Persons Under Escort ...................... 29f
           13.  Other Persons ............................. 29h
           14.  Access to Sterile Areas ................... 29h
           15.  Deported or Inadmissible Persons .......... 29i
      L.   Discovery of an Explosive, Incendiary, or
           Undeclared or Loaded Firearm in Checked Baggage ..... 29j

(i)

Change 57, 5/31/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011164

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

AIR CARRIER STANDARD SECURITY PROGRAM
TABLE OF CONTENTS

PAGE

III.  SIGN AND NOTIFICATION REQUIREMENTS
      A.  General .............................................. 30
      B.  Screening Checkpoint Signs .......................... 31
      C.  Radiation Exposure Advisory Signs ................... 31
      D.  Baggage Requirements ................................ 32
      E.  Notification Requirements Outside the United States . 33

IV.   SCREENING PLANS AND EQUIPMENT
      A.  Screening Plans ..................................... 40
      B.  Sterile Areas ....................................... 40
      C.  Screening Equipment Operation and Testing .......... 41

V.    AIRPLANE SECURITY
      A.  Access to Airplanes ................................. 50
      B.  Tampering With or Unauthorized Access To
          An Airplane, or Discovery of a Suspect Item ........ 52
      C.  Airplane Searches ................................... 52
      D.  Personnel Requirements .............................. 53

VI.   AREA SECURITY
      A.  Areas and Facilities ................................ 60
      B.  Personnel Identification Requirements ............... 60
      C.  Security Identification Display Area
          (SIDA) Training Requirements ....................... 61

VII.  DOMESTIC FLIGHTS
      A.  Checked Baggage Acceptance .......................... 70
      B.  Profiling Passengers ................................ 75
      C.  Passenger Identity Check ............................ 76
      D.  Passenger Questioning ............................... 78
      E.  Clearance Procedures for Checked Baggage Belonging
          to a Selectee Identified by Passenger Profiling or
          By the Passenger Identity Check ..................... 79a
      F.  Clearance Procedures for Suspect Items,
          or for Carry-On Items and Checked Baggage
          Belonging to a Passenger Unable to Provide
          Answers During Questioning .......................... 79c
      G.  Training Requirements:
          Profilers at Domestic Locations ..................... 79d
      H.  Domestic Flight Segment Part of Travel to Israel ... 79d

(ii)

Change 57, 5/31/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011165

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

AIR CARRIER STANDARD SECURITY PROGRAM
TABLE OF CONTENTS

PAGE

VIII.    INTERNATIONAL FLIGHTS DEPARTING FROM THE UNITED STATES
         A.   Checked Baggage Acceptance ........................  80
         B.   Profiling Passengers .............................  82
         C.   Passenger Identity Check .........................  83
         D.   Passenger Questioning ............................  85
         E.   Clearance Procedures for: Checked Baggage
              Belonging to a Selectee; Suspect Items;
              or for Carry-On Items and Checked Baggage
              Belonging to a Passenger Unable to Provide
              Answers During Questioning .......................  88
         F.   Training Requirements:
              Profilers at Domestic Locations ..................  89a
         G.   Passenger Baggage Match ..........................  89a
         H.   Unaccompanied Checked Baggage ....................  89b

IX.      CARGO ACCEPTANCE AND CONTROL
         A.   Definitions ......................................  90
         Responsibility ....................................  91
         Cargo Acceptance - General Requirements ..........  91
         Cargo Accepted on Behalf of an Air Carrier by
              Another Air Carrier ..............................  93
         Indirect Air Carrier:  Cargo Accepted Directly
              From an Indirect Air Carrier .....................  93
         Known Shipper:  Cargo Accepted Directly From a
              Known Shipper ....................................  95
         Carriers With Security Programs...................  96
         Carriers Without Security Programs................  96
         Unknown Shipper:  Cargo Accepted Directly From
              An Unknown Shipper ...............................  97
         Screening Procedures .............................  98
         Access to Cargo ..................................  99a
         Ground Movement ..................................  99a
         Program Documentation ............................  99a
         Training and Testing .............................  99b
         Notification Procedures ..........................  99b

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011166

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

AIR CARRIER STANDARD SECURITY PROGRAM
TABLE OF CONTENTS

                                                              PAGE

X.    BOMB THREATS
      A.   General .......................................... 100
      B.   Definitions ..................................... 100
      C.   Action .......................................... 100
      D.   Responsibility .................................. 101
      E.   Reports ......................................... 101

XI.   HIJACKING NOTIFICATION .............................. 110

XII.  SECURITY DIRECTIVES/THREAT INFORMATION
      A.   Security Directives ............................. 120
      B.   Threat Information .............................. 120
      C.   Contingency Measures ............................ 121

XIII. STANDARDS, TRAINING, TESTING, AND AUDITING OF
      PERSONS PERFORMING SCREENING AND SECURITY COORDINATOR
      FUNCTIONS
      A.   General ......................................... 130
      B.   Standards for Screening Personnel ............... 130
      C.   Training, Testing, and Certification
           of Screening Personnel .......................... 132
      D.   Selection, Training, Testing, and Certification
           of Checkpoint Security Supervisors and
           Screeners-In-Charge ............................. 139
      E.   Continued Employment Determination for
           Screeners and Checkpoint Security Supervisors ... 139a
      F.   Air Carrier Testing and Auditing ................ 139b
      G.   FAA Testing ..................................... 139f
      H.   Ground Security Coordinator (GSC) ............... 139g
      I.   Inflight Security Coordinator (ISC) ............. 139i
      J.   Crewmember Training ............................. 139j

XIV.  IMPLEMENTING PROCEDURES ............................. 140

(iv)

Change 57, 5/31/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011167

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

AIR CARRIER STANDARD SECURITY PROGRAM
TABLE OF CONTENTS

PAGE

XV.     SECURITY PROCEDURES FOR FLIGHTS DEPARTING FROM
        LOCATIONS OUTSIDE THE UNITED STATES
        A.   General ........................................ 150
        B.   Extraordinary Security .......................... 159b
        C.   Training ........................................ 159g

XVI.    31 THROUGH 60 SEAT OPERATIONS
        A.   Law Enforcement Response ........................ 160
        B.   Security Threat Procedures ...................... 160

XVII.   AIRPORT OPERATOR NOTIFICATION-LAW ENFORCEMENT SUPPORT
        A.   Scheduled Operations ............................ 170
        B.   Public Charter Operations ....................... 170

XVIII.  AIRPORT CATEGORIZATION
        A.   Airport Categories .............................. 180
        B.   Law Enforcement Officer Response Times .......... 181

XIX.    PAST EMPLOYMENT CHECKS .............................. 190
        A.   Employment History, Verification and
             Criminal History Records Check: ................. 190
        B.   Employment History, Verification and
             Criminal History Records Check - Self-Audit: ..... 190
        C.   Five Year Background Check for Unescorted
             Access to Non-SIDA Areas ........................ 195

(v)

Change 60, 5/20/2001

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011168

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

AIR CARRIER STANDARD SECURITY PROGRAM
TABLE OF CONTENTS

APPENDICES

PAGE

- DEADLY OR DANGEROUS WEAPONS GUIDELINES ............. Appendix I

- PHYSICAL INSPECTION GUIDELINES ..................... Appendix II

- PERSON/HAND-CARRIED (CARRY-ON) ITEM
  SCREENING GUIDELINES ............................... Appendix III

- SCREENING PERSONNEL TRAINING GUIDELINES ............ Appendix IV

- CHECKPOINT SECURITY SUPERVISOR TRAINING GUIDELINES   Appendix V

- FAA-APPROVED TEST OBJECTS ......................... Appendix VI
  Description of FAA-Approved Test Objects ...... 1
  Test Objects:  X-ray Operators ................ 3
  Test Objects:  Walk-Through
  Metal Detector Operators ...................... 3
  Test Objects:  Screeners Performing
  Physical Inspections of Carry-On Items ........ 3

- SIMULATED IMPROVISED EXPLOSIVE DEVICE
  (IED)TEST COMPONENTS ............................... Appendix VI.A.

- DESIGNATED FLIGHTS-EXTRAORDINARY SECURITY . ....... Appendix VII.A.

- U.S. AIRPORTS DESIGNATED AS CATEGORY "X" .......... Appendix VII.B.

- OPERATIONS OF U.S. AIR CARRIER AIRCRAFT
  WET LEASED TO FOREIGN AIR CARRIERS ............... Appendix VII.C.

- OPERATIONS OF U.S. AIR CARRIER CONDUCTING
  CHARTERS FOR FOREIGN AIR CARRIERS  ............... Appendix VII.D.

- PROCEDURES FOR SCREENING BATTERY-OPERATED,
  ELECTRICAL, OR ELECTRONIC DEVICES ................ Appendix VIII

- FAA APPROVED SEALING PROCEDURES ................... Appendix IX

- PROGRAM AMENDMENT EXPLANATIONS .................... Appendix X

(vi)

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011169

Confidential - Do Not Copy or Disclose

AIR CARRIER STANDARD SECURITY PROGRAM
TABLE OF CONTENTS

APPENDICES

PAGE

- **SPECIAL PROCEDURES TRAINING GUIDELINES** ............. Appendix XI
  A.  Screeners (Section XV) ......................... Page 1
  B.  Supervisors and Personnel Used to Guard
      or Search Airplanes (Section XV) .............. Page 1
  C.  Profilers at Extraordinary
      Security Locations ........................... Page 2
  D.  Profilers at Domestic Locations ............... Page 4

- **GSC TRAINING SUBJECT OUTLINE** ..................... Appendix XII

- **CREWMEMBER TRAINING** ............................... Appendix XIII

- **GSC\CSS\SIC PERFORMANCE STANDARDS** ................ Appendix XIV

- **AVSEC CONTINGENCY PLAN** ........................... Appendix XV

- **CHECKPOINT AUDIT OUTLINE** ......................... Appendix XVI
  A.  Operational Audit ............................. Page 1
  B.  Administrative Audit .......................... Page 2

- **COUNTRIES DESIGNATED BY THE U.S. DEPARTMENT OF STATE
  AS STATE SPONSORS OF TERRORISM, AND OTHER COUNTRIES
  DESIGNATED BY THE FAA** .............................. Appendix XVII

- **DIPLOMAT ID CARDS** ................................ Appendix XVIII

- **CARGO SCREENING** .................................. Appendix XIX
  SECTION I - General Requirements ................... Page 1
  SECTION II - X-Ray Systems ......................... Page 2
  SECTION III - Manual Search ........................ Page 12

- **SELF-AUDIT OUTLINE** ............................... Appendix XX
  A.  Operational Audit ............................. Page 1
  B.  Administrative Audit .......................... Page 1

- **AUDITS FOR EMPLOYMENT HISTORY, VERIFICATION AND
  CRIMINAL RECORDS CHECK § 108.33** .................... Appendix XXI
  A. General ........................................ Page 1
  B. Part 1: Self-audit questions requiring
     documentation ................................. Page 2
  C. Part 2: Self-audit questions requiring
     documentation ................................. Page 3
  D. Process Questions no documentation required ..... Page 3

Change 57, 5/31/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011170

Confidential - Do Not Copy or Disclose

Page 10

## AIR CARRIER STANDARD SECURITY PROGRAM

I.  **PURPOSE, APPLICABILITY, PERSONNEL, DEFINITIONS AND ABBREVIATIONS.**

A.  **PURPOSE.**  The purpose of this security program is to prevent or deter aircraft hijacking, sabotage, and related criminal acts. This program is required by Title 14 Code of Federal Regulations (14 CFR) part 108 and describes the security procedures and facilities related to:

    1.  The screening of all passengers and other persons and all property intended to be carried in the cabin of airplanes or into a sterile area by weapon detecting procedures or facilities to prevent or deter the carriage of any explosive, incendiary, or other deadly or dangerous weapon aboard airplanes or into a sterile area.

    2.  Assuring that only persons authorized are permitted to have accessible to them firearms while aboard its airplanes or in a sterile area under the air carrier's control.

    3.  Controlling air carrier facilities and operations areas to prevent or deter unauthorized access to such areas and to airplanes.

    4.  Accepting baggage and cargo.

    5.  Controlling access to baggage and cargo intended for carriage aboard airplanes.

    6.  Responding to threats considered to be against specific airplanes.

    7.  Assuring that the screening of all persons affords for uniform, courteous, and efficient treatment to the maximum extent practicable.

B.  **APPLICABILITY.**  This program is applicable to scheduled and public charter operation(s) conducted by the air carrier as follows:

    1.  61 seats and above -- All sections and appendices applicable except section XVI.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY. FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011171

Confidential - Do Not Copy or Disclose

Page 11

2.    1 through 60 seats where access to sterile area is desired
      -- All sections and appendices applicable except section
      XVI.

3.    31 through 60 seats not requiring access to sterile areas
      -- Applicable sections include II.K.1; VII. paragraphs B.
      through G., VIII., paragraphs B. through F.; X.; XI.;
      XII.; XVI; and appendix XI. paragraph D.

4.    1 through 30 seats not requiring access to sterile area --
      No sections or appendices applicable unless air carrier
      voluntarily seeks FAA approval of program.

NOTE: Although certain airplane operations of the air carrier may not
      be required to be conducted pursuant to this program, all such
      operations are required to be conducted in conformance with the
      requirements contained in 14 CFR 108.11(b)-(e), 108.19, and
      108.23.

C.    Personnel.  The courteous and efficient implementation of
      screening procedures required by this security program is
      related to the quality of screening personnel used by the air
      carrier.  The air carrier should consider the prevailing wage
      rate for comparable employment in the geographical area when
      hiring or contracting security screeners and supervisors.

D.    Definitions.

Authorized Air Carrier Representative - any person that is not a
      direct employee of the air carrier, contracted or authorized to
      act on the air carrier's behalf to perform measures required by
      this program.

2.    Advanced Technology (AT) Equipment - an automated explosives
      detector which does not meet the minimum EDS certification
      standards established by the FAA, and has been provided to the
      air carrier by the FAA, for use in detecting explosives in
      checked baggage.

3.    Attended Airplane - an airplane for which a direct air carrier
      employee or authorized air carrier representative ensures that
      access is limited to authorized persons or property.

4.    Authorized Person (accessing an airplane) - any person the air
      carrier has granted authority to access, be present in, or
      travel aboard an airplane.

5.    Carry-on Item - an individual's accessible property that is
      intended to be carried into a sterile area, or into an airplane
      cabin, through a screening checkpoint.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011172

Confidential - Do Not Copy or Disclose

Page 12

6.   **Checked Baggage** - an individual's personal property accepted by an air carrier for transport, which will be inaccessible to passengers during the flight.

7.   **Direct Air Carrier Employee** - a person employed and paid directly by the air carrier.

8.   **Explosives Detection System (EDS)** - an automated device, or combination of devices, which has the ability to detect in passengers checked baggage, the amounts, types, and configurations of explosive materials as specified by the FAA. Its ability to detect these materials has met minimum certification standards, as published by the FAA.

9.   **Explosives Trace Detection (ETD) Device** - a device which has been assessed as effective by the FAA, for use in detecting explosive particles on objects intended to be transported aboard an airplane.

10.   **Incendiary** - any substance or device that can be used to initiate a fire.

11.   **Travel Authorization** - any electronic or written document that authorizes a person to travel on a certificate holder's airplane.

E.   **ABBREVIATIONS.**

1.   14 CFR - Title 14 Code of Federal Regulations

2.   ACSSP - Air Carrier Standard Security Program

3.   ASC - Airport Security Coordinator

4.   AT - Advanced Technology (Equipment)

5.   ATA - Air Transport Association

6.   AVSEC - Aviation Security (Contingency Plan or Measure)

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011173

Confidential - Do Not Copy or Disclose

Page 13

7.    CAPS - Computer Assisted Passenger Screening System

8.    CASFO - Civil Aviation Security Field Office

9.    CASFU - Civil Aviation Security Field Unit

10.   CSS - Checkpoint Security Supervisor

11.   DOT - Department of Transportation

12.   EDS - Explosives Detection System

13.   ETD - Explosives Trace Detection (Device)

14.   FAA - Federal Aviation Administration

15.   FAR - Federal Aviation Regulation

16.   FAM - Federal Air Marshal

17.   FBI - Federal Bureau of Investigation

18.   FSM - Federal Security Manager

19.   GSC - Ground Security Coordinator

20.   IAC - Indirect Air Carrier

21.   IATA - International Air Transport Association

22.   IC - Information Circular

23.   ICAO - International Civil Aviation Organization

24.   ID - Identification Medium

25.   IED - Improvised Explosive Device

26.   ISC - Inflight Security Coordinator

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011174

Confidential - Do Not Copy or Disclose

Page 14

27.   LEO - Law Enforcement Officer

28.   OJT - On-The-Job Training

29.   OTP - Operational Test Piece

30.   PIC - Pilot-In-Command

31.   PSI - Principal Security Inspector

32.   PTI - Positive Target Identification

33.   SD - Security Directive

34.   SIC - Screener-In-Charge

35.   SIDA - Security Identification Display Area

36.   TIP - Threat Image Projection

37.   USPS - United States Postal Service

38.   USSS - United States Secret Service

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGSNCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011175

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Pages 15 through 19

THIS PAGE INTENTIONALLY LEFT BLANK

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011176

Confidential - Do Not Copy or Disclose

Page 20

II.   **SCREENING RESPONSIBILITIES AND PROCEDURES**

A.   **RESPONSIBILITIES.**  The air carrier is responsible for the screening of persons, carry-on items, and when required, checked baggage.  Screening shall be conducted using the facilities, equipment, and procedures described in this program to prevent or deter the unauthorized carriage of an explosive, incendiary, or a deadly or dangerous weapon on an airplane.  Persons who perform screening shall be trained in accordance with this program.

B.   **CHECKPOINT STAFFING AND SUPERVISION AT CATEGORY X, I AND II AIRPORTS.**  Minimum staffing at active passenger screening checkpoints within the United States shall be as follows:

1.   **Concourse Plan Screening.**

a.   **Checkpoint Supervision:**  The air carrier shall provide and train a CSS to be available at the screening point at all times of operation, with the exception of meal periods, scheduled breaks and emergency situations beyond the control of the air carrier.  During meal periods, breaks and such emergencies the CSS shall designate a screener to act in his/her behalf and shall advise the designated screener of his/her whereabouts so that the designated screener is able to summon the CSS for assistance at all times.  The requirement to provide a CSS is irrespective of whether fixed-post or alternative law enforcement response is provided by the airport operator.  The CSS shall represent the certificate holder, supervise screeners, resolve problems and conflicts, manage incidents as they arise, and actively control all screening activities at the checkpoint.  The CSS shall not routinely conduct x-ray screening, load bags on the x-ray conveyor or in the device, physically inspect property identified by screeners as needing additional inspection, control the exit lane, or be primarily responsible for operation of metal detectors.  However, the CSS shall actively intervene, on a case-by-case basis, to resolve uncertainties in any of the functions performed by screeners as necessary to assure effective, vigilant, and courteous screening.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011177

Confidential - Do Not Copy or Disclose

Page 21

b.   **Checkpoint Screener Staffing Standard**: At these concourse screening locations screeners shall perform only the duties of the specific screening position to which they are assigned at the moment. The two basic screening functions are: (1) the screening of carry-on items (x-ray and physical search) and (2) the screening of persons (walk-through or hand-held metal detector and pat-down). For example, an x-ray operator may read the screen and conduct physical inspections of carry-on items, but may not be simultaneously assigned to monitor the walk-through metal detector, conduct hand-held metal detector screening or pat downs or prevent unauthorized access to the sterile area. Conversely, a screener assigned to monitor the walk-through metal detector may also conduct secondary hand-held metal detector screening, but may not be simultaneously assigned to read the x-ray screen, conduct secondary physical inspections of carry-on items or prevent unauthorized access to the sterile area.

Notes:   (1)  During peak periods of checkpoint screening activity, efficient screening may necessitate a staffing level which exceeds the minimum.

(2)  Preventing unauthorized access to a sterile area, in accordance with section IV.B.1, is not a screening function. Preventing unauthorized access may be accomplished mechanically (e.g. one way gates, video monitoring) or by an individual posted at the point of access. Although an individual may be a screener who is fully qualified in accordance with the ACSSP, he or she need not be a fully qualified screener.

2.   **Hold Area Plan Screening**

a.   **Checkpoint supervision:** The air carrier shall provide and train a Checkpoint Security Supervisor (CSS) to be available at the screening point at all times of operation, with the exception of meal periods,

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011178

Confidential - Do Not Copy or Disclose

Page 22

scheduled breaks and emergency situations beyond the
control of the air carrier.  During meal periods and
breaks, the CSS shall designate a screener to act in
his/her behalf and shall advise the designated
screener of his/her whereabouts so that the
designated screener is able to summon the CSS for
assistance at all times.  The requirement to provide
a CSS is irrespective of whether fixed-post or
alternative law enforcement response is provided by
the airport operator.  The CSS shall represent the
certificate holder, supervise screeners, resolve
problems and conflicts, manage incidents as they
arise, and actively control all screening activities
at the checkpoint.  The CSS shall not be routinely
assigned to conduct x-ray screening, load bags on
the x-ray conveyor or in the device, physically
inspect persons or property identified by screeners
as needing additional inspection, or be primarily
responsible for operation of metal detectors.  Where
a hold area screening plan exists, the CSS may be
routinely assigned to prevent unauthorized access to
the sterile area through the checkpoint's exit lane.
However, the CSS shall actively intervene, on a
case-by-case basis, to resolve uncertainties in any
of the functions performed by screeners as necessary
to assure effective, vigilant, and courteous
screening.

b.    **Checkpoint Screener Staffing Standard**:  At these
hold area plan screening locations screeners shall
perform only the duties of the specific screening
position to which they are assigned at the moment.
The two basic screening functions are the screening
of carry-on items (x-ray and physical search) and
the screening of persons (walk-through or hand-held
metal detector and pat-down).  For example, an x-ray
operator may read the screen and conduct physical
inspections of carry-on items but may not be
simultaneously assigned to monitor the walk-through
metal detector, conduct hand-held metal detector
screening or pat downs, or prevent unauthorized
access to the sterile area.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011179

Confidential - Do Not Copy or Disclose

Page 23

Conversely, a screener assigned to monitor the walk-through metal detector may also conduct secondary hand-held metal detector screening or pat downs, but may not be simultaneously assigned to read the x-ray screen, conduct secondary physical inspections of carry-on items or prevent unauthorized access to the sterile area.

Notes:     (1)  During peak periods of checkpoint screening activity, efficient screening may necessitate a staffing level which exceeds the minimum.

(2)  Preventing unauthorized access to a sterile area, in accordance with section IV.B.1, is not a screening function.  Preventing unauthorized access may be accomplished mechanically (e.g. one way gates, video monitoring), or by an individual posted at the point of access, or by the CSS.  However if an individual other than the CSS is provided, that individual need not be a screener who is fully qualified in accordance with the ACSSP.

3.     **Gate Plan Screening.**

a.     **Checkpoint Supervision:**  A minimum of two screeners, one of whom is designated as SIC with additional duties as authorized and restricted in paragraph E. below, is required at each gate plan screening checkpoint at all times when the checkpoint is open for screening.

b.     **Checkpoint Screener Staffing:**  At these gate plan locations screeners shall perform only the duties of the specific screening position to which they are assigned at the moment.  The two basic screening functions are the screening of carry-on items (x-ray and physical search) and the screening of persons (walk-through or hand-held metal detector and pat-down).  For example, an x-ray operator may read the screen and conduct physical inspections of carry-on items but may not be simultaneously assigned to monitor the walk-through metal detector, conduct hand-held metal detector screening or pat downs, or control unauthorized access to

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011180

Confidential - Do Not Copy or Disclose

Page 24

the sterile area.  Conversely, a screener assigned
to monitor the walk-through metal detector may also
conduct secondary hand-held metal detector screening
or pat downs, but may not be simultaneously assigned
to read the x-ray screen, conduct secondary physical
inspections of carry-on items or control
unauthorized access to the sterile area.

Notes:       (1) During peak periods of checkpoint screening activity,
efficient screening may necessitate a staffing level which
exceeds the minimum.

C.    **CHECKPOINT STAFFING AND SUPERVISION AT CATEGORY III AND IV
      AIRPORTS.**  Minimum staffing at active passenger screening
      checkpoints within the United States, shall be as follows:

      1.    **Concourse Plan, Hold Area Plan and Gate Plan Screening.**

            a.    **Checkpoint Supervision and Minimum Checkpoint
                  Screener Staffing:**  A minimum of two screeners, one
                  of whom is designated as SIC, is required at each
                  screening checkpoint at all times when the
                  checkpoint is open for screening.  At these
                  airports, screeners shall perform only the duties of
                  the specific screening position to which assigned at
                  the moment.  The two basic screening functions are
                  the screening of carry-on items (x-ray and physical
                  search) and the screening of persons (walk-through
                  or hand-held metal detector and pat-down).  For
                  example, an x-ray operator may read the screen and
                  conduct physical inspections of carry-on items but
                  may not be simultaneously assigned to monitor the
                  walk-through metal detector, conduct hand-held metal
                  detector screening or pat down, or prevent
                  unauthorized access to the sterile area.
                  Conversely, a screener assigned to monitor the walk-
                  through metal detector may also conduct secondary
                  hand-held metal detector screening or pat downs, but
                  may not be simultaneously assigned to read the x-ray
                  screen, conduct secondary physical inspections of
                  carry-on items.  However, a screener assigned to
                  monitor the walk-through metal detector may
                  simultaneously prevent unauthorized access to the
                  sterile area.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011181

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 25

Notes:       (1)  During peak periods of checkpoint screening activity,
             efficient screening may necessitate a staffing level which
             exceeds the minimum.

             (2)  Preventing unauthorized access to a sterile area, in
             accordance with Section IV.B.1, is not a screening
             function.  Preventing such unauthorized access may be
             accomplished mechanically (e.g. one way gates, video
             monitoring) or by an individual posted at the point of
             access or by a screener or the SIC.  If an individual
             other than the SIC is provided, that individual need not
             be a screener who is fully qualified in accordance with
             the ACSSP.

D.    ALTERNATE STAFFING OPTION Irrespective of Screening Plan or
      Airport Category.  Screening may be conducted under an alternate
      staffing option at any screening checkpoint when each of the
      procedures outlined in this paragraph are carried out.

      1.    **Checkpoint Supervision and Minimum Screener Staffing
            Standards**: The air carrier shall provide at least either:

            a.    one screener and one assistant (who is not required
                  to be a fully qualified screener), or

            b.    an SIC.

      2.    The two basic screening functions may not be conducted
            simultaneously.  Each person and his or her carry-on items
            must be completely screened prior to another person and
            his or her carry-on items entering the screening process.

      3.    If the checkpoint is staffed only with an SIC, the exit
            lane must be closed while any person is being screened.

E.    **SUPERVISORY SCREENING DUTIES, UNIFORM, AND EQUIPMENT.**

      (1)   CSS and SIC Duties.  The primary responsibilities of the
            CSS and the SIC are to actively supervise screeners, apply
            immediate corrective action when required, and manage
            incidents as they arise.  The CSS or the SIC shall:

            (a)  Supervise screeners, checking their alertness and duty
                 performance, and rotate their duty assignments in

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011182

Confidential - Do Not Copy or Disclose

Page 26

accordance with this program and as necessary to
assure effective, vigilant, and courteous screening.

(b)  Manage incidents as they arise until the arrival of
the LEO.

(c)  Immediately notify, or cause notification of, the
LEO when a criminal act against civil aviation is
suspected.

(d)  Ensure safe handling of deadly or dangerous weapons
and other prohibited objects.

(e)  Control or monitor persons when appropriate, without
using physical restraint and without jeopardizing
his/her safety or that of others in the immediate
vicinity.

(f)  Collect witness information and retain evidence
pending arrival of the LEO.

(g)  Represent the certificate holder(s) in handling
passenger complaints.

(h)  Verify the credentials of nonpassenger armed
officers in accordance with Section II.K.2 of the
Air Carrier Standard Security Program.

(i)  Ensure periodic operational testing of screening
equipment as required by Section IV of the Air
Carrier Standard Security Program.

Know how to immediately contact the GSC of all air
carriers utilizing the checkpoint; respond to the
daily GSC security reviews; promptly notify the GSC
of incidents, irregularities, and discrepancies.

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011183

Confidential - Do Not Copy or Disclose

Page 27

    (k)   Ensure collection, retention and submission to the airport operator of information required for the completion of the Screening Activities Report, FAA Form 1650-7.

    2.   CSS Uniform. The CSS attire shall be distinctive from other clothing or uniforms worn by non-supervisory screeners or other employees at the airport. Acceptable attire is that which will immediately identify the CSS to LEO's and the public. A qualified CSS working in a non-supervisory capacity shall not wear distinctive attire.

    3.   **CSS Equipment.** The CSS shall have immediately available at his or her station communication equipment to facilitate instant communication with the law enforcement organization supporting the screening point.

F.   Persons. All persons desiring to pass beyond the screening point or board an airplane must undergo screening. Screening of persons is normally accomplished through the use of metal detectors. Individuals are not permitted to retain any hand-carried items in their possession during screening other than articles of clothing and very small or thin objects such as boarding passes or tickets. All indications of unaccounted for metal on an individual's person must be satisfactorily resolved. Only upon satisfactory completion of screening and of the inspection of all hand-carried items may the individual be permitted to pass beyond the screening point.

    1.   If a person alarms the metal detection device, a determination must be made that the cause of this alarm is not a weapon or dangerous object. This can be accomplished by a hand-held metal detector, by asking the individual to remove extraneous metal from his or her person and repassing through the walk-through detector, or by a consent search of the person conducted by a representative of the air carrier. Persons who cannot be cleared by the air carrier using any combination of these procedures will be referred to the law enforcement officer.

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011184

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 28

2.    Every person has the option to refuse screening or to request a physical body search instead of metal detector screening.  Persons who refuse to be screened will be denied passage beyond the screening point.

3.    A consent search of the person shall be conducted by persons of the same sex as that of the person being screened, unless the person being screened agrees otherwise.  Guidelines pertaining to the screening of persons appear in appendices to this program.

G.    **CARRY-ON ITEMS.**  All carry-on items passing through the screening checkpoint shall be screened using FAA-approved inspection methods.

1.    If a person refuses to permit inspection of any carry-on item, that item shall not be allowed into the sterile area or inside an airplane cabin.  The air carrier shall not knowingly transport that item as checked baggage or cargo.

2.    When an image is displayed on an x-ray monitor ███████ an explosive, incendiary, or a deadly or dangerous weapon in a carry-on item, the carry-on item must be subjected to additional screening.  Additional screening of the carry-on item must be accomplished in the presence of the passenger ████████████████████████████████ ███████.

a.    Examine the carry-on item using an ETD device.  The ETD device shall be operated using the procedures established in the air carrier's FAA-approved amendment.  If an ETD device is not available for use, then,

b.    Conduct a physical inspection of the carry-on item.

3.    **Continual Inspections.**  The following measures shall be conducted at all category X, I, and II airports. Inspections of carry-on items shall be continually conducted at each x-ray unit in operation at each passenger screening checkpoint.

a.    ██████████████████ an ETD device must be used to inspect carry-on items that cannot be cleared by the x-ray operator.  Items identified as suspect must be cleared using the measures outlined in the air carrier's FAA-approved ETD device amendment.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011185

Confidential - Do Not Copy or Disclose

Page 29

    (1)    When the number of carry-on items selected by the x-ray operator for image resolution is not enough to ensure continual ETD device inspections, other items must be randomly selected to meet this requirement.

    (2)

    (3)    The ETD device must be operated using the procedures established in the air carrier's FAA-approved amendment.

  b.  For each x-ray unit in operation not supported by an ETD device and its search area as described in 3.a. of this paragraph, physical inspections must be continually conducted of carry-on that cannot be cleared by the x-ray operator.

    (1)    When the number of carry-on items selected by the x-ray operator is not sufficient to ensure continual physical inspections, other items must be randomly selected to meet this requirement.

    (2)



  c.

  d.  Carry-on items of uniformed crewmembers

**H.    DISCOVERY OF AN EXPLOSIVE, INCENDIARY, OR DEADLY OR DANGEROUS WEAPON IN A CARRY-ON ITEM.**

  1.  Whenever a deadly or dangerous weapon is discovered in a carry-on item, the air carrier shall:

    a.  maintain positive control of the carry-on item containing the deadly or dangerous weapon;

    b.  notify the appropriate law enforcement officials immediately; and

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011186

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 29a

    c.   ensure that the responsible FAA CASFO/CASFU is provided a written or verbal summary of the incident, including the name and address of the person involved, within 5 working days.

2.   Whenever an explosive or incendiary is discovered in a carry-on item, the air carrier shall:

    a.   maintain positive control of the carry-on item containing the explosive or incendiary;

    b.   notify the appropriate law enforcement officials immediately;

    c.   notify the responsible FAA CASFO/CASFU immediately; and

    d.   if the explosive or incendiary is prohibited from transport aboard an airplane, either in a carry-on item or checked baggage, ███████████████ retrieve their checked baggage. The appropriate law enforcement officials shall clear all property belonging to the passenger prior to transporting it aboard an airplane.

3.   If the determination is made that a carry-on item is or contains an item that is prohibited from being transported in the cabin of the airplane, but is authorized to be transported as checked baggage or cargo, the item may be transported as checked baggage or cargo in accordance with applicable FAR's.

I.   DECLARATION OF DEADLY OR DANGEROUS WEAPONS. Persons declaring deadly or dangerous weapons at passenger screening points before screening has begun shall be referred to a representative of the air carrier or a law enforcement officer as deemed appropriate.

J.   DENIED BOARDING OR ACCESS INTO A STERILE AREA. Any person refusing to undergo the required screening process or found to be in possession of an explosive, incendiary, or deadly or dangerous weapon or making threats or otherwise believed to be a security threat to the airplane, shall be denied passage beyond the screening point unless subsequently cleared.

1.   The final decision to board or refuse boarding rests with the air carrier. The law enforcement officer may assist the air carrier in that decision.

2.   If an individual is denied boarding because he or she has made a threat or is judged to be a threat to the airplane, a law enforcement officer shall be notified.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011187

Confidential - Do Not Copy or Disclose

Page 29b

K.    **EXCEPTIONAL SCREENING.**

1.    Authorized Carriage of Firearms.  Only those persons
authorized to bear arms per 14 CFR 108.11, may be
permitted to have accessible to them a deadly or dangerous
weapon while aboard an airplane.  After having met the
requirements of 14 CFR 108.11, ███████████████████████████
███████████████████████████. The provisions
of 14 CFR 108.11 will be applied and followed when
considering the carriage of weapons aboard airplanes by
individuals whether on their person, in a carry-on item,
or in their checked baggage.

2.    **Nonpassenger Law Enforcement Officers.**  An armed LEO, in
or out of uniform and who is not a passenger, *desiring
passage through a screening point* ████████████████████████
█████████████  Upon presentation of bona fide credentials/
identification and verification of the individual's
identity ██████████████████████████ be permitted to
pass beyond the screening point █████████████████

3.    **Air Carrier Employees.** ███████████████████████████████
█████████████████████████████████████████████████ The
air carrier shall establish and implement procedures to
instruct such individuals that explosives, incendiaries,
or deadly or dangerous weapons are not to be carried
aboard airplanes.

4.    **Diplomatic Immunity--Persons/Pouches.**  Even though a
person may possess diplomatic immunity, that person is
subject to the same preboard screening as all other
persons, ███████████████████████████████████████████████

██████████████████████████████████ carry-on
items of that person shall be inspected in the normal
manner.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011188

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 29c

5.    **Private Screening.**

    a.    The air carrier may conduct private screening provided the person is then escorted into a sterile area or to the airplane.

    b.    Private screening shall not be routinely conducted, but may be used at the discretion of the air carrier or upon the request of the passenger when the normal screening procedures are inappropriate.

    c.    Private screening procedures used by the air carrier shall be consistent with the purpose of this program to screen all passengers and all property intended to be carried in the cabin of the airplane.

6.    Screening of Handicapped Persons.  Persons on crutches, in wheelchairs or in stretchers, or wearing prosthetic aids, etc., may be privately screened.  With reason and discretion, the person conducting the screening or consent search using either a hand-held metal detection device or a physical search or combination of both, shall ensure that no weapons or dangerous objects are on or about the person being screened.  The person shall then be escorted through or around the screening point.  Carry-on items shall be screened in the normal manner.

7.    **Screening of Classified Material and Persons Transporting Classified Material**.  Persons carrying Government classified material shall be screened in the same manner as other persons except for the following:

    a.    Classified documents and pamphlets and containers in which this kind of material is carried should be inspected to assure the absence of deadly or dangerous weapons.  Reading of such material is prohibited.

    b.    

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011189

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 29d



c. ▮▮▮▮▮▮▮▮▮

(1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(2) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(3) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(4) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(5) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(6) ▮▮▮▮▮▮▮▮▮▮▮▮▮

(7) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8.   **Medical, Lifesaving, Evidentiary, or Scientific Items and
     Crematory Containers.**  These items may be boarded ▮▮▮▮
     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ providing prearrangements have
     been made similar to those for classified material.  The
     passenger must have appropriate documents suitable to
     verify the contents and establish his identity.

9.   **Religious Articles.**  Certain religious articles may be
     considered sacred ▮▮▮▮▮▮▮.
     They shall be visually examined ▮▮▮▮▮▮▮▮▮▮▮▮▮

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011190

Confidential - Do Not Copy or Disclose

Page 29e

10.  **Duty-Free Items**.  Duty-free items purchased for delivery
aboard an airplane departing for a foreign destination
███████████████████ when all of the following conditions
are met:

    a.   Delivery is made to the purchaser by a bonded U.S.
Customs licensed employee of the duty-free seller.

    b.   Delivery is made directly to the purchaser beyond
the point of passenger screening or aboard the
airplane.

    c.   Purchase and delivery of items has been in
accordance with provisions of U.S. Customs
regulations with the merchandise remaining in the
custody and under the care and supervision of duty-
free employees and the U.S. Customs supervisor until
delivered to the purchaser.

Duty-free items purchased at non-U.S. points may be boarded in
the passenger cabin ████████████████ only if they are
controlled by foreign customs to a degree at least comparable
with U.S. Customs.

11.  **Charter Flights**.  On public charter flights, as defined in
14 CFR 108.3, for which screening is required, all persons
shall be screened in the same manner as persons traveling
on scheduled flights.  Upon request of the PSI, the air
carrier shall furnish a current list of known public
charters to include the planned dates, times, and
departure points of the flights.  Private charter
passengers having been ████████████████
████████████████ may deplane into sterile areas
without further screening or escort.  However, when an air
carrier becomes aware that a person on a private charter
flight is in the possession of a ████████████
███████ and is not authorized by 14 CFR 108.11, the air
carrier shall deny that person unescorted access to any
sterile area, air operations area, or nonpublic area and
shall report the situation to a law enforcement officer if
deemed appropriate.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011191

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 29f

12.   **Persons Under Escort.**

    a.    Dignitaries, witnesses, and other persons provided armed protective escort by government agencies:

        (1)   All persons under armed protective escort, desiring to pass beyond the screening point or board an airplane, shall undergo screening. Their carry-on items shall also be screened.



        (2)   All persons and their carry-on items, who are under the armed protective escort



           (a)

           (b)

    b.    Screened persons under the armed protective escort of government agencies, and persons under armed protective escort of a federal dignitary protection service, may be accepted as passengers if:

        (1)   The air carrier is made aware of the escort prior to boarding,



        (2)

        (3)

        (4)

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011192

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 29g

(5) 

c.  Screened persons in the custody of unarmed law
    enforcement personnel may be accepted as passengers
    if:

(1) [redacted]

(2) The air carrier shall inform the PIC and
    appropriate crewmembers of the seat(s)
    assigned to such person(s).

(3) [redacted]

(4) [redacted]

d.  Persons under the control of an armed law
    enforcement officer, other than those under
    voluntary protective escort may be accepted as
    passengers only when:

(1) [redacted]

(2) [redacted]

(3) The armed escort and the air carrier comply
    with the requirements of 14 CFR 108.21.

(4) The air carrier shall inform the PIC and
    appropriate crewmembers of the seat(s)
    assigned to such person(s).

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011193

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)



Page 29h

(5)



(6)

13.   **Other Persons.**  Persons other than law enforcement
      officers and air carrier or airport employees who are not
      passengers and who have a need to enter a sterile area
      from a point other than the security checkpoint

14.   **Access to Sterile Areas.**

      a.    Persons and carry-on items screened in accordance
            with this FAA-approved security program may be
            authorized access to sterile areas.

      b.    Persons and carry-on items may be permitted access
            to sterile areas provided that one of the following
            procedures is used:

            (1)   Persons and carry-on items have been screened
                  in accordance with an approved security
                  program as a result of having enplaned through
                  an established sterile concourse, or screening
                  point,

            (2)   Persons and carry-on items are screened in
                  accordance with an approved security program
                  upon deplanement and prior to entering the
                  sterile area,

            (3)   An air carrier with an approved security
                  program amends its program to include
                  provisions for screening persons and carry-on
                  items for other airplane operators,

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011194

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 29i

(4)   Persons and carry-on items entering from other than the screening point are accompanied through the sterile area by a sufficient number of escorts to preclude the transfer of a weapon between persons being escorted and other persons in the sterile area.  The escorts may be representatives of the airport or the appropriate air carrier who are authorized unescorted access to restricted areas, or

(5)   Emergency (law enforcement, fire, medical) personnel and their equipment are accompanied through the sterile area by a sufficient number of escorts to preclude the transfer of a weapon between persons being escorted and other persons in the sterile area.  The escorts may be representatives of the airport or the appropriate air carrier who are authorized unescorted access to restricted areas.

15.   **Deported or Inadmissible Persons.**  Upon receiving information that a person being deported from or deemed inadmissible to the airplane's country of departure, whether escorted or unescorted, is to be carried aboard the aircraft, the air carrier shall take the following measures:

a.    The air carrier shall ensure that such person has been properly screened and does not have on or about his or her person or property a deadly or dangerous weapon.

b.    The air carrier shall inform the PIC and appropriate crewmembers of the seat assigned to such person.

c.    



d.    

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011195

Confidential - Do Not Copy or Disclose

Page 29j

L.    **DISCOVERY OF AN EXPLOSIVE, INCENDIARY, OR AN UNDECLARED OR
      LOADED FIREARM IN CHECKED BAGGAGE.**  The screening of checked
      baggage, when required, shall be conducted in order to prevent
      or deter the carriage of an explosive or incendiary in checked
      baggage.  If a firearm is discovered in checked baggage during
      the inspection process, the air carrier shall not transport the
      firearm unless the requirements of 14 CFR 108.11(d) are met.

   1.    Whenever an undeclared explosive or incendiary is
         discovered in checked baggage, the air carrier shall:

      a.    **maintain positive control of the checked baggage
            containing** the explosive or incendiary;

      b.    notify the appropriate law enforcement officials
            immediately;

      c.    **notify the responsible FAA CASFO/CASFU** immediately;
            and

      d.    **not transport the passenger,** any other checked
            baggage or carry-on items belonging to the
            passenger, **until cleared by appropriate** law
            enforcement officials.

   2.    Whenever a firearm is discovered in checked baggage that
         has been determined to be loaded or has not been declared
         as required by 14 CFR 108.11(d), the air carrier shall:

      a.    **maintain positive control of the checked baggage**
            containing the firearm;

      b     **notify the appropriate** law enforcement officials
            immediately; and

      c.    **ensure that the responsible FAA CASFO/CASFU is
            provided a verbal or written summary of the
            incident, including the name and address of the
            passenger,** within 5 working days.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011196

Confidential - Do Not Copy or Disclose

Page 29k

3.  Whenever an image is observed on the monitor of equipment
    used for screening checked baggage ███████████████ an
    explosive or incendiary, **the checked baggage shall be
    subjected to additional screening.**

    a.  Additional screening of checked baggage shall be
        accomplished using one of the following inspection
        methods:

        (1)  In the presence of the passenger, conduct a
             physical inspection of the checked baggage and
             its contents.

        (2)  In the presence of the passenger, examine the
             checked baggage using an ETD device.  The ETD
             device shall be operated using the procedures
             outlined in the air carriers' FAA-approved
             amendment.

        (3)  Screen the checked baggage using EDS or AT
             equipment.  EDS and AT equipment shall be
             operated using the procedures outlined in the
             air carriers' FAA-approved amendment.

    b.  If additional screening cannot be conducted, the
        checked baggage shall not be transported aboard an
        airplane.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011197

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 291

THIS PAGE INTENTIONALLY LEFT BLANK

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011198

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 30

III.  SIGN AND NOTIFICATION REQUIREMENTS.

A.    GENERAL.

    1.    **Sign Placement.**

        a.    Any sign used to comply with a requirement in this section must be noticeably posted in a manner that enables a person to read it:

           (1)    prior to beginning the screening inspection process at a screening checkpoint; or

           (2)    at positions where checked baggage is accepted.

        b.    Signs posted prior to June 28, 1999, must meet the placement requirements of this paragraph no later than June 28, 2000.

        c.    Signs posted on or after June 28, 1999, must immediately meet the placement requirements of this paragraph.

    2.    **Sign Specifications.**

        a.    Signs must be written in English and may be restated in the predominant local language.

        b.    The size of the lettering must be at least 1 cm (0.4 inch) in height.

        c.    Size and color of the sign are optional.

        d.    Signs posted prior to June 28, 1999, must meet the sign specification requirements of this paragraph no later than December 31, 2001.

        e.    Signs posted on or after June 28, 1999, must immediately meet the sign specification requirements of this paragraph.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011199

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 31

B.   **SCREENING CHECKPOINT SIGNS.**  At each screening checkpoint,
persons shall be informed of screening requirements in order to
proceed past the inspection point.  The air carrier shall ensure
that:

1.   a sign is posted that states:

- IT IS A CRIME TO CARRY A CONCEALED WEAPON ABOARD
  AIRPLANES

- FEDERAL SAFETY RULES REQUIRE INSPECTION OF PERSONS
  AND HAND-CARRIED ARTICLES PASSING AN INSPECTION
  POINT

- INSPECTION MAY BE REFUSED

- PERSONS REFUSING INSPECTION WILL NOT BE PERMITTED TO
  PASS THE INSPECTION POINT

2.   a sign is posted that states:

THE AIRLINES ARE RESPONSIBLE FOR CONDUCTING SCREENING OPERATIONS
AT THIS CHECKPOINT AS REQUIRED BY FEDERAL AVIATION REGULATIONS.
IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT THE CHECKPOINT
SUPERVISOR.  IF YOU ARE NOT SATISFIED WITH THE REPLY FROM THE
SUPERVISOR, CONTACT YOUR AIRLINE REPRESENTATIVE.

C.   **RADIATION EXPOSURE ADVISORY SIGNS.**

1.   Whenever a screening device that emits radiation is used
to inspect carry-on items or checked baggage, a sign must
be posted at each point where carry-on items or checked
baggage are accepted.  The sign must state the following:

- INSPECTION WILL NOT AFFECT ORDINARY UNDEVELOPED FILM

- REMOVE ALL X-RAY, SCIENTIFIC, AND HIGH SPEED FILM FROM
  CARRY-ON AND CHECKED ARTICLES

- PASSENGERS MAY REQUEST PHYSICAL INSPECTION OF
  PHOTOGRAPHIC EQUIPMENT AND FILM PACKAGES

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

**AAL 011200**

Confidential - Do Not Copy or Disclose

Page 32

2.   Whenever a screening device exposes checked baggage to more than one milliroentgen of radiation during the inspection, a sign shall be posted that states the following:

   • REMOVE FILM OF ALL KINDS FROM CHECKED ARTICLES

D.   **BAGGAGE REQUIREMENTS**.

   1.   **Weapons in Checked Baggage.**

      a.   At every point where passengers tender checked baggage for transport, passengers shall be advised of their obligation to notify the air carrier of firearms in checked baggage.

      b.   Notification to the passengers shall be accomplished by using written or verbal notice.  Notifications used to meet this requirement must include the following language:

      **FAA REGULATIONS REQUIRE THAT FIREARMS IN CHECKED BAGGAGE MUST BE DECLARED AND UNLOADED.**

      • Passengers failing to declare firearms or transporting loaded firearms are subject to substantial civil penalties.

      c.   When used, signs displaying the obsolete language, "Passengers failing to declare firearms or transporting loaded firearms are subject to a civil penalty of $10,000," may be used through December 31, 2001.

   2.   **Passenger Control of Baggage.**

      a.   **The air carrier shall:**

         (1)   notify all passengers at check-in to control their baggage to prevent the introduction of dangerous items without their knowledge, and

         (2)   warn all passengers not to accept items from unknown persons.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011201

Confidential - Do Not Copy or Disclose

Page 33

    b.    Notification to the passengers shall be accomplished by using written or verbal notice. (These notifications are independent of those public announcements required to be made by airport operators.)

    3.    **Baggage Subject To Search.** At each baggage acceptance point, notify passengers that carry-on items and checked baggage are subject to search. This notification must be accomplished by using a written or verbal notice.

E.    **NOTIFICATION REQUIREMENTS OUTSIDE THE UNITED STATES.** Outside the United States,

    1.    Except for the screening checkpoint sign required in paragraph B.2. of this section, notification requirements identified in this section must be provided to all passengers.

    2.    Signs must be posted in English and restated in the predominant local language.

    3.    Whenever the sign or notification requirements of this section cannot be carried out, the air carrier must immediately notify its assigned PSI, following the procedures outlined in section XV., paragraph A.2. of this program.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011202

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Pages 34 through 39

**THIS PAGE INTENTIONALLY LEFT BLANK**

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011203

Confidential - Do Not Copy or Disclose

Page 40

IV.  **SCREENING PLANS AND EQUIPMENT.**

A.   **SCREENING PLANS.**  Persons are screened as they enter the sterile
     area (see IV.B. below) of a concourse, a hold area or a gate.

     1.   **Concourse Plan.**  A concourse plan is in place where both
          of the following factors exist:  (1) the exit lane of a
          checkpoint is configured to routinely serve deplaning
          passengers; and (2) that checkpoint also serves more than
          three boarding gates.

     2.   **Hold Area Plan.**  A hold area plan is in place where one of
          the following factors exist:  (1) the exit lane of a
          checkpoint is configured so as to be separated from, and
          not routinely serve, deplaning passengers irrespective of
          the number of boarding gates served by that checkpoint; or
          (2) a checkpoint is configured to serve three or less
          boarding gates irrespective of where deplaning passengers
          exit.

     3.   **Gate Plan.**  A gate plan exists where persons are screened:
          (1) as they leave the gate for the airplane or enter a
          jetway or ground transport vehicle; or (2) after they have
          deplaned but before they enter a sterile area (i.e.,
          reverse screening checkpoints or screening checkpoints
          between a Federal Inspection Station at an international
          arrivals facility and a sterile area).  A gate plan
          checkpoint does not routinely have an exit lane.

B.   Sterile Areas.  A sterile area may be established by ▇▇▇▇▇▇
     ▇▇▇▇▇▇▇▇▇ that no explosives, incendiaries, or deadly or
     dangerous weapons or unauthorized person(s) are within the area
     and that all persons entering the area are screened to prevent
     or deter the introduction of such objects.  The following
     requirements shall be met:

     1.   Sterile areas shall be properly controlled against access
          by unauthorized persons.

     2.   Inspection is required to ascertain that a sterile area is
          cleared of unauthorized persons and explosives,
          incendiaries, or deadly or dangerous weapons each time it
          is put into operation following a period of non-control.

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011204

Confidential - Do Not Copy or Disclose

Page 41

3.    The area shall be controlled to prevent or deter the
      unauthorized introduction of explosives, incendiaries, or
      deadly or dangerous weapons.

4.    Any person who is screened, enters the sterile area, and
      then exits from it to a public area for any reason shall
      be rescreened upon entry.

C.  **SCREENING EQUIPMENT OPERATION AND TESTING.**

    1.    **Walk-Through Metal Detectors.**  This equipment is used to
          conduct screening of persons.  A visual or audio alarm
          indicates the presence of metal.

    2.    **Hand-Held Metal Detectors.**  This equipment is used to
          locate metal on the person when he or she has alarmed the
          walk-through detector.  The hand-held device should not be
          used routinely in lieu of walk-through metal detector
          screening.

    3.    **Walk-Through Metal Detector Testing.**  To assure that each
          walk-through detection device is operating at an effective
          level, the following procedures shall be followed:

          a.    For each detection device used by the air carrier, an
                initial test will be conducted by FAA to establish
                the minimum setting at which that device shall be
                operated.  A sticker will be affixed to the machine
                by the FAA stating this setting.

          b.    To assure there is no undetected deterioration in the
                effectiveness of the device, an operational test
                shall be conducted by the air carrier each time the
                machine is put into service.  An operational test
                shall be conducted ██████████████  Continuous operation of a
                metal detector consists of the period of time from
                its being turned on and put into operational use
                until it has been turned off.  A metal detector which
                has been turned off for any reason shall be tested
                using the operational test when it is again put into
                service.  Additionally, a metal detector which has
                been left unattended for any period of time

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011205

Confidential - Do Not Copy or Disclose

in an area where it is accessible to unauthorized persons, shall be tested using the operational test prior to reuse. Results of operational tests for each detection device shall be recorded and maintained for at least 30 days.

c.  An operational test piece as specified in paragraphs A.7. or A.8. of appendix VI. shall be used to perform the test. The person conducting the test shall divest himself or herself of all extraneous metal (rings, wristwatches, coins, etc.) prior to commencing the test. The operational test piece shall be carried in a vertical position at the waist level through the approximate center of the device at a normal walking speed three times in the direction of passenger travel. The device must alarm on all three passes to be in satisfactory operating condition. A device which fails to alarm as required is not in satisfactory operating condition and shall not be used until the sensitivity is adjusted to a level where the device alarms as required.

d.  ██████████████████████████████████████ The air carrier may adjust the device in response to these problems provided FAA is notified of the adjustment.

e.  *The FAA will periodically test all detection devices in the system.* A test will also be conducted whenever a device is moved to a new location, or whenever the device has been adjusted by the air carrier. ████████████████████████ Each time a test is completed, the FAA sticker on the machine shall be annotated to reflect the test date, setting, and the initials of the person conducting the test.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011206

Confidential - Do Not Copy or Disclose

Page 43

    f.    A detection device which fails the FAA test is not considered to be operating at an acceptable level and must be adjusted or replaced by the air carrier within 4 days to assure the required detection performance. Detection devices which are not adjusted or repaired within 4 days to meet this detection standard shall not be used for screening.

    g.    The FAA office responsible for conducting the test at times may be unable to conduct the test within 4 days of the time a new device is installed, a device is moved to a new location, or an adjustment is made by the air carrier. In these cases, the air carrier may request authorization from the FAA PSI to use the device pending completion of the test. Upon receipt of this authorization and meeting the operational test requirement, the device may be used.

4.    **Hand-Held Metal Detector Testing.** At least once each day hand-held detectors used for screening shall be tested to ascertain that the device is operating at an effective level. This test shall be accomplished by activating the device and placing it in close proximity (2 to 4 inches) to metal. A properly operating device will indicate the detection of metal by audio alarm as the unit nears the test object.

5.    **X-ray Inspection Systems.** X-ray systems may be used for the inspection of hand-carried or checked items. FAA approval must be obtained prior to the installation and use of a x-ray system. The x-ray baggage inspection system shall be operated and maintained as follows:

    a.    **The x-ray system shall meet the performance standards for cabinet x-ray systems issued by the Food and Drug Administration (FDA), Department of Health, Education, and Welfare. Systems manufactured prior to April 25, 1974, shall meet either the guidelines published in the Federal Register (38 F.R. 21442, August 8, 1973) or the performance standards published in 21 CFR 1020.40 (39 F.R. 12985, April 10, 1974). Systems manufactured after April 24, 1974, shall meet the standards published in 21 CFR 1020.40 (39 F.R. 12985, April 10, 1974).**

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011207

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 44

b.  A radiation survey shall be conducted for each x-ray
    in use when initially installed and at least every
    12 months to assure that performance standards are
    being met.  Whenever it becomes known that a x-ray
    device does not meet performance standards described
    in 5.a. above, as a result of relocation or
    otherwise, its use shall be immediately discontinued
    until appropriate corrective action is completed.  A
    copy of the results of the most recent radiation
    survey conducted for each x-ray in use shall be
    maintained at the air carrier's principal business
    office and the place where the x-ray surveyed is in
    operation.  These documents shall be made available
    for inspection upon request by FAA.

c.  Each x-ray operator shall be given initial and
    recurrent training which includes safety aspects of
    the system in use as well as technical guidance in
    explosive, incendiary, or deadly or dangerous weapon
    identification through x-ray utilization.

d.  X-ray systems must be operated at a level to ensure
    maximum effectiveness in detecting weapons,
    explosives, and other dangerous objects and must
    meet imaging capabilities as follows:

    (1)  Systems used to inspect carry-on items or
         small parcels ███████████████████████████
         ████████████████████████████████████████████

    (2)  Systems used to inspect checked baggage or
         freight must distinguish ██-gauge wire under
         the ████ step using a Test Step Wedge
         specified in ASTM Standard F792-82.

    (3)  If only ██-gauge wire can be seen at the
         required step, the system may be used but must
         be adjusted ████████████████ to distinguish ██-
         gauge wire.

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011208

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 45

(4)    If only ■-gauge wire can be seen at the required step, the system may be used but must be adjusted within 24 hours to distinguish ■-gauge wire.

(5)    Whenever ■-gauge wire cannot be seen at the required step, the use of the system shall be discontinued immediately, and the system shall not be used until it has been adjusted or repaired to distinguish ■- gauge wire.

(6)    The carrier shall conduct a daily test of each system using the Test Step Wedge specified in the ASTM Standard F792-82 prior to using the system.  Notification shall be made to the local FAA CASFO/CASFU whenever each tested system is unable to distinguish ■-gauge wire. Results of tests shall be recorded and maintained for at least 30 days.

e.    The x-ray system shall not be used unless the sign requirements of section III. of this program are met.  If requested by passengers, their photographic equipment and film packages shall be physically inspected without exposure to an x-ray system.

f.    Each person working at a screening point where x-ray is used shall be provided with an individual personnel dosimeter, which is to be worn when on duty at a screening point where x-ray is in use. Each dosimeter used shall be evaluated at the end of each calendar month.  A record of operator duty time and the results of dosimeter evaluations shall be maintained by the air carrier.  These records shall be made available to the operator upon request. (This shall be implemented only so long as dosimeters are required under 14 CFR part 108.)

g.    X-ray systems under the operational control of U.S. air carriers in foreign countries shall comply with the procedures outlined above.  However, local laws/regulations may take precedence.  Air carriers shall immediately notify the FAA of each location where compliance is prohibited by local laws/regulations.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011209

Confidential - Do Not Copy or Disclose

Page 46

    h.    X-ray systems may be used to inspect checked baggage and other checked articles.  The requirements of section IV.C.5. of this program shall apply to x-ray systems used to inspect checked baggage and other checked articles.

6.    **Physical Search of Hand Carried/Carry-on Items--Testing**. Where physical search of carry-on items is conducted, FAA will test the proficiency of such search by routinely using toy firearms and simulated explosive devices in carry-on items.

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011210

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Pages 47 through 49

**THIS PAGE INTENTIONALLY LEFT BLANK**

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011211

Confidential - Do Not Copy or Disclose

Page 50

V.   **AIRPLANE SECURITY.**

A.   **ACCESS TO AIRPLANES.**  Unauthorized access to each airplane must
     be prevented using one of the procedures outlined in 1., 2., or
     3. of this paragraph.

     1.   The airplane is attended.  When an airplane is not
          attended, then,

     2.   Each of the procedures outlined in a. through f. of this
          subparagraph must be completed.

          a.   Shut cabin doors.

          b.   Move jetway bridges away from the airplane.  If
               doors leading into the jetway bridge are equipped
               with locking devices and those doors are shut and
               locked, then

               (1)   the jetway bridge does not need to be moved
                     away from the airplane; and

               (2)   ████████████████████████████████████

          c.   Move stairs away from the airplane.

          d.   Shut cargo doors, and shut ██████████████
               compartments not in use.

          e.   ████████████████████████████████████████
               ████████████████████████████████████████

               (1)   ██████████████████████████████

               (2)   ████████████████████████████.

          f.   Before placing an airplane that has been protected
               using the procedures in 2.a. through e. of this
               paragraph back into passenger operations, ████████
               ████████████████████████████████████████
               ████.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011212

Confidential - Do Not Copy or Disclose

Page 51

3.  These access control procedures only apply to airplanes removed from passenger operations ███████████████. An airplane need not be protected using the procedures outlined in 1. or 2. of this paragraph if the airplane is:

a.  ██████████████████████  The airplane must be protected per 1. or 2. of this paragraph after it ██████████████████████ or

b.  ██████████████████████The airplane must be searched for items that do not belong ██████████████████████

(1)  The search of the airplane shall include:

(a)  ██████████████████████

(b)  ██████████████████████.

(2)  Once the search has been completed, the airplane must be protected using the procedures outlined in 1. or 2. of this paragraph.

(2)  If the airplane is placed back into passenger operations after the search has been completed, that search meets the airplane search requirements of paragraph C. of this section.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011213

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 52

B.    **TAMPERING WITH OR UNAUTHORIZED ACCESS TO AN AIRPLANE, OR
      DISCOVERY OF A SUSPECT ITEM.**  For any indication of tampering
      with or unauthorized access to an airplane, the direct air
      carrier employee or authorized air carrier representative shall:

      1.    immediately notify the GSC or air carrier management
            representative,

      2.    conduct a search of the entire passenger cabin; cockpit;
            cargo hold areas; and ███████████ compartments of
            the airplane for items that do not belong.  The search of
            the cabin shall include ████████████████████████████
            ███████████████████████████████████████████████████

      3.    if during the search a suspect item is discovered or
            actual tampering with an airplane is detected, immediately
            notify the appropriate law enforcement officials.

C.    **AIRPLANE SEARCHES.**  The measures outlined in this paragraph are
      not required for airplanes destined for or arriving from █████.

      1.    The following measure shall be applied ████████████████
            ████████ within the United States, its territories and
            commonwealths, for any airplane destined for an
            international location:

            Before loading cargo or baggage, search the cargo hold
            areas for items that do not belong.

      2.    The following measures shall be applied at:

      •     ████████████████████████████████████████████
            ███████████████████████████████

      •     ███████████████████████████████████████████
            ██████████████████:



      a.    Search the empty passenger cabin for items that do
            not belong, before boarding originating or
            reboarding transit passengers.  The search of the
            passenger cabin shall include ████████████████████
            ████████████████████████████████████████████████

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011214

Confidential - Do Not Copy or Disclose

Page 53

     b.   When an airplane's final destination is an international location and ███████████ ████████████████████████████████ the search outlined in 2.a. of this paragraph may be conducted at the airplane's ████████.

     c.   When an airplane's first landing point is in the United States, its territories and commonwealths, from an international location ███████████████ ███████ the search outlined in 2.a. of this paragraph may be conducted at the █████████ ████████████████████████.

  3.   The following measure shall be applied at the last point of departure █████████████ ██████████████, to all airplanes destined for an international location:

     Search all open ████████████ compartments of the airplane for objects that do not belong.

D.   **PERSONNEL REQUIREMENTS**.

  1.   The air carrier must ensure that personnel servicing airplanes are told to be alert to the possibility of tampering with or unauthorized access to an airplane.

  2.   Personnel conducting the inspections and searches required in this section must be familiar with the airplane. Personnel must be provided instructions for notifying:

     a.   the GSC or air carrier management representative if tampering with or unauthorized access to an airplane is suspected, or a suspect item is detected; and

     b.   appropriate law enforcement officials, if warranted.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011215

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Pages 54 through 59

**THIS PAGE INTENTIONALLY LEFT BLANK**

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

**AAL 011216**

Confidential - Do Not Copy or Disclose

Page 60

VI.    **AREA SECURITY.**

A.    **AREAS AND FACILITIES.**

    1.    The air carrier shall control access to each of its air
operations areas.

    2.    The air carrier shall control access to baggage rooms,
baggage transfer areas, and other non- public areas.

    3.    Fire doors and operational doors, when being used by
employees during the course of their regular duties, when
leading to non-public areas may be considered adequately
███████████████████████████████████████████ During non-operational
periods, or when challenge procedures are not in effect,
these doors shall be secured or controlled by other means
acceptable to FAA.

    4.    The air carrier shall challenge unauthorized or unbadged
persons in non-public areas and shall report the presence
of such persons to a supervisor, law enforcement officer,
or airport authorities, as appropriate.

    5.    ████████████████████████████████████████████████████

B.    **PERSONNEL IDENTIFICATION REQUIREMENTS.**

    1.    Unless under authorized escort, all air carrier employees
and contractor employees in the SIDA of an airport, shall
wear, ███████████████████████ visible
an airport-issued, or air carrier-issued and airport-
approved, identification medium.

    2.    Any employee whose air carrier or airport identification
medium is lost, stolen, or misplaced shall report such
loss to his or her supervisor immediately.

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011217

Confidential - Do Not Copy or Disclose

Page 61

C.    **SECURITY IDENTIFICATION DISPLAY AREA (SIDA) TRAINING
      REQUIREMENTS.**

    1.    The air carrier shall provide the following training to
      persons prior to issuing identification media which is
      airport-approved and authorizes unescorted access to a
      SIDA or an exclusive area:

        (i)    Flight and cabin crew members shall be trained as
        part of the initial and recurrent training as
        specified in Appendix XIII of this program.

        (ii)   All air carrier ground based employees and
        contractors shall be trained in accordance with the
        SIDA curriculum appearing in that airport's approved
        security program.  The air carrier can provide the
        training or can arrange for the airport operator to
        provide the training.  Persons having received SIDA
        training from the airport operator need not be
        trained again if the air carrier verifies the
        completion of such training prior to granting
        unescorted access to the SIDA.

        (iii)  Air carrier ground based employees and contractors
        who have completed SIDA training for one airport
        (e.g., mechanics, inspectors, administrators) shall
        be provided site-specific SIDA training as a
        condition of unescorted access to the SIDA of
        another airport only if such temporary access
        exceeds a 48 hour period.  Such site-specific SIDA
        training may be conducted, verbally, by video, or by
        providing the ground based employee or contractor a
        instructional site-specific hand-out acceptable to
        the operator of the SIDA for which access is being
        granted.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011218

Confidential - Do Not Copy or Disclose

Page 62

2.    The air carrier shall maintain a record of ground based
employees and contractors completing training authorizing
unescorted access, other than temporary access, to its
exclusive area of a particular SIDA in accordance with the
preceding paragraph C.  That record shall be maintained at
the airport subject to the exclusive area agreement for a
minimum of 180 days after the employee's or contractor's
termination.  That record shall be made available, during
operational hours, to the FAA upon request of the
Administrator or a special agent.

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011219

Confidential - Do Not Copy or Disclose

Pages 63 through 69

THIS PAGE INTENTIONALLY LEFT BLANK

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011220

Confidential - Do Not Copy or Disclose

Page 70

VII.  **DOMESTIC FLIGHTS.**  This section applies to all scheduled and
public charter flights taking off AND landing only within the
United States, its territories and commonwealths.

A.    **CHECKED BAGGAGE ACCEPTANCE.**

1.    **Persons.**  The air carrier shall only accept the personal
checked baggage of an individual presenting a valid travel
authorization, and only when that person offers the
checked baggage.  One member of a family group traveling
together may offer checked baggage belonging to each
member of the family.

2.    **Sports Team and Musical Band Equipment.**



a.

b.

c.

d.

(1)

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011221

—

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 71

(2) 

3.    **Acceptance Points.**  A direct air carrier employee or authorized air carrier representative shall only accept checked baggage from passengers at the following locations:

a.    Ticket counters and boarding gates located inside the airport terminal.

b.    Curbside positions at the airport terminal.  Checked baggage accumulated at curbside positions shall be attended by a direct air carrier employee or authorized air carrier representative.

c.    On-airport locations not described in a. or b. of this subparagraph that are within, or are used as part of, the airport perimeter when:

(1)    accepted checked baggage remains within an area controlled by the provisions of 14 CFR 107.13 or 14 CFR 107.14 as outlined in the local airport security program, while enroute to the baggage make-up area or the airplane; and

(2)    the air carrier has notified its assigned **PSI, in** writing, of all such locations.

d.    Off-airport locations, and on-airport locations not described in a. through c. of this subparagraph, when the air carrier follows each of the procedures outlined in (1) through (4) of this subparagraph.

(1)    At least 7 days prior to initial start up, the air carrier shall notify its assigned PSI of each location where checked baggage will be accepted, and whether the operation will be permanent (occurring 4 or more days in a calendar week) or periodic (occurring 3 or less days in a calendar week).  When a location will only be used for specific dates, those dates shall be provided to the air carrier's assigned PSI.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011222

Confidential - Do Not Copy or Disclose

Page 72

(a)    The PSI will provide a written response to the air carrier, authorizing checked baggage acceptance at each location if the requirements are met. Once the air carrier receives written approval from its assigned PSI, renewal of that approval is not necessary.

(b)    FAA approval to accept checked baggage at any specific location may be rescinded if it is determined that the air carrier is not operating under the procedures outlined in this program.

(2)    The air carrier shall ensure that checked baggage is accepted per the procedures outlined in this program, by:

(a)    a direct air carrier employee; or

(b)    an authorized air carrier representative who also performs checked baggage acceptance services at the intended departure airport.

(3)    The air carrier shall ensure that checked baggage is transported from these locations to the baggage make-up area or airplane, in a vehicle or container in which unauthorized access is controlled using ▮▮▮▮ the procedures outlined in (3)(a) through (3)(c) of this subparagraph.

(a)    All doors, portals and compartments that could provide access to the accepted checked baggage are locked,

(b)    All doors, portals and compartments that could provide access to the accepted checked baggage have had seals applied using the procedures outlined in appendix IX. of this program, or

(c)    The checked baggage is transported under the escort of a direct air carrier employee or authorized air carrier representative.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011223

Confidential – Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 73

(4)    The air carrier shall ensure that a GSC
       personally observes the checked baggage
       acceptance and control procedures:

       (a)    the first full day that a location opens
              for passenger check-in,

       (b)    at least once each calendar week at
              permanent locations, and

       (c)    at each periodic location.

4.    **Control of Checked Baggage**.

      a.    The air carrier shall prevent unauthorized access to
            checked baggage, from the time of acceptance until
            delivered to baggage claim at its intended
            destination point.

      b.    When checked baggage is moved into or through a
            sterile area, that baggage shall be:

            (1)    screened prior to entering a sterile area; or

            (2)    under the continuous control of a direct air
                   carrier employee or authorized air carrier
                   representative.

5.    **Checked Baggage Destination Tags**.

      a.



      b.

      c.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011224

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 74

6.    **Firearms in Checked Baggage.**  Firearms in checked baggage
      shall be transported per 14 CFR 108.11(d).  Upon
      presentation of a firearm for transport, the air carrier
      shall ensure that:

      a.    it is in a case suitable to protect it under normal
            baggage handling conditions;

      b.    the passenger declares that the firearm is unloaded;

      c.    when the firearm is other than a shotgun, rifle, or
            other firearm normally fired from the shoulder
            position, the baggage in which it is carried is
            locked, and only the passenger checking the baggage
            retains the key or combination; and

      d.    the baggage containing the firearm is not carried in
            the cockpit or in an area that is accessible to
            passengers.

7.



      a.

      b.

      c.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011225

Confidential - Do Not Copy or Disclose

Page 75

B.    **PROFILING PASSENGERS.**

    1.    At the initial point of contact with each originating passenger checking baggage, the air carrier shall apply a profile using one of the processes outlined in this subparagraph.

        a.    Apply an FAA-approved computer assisted passenger screening (CAPS) system.

        b.    For each 61 seat and above domestic scheduled and public charter passenger operation, the air carrier shall:

            (1)    submit a proposed method for a random selection of ▮▮▮▮▮▮▮▮ of originating passengers checking baggage as selectees, and a proposed training curriculum that meets the training requirements outlined in paragraph G. of this section for those direct air carrier employees or authorized air carrier representatives who will be applying it, to its assigned PSI for approval.

            (2)    within 30 days after PSI approval of a random selection method and training curriculum, the air carrier shall randomly designate ▮▮▮▮ ▮▮▮▮ of originating passengers checking baggage as selectees, using direct air carrier employees or authorized air carrier representatives trained to apply the random selection method; and

            (3)    after it has been determined that the passenger has not been designated as a random selectee, apply the FAA Domestic Selection Criteria to him/her.

        c.    For each 61 seat and above domestic scheduled and public charter passenger operation described in 1.b. of this paragraph, apply the FAA Domestic Selection Criteria to each originating passenger checking baggage until an FAA-approved random selection method is implemented and the FAA-approved profiler training program is completed.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011226

Confidential - Do Not Copy or Disclose

Page 76

    d.    For each domestic scheduled and public charter passenger flight departure that does not meet the aircraft seating configuration outlined in 1.b. of this paragraph, apply the FAA Domestic Selection Criteria to each originating passenger checking baggage.

2.    The checked baggage belonging to a passenger identified as a selectee shall be cleared ███████████ point using the procedures outlined in paragraph E. of this section.

C.    **PASSENGER IDENTITY CHECK**.  At the initial point of contact with each originating passenger checking baggage, who appears to be 18 years of age or older, the air carrier shall request that the passenger present a valid ID.  If the ID presented contains an expiration date, the air carrier shall verify that it has not expired.

    1.    The air carrier shall request that the passenger present one of the following ID's.

        a.    A photo ID issued by a government authority,

        b.    Two other forms of ID, at least one of which shall be issued by a government authority, or

        c.    ███████████████████████████████████

    2.    The passenger shall be designated as a selectee if one of the following conditions apply.

        a.    The passenger cannot produce the requested ID,

        b.    The ID does not match the name on the passenger's travel authorization, ██████████



        c.    ███████████████████████████████████

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

**AAL 011227**

Confidential – Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 77

3.  Verification of any one of the following conditions
    (positive signs) clears a passenger



a.

b.

c.

4.  The checked baggage belonging to a passenger identified as
    a selectee shall be cleared ████████████████ using
    the procedures outlined in paragraph E. of this section.

5.  A Federal LEO,



Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION. WASHINGTON. DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011228

Confidential - Do Not Copy or Disclose

Page 78

D.    **PASSENGER QUESTIONING.**

1.    At the initial point of contact with each passenger, he or she must be questioned individually, verbally or in writing, to obtain an answer of "YES" or "NO" to each of the following questions.

a.    **QUESTION #1:** Has anyone unknown to you asked you to carry an item on this flight?

b.    **QUESTION #2:** Have any of the items you are traveling with been out of your immediate control since the time you packed them?

2.    The air carrier may question a family group traveling together, ensuring that a response is received from each member.  A parent may answer for children under the age of 12.

3.    A response of "YES" to either question:

If the passenger answers "YES" to question #1 and actually accepted an item for transport, the passenger must, under the supervision of the air carrier, identify the item that he or she has been asked to carry. The suspect item must be cleared using the procedures outlined in paragraph F. of this section.

If the passenger answers "YES" to question #2,:

(1)    Screen each piece of his or her carry-on items or checked baggage that have been out of their control using EDS or AT equipment.  EDS or AT equipment must be operated using the procedures outlined in the air carriers' FAA-approved amendment, or

(2)    Under the direct supervision of the air carrier, the passenger shall be asked to open and inspect each piece of his or her carry-on items and checked baggage that have been out of their control.  If the passenger discovers that an unknown, therefore suspect, item has been added to the contents of his or her carry-on items or checked baggage, the suspect item must be cleared using the procedures outlined in paragraph F. of this section.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011229

Confidential - Do Not Copy or Disclose

Page 79

4.    If the passenger answers "YES" to question #2, the checked
      baggage inspection is not required if the air carrier
      determines that the checked baggage was left in the
      control of:

      a.    ████████████████████████████████████████

      b.    ███████████████████████████████████████
            █████████████████████████████  The air carrier
            shall only accept this information as a clearance
            procedure, when the air carrier has verified by
            personal observation that the procedures for checked
            baggage storage are adequate on ██████████
            providing passengers to the air carrier.

5.    When a written form is used, a specific verbal or written
      response to each of the questions must be obtained from
      the passenger.  When a written form is used for non-
      English speaking passengers, it shall be:

      a.    printed in the appropriate language and written so
            that the non-English speaking passenger can
            communicate that he or she understands the questions
            by recording his or her responses; and

      b.    designed so that the air carrier can determine if
            the responses indicate the need to clear carry-on
            items or checked baggage, or both.

6.    When a printed sign is used, the air carrier shall
      instruct each passenger to read the sign, and then obtain
      a specific verbal or written response to each of the
      questions.

7.    The air carrier may use an electronic notice to pose the
      questions to the passengers.  When an electronic notice is
      used, the system must ensure that:

      a.    the passenger provides responses to each of the
            questions; and

      b.    a failure to respond or a response of "YES" to
            either question will alert the air carrier of the
            need to clear carry-on items or checked baggage, or
            both.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011230

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 79a

8.    A translator may be used to pose the questions if the translator is a direct air carrier employee or an authorized air carrier representative.

9.    If the air carrier is unable to communicate with the passenger to determine the answers to each of the questions, then ███████ be cleared using the procedures outlined in paragraph F. of this section.

10.   If the passenger refuses to answer either of the questions, or refuses to conduct the inspection required by paragraph D.3. of this section, the air carrier shall:

a.    not transport any of the passengers' carry-on items and checked baggage; or

b.    clear the passengers' carry-on items and checked baggage using the procedures outlined in paragraph F. of this section before transporting them.



A Federal LEO,

**CLEARANCE PROCEDURES FOR CHECKED BAGGAGE BELONGING TO A SELECTEE IDENTIFED BY PASSENGER PROFILING OR BY THE PASSENGER IDENTITY CHECK:** The checked baggage belonging to a passenger identified as a selectee shall be cleared at ███████ The approved clearance procedures are listed in ███████ The air carrier shall ensure that no one other than the carrier, its agent or government agents have access to the contents or any of the compartments of the bags after they have been cleared.

Screen the checked baggage using EDS equipment. EDS equipment shall be operated using the procedures outlined in the air carriers' FAA-approved amendment. ███████

Screen the checked baggage using AT equipment. AT equipment shall be operated using the procedures outlined in the air carriers' FAA-approved amendment. ███████

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011231

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 79b

In the presence of the passenger, screen the checked baggage
using an ETD device 

                      The ETD device shall be operated using the
procedures outlined in the air carriers' FAA-approved
amendment.

4.    Conduct a Passenger Baggage Match.

      a.

            (1)

            (2)

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011232

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 79c



b.       Passenger Baggage Match

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011233

Confidential - Do Not Copy or Disclose

Page 79d

F.    **CLEARANCE PROCEDURES FOR SUSPECT ITEMS, OR FOR CARRY-ON ITEMS AND CHECKED BAGGAGE BELONGING TO A PASSENGER UNABLE TO PROVIDE ANSWERS DURING PASSENGER QUESTIONING:** Suspect items identified through questioning, or carry-on items and checked baggage belonging to a passenger who is unable to communicate responses to the questions posed by the air carrier, shall be cleared. The approved clearance procedures are listed ███████████
███████████████████

1.    Screen the suspect item, or carry-on item/checked baggage using EDS or AT equipment. EDS and AT equipment shall be operated using the procedures outlined in the air carriers' FAA-approved amendment. ████████████
███████████████████ ████████████████

2.    In the presence of the passenger,:

      Examine the SUSPECT ITEM or CARRY-ON ITEM using an ETD device. The ETD device shall be operated using the procedures outlined in the air carriers' FAA-approved amendment, or

      Examine the CHECKED BAGGAGE using an ETD device that ████████████████████████████████████
      ████████████████████████████
      ██████ The ETD device shall be operated using the procedures outlined in the air carriers' FAA-approved amendment, and

      (c)    █████████████████████████████████████

3.    In the presence of the passenger, ██████ the suspect item or carry-on item/checked baggage. A physical inspection of each suspect item, or carry-on item/checked baggage, and its contents shall be conducted using a qualified screener. If it is determined through a physical inspection that the ████████ suspect item or carry-on item/checked baggage has been altered or added to, the suspect item or carry-on item/checked baggage shall be subjected to a two-plane x-ray inspection to ensure that an explosive or incendiary has not been concealed within it.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011234

Confidential - Do Not Copy or Disclose

Page 79e

G.    **TRAINING REQUIREMENTS FOR PROFILERS AT DOMESTIC LOCATIONS:**

1.    The air carrier shall train each direct air carrier employee or authorized air carrier representative who applies any profiling process outlined in paragraphs B. through D. of this section.

2.    The training shall be conducted using the training curriculum guidelines outlined in appendix XI., paragraph D.

3.    A training record shall be maintained for each direct air carrier employee and authorized air carrier representative who applies any profiling process outlined in paragraphs B. through D. of this section. The training record shall:

    a.    contain the name of the trainee and the date that training was completed;

    b.    be accessible at the airport where the direct air carrier employee or authorized air carrier representative is applying any profiling measure; and

    c.    retained for as long as the direct air carrier employee or authorized air carrier representative applies profiling measures, and for 90 days after reassignment or employment termination.

H.    **DOMESTIC FLIGHT SEGMENT PART OF UNINTERRUPTED TRAVEL TO ISRAEL.** Checked baggage belonging to a passenger whose travel authorization or itinerary indicates that the passenger's next domestic flight segment is part of uninterrupted travel to or through Israel shall be cleared using ▮▮▮▮ the procedures outlined in this paragraph.

1.    Conduct a passenger/baggage match ▮▮▮▮▮▮▮▮▮▮▮



2.    Screen the checked baggage ▮▮▮▮▮▮▮▮ point using EDS equipment. EDS equipment shall be operated using the procedures outlined in the air carriers' FAA-approved amendment.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011235

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 79f

3.  Screen the checked baggage ███████████████ using
    AT equipment.  AT equipment shall be operated using the
    procedures outlined in the air carriers' FAA-approved
    amendment.

4.  In the presence of the passenger, screen the checked
    baggage ████████████████████ using an ETD device
    ████████████  (An ETD device deployed at the passenger
    screening checkpoint may be used as approved by the FAA).
    The ETD device shall be operated using the procedures
    outlined in the air carriers' FAA-approved amendment.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011236

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 79g

**THIS PAGE INTENTIONALLY LEFT BLANK**

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011237

Confidential - Do Not Copy or Disclose

Page 80

VIII. **INTERNATIONAL FLIGHTS DEPARTING FROM THE UNITED STATES**. This section applies to each scheduled and public charter passenger operation serving as the last point of departure from the United States, its territories and commonwealths, to an international destination.

A.   **CHECKED BAGGAGE ACCEPTANCE**.

    1.   **Persons**. The air carrier shall only accept the personal checked baggage of an individual presenting a valid travel authorization, and only when that person offers the checked baggage. One member of a family group traveling together may offer checked baggage belonging to each member of the family.

    2.   **Acceptance Points**. A direct air carrier employee or authorized air carrier representative shall only accept checked baggage from passengers at:

        a.   ticket counters and boarding gates located inside the airport terminal; or

        b.   curbside positions at the airport terminal only when each of the following conditions outlined in b.(1) though b.(3) of this subparagraph are met.

            (1)   Automated equipment, similar to the type used at the ticket counters, is used for passenger check-in.

            (2)   Checked baggage accumulated at curbside positions shall be attended by a direct air carrier employee or authorized air carrier representative.

            (3)   A GSC shall monitor curbside checked baggage acceptance procedures for international flights at least once each day during scheduled operations.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

**AAL 011238**

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 81

3.    **Control of Checked Baggage.**

    a.    The air carrier shall prevent unauthorized access to checked baggage, from the time of acceptance until delivered to baggage claim at its intended destination point.

    b.    When checked baggage is moved into or through a sterile area, that baggage shall be:

        (1)    screened prior to entering a sterile area; or

        (2)    under the continuous control of the air carrier.

4.    **Checked Baggage Destination Tags.**

    a.



    b.

    c.

5.    **Firearms in Checked Baggage.**  Firearms in checked baggage shall be transported per 14 CFR 108.11(d).  Upon presentation of a firearm for transport, the air carrier shall ensure that:

    a.    it is in a case suitable to protect it under normal baggage handling conditions;

    b.    the passenger declares that the firearm is unloaded;

    c.    when the firearm is other than a shotgun, rifle, or other firearm normally fired from the shoulder position, the baggage in which it is carried is locked, and only the passenger checking the baggage retains the key or combination; and

    d.    the baggage containing the firearm is not carried in the cockpit or in an area that is accessible to passengers.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011239

Confidential - Do Not Copy or Disclose

Page 82

6. 

   a.

   b.

B.   **PROFILING PASSENGERS.**

   1.   At the initial point of contact with each originating
        passenger checking baggage, the air carrier shall apply a
        profile using either one of the following processes.

        a.   Apply an FAA-approved computer assisted passenger
             screening (CAPS) system.

        b.   Apply the FAA Domestic Selection Criteria.

   2.   The checked baggage belonging to a passenger identified as
        a selectee shall be cleared ███████████████████ using
        the procedures outlined in paragraph E. of this section.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011240

Confidential - Do Not Copy or Disclose

Page 83

C.   **PASSENGER IDENTITY CHECK.**  At the initial point of contact with
each originating passenger checking baggage, who appears to be
18 years of age or older, the air carrier shall request that the
passenger present a valid ID.  If the ID presented contains an
expiration date, the air carrier shall verify that it has not
expired.

   1.   The air carrier shall request that the passenger present
one of the following ID's.

      a.   A photo ID issued by a government authority.

      b.   Two other forms of ID, at least one of which shall
be issued by a government authority.

      c.   ███████████████████████████████████████████

   2.   The passenger shall be designated as a selectee if one of
the following conditions apply.

      a.   The passenger cannot produce the requested ID,

      b.   The ID does not match the name on the passenger's
travel authorization, ███████████

         (1)   ███████████████████████████████████

         (2)   ███████████████████████████████████

      c.   ███████████████████████████████████████

   3.   Verification of any one of the following conditions
(positive signs) clears a passenger ████████████████



Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011241

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 84

a. 

b.

c.

4.     The checked baggage belonging to a passenger identified as
       a selectee shall be cleared ▮▮▮▮▮▮▮▮▮▮▮▮ using
       the procedures outlined in paragraph E. of this section.

3.     A Federal LEO, 

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011242

Confidential - Do Not Copy or Disclose

Page 85

D.    **PASSENGER QUESTIONING.**

1.    At the initial point of contact with each passenger, he or she must be questioned individually, verbally or in writing, to obtain an answer of "YES" or "NO" to each of the following questions.

a.    **QUESTION #1**: Has anyone unknown to you asked you to carry an item on this flight?

b.    **QUESTION #2**: Have any of the items you are traveling with been out of your immediate control since the time you packed them?

2.    The air carrier may question a family group traveling together, ensuring that a response is received from each member.  A parent may answer for children under the age of 12.

3.    A response of "YES" to either question:

a.    If the passenger answers "YES" to question #1 and actually accepted an item for transport, the passenger must, under the supervision of the air carrier, identify the item that he or she has been asked to carry.  The suspect item must be cleared using the procedures outlined in paragraph E. of this section.

b.    If the passenger answers "YES" to question #2,:

Screen each piece of his or her carry-on items or checked baggage that have been out of their control using EDS or AT equipment.  EDS or AT equipment must be operated using the procedures outlined in the air carriers' FAA-approved amendment, or

(2)    Under the direct supervision of the air carrier, the passenger shall be asked to open and inspect each piece of his or her carry-on items and checked baggage that have been out of their control.  If the passenger discovers that an unknown, therefore suspect, item has been added to the contents of his or her carry-on items or checked baggage, the suspect item must be cleared using the procedures outlined in paragraph E. of this section.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011243

Confidential - Do Not Copy or Disclose

Page 86

4.   If the passenger answers "YES" to question #2, the checked
     baggage inspection is not required if the air carrier
     determines that the checked baggage was left in the
     control of:

  a. a direct air carrier employee or an authorized air carrier
     representative,

  b. an individual personally known to the passenger, or

  c. an authorized ███████████████████. The air carrier
     shall only accept this information as a clearance
     procedure, when the air carrier has verified by personal
     observation that the procedures for checked baggage
     storage are adequate on █████████████ providing
     passengers to the air carrier.

5.   When a written form is used, a specific verbal or written
     response to each of the questions must be obtained from
     the passenger.  When a written form is used for non-
     English speaking passengers, it shall be:

  a.   printed in the appropriate language and written so
       that the non-English speaking passenger can
       communicate that he/she understands the questions by
       recording his/her responses; and

  b.   designed so that the air carrier can determine if
       the responses indicate the need to clear carry-on
       items or checked baggage, or both.

6.   When a printed sign is used, the air carrier shall
     instruct each passenger to read the sign, and then obtain
     a specific verbal or written response to each of the
     questions.

7.   The air carrier may use an electronic notice to pose the
     questions to the passengers.  When an electronic notice is
     used, the system must ensure that:

  a.   the passenger provides responses to each of the
       questions; and

  b.   a failure to respond or a response of "YES" to
       either question will alert the air carrier of the
       need to clear carry-on items or checked baggage, or
       both.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011244

Confidential - Do Not Copy or Disclose

Page 87

8.   A translator may be used to pose the questions if the
     translator is a direct air carrier employee or an
     authorized air carrier representative.

9.   If the air carrier is unable to communicate with the
     passenger to determine the answers to each of the
     questions, then all carry-on items and checked baggage
     belonging to that passenger shall be cleared using the
     procedures outlined in paragraph E. of this section.

10.  If the passenger refuses to answer either of the
     questions, or refuses to conduct the inspection required
     by paragraph D.3. of this section, the air carrier shall:

     a.   not transport any of the passengers' carry-on items
          and checked baggage; or

     b.   clear the passengers' carry-on items and checked
          baggage using the procedures outlined in paragraph
          E. of this section before transporting them.

11.  A Federal LEO,



Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011245

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 88

**CLEARANCE PROCEDURES FOR:**

- **CHECKED BAGGAGE BELONGING TO A SELECTEE IDENTIFIED BY PASSENGER PROFILING OR BY THE PASSENGER IDENTITY CHECK.**
  The checked baggage belonging to a passenger identified as a selectee shall be cleared ███████████████████. The approved clearance procedures are listed ███████████ ; AND

- **SUSPECT ITEMS, OR FOR CARRY-ON ITEMS AND CHECKED BAGGAGE BELONGING TO A PASSENGER UNABLE TO PROVIDE ANSWERS DURING PASSENGER QUESTIONING.** Suspect items identified through questioning, or carry-on items and checked baggage belonging to a passenger who is unable to communicate responses to the questions posed by the air carrier, shall be cleared. ████████████████████

  The air carrier shall ensure that no one other than the carrier, its agent or government agents have access to the contents or any of the compartments of the bags after they have been cleared.

1.  Screen the suspect item, or carry-on item/checked baggage using EDS equipment. EDS equipment shall be operated using the procedures outlined in the air carriers' FAA-approved amendment. ████████████████████ ████████

2.  Screen the suspect item, or carry-on item/checked baggage using AT equipment. AT equipment shall be operated using the procedures outlined in the air carriers' FAA-approved amendment. ████ ██████████████████████

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011246

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 89

3.    In the presence of the passenger,:

    a.    Examine the SUSPECT ITEM or CARRY-ON ITEM belonging
        to a passenger unable to provide answers during
        passenger questioning using an ETD device.  The ETD
        device shall be operated using the procedures
        outlined in the air carriers' FAA-approved
        amendment, or

    b.    Examine the CHECKED BAGGAGE belonging to a selectee,
        or belonging to a passenger unable to provide
        answers during passenger questioning using an ETD
        device ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (An ETD device deployed
        at the passenger screening checkpoint may be used as
        approved by FAA).  The ETD device shall be operated
        using the procedures outlined in the air carriers'
        FAA-approved amendment, and

    ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

4.    In the presence of the passenger, ▉▉▉ the suspect item
    or carry-on item/checked baggage.  A physical inspection
    of each suspect item, or carry-on item/checked baggage,
    and its contents shall be conducted using a qualified
    screener.  If it is determined through a physical
    inspection that the ▉▉▉▉ suspect item or carry-on
    item/checked baggage has been altered or added to, the
    suspect item or carry-on item/checked baggage shall be
    subjected to a two-plane x-ray inspection to ensure that
    an explosive or incendiary has not been concealed within
    it.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011247

Confidential - Do Not Copy or Disclose

Page 89a

F.   **TRAINING REQUIREMENTS FOR PROFILERS AT DOMESTIC LOCATIONS:**

1.   The air carrier shall train each direct air carrier employee or authorized air carrier representative who applies any profiling process outlined in paragraphs B. through D. of this section.

2.   The training shall be conducted according to the training curriculum guidelines outlined in appendix XI., paragraph D.

3.   A training record shall be maintained for each direct air carrier employee and authorized air carrier representative who applies any profiling process outlined in paragraphs B. through D. of this section.  The training record shall:

   a.   contain the name of the trainee and the date that training was completed;

   b.   be accessible at the airport where the direct air carrier employee or authorized air carrier representative is applying any profiling measure; and

   c.   retained for as long as the direct air carrier employee or authorized air carrier representative applies profiling measures, and for 90 days after reassignment or employment termination.

G.   **PASSENGER BAGGAGE MATCH.**  The air carrier shall conduct a passenger/checked baggage match using a verifiable tracking system, which demonstrates that a passenger's checked baggage is not transported on the intended flight without the passenger.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011248

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 89b

H.    **UNACCOMPANIED CHECKED BAGGAGE.**  The air carrier shall only
transport unaccompanied checked baggage as follows.

1.



    a.

    b.

    c.         EDS or AT equipment must be operated
using the procedures outlined in the air carriers'
FAA-approved amendment.

3.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011249

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 89c



4.

   a.

     (1)

     (2)

   b.

   c.               EDS or AT equipment must
be operated using the procedures outlined in the air
carriers' FAA-approved amendment.

4.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011250

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 89d

**THIS PAGE INTENTIONALLY LEFT BLANK**

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011251

Confidential - Do Not Copy or Disclose

Page 90

IX.   CARGO ACCEPTANCE AND CONTROL.

The following procedures are applicable to all scheduled
passenger and public charter flights departing from airports
within the United States, its possessions and territories.  This
program applies only to cargo items ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮  Certain procedures and definitions also
apply to Section XV., as specified in that section.

A.   Definitions.

      1.   **Accompanied Commercial Courier Consignments**:  Cargo
           that is associated with a passenger who receives
           specific compensation to be associated with such
           cargo, and is tendered by:
           a.   an indirect air carrier within the United
                States, or
           b.   a regulated or IATA agent outside of the United
                States.

      2.   **Cargo**:  Property▮▮▮▮▮▮▮▮▮▮▮▮▮▮
           ▮▮▮▮▮▮  tendered for air transportation,
           including unaccompanied baggage, accounted for on an
           air waybill.  All accompanied commercial courier
           consignments, whether or not accounted for on an air
           waybill, are also classified as cargo▮

      3.   **Indirect Air Carrier (IAC)**:  Any person or entity,
           within the United States, not in possession of an
           FAA air carrier operating certificate, that
           undertakes to engage indirectly in air
           transportation of property, and uses for all or any
           part of such transportation the services of a
           passenger air carrier.  This does not include the
           U.S. Postal Service (USPS) or its representative
           while acting on the behalf of the USPS.

      4.   **International Air Transport Association (IATA)
           Registered Cargo Agent**:  An agent that provides a
           cargo sales, booking, consolidation, or forwarding
           service to an air carrier outside the United States,
           and is currently approved and registered by IATA in
           accordance with the terms of IATA Resolutions 801
           and 811 - Cargo Agency Administration Rules.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011252

Confidential - Do Not Copy or Disclose

Page 91

5.  **Shipper**: The person or entity that originates and tenders cargo for air transportation, excluding air carriers and indirect air carriers.

B.  **Responsibility.**

The air carrier covered by this security program is responsible for the actions of its agent(s) and/or contractors that perform functions that are subject to the provisions of this security program.

1.  ████████ The notification shall also state that the requirements of this program are Sensitive Security Information (SSI) under 14 CFR Part 191, Protection of Sensitive Security Information. Disclosure of and access to SSI shall be restricted to persons with a need to know, and requests for such information shall be referred to the Administrator.

2.  ████████

C.  **Cargo Acceptance - General Requirements.**

1.  At the time of acceptance, the air carrier shall inspect all cargo ████ that may render the cargo unsafe to transport. Any cargo that appears to have been tampered with, ████ may not be transported. This procedure requires an ████ examination of containers or packaging and ████

2.  Where a Shipper's Security Endorsement (SSE) is required, it shall contain the following language and information:

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011253

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 92

"I certify that this cargo does not contain any
unauthorized explosives, incendiaries, or hazardous
materials.  I consent to a search of this cargo.  I
am aware that this endorsement and original
signature, along with other shipping documents, will
be retained on file for at least thirty days."

| Shipper's Name: | Date: |
|---|---|
|  |  |

| Signature of Shipper or Authorized Representative: |  |
|---|---|

| Print/Type Name of Individual Whose Signature Appears as Shipper or Authorized Representative: |  |
|---|---|

3.    Where personal identification information is
      required, it shall contain the following language
      and information:

      The air carrier shall review and record either:  1)
      **one** valid photo identification medium issued by a
      government authority, or 2) **two** other forms of valid
      identification at least **one** of which must be issued
      by a government authority.  If any ID presented
      contains an expiration date, the air carrier shall
      verify that it has not expired.

| Type of first personal identification reviewed: |  |  |
|---|---|---|

| Matching photo on ID? Indicate: | Yes | No |
|---|---|---|

| Number appearing on ID |  |
|---|---|

| Type of second personal identification reviewed (if the first was not a government issued photo ID): |  |
|---|---|

| Matching photo on ID? Indicate: | Yes | No |
|---|---|---|

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER S U.S.C. 552.

AAL 011254

Confidential - Do Not Copy or Disclose

Page 93

| Number appearing on ID: | |
|---|---|
| Name of person from whom shipment was accepted if different from the shipper: | |

4.   The required SSE and personal identification information may appear on any document, such as an air waybill or Shipper's Letter of Instruction, associated with the particular cargo shipment being offered by the shipper.

5.   The air carrier shall make all required SSEs and personal identification information on file available to the FAA.

D.   **Cargo Accepted on Behalf of an Air Carrier By Another Carrier.**

When an air carrier contracts to have another carrier (such as another air carrier, a foreign air carrier, or a code-share partner) accept cargo on its behalf, the air carrier remains responsible for the acceptance and handling of its cargo in accordance with this security program.

E.   **Indirect Air Carrier: Cargo Accepted Directly From An Indirect Air Carrier.**

1.   For each cargo consignment accepted from an indirect air carrier (IAC) operating with an FAA-approved security program, the air carrier shall comply with the following procedures before transporting such cargo on a passenger aircraft:

a.   Obtain a written certification from the IAC. The required certification may appear on any document, such as an air waybill, associated with the particular cargo shipment being offered by the IAC. This certification shall be retained on file at the local station for at least thirty days, and shall read as follows:

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011255

Confidential - Do Not Copy or Disclose

Page 94



b.

c. Obtain the following information in writing
from the IAC, and retain the information on
file at the local station for at least thirty
days:

    (1) The name of each unknown shipper whose
        cargo has not been screened by the IAC.



d. All unknown shipper cargo that has not been
screened by the IAC shall be screened in
accordance with Section IX.J.

e. Where Section IX.E.1. (a) through (c) have not
been applied, cargo may not be transported on
a passenger aircraft unless that cargo is
screened in accordance with Section IX.J.

2. Accompanied commercial courier consignments, whether
tendered with an air waybill or as checked baggage,
shall be subjected to the procedures outlined in
Section IX.E.1.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011256

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

[Revised 8/20/99]

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.   NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.   UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.   FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011257

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 95

F.   **Known Shipper**:  Cargo Accepted Directly From a Known
     Shipper.

   1.   For a shipper to be considered a known shipper, the
        air carrier shall have the following:

        a.   

        b.

           (1)

           (2)

   2.   Records required by Section IX.F.1. shall be
        maintained by, or made available electronically for
        immediate access . Records required in
        Section IX.F.1. shall be made available to the FAA
        upon request.

   3.   Cargo accepted directly from a known shipper (see
        Section IX.F.1.) may not be transported on a
        passenger aircraft unless the following measures are
        carried out:

        a.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011258

Confidential - Do Not Copy or Disclose

Page 96



Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011259

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 97

2.    

I.    **Unknown Shipper**:  Cargo Accepted Directly From an Unknown
      Shipper.



1.    

2.    The air carrier shall obtain a SSE and personal
      identification information, specified in Section
      IX.C.2. and 3., from the unknown shipper or his/her
      representative.  The SSE and personal identification
      information shall be



3.    The air carrier may not transport such cargo on a
      passenger aircraft unless the air carrier has
      screened the cargo in accordance with Section IX.J.

4.    



      a.    

      b.    

      c.    

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011260

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 98

J.    **Screening Procedures.**

1.    Cargo          screened ████████████████████████

2.    ███████████████████████████████████████████
      ██████████████████████████████████████████

      a.    ████████████████████████████████

      b.    ████████████████████████

      c.    ██████████████

      ████████████████████████████████████████████

      e.    █████████████████████████████████

3.    The screening process shall consist of at least one
      of the following methods:

      a.    The cargo is opened and manually searched in
            accordance with Appendix XIX to ensure that it
            does not contain explosives or incendiaries.

      b.    The cargo is screened by x-ray equipment in
            accordance with Appendix XIX, at a location
            authorized by the air carrier, to ensure that
            it does not contain explosives or
            incendiaries.

            (1)    

            (2)    

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011261

Confidential - Do Not Copy or Disclose

Page 99

c.   The cargo is screened, at a location
     authorized by the air carrier, by a FAA-
     certified Explosives Detection System (EDS) in
     accordance with procedures approved by the
     Administrator to ensure that it does not
     contain explosives or incendiaries.

d.   The cargo is screened by a FAA-certified
     explosives detection canine team in accordance
     with procedures approved by the Administrator
     to ensure that it does not contain explosives
     or incendiaries.

e.   The cargo is screened, at a location
     authorized by the air carrier, by explosives
     trace detection equipment, or any other
     detection equipment, which has been determined
     by the FAA to be effective, in accordance with
     procedures approved by the Administrator, to
     ensure that it does not contain explosives or
     incendiaries.

f.   The cargo is screened ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     which has been determined by the FAA to be
     effective, f▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮

4.   Whenever an unauthorized explosive or incendiary is
     suspected or detected, the air carrier shall:

a.   Maintain positive control of the cargo
     containing the explosive or incendiary,

b.   Notify the appropriate local authorities as
     provided in Section IX.O. or XV.A.8.g. as
     appropriate, and

c.   Advise local authorities of any additional
     cargo, on the premises, tendered by the
     shipper of the suspected cargo.

5.   The air carrier shall maintain a record of ▮▮▮▮▮▮▮
     ▮▮ screening ▮▮▮▮▮▮.  The record may be included
     with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  The record shall
     contain:

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011262

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 99a

a. ▮▮▮▮▮▮▮▮

b. ▮▮▮▮▮▮▮▮▮▮

c. ▮▮▮▮▮▮▮▮▮▮▮

d. ▮▮▮▮▮▮▮▮▮▮▮▮

6.  The records specified in Section IX.J.5. Shall be
    retained for at least thirty days and shall be made
    available to the FAA upon request.

7.  A self-audit consisting of the criteria outlined in
    Appendix XX shall be conducted on a quarterly basis
    ▮▮▮▮▮▮▮▮▮    The audit records shall be kept on file
    for a minimum of 90 days and be available to the FAA
    upon request.

K.  **Access To Cargo.**

    The air carrier shall control access to cargo subject to
    this security program to prevent access by unauthorized
    persons, and to prevent the unauthorized addition of
    explosives or incendiaries to the cargo's contents.

L.  **Ground Movement.**

    Cargo subject to this program shall be transported ▮
    ▮▮▮▮▮▮▮▮▮ vehicles until the ▮▮▮▮▮
    ▮▮▮▮▮▮▮▮▮▮

M.  **Program Documentation.**

    1.  The air carrier shall maintain one copy of its
        security program ▮▮▮▮▮▮▮▮▮▮▮▮
        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
        ▮▮▮▮▮▮▮▮▮

    2.  The air carrier shall restrict any copy of this
        security program or its implementing instructions to
        persons with a need-to-know and shall make such
        copies/instructions available to the FAA upon
        request.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011263

Confidential - Do Not Copy or Disclose

Page 99b

N.    **Training And Testing.**

1.    The air carrier shall ensure that employees having duties and responsibilities for the acceptance, handling and carriage of cargo under this security program are trained and are knowledgeable of their security responsibilities.  A record of this training shall be kept for each employee ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2.    The air carrier shall maintain a record of all screener training, as well as screener test results, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Training requirements for screeners are contained in Appendix XIX to this security program.

3.    The air carrier shall maintain a record of all individual screener training and test results for at least 180 days following the individual's termination of screening duties.

4.    All training and test records required shall be made available to the FAA upon request.

O.    **Notification Procedures.**

At each air carrier station or location of operation, the air carrier shall:

1.    Identify and list the name and contact information for the local authorities responsible for the removal and mitigation of suspected explosives or incendiaries.

2.    Immediately notify the local authorities of any unauthorized explosives or incendiaries found in cargo accepted or tendered for air transportation.

3.    Notify the nearest FAA Civil Aviation Security Field Office and FBI Field Office of any unauthorized explosives or incendiaries found in cargo accepted or tendered for air transportation.  Such notification shall be made immediately after notification of local authorities.

4.    Notify the nearest FAA Civil Aviation Security Field Office when the air carrier or its agent has rejected cargo because the air carrier believed that an individual or an entity had attempted to provide false information or identification in association with its cargo.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 99c

**THIS PAGE INTENTIONALLY LEFT BLANK**

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

**AAL 011265**

Confidential - Do Not Copy or Disclose

Page 100

X.    BOMB THREATS.

A.    GENERAL.

1.    In accordance with FAR Section 108.19, the air carrier shall take the applicable actions specified in this Section in response to bomb threats which are directed against a specific airplane and in response to bomb threats which are directed against specific ground facilities.

2.    ██████████████████████████████████████████

3.    For all other threats, the air carrier shall take whatever action it deems necessary.

B.    DEFINITIONS.

1.    **Positive Target Identification (PTI)** is information regarding the target ███████████████████████████████

2.    **Specific Airplane** is ████████████████████████

3.    **Specific Ground Facility** is ███████████████████

C.    ACTION.

1.    If a bomb threat is against a ██████ airplane, the air carrier shall:

a.    Initiate inspection action ████████████████████

Change 22, 06/15/90

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011266

Confidential - Do Not Copy or Disclose

Page 101

b. ████████████████████████████████████

2.    When the threat is against a ████████ airplane as defined
      above, or that inspection of an airplane is ████████
      necessary, such inspection action must comply with the
      following:

      a.    Conduct a security inspection on the ground before
            the next flight, or if the airplane is in flight,
            immediately after its next landing.

      b.    If the airplane is being operated on the ground,
            ████████████ immediately submit the airplane
            for a security inspection.

      c.    If the airplane is in flight, immediately advise the
            PIC to take the necessary emergency action
            considered necessary under the circumstances
            including █████████████████████████

3.    When a bomb threat is against a ████████ ground facility,
      the air carrier shall:

      a.    Initiate inspection action as appropriate, and

      b.    Inform all other air carriers at the terminal or
            airport, the airport authority and law enforcement
            as appropriate.

D.    **RESPONSIBILITY.** ████████████████████████████
      ████████████████████████████████ To assure
      compliance with FAA regulatory requirements, all bomb threats
      ████████████████████████████ should be
      immediately referred to the air carrier █████████████
      █████████████████

E.    **REPORTS.** The FBI and FAA shall be immediately notified when a
      bomb threat has been directed against a ████████ airplane or
      ████████ ground facility. Further, the results of all searches
      initiated will be reported to the FAA. ████████████████
      ████████████████████████████████████

Change 22, 06/15/90

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011267

Confidential - Do Not Copy or Disclose

Pages 102 through 109

THIS PAGE INTENTIONALLY LEFT BLANK

Change 22, 06/15/90

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011268

Confidential - Do Not Copy or Disclose

Page 110

XI.     **HIJACKING NOTIFICATION.**

A.      Upon receipt of information that an act or suspected act of
        airplane piracy has been committed, the air carrier shall
        immediately notify the FAA and FBI and further shall notify the
        airport as the air carrier deems appropriate.

B.      The air carrier shall take all reasonable steps to ensure that
        its employees and contractors who obtain details of an act of
        airplane piracy as a consequence of their official duties do not
        divulge to persons other than those with an operational need to
        know --

        1.      During an act of airplane piracy, any information about
                the incident or efforts to resolve the incident the
                disclosure of which may jeopardize the safety of any
                persons involved; and

        2.      At any time, information identified by officials of an
                agency of the U.S. government as concerning techniques and
                procedures used for resolving acts of airplane piracy the
                disclosure of which is likely to jeopardize the safety of
                international civil aviation.

C.      Any threat to hijack an aircraft shall be reported in accordance
        with Section XII.

Change 22, 06/15/90

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011269

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Pages 111 through 119

THIS PAGE INTENTIONALLY LEFT BLANK

Change 22, 06/15/90

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011270

Confidential - Do Not Copy or Disclose

Page 120

**XII.  SECURITY DIRECTIVES AND THREAT INFORMATION.**

A.    **SECURITY DIRECTIVES**:  The air carrier must be able to respond immediately to both threat assessments and specific threats against civil aviation.  When the FAA determines that immediate additional security measures are necessary to respond to such threats, the FAA will issue a security directive.  The FAA security directive will contain specific, mandatory actions that the air carrier shall implement.

B.    **THREAT INFORMATION**:

1.    Except as provided in paragraphs XII.B.4. and XII.B.5, the air carrier shall immediately provide the FAA with all threat information it receives that could affect United States civil aviation.  This includes threat information provided to the air carrier by a U.S. Government agency, a foreign government agency, or from private individual.  If the information is from a foreign government agency or a private individual, the FAA will review the information and its source with the air carrier to protect any entities involved.

2.    If threat information provided to the air carrier from any source is explicitly based on an FAA security directive or information circular and does not contain any additional information, then that information need not be reported back to the FAA.

3.    The FAA entity to be notified is either the PSI or the servicing FAA CASFO/CASFU.  However, in the event the air carrier receives time-sensitive material after normal business hours, it shall notify its PSI or FAA Office of Civil Aviation Security Intelligence, Washington, D.C., on ████████████.

4.    Bomb threats will be handled and reported in accordance with Section X.  ████████████████████████████
████████████████████████████████████████████
████████████████████████████

5.    The air carrier shall report actual or suspected acts of air piracy or hijacking in accordance with Section XI.  In addition, the air carrier shall report any threat to hijack an aircraft.

Change 50, 6/27/98

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011271

Confidential - Do Not Copy or Disclose

Page 121

C.    **CONTINGENCY MEASURES:**

1.    In accordance with paragraph XII.A, the FAA will issue a
security directive when the FAA determines that immediate
additional security measures are necessary to respond to
threats against civil aviation.  The alert level declared
will correspond with the Alert Levels described in the
Aviation Security (AVSEC) Contingency Plan in Appendix XV.
Countermeasures required may include all or some of the
measures listed under the AVSEC Alert Level declared, as
well as other measures considered necessary.

2.    At category ▇▇▇▇▇▇ airports, air carriers shall
participate in an ▇▇▇▇ table top exercise of contingency
plans conducted by the airport operator beginning in 1994.
At Category II▇▇▇▇▇▇ airports the air carrier shall
participate in a table top exercise of contingency plans
conducted by the airport operator ▇▇▇▇▇▇▇▇▇▇▇▇▇▇
beginning in 1994. These exercises will:

   a.    Simulate implementation of countermeasures selected
   by the FAA from the AVSEC Plan;

   b.    Include identification of local operating procedures
   that would be required to implement specific
   countermeasures; and

   c.    Be structured to identify the areas of
   responsibility of air carrier and airport personnel
   for the implementation of the countermeasures.

Change 39, 3/15/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011272

Confidential - Do Not Copy or Disclose

Pages 122 through 129

**THIS PAGE INTENTIONALLY LEFT BLANK**

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011273

Confidential - Do Not Copy or Disclose

Page 130

XIII. **STANDARDS, TRAINING, TESTING, AND AUDITING OF PERSONS PERFORMING SCREENING AND SECURITY COORDINATOR FUNCTIONS.**

A.  **GENERAL.**  The air carrier shall hire, train, test, and supervise all persons used to perform and to supervise screening functions, and to perform security coordinator functions, in such a manner as to ensure such functions are performed effectively.  The air carrier shall ensure that persons performing screening possess the human relations skills needed to perform those functions in a courteous and efficient manner.

B.  **STANDARDS FOR SCREENING PERSONNEL.**

1.  The air carrier shall ensure that in the United States, and at locations outside the United States where the carrier has operational control of screening, all persons used to perform screening, including employees of companies under contract to provide such service, are able to perform those functions as specified below.  The air carrier shall test and evaluate each screener's ability to perform screening functions.  No person shall be used to perform a specific screening function unless that person has the ability required to perform that function.

    a.  X-ray operators must be able to distinguish ▒ gauge wire as displayed on the x-ray monitor, under the ▒ step of the Test Step Wedge specified in ASTM Standard F792-82 (if that detection level is required for the x-ray device being used).  If corrective lenses are required for an individual to distinguish this standard, that individual must wear corrective lenses when operating the x-ray device.  A note of any such corrective lenses requirement will be prominently posted in the individual's training and qualification records.  Whenever the x-ray system uses a color monitor, the operator must be able to identify each color used by the display and, at the completion of training, to explain what each color signifies.

    b.  Screeners must be able to perceive each color used for a visual alarm by a metal detection device or x-ray system or on/off switch by any unit of screening equipment at that screening point.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011274

Confidential - Do Not Copy or Disclose

Page 131

c.   Screeners must be able to hear and respond to the spoken voice and to audible alarms generated by screening equipment in an active checkpoint environment.

d.   Screeners performing a physical search of baggage must be able to open and close latches, zippers, and screw caps; remove or feel beneath the contents of the container; and reach all sides and compartments of the bag.

e.   Any screener performing a pat-down or hand-held metal detector search of persons must be capable of reaching all parts of the person's body with one hand or, as appropriate, with a hand-held metal detector.

f.   At locations in the United States each screener must be able to:

(1)   Read English-language identification badges, law enforcement credentials, airline tickets, and labels on bottles, aerosol cans, and packages.

(2)   Understand and carry out instructions written in English regarding the proper performance of their screening functions.

(3)   Speak and understand English sufficiently to understand and answer questions and to give comprehensible directions in English.

(4)   Write in English when assigned duties requiring written record keeping.

g.   At locations outside the United States where the carrier has operational control of screening and has provided a representative at the screening checkpoint (in accordance with FAR 108.31(f)) who has the ability to functionally read and speak English, each screener at the checkpoint must be able to functionally read and speak either the official or predominant local language. Where the

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011275

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 132

carrier has operational control of screening but has not provided a representative at the screening (operating) checkpoint who has the ability to functionally read and speak English, each screener must be able to perform the requirements in Section B.1.f above.

2.  The air carrier shall include the results of the evaluation required by B.1 above in the screener training record required by C.1.e. below.

3.  The air carrier shall ensure that all persons used to perform passenger screening functions in the United States are citizens of the United States or possess a resident alien card or other employment authorization from the U.S. Immigration and Naturalization Service.

4.  The Federal Aviation Regulations, Parts 121 and 135, also provide that no person may be used by the air carrier to perform aviation security or screening duties if that person has failed or refused to submit to a test for prohibited drugs, unless that person has received a return to duty recommendation from a medical review officer in accordance with the drug testing regulations.

C.  **TRAINING, TESTING, AND CERTIFICATION OF SCREENING PERSONNEL.** In the United States and for those security functions outside the United States over which the air carrier has operational control:

1.  **General.**

    a.  All persons used by the air carrier to perform screening functions, including employees of companies under contract to furnish such services, shall be trained in proper screening techniques, physical inspection, use of metal detectors, and, if appropriate, use of x-ray systems. In addition to the primary security objectives, the training shall emphasize the need for courteous, vigilant and efficient application of passenger screening procedures. Guidelines pertaining to these functions are contained in Appendices I, II, and III.

    b.  The training program is described below in C.2., 3., and 4. The air carrier may include

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011276

Confidential - Do Not Copy or Disclose

Page 133

additional related security material for screening
employees with notification to FAA.

c.    The training should be presented in a formal manner
with ample opportunity for questions and answers.
Local air carrier supervisory personnel shall, to
the extent practicable, monitor all training to
assure the adequacy of such training, and, where
practicable, the station chief or other senior
management official should participate to emphasize
management interest and concern.  The air carrier
should encourage local ATA security committees to
assist in the monitoring of training.

d.    The air carrier should consider inviting local law
enforcement officers performing the support function
at screening points to attend the training class.

e.    Records and Certifications.  Current and accurate
training and qualification records shall be
maintained at each airport for each screening
employee at that airport, reflecting --

    (1)   the date and type of required training
received and of testing conducted;

    (2)   education and experience qualifications
required by FAR 108.31 (a) and this program;

    (3)   certifications of knowledge and competence
executed at the end of OJT (see C.2.e. and f.
below), test object detection results; and

    (4)   annual screener evaluations required by FAR
108.31(d).

f.    Records of training, testing and certification shall
be made available promptly to FAA special agents
upon request and shall be maintained for a period of
at least 180 days following the employee's
termination of duty.  Test records will include all
tests to which the screener was subjected, not just
those satisfactorily completed.

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011277

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 134

2.    **Initial Training.**  No person shall be used to perform any screening function that requires the exercise of independent judgment regarding persons or property having access to the area beyond the screening point or the inspection of checked baggage, unless that person has received formal training and on-the-job training in the quantity and the manner described below, and has satisfactorily demonstrated the ability to detect each test object under realistic conditions, and to explain the elements which resulted in such detection.  Except as provided in 2(g) and (h), initial training includes:

a.    Not less than 12 hours of initial instruction covering the subjects listed in Appendix IV with emphasis on special screening situations and screening equipment operation.  The instruction shall include weapons and dangerous devices guidelines, carry-on inspection guidelines, and passenger/property screening procedures (Appendices I, II, and III).  Screeners who have received initial training but not recurrent training as of November 1, 1993, may perform screening functions without further training until the due date of their next recurrent training.

b.    Viewing either the FAA or ATA audiovisual programs approved for initial training in Appendix IV.

c.    Written testing in the English language, without translation into another language, to determine whether the trainee has absorbed the classroom portion of initial training.

d.    Following successful completion of the written testing required by C.2.c. above, the trainee shall undergo a formal on-the-job (OJT) training program, which shall include the assignment of new-hires to:

(1)    Work with and under the close supervision of fully-qualified screeners to further familiarize themselves with screening equipment, procedures, and duties.  During this OJT period, the trainee shall not make independent judgments as to

Change 47, 8/13/96

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011278

Confidential - Do Not Copy or Disclose

Page 135

whether persons or property may enter a
sterile area or aircraft without further
inspections.  Similarly, during OJT, the
trainee shall not make independent judgments
as to whether checked baggage is free of
explosive devices.

(2)   The successful detection, individually, of
each FAA/industry approved test object
described in appendix VI., appropriate for the
equipment in use at the checkpoint(s) at which
the screener is to be employed, under
realistic conditions as described in paragraph
F. of this section.  A simulated IED assembled
from the IED test components described in
appendix VI.A., or other FAA approved IED's,
may be used instead of the simulated pipe and
dynamite bombs.  The individual shall explain,
in English, the recognition factors applied in
detecting the objects before he or she may be
considered to have successfully completed this
phase of initial training.

(3)   Review daily the Screening Point Operations
Guide, consisting of all general screening
procedures and those special procedures
employed at the particular checkpoint(s) where
the trainee is assigned.

e.   The air carrier shall ensure that the performance of
newly hired screener personnel is observed and
checked during their first 40 hours of duty by a
supervisory level individual (GSC, CSS or SIC) to
ensure that each screener knows and understands the
job requirements and procedures and to provide
instruction and practical guidance to them as
appropriate.  The air carrier shall annotate the
screener's training and qualification records with
significant observations made and deficiencies
noted.

f.   The trainee's completion of initial training,
including:  (1) classroom training; (2) retention of
the information imparted, as

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011279

Confidential - Do Not Copy or Disclose

Page 136

demonstrated by successful completion of a
written test; (3) application of skills
experience; and (4) demonstration of
application of skills and knowledge by
successfully detecting each test object, shall
be certified in writing by a supervisory level
individual (GSC, CSS or SIC) with the
certification statement and signature remaining
in the individual's training and qualification
record.  This certification must be based upon
personal observation and constitutes an
affirmative determination that the individual
is capable of making competent, valid
independent screening judgments.  In accordance
with FAR 108.31.(b) and this program, no
screener may make independent judgments until
this certification has been made.

g.    Limited certifications to permit the individual to
      make independent screening judgments in certain, but
      not all, screening functions are authorized, if
      clearly described in the certification.  For
      example, an individual may be competent in every
      screening function except x-ray image
      interpretation; when so certified, he/she may make
      independent judgments in any other screening
      function.  Similarly, a person with reduced mobility
      or dexterity may be certified to perform x-ray
      examination without being certified to perform other
      functions.

h.    An individual may be certified to perform only
      physical searches.  The individual would only be
      required to complete those portions of initial
      training directly related to the function for which
      he/she is being certified.

      The limited certification to perform physical
      searches requires initial training which shall
      include:

      (1)    Not less than three (3) hours of initial
             instruction covering the subjects listed in
             Appendix IV, Sections A., D., E., H.4., J.,
             and O.  Special emphasis shall be placed on
             section H.4. (conducting a physical search).

      (2)    Weapons and dangerous devices guidelines, and
             carry-on inspection guidelines

Change 47, 8/13/96

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011280

Confidential - Do Not Copy or Disclose

Page 137

(appendices I and II, respectively).  At least two of the three hours required for initial training shall be used to cover the guidelines and procedures outlined in appendix II (Physical Inspection Guidelines).

(3)     Three (3) hours of on-the-job training (OJT), working with and under the close supervision of fully qualified screeners.

(4)     The successful detection, individually, of the simulated pipe bomb or dynamite bomb and toy pistol listed in appendix VI, under realistic conditions described in paragraph F. of this section.  A simulated IED assembled from the IED test components described in appendix VI.A, or other FAA approved IED's, may be used instead of the simulated pipe and dynamite bombs.

(5)     A written certification by a supervisory level individual (GSC, CSS or SIC) that the screener has completed the prescribed initial training will be retained in the training folder of each screener through the period of the person's employment and for 90 days thereafter for inspection by FAA.

The trainee shall not make independent judgment as to whether property may enter a sterile area or aircraft until all of the requirements outlined above are met.

3.     **Recurrent Training**.  All screening personnel shall be given recurrent training at least annually to include:

a.     Summary presentation and discussion of the material described in C.2.a. above and appendix IV., to include a review to ensure that each screener is familiar with all material in the Screening Point Operations Guide.

b.     A viewing of an audiovisual program approved for recurrent training in appendix IV.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011281

Confidential - Do Not Copy or Disclose

Page 138

c.  Ample time for questions and answers.  The provision
of a question box for anonymous written questions is
recommended as a means of overcoming reluctance to
ask questions publicly.

d.  Successful completion of a written test in English,
without translation assistance, measuring the
individual's comprehension of material presented.

4.  **Remedial Training.**

a.  At Category X, I and II airport checkpoints, when a
screener, once certified to make independent
screening judgments, fails a test conducted by the
FAA in accordance with paragraph G. below, the air
carrier shall immediately remove the screener from
the screening function (e.g. x-ray examination, walk
through metal detector) involved in the test failure
and provide the screener remedial training before he
or she can resume the failed screening duties.  Such
remedial training shall sufficiently enable the
screener to demonstrate the ability to again detect
the test object associated with the failure and
explain the elements which lead to the detection.
The air carrier must consider recurring test
failures (to include a screener's failure(s)
associated with another air carrier at a multiple
use checkpoint) as a factor for not retaining the
individual in that function.  The remedial training
shall be conducted in accordance with the following:

i.  A screener who fails a test conducted under
paragraph G.2.a below shall complete remedial
training similar to the initial training
described in Appendix IV.G.1.

ii. A screener who fails a test conducted under
paragraph G.2.b below shall complete remedial
training similar to the initial training
described in Appendix IV.H.1, 2 and 3.

Change 47, 8/13/96

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011282

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 139

    iii.  A screener who fails a test conducted under paragraph G.2.c below shall complete remedial training similar to the initial training described in Appendix IV.H.4.

    b.  At Category X, I and II airport checkpoints, if removing a screener from the function at which the test was failed would result in closure of the checkpoint because of a lack of sufficient number of remaining qualified screeners, the CSS may conduct or operate any screening function for which he or she is qualified for the remainder of the shift in which the failure occurred.

    c.  At Category III and IV airport checkpoints, the Ground Security Coordinator may allow the screener who fails a test conducted by the FAA to complete his/her shift if a qualified replacement is not available, provided that enhancements to the particular screening function upon which the screener failed the test are implemented during that shift or time period.  Such enhancements may include, increased secondary hand search to supplement x-ray examination, or periodic pat-down or hand-wand searching to supplement the metal detector.

D.    **SELECTION, TRAINING, TESTING, AND CERTIFICATION OF CHECKPOINT SECURITY SUPERVISORS AND SCREENERS-IN-CHARGE.**

    1.  **Selection Standards.**  No person shall be used to perform the duties of a Checkpoint Security Supervisor (CSS) or Screener-In-Charge (SIC) unless that person meets the requirements of FAR Part 108.31(a).

    1.  The air carrier shall first select, train, and test the prospective CSS and SIC as a fully qualified screener as prescribed in Section XIII A., B., and C.1. and 2. of this program.  Following selection, the prospective CSS and SIC

Change 47, 8/13/96

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011283

Confidential - Do Not Copy or Disclose

Page 139a

shall be trained in accordance with Appendix V of this
program before commencing his or her duties.

3.    **Training--Update.**  The air carrier shall, on a timely
basis, train the CSS and SIC in all FAA and company
procedural changes regarding screening requirements or
systems and flexible LEO response systems.

4.    **Training--Recurrent.**  The air carrier shall provide
recurrent training as prescribed in Appendix IV to the CSS
and SIC that is, at a minimum, at least identical to, and
at the same frequency as, that afforded non-supervisory
screeners.

5.    **Testing.**  The air carrier shall, as part of the CSS and
SIC initial training and every 12 months thereafter, test
the CSS and SIC in writing to verify his/her knowledge of
CSS and SIC duties and responsibilities; screening
requirements, equipment, and procedures; and LEO response
system requirements and procedures in effect at that
airport.

6.    **Training and Qualification Records.**  The air carrier shall
maintain records of the individual's qualifying education
and employment; initial, and recurrent training; and
testing at the airport.

7.    **Qualification for CSS's only.**  An individual selected to
be a CSS must possess a combination of education and
experience that the air carrier has determined, and
documented in writing, to have equipped the person to
perform the CSS duties.

E.    **CONTINUED EMPLOYMENT DETERMINATION FOR SCREENERS AND CHECKPOINT
SECURITY SUPERVISORS.**  The air carrier may continue the
employment of a screening employee only upon an affirmative
determination that the individual has been evaluated in
accordance the following:

1.    In addition to the evaluation required by B.1 of this
Section, the air carrier shall ensure that a Ground
Security Coordinator shall conduct an annual written
evaluation of each person assigned screening duties in
accordance with FAR Section 108.31(d).  At a multiple-use
checkpoint where screening services are performed for more
than one air carrier, only one evaluation need be made as

Change 47, 8/13/96

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011284

Confidential - Do Not Copy or Disclose

Page 139b

long as the GSC for each air carrier sharing those screening services agrees to, and is provided a copy of, the screener evaluation(s).

2.    The air carrier shall ensure that a GSC shall conduct an annual written evaluation of each person assigned CSS and SIC duties per appendix XIV.

F.    **AIR CARRIER TESTING AND AUDITING.**  The effectiveness of screening personnel shall be tested and audited as described in this paragraph.

**Testing.**  At US stations, each screener shall be tested as described in 1.a. of this paragraph, by a direct air carrier employee or authorized air carrier representative. At a multiple-use screening checkpoint, each air carrier using the screening checkpoint shall participate by:

- conducting the tests individually, or
- rotating testing responsibility between each air carrier using that checkpoint. If testing is rotated, a written rotation schedule must be developed locally and jointly by each air carrier using that checkpoint. A copy of the written rotation schedule must be provided to the responsible FAA security office, or
- designating and assigning testing responsibility to one air carrier operating from the multiple-use checkpoint. If testing is designated and assigned to one air carrier, a written agreement must be developed locally and jointly by each air carrier using that checkpoint. A copy of the agreement must be provided to the responsible FAA security office.

a.    **Recurrent Testing.**  The air carrier shall test each screener one time during each six calendar month period, for EACH screening function they are qualified to perform. Testing of the screener's performance shall be unannounced, using the appropriate test objects described in this subparagraph. The following testing procedures shall be used:

(1)    At stations where screening of persons is performed using walk-through metal detectors, the tester shall place one of the test objects described in paragraph C. of appendix VI., on his or her person. The tester shall proceed through the detector in the direction of normal passenger flow.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011285

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 139c

(a)     In the case of an alarm, the tester
shall determine if the screener
identifies the test object.

(b)     In the case of no alarm, the tester
shall contact the GSC, station manager
or other responsible air carrier
representative, and ensure that an
operational test of the walk-through
metal detector device is conducted.

(2)   At stations where screening of carry-on items
is performed by x-ray inspection, the tester
shall randomly place one of the test objects
described in paragraph B. of appendix VI., or
a simulated IED described in appendix VI.A.,
in a carry-on item with other normal travel
items.  The simulated IED must be used as a
test object to test x-ray operators █████████
███████████████████████.  TIP testing
may be used instead of manually testing the
x-ray operator, when the TIP testing includes
an image of one of the FAA-approved test
objects or simulated IED configurations.  The
simulated IED image must be used as a test
object to test x-ray operators ████████████
███████████████.

(3)   To test a screeners physical inspection
capability of carry-on items, the tester shall
randomly place one of the test objects
described in paragraph D. of appendix VI., in
a carry-on item with other normal travel
items.

b.    Where a screener fails any test using one of the
testing methods described in 1.a. of this paragraph
(including TIP testing), the test procedure shall be
repeated to ensure the screener identifies the test
object.  The screener shall be counseled regarding
proper screening procedures, with corrective action
taken as needed.  The results of these tests shall
be recorded, together with the corrective actions
planned or taken.  This information shall be
maintained in the screeners training and
qualification records.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011286

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 139d

**Checkpoint Auditing.** A GSC, who is not an employee of the contracted screening company at that screening checkpoint, shall audit each screening checkpoint used by the air carrier. At a multiple-use screening checkpoint, each air carrier using the screening checkpoint shall conduct these audits by:

- conducting the audits individually, or
- rotating auditing responsibility between each air carrier using that checkpoint. If auditing is rotated, a written rotation schedule must be developed locally and jointly by each air carrier using that checkpoint. A copy of the written rotation schedule must be provided to the responsible FAA security office, or
- designating and assigning auditing responsibility to one air carrier operating from the multiple-use checkpoint. If auditing is designated and assigned to one air carrier, a written agreement must be developed locally and jointly by each air carrier using that checkpoint. A copy of the agreement must be provided to the responsible FAA security office.

a.    At ███████████ airports, the operations of each screening checkpoint shall be audited once each calendar month. At ███████████ airports, the operations of each screening checkpoint shall be audited once every 2 calendar months. After the completion of each operational audit, the GSC shall prepare an audit summary that includes the information contained in paragraph A. of appendix XVI.

b.    At ███████████ airports, the administrative records of each screening checkpoint used shall be audited once each calendar month. At ███████████ airports, the administrative records of each screening checkpoint used shall be audited once every 2 calendar months. After completion of the administrative audit, the GSC shall prepare an audit summary that includes the information contained in paragraph B. of appendix XVI.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011287

Confidential - Do Not Copy or Disclose

Page 139e

(1) Instead of outlining the information described
in paragraphs B.1. and B.2. of appendix XVI.,
the GSC may sign and date the individual
screener training and qualification records
and equipment logs that were audited. The
names of the screeners whose records were
reviewed and signed shall be listed in the
completed administrative audit summary. The
GSC's signature on screener training and
qualification records and equipment logs
certifies that they were accurate and current
at the time of the review.

(2) Once each training record has been reviewed
for all screeners assigned to that screening
checkpoint, another administrative audit of
those training records does not need to be
initiated until six calendar months have
passed since the last audit was completed.

c. Completed operational and administrative audit
summaries shall include the date and time of the
audit; the airport name and checkpoint location; and
the GSC's name who performed the audit and their
employing air carrier.

d. Completed operational and administrative audit
summaries shall be signed within 30 days by a GSC
for EACH air carrier using that screening
checkpoint, certifying that the audits were
completed and the checkpoint is operating in
compliance with this program and any SD's in effect.

e. Completed operational and administrative audit
summaries shall be accessible and available for
review during the hours that the screening
checkpoint is operating, for at least one calendar
year from the date of completion.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011288

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 139f

G.    **FAA TESTING.**

1.    To ensure that adequate protection is being provided to the traveling public, the FAA conducts tests of screeners. The air carrier, acting through its direct air carrier employees or authorized air carrier representatives who perform screening functions, shall detect each FAA-approved test object during each screening system operator test conducted by the FAA, as outlined in 2. of this paragraph.

2.    FAA tests are conducted without notice using the test objects listed in appendix VI. of this program. Each test is conducted so that the following screening methods are examined: metal detectors (walk-through and hand-held), x-ray screening devices, and physical inspection. The test objects are used in rotation to ensure that screeners are tested on all objects. The following procedures and requirements apply to each test:

   a.    At each station where screening of persons is performed using walk-through metal detectors, the FAA representative conducting the test conceals the test object on his or her person and proceeds through the detector at the speed and direction of normal passenger flow.

      (1)    If the alarm on the walk-through detector sounds, the screener shall use a hand-held metal detector or physical search to detect the object per the procedures outlined in section II. of this program,

      (2)    If the alarm on the walk-through detector does not sound, the air carrier is not considered to have failed to detect the test object for the purpose of the FAA test. The FAA representative conducting the test contacts the air carrier's station manager, or other responsible official of the air carrier, to advise that an operational test must be conducted per section IV.C. of this program.

   b.    At each station where screening of carry-on items is performed using x-ray screening devices, the FAA representative conducting the test randomly places the test object in a carry-on bag with other normal items ( ▮▮▮▮▮▮▮▮▮▮ ). The screener shall detect the test object per the procedures outlined in section II. of this program.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011289

Confidential - Do Not Copy or Disclose

Page 139g

    c.    At each station, to test the screener's capability of conducting a physical search of carry-on items, the FAA representative conducting the test places the test object in a carry-on bag with other normal items. The FAA representative then presents the carry-on item to the screener and requests a physical inspection of the item, stating that the item contains ███████████████. The screener shall detect the test object per the procedures outlined in section II of this program.

    d.    When it is determined that a test item is not detected due to equipment failure, the equipment shall immediately be tested as specified in section IV.C.3.b., 4., or 5. (as appropriate for the type of equipment), and the applicable procedures of section IV.C. shall be followed if the equipment fails the specified test.

H.    **GROUND SECURITY COORDINATOR (GSC).**

    1.    Per 14 CFR 108.10, the air carrier shall provide and use a GSC for each departing domestic flight, and each departing international flight to, from, or outside the United States to include transborder flights. The GSC shall be present at the airport while security procedures for the departing flight are being carried out.

        a.    Each person performing GSC duties and responsibilities must be trained per paragraphs H.2. and H.3. of this section.

        b.    **GSC Duties and Responsibilities.** A GSC shall ensure that all security requirements of each flight are monitored prior to departure. These security requirements include:

            (1)    screening passengers and their personal property for the flight;

            (2)    controlling access to the airplane;

            airplane servicing;

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011290

Confidential - Do Not Copy or Disclose

Page 139h

(4) ground support for in-flight emergency response;

(5) the security of the air operations area;

(6) the security of baggage and cargo acceptance and loading;

(7) the monitoring of any extraordinary ground security procedures where they are in effect; and

(8) communicating to the ISC before the flight departs, all information that could affect the security of that flight. The communication means can be verbal, written or electronic.

c. **GSC Designation.** The air carrier may:

(1) designate a different GSC for each departing flight, or may designate one GSC for a number of departing flights,

(2) use a GSC of another air carrier, or

(3) use a GSC who is an authorized air carrier representative, at any station where the air carrier does not have direct air carrier employees.

d. The air carrier shall maintain a liaison with the Airport Security Coordinator, to share information regarding security concerns at the airport. The air carrier shall use either a GSC or an air carrier management representative, as the liaison representative.

2. **Initial Training.** The air carrier shall provide the following ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ training for each GSC:

More Than 60-Seat Operators
--Airports Outside the United States
--Airports Inside the United States    ▮▮▮▮▮

Less Than 61-Seat Operators
--All airports    ▮▮▮▮▮

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011291

Confidential - Do Not Copy or Disclose

Page 139i

Training shall consist of all of the subject areas
included in the GSC training outline included in appendix
XII.  Air carrier management shall ensure that
participants are aware that management places the highest
importance on this training.  No more than ███████ of
the time requirements identified above shall be met in the
form of "home study" media.  Each GSC shall be tested by
the certificate holder to determine that each GSC fully
understands the content of all home study materials.

3.    **Recurrent Training.**  The air carrier shall provide the
following annual recurrent training for each GSC:

More Than 60-Seat Operators
--Outside the United States
--Inside the United States          ██████

Less Than 61-Seat Operators
--Outside the United States
--Inside the United States          ██████

Training shall consist of all of the subject areas
included in the GSC training outline included in appendix
XII.  Air carrier management shall participate in this
training.  No more than ████████ of the time
requirements identified above shall be met in the form of
"home study" media.  Each GSC shall be tested by the
certificate holder to determine that each GSC fully
understands the content of all home study materials.

I.    **INFLIGHT SECURITY COORDINATOR (ISC).**

1.    General.  Per 14 CFR 108.10, the air carrier shall
designate the PIC as the ISC for each international and
domestic flight.  An international flight is a flight to,
from, or outside the United States, including U.S.
transborder flights.  The ISC will:

a.    

b.    

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011292

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 139j

c. 

d.

2.    **Initial Training.**  The air carrier shall provide initial
training for each ISC per the crewmember training outline
in paragraph J. of this section.

3.    **Recurrent Training.**  The air carrier shall provide
recurrent training for each ISC per the crewmember
training  outline included in paragraph J. of this
section.

J.    **CREWMEMBER TRAINING.**

1.    **General.**  The air carrier shall train all crewmembers
serving on all international and domestic flights in
security and antihijack subjects per the training outlines
set forth in this paragraph.  An international flight is a
flight to, from, or outside the United States, including
U.S. transborder flights.

2.    **Initial Training.**  The air carrier shall provide initial
training as follows:

a.    (1)    PIC/ISC and all other crewmembers for more
than 60-seat aircraft, ████; for less than
61-seat aircraft, ████.  The outline in
appendix XIII. to this program must be
followed.

(2)    If approved by the FAA, an alternative initial
training program for ISC and all other
crewmembers ████████████ may be
used.  In this case, the outline in appendix
XIII. to this program must be followed.  The
air carrier shall ensure that:

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011293

Confidential - Do Not Copy or Disclose

Page 139k

(a)  Each class is opened by senior
     management.  This can be accomplished by
     a video presentation.

(b)  There is ample time for classroom
     discussion after each block of
     instruction.

(c)  Each ISC and each crewmember completes a
     written student critique of this
     training program.  These critiques shall
     be made available to the FAA for review
     and evaluation of the training.  The
     time provided for completion of these
     critiques may not be considered part of
     the time required for the training
     program.

b.  A classroom curriculum with designated time and type
    of instruction (i.e., slide/tape, oral, video and
    classroom discussion) shall be submitted to the FAA
    for approval.

c.  The FAA-approved "Common Strategy" videotape must be
    shown for all initial training.

3.  **Annual Recurrent Training**.  The air carrier shall provide
    recurrent training as follows:

a.  (1)  PIC/ISC and all other crewmembers for all
         international flights of more than 60-seat
         aircraft, ▮▮▮▮; for less than 61-seat
         aircraft ▮▮▮▮.  The outline in appendix
         XIII. to this program must be followed.

    (2)  PIC/ISC for all domestic flights of more than
         60-seat aircraft, ▮▮▮▮; for less than 61-
         seat aircraft, ▮▮▮▮.  The outline in
         appendix XIII. to this program must be
         followed.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER S U.S.C. 552.

AAL 011294

Confidential - Do Not Copy or Disclose

Page 1391

    (3)   All other crewmembers for all domestic flights, regardless of passenger seating configuration of aircraft, ▮▮▮▮. The outline in appendix XIII. to this program must be followed.

    (4)   If approved by the FAA, an alternative annual recurrent training program for GSC and all other crewmembers of not less than ▮▮▮▮ may be used. In this case, the outline on page 5 of appendix XIII. to this program must be followed. The air carrier shall ensure that:

        (a)   There is ample time for classroom discussion after each block of instruction.

        (b)   Each ISC and each crewmember completes a written student critique of this training program. These critiques should also solicit comparative information between this training and any given previously, and shall be made available to the FAA for review and evaluation of the training. The time provided for completion of these critiques may not be considered part of the time required for the training program.

b.   A classroom curriculum with designated time and type of instruction (i.e., slide/tape, oral, video and classroom discussion) shall be submitted to the FAA for approval.

c.   If the FAA-approved "Common Strategy" videotape is not shown, the common strategy tactics for cockpit crew and cabin crew listed in appendix XIII. to this program must be covered in the training.

4.   Outline for Alternative Crewmember Initial Training. Pursuant to the requirements outlined in paragraph J.3.a.(4) of this section, the air carrier shall provide to the FAA for review and approval, the proposed classroom curriculum to ensure training covering the following subject areas:

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011295

Confidential - Do Not Copy or Disclose

Page 139m

a.   **Common Strategy.**  Train crewmembers in a common
     strategy for airline security.  (FAA video must be
     shown.)

b.   **Hostage Negotiations and Victimology.**  Train
     crewmembers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

c.   **Weapons and Explosive Devices.**  Description of
     automatic and revolver handguns and description of
     the differences in their operation.  Contents and
     makeup of explosive devices explained.

d.   **Security Requirements.**  Situations that would
     require briefing (GSC to ISC, ISC to crew) and
     definition of who is designated as a Ground or
     Inflight Security Coordinator.  Discuss other
     pertinent information such as GSC/ISC interface and
     documentation of the interface.  Review general
     security procedures in sections II, V, VI, and XV.A.
     of the air carrier's approved security program and
     14 CFR part 108.  Crewmembers flying international
     routes at the time of scheduled training shall be
     provided instruction on the applicable section XV.B.
     and XV.C. requirements.

e.   **Appropriate Carrier Security Experiences.**
     Experiences relevant to individual airline
     operations.  In the event of an incident occurring
     during the current year, information on that
     incident may be substituted upon approval of the
     FAA.

f.   **Current Threat.**  Threat information as provided by
     the FAA.  The carrier, in conjunction with its PSI,
     may develop additional training material.

5.   **Outline for Alternative Crewmember Annual Recurrent
     Training.**  Pursuant to the requirements outlined in
     paragraph J.3.a.(4) of this section, the air carrier shall
     provide to the FAA for review and approval, the proposed
     classroom curriculum to ensure training covering the
     following subject areas:

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011296

Confidential - Do Not Copy or Disclose

Page 139n

a.  **Common Strategy**.  Train crewmembers in a common
    strategy for airline security.  If FAA video is not
    shown, all teaching points in appendix XIII. must be
    covered in the training.

b.  **Security Requirements**.  Security program revisions
    and initiatives and GSC/ISC issues.  Crewmembers
    flying international routes at the time of scheduled
    training shall be provided instruction on the
    applicable section XV.B. and XV.C. requirements.

c.  **Appropriate Carrier Security Experiences**.
    Experiences relevant to individual airline
    operations.  In the event of an incident occurring
    during the current year, information on that
    incident may be substituted upon approval of the
    FAA.

d.  **Current Threat**.  Threat information as provided by
    the FAA.  The carrier, in conjunction with its PSI,
    may develop additional training material.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011297

Confidential - Do Not Copy or Disclose

Page 1390

**THIS PAGE INTENTIONALLY LEFT BLANK**

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011298

Confidential - Do Not Copy or Disclose

Page 140

XIV.  **IMPLEMENTING PROCEDURES.**  Copies of all implementing procedures issued by the air carrier which are used to prescribe or implement the procedures and facilities designed to meet the purpose of this program shall be routinely provided to the FAA.

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011299

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Pages 141 through 149

**THIS PAGE INTENTIONALLY LEFT BLANK**

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011300

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 150

XV.    **SECURITY PROCEDURES FOR FLIGHTS DEPARTING FROM LOCATIONS OUTSIDE THE UNITED STATES.**

A.    **GENERAL.**  The air carrier shall adopt and carry out the following procedures for all scheduled passenger and public charter flights departing from airports outside of the United States.

    1.    **Implementing Procedures.**  The air carrier shall maintain ▮▮▮▮▮ a copy of all implementing procedures issued to meet the requirements of this Section.

    2.    **Alternative Procedures.**



        a.    ▮▮▮▮▮▮▮▮▮▮

           (1)    ▮▮▮▮ ;

           (2)    ▮▮▮▮▮▮▮

           (3)    ▮▮▮▮▮▮▮▮

           (4)    ▮▮▮▮▮

        b.    ▮▮▮▮▮▮▮▮

    3.    **Baggage Acceptance.**  The air carrier shall:

        a.    Conduct a positive passenger/checked baggage match ▮▮▮▮▮

Change 37, 7/23/93

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011301

Confidential - Do Not Copy or Disclose

Page 151



(1)

(a)

(b)

(c)  the baggage has been screened by EDS
     equipment.  EDS equipment shall be
     operated using the procedures outlined
     in the air carriers' FAA-approved
     amendment.

(2)

(3)

(4)

b.  Accept baggage only from ticketed passengers

c.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011302

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 152



4.  **Cabin Search Procedures at Foreign Stops.** ▮

    ▮ the air carrier shall:

    a.  ▮ ;

    b.  ▮

    c.  ▮

    d.  ▮ .

5.  **Special Screening Requirements.**  The air carrier must apply the following procedures to passengers when their ticket or itinerary information indicates that they originated from or transited through ▮

    a.  ▮

    b.  ▮

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011303

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 153



d.

e.

Note:  When a passenger indicates that they have
interlined baggage but their ticket does not indicate
their uninterrupted travel from origin, the air carrier
must determine whether the passenger originated from or
transited through ▮▮▮▮▮, or was transported ▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮

6.    **Ground Security Coordinator (GSC).**  For each departing
      flight subject to this Section the air carrier shall:

      a.    Ensure that the GSC has completed the training
            specified in section XIII.H. of this program.

      b.    Require the GSC to be present at the airport while
            security procedures for the flight are being carried
            out.

7.    

      a.

      b.

      c.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011304

Confidential - Do Not Copy or Disclose

Page 154

8.    **Cargo Acceptance and Control.**

    a.    Except as otherwise noted in this section, the following provisions as cited shall apply to all air carrier operations for flights departing from locations outside of the United States:

        (1)    Section IX.A. - Definitions;

        (2)    IX.B. - Responsibility;

        (3)    IX.C. - Cargo Acceptance - General Requirements;

        (4)    IX.F. - Cargo Accepted Directly From a Known Shipper, ███████████████

        (5)    IX.J.1., 2., 5., 6., and 7. - Screening Procedures;

        (6)    IX.K. - Access to Cargo;

        (7)    IX.L. - Ground Movement;

        (8)    IX.M. - Program Documentation;

        (9)    IX.N. - Training and Testing;

        (10)    IX.O.1. - Notification Procedures.

    b.    **Cargo Accepted on Behalf of an Air Carrier By Another Carrier.**

        When an air carrier contracts to have another carrier (such as another air carrier, a foreign air carrier, or a code-share partner) accept cargo on its behalf, the air carrier remains responsible for the acceptance and handling of its cargo in accordance with its security program.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011305

Confidential – Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 155

c.    Acceptance of Cargo Regulated Under a National Cargo
      Security Program or a National Cargo and Mail
      Security Program.

(1)


(2)

d.    Cargo Accepted From an IATA Approved Agent.



(1)

(2)

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011306

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 156

(Business Letterhead)
General Cargo Security Declaration

Air Waybill
Destination:_____

1. The cargo dispatched by (name of agent or
   forwarder) comes from customers whose reliability
   we do not doubt.  The cargo has been protected
   from the time that the cargo was tendered to and
   accepted by us at our acceptance location.

OR

2. Personal effects and household goods that are
   accounted for on an air waybill and cargo from
   unknown customers and/or customers whose
   reliability is doubtful, are delivered separately
   and identified to the air carrier for security
   measures. Our customers have been informed that
   cargo can be subject to measures ensuring the
   security of air traffic.

Signed_____Title:_____
Date_____

(3)  Copies of each General Cargo Security
     Declaration obtained by the air carrier in
     accordance with this provision shall be kept
     on file for at least 30 days and be made
     available for review by the Administrator, at
     each station where the IATA approved agent
     tenders cargo to the air carrier.

(4)  

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011307

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 157

e.  **Cargo That is Not Accepted in Accordance with IX.F., XV.A.8.c., or XV.A.8.d. and Cargo from Unknown Shippers.**



(1)

    (a)

    (b)

(2)

(3)

(4)

f.  **Screening Procedures for Cargo.**

Screening shall consist of ▓▓▓▓▓▓▓▓ of the following procedures:

(1)  The cargo is opened and physically inspected in accordance with Appendix XIX, to verify that it does not contain explosives or incendiaries.

(2)  The cargo is screened by x-ray equipment in accordance with Appendix XIX, at a location authorized by the air carrier, to ensure that it does not contain explosives or incendiaries.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011308

Confidential - Do Not Copy or Disclose

Page 158

(a)    

(b)

(3)    The cargo is screened by an FAA-certified
       Explosives Detection System (EDS) in
       accordance with procedures approved by the
       Administrator to ensure that it does not
       contain explosives or incendiaries.

(4)    The cargo is screened by explosives trace
       detection equipment or any other detection
       equipment that has been determined by the FAA
       to be effective, in accordance with procedures
       approved by the Administrator, to ensure that
       it does not contain explosives or
       incendiaries.

(5)    

g.    **Procedures for Suspected or Detected Explosives or
      Incendiaries.**

      Whenever an explosive or incendiary is suspected or
      detected, the air carrier shall apply the security
      procedures prescribed in Section IX.J.4. and the
      following:

      (1)    Immediately notify the local authorities of
             any unauthorized explosives or incendiaries
             found in cargo accepted or tendered for air
             transportation.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011309

Confidential - Do Not Copy or Disclose

Page 159

    (2)    Notify the servicing FAA Civil Aviation
            Security International Field Office (CASIFO)
            and the FBI Legal Representative, (Legatt) if
            available, or Regional Security Officer (RSO),
            at the appropriate U.S. Embassy, of any
            unauthorized explosive or incendiaries found
            in cargo accepted or tendered for air
            transportation. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
            ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    (3)    Notify the servicing FAA Civil Aviation
            Security International Field Office (CASIFO)
            and the FBI Legal Representative, (Legatt) if
            available, or Regional Security Officer (RSO),
            at the appropriate U.S. Embassy, when the air
            carrier or its agent has rejected cargo
            because the air carrier believed that an
            individual or an entity had attempted to
            provide false information or identification in
            association with its cargo.

h.    A record of the ▮▮▮▮▮ screening applied shall be
      maintained by the air carrier as per IX.J.5.  The
      record shall be retained for at least thirty days
      and shall be available to the FAA upon request.

i.    A self-audit consisting of the criteria outlined in
      Appendix XX shall be conducted on a quarterly basis.
      The audit records shall be kept on file for a
      minimum of 90 days and be available to the FAA upon
      request.

j.    Accompanied commercial courier consignments whether
      tendered with an air waybill or as checked baggage,
      shall have each piece of cargo, ▮▮▮▮▮▮▮▮▮▮▮
      ▮▮▮▮▮▮▮▮▮▮ subjected individually to the
      screening procedures outlined in Section XV.A.8.f.

9.    **Mail (property tendered by a civilian or U.S. military**
    **postal administration).**

    a.    The provisions of Section IX.C.1. shall apply to all
        mail accepted for transport.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011310

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 159a

b.   **Acceptance of U.S. Military mail.**



(2)

c.   Mail accepted from an official representative of a
     foreign civil postal administration may be
     transported ▬▬▬▬▬▬▬▬

10.  **Firearms in Checked Baggage.**  Firearms in checked baggage
     shall be transported per 14 CFR 108.11(d).  Upon
     presentation of a firearm for transport, the air carrier
     shall ensure that:

a.   it is in a case suitable to protect it under normal
     baggage handling conditions;

b.   the passenger declares that the firearm is unloaded;

c.   when the firearm is other than a shotgun, rifle, or
     other firearm normally fired from the shoulder
     position, the baggage in which it is carried is
     locked, and only the passenger checking the baggage
     retains the key or combination; and

d.   the baggage containing the firearm is not carried in
     the cockpit or in an area that is accessible to
     passengers.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011311

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 159b

B.    **EXTRAORDINARY SECURITY.**  For all passenger flights departing
      from airports in the countries designated by the Administrator
      in appendix VII.A., the air carrier shall adopt and carry out
      the following special procedures in addition to those
      requirements found in section XV.A.

      1.    **Checked Baggage.**

            a.    Except as provided for in 1.b. of this paragraph,
                  search, x-ray, or screen using EDS equipment, all
                  originating and interlining checked baggage.
                  ██████████████████████████████████ EDS equipment
                  shall be operated using the procedures outlined in
                  the air carriers' FAA-approved amendment.



            c.    Ensure that no one other than the ████████████
                  ██████████████ has access to the
                  contents or any of the compartments of checked
                  baggage after it has been screened in accordance
                  with 1.a. of this paragraph ███████████████████
                  ████████████████████████████████

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011312

Confidential - Do Not Copy or Disclose

Page 159c

2.   **Passenger Prescreening:** Prescreen all originating passengers or interline transfer passengers from foreign air carriers using either of the following procedures.

    a.   Apply the FAA Criteria outlined in a Security Directive, or0

    b.   Apply CAPS and its supplemental procedures as outlined in the air carriers' FAA-approved amendment.

3.   **Clearance Procedures For: Suspect Items/Baggage, Passengers Identified as a Selectee Through Passenger Prescreening, and Checked Baggage and Carry-On Items Belonging to a Selectee.**

CHECKED BAGGAGE:

CARRY-ON ITEMS AND PASSENGERS IDENTIFIED AS A SELECTEE: Screening must occur at a point beyond which the passenger has had contact with other passengers

CHECKED BAGGAGE BELONGING TO A SELECTEE IDENTIFIED BY THE FAA CRITERIA:

    In the presence of the passenger, physically search each checked bag and its contents, or

    Screen the checked baggage using EDS equipment. EDS equipment must be operated using the procedures in the air carrier's FAA-approved amendment.

    b.   CHECKED BAGGAGE BELONGING TO A SELECTEE IDENTIFIED THROUGH CAPS: Screen the checked baggage using EDS equipment. EDS equipment must be operated using the procedures in the air carriers' FAA-approved amendment.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011313

Confidential - Do Not Copy or Disclose

Page 159d

c.    CARRY-ON ITEMS BELONGING TO A SELECTEE IDENTIFIED BY
      THE FAA CRITERIA:



d.    CARRY-ON ITEMS BELONGING TO A SELECTEE IDENTIFED BY
      CAPS:



e.    PASSENGERS IDENTIFIED AS A SELECTEE BY THE FAA
      CRITERIA OR CAPS:

f.    BATTERY OPERATED, ELECTRICAL OR ELECTRONIC ITEMS
      IDENTIFIED AS SUSPECT:

      Screen battery-operated, electrical or electronic
         items using the guidelines in appendix VIII,
         and

      Screen any other type of suspect item using one of
         the following procedures:



Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011314

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 159e

4.   **Questioning Enplaning Passengers.**  Immediately prior to
     boarding any passengers who, since final screening, have
     had contact with passengers of an air carrier not covered
     by this section or had access to airport shops and
     services, the air carrier shall:

     a.   Question each passenger to determine if his or her
          carry-on baggage has left the passenger's control
          since the last security interview and to identify
          articles given to the passenger while at that
          airport or purchased from other than shops and
          services at that airport;

     b.   Physically search all carry-on baggage not in the
          passenger's continuous control since the last
          security interview; and

5.   **Identity Check.**  The air carrier shall compare each
     passenger's ticket or boarding pass with his or her
     passport or other photographic identification at a point
     beyond which the passenger will have no contact with the
     passengers of another air carrier not subject to this
     requirement.  Any discrepancies must be resolved prior to
     that passenger boarding the airplane.

6.   **Area Security.**  The air carrier shall:

     a.   Instruct its employees and agents to report
          unattended articles in the terminal building to the
          appropriate authority.

     b.   Ensure that sterile passenger hold areas that are
          left unattended or unsecured are searched prior to
          use.

7.   **Mail.**

     All non-letter mail items               or more, tendered by a foreign civil postal
     administration shall be subjected to one of the screening
     procedures in XV.A.8.f.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011315

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 159f

8.    **Aircraft Security**.  The air carrier shall:

a.    Guard parked aircraft at all times. ███████



b.    Conduct a security search of each airplane cockpit, cabin, and cargo area as a part of or after servicing operations, by personnel who have been trained to perform an aircraft security search, prior to passenger enplanement.

c.    Guard RON airplanes, ███████████████

███████████ must be inspected prior to passenger enplanement, when airplanes are not guarded per the procedures outlined in paragraph B.8.a. of this section.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011316

Confidential - Do Not Copy or Disclose

Page 159g

C.   **TRAINING.**

    1.   All persons used to perform extraordinary security procedures under paragraph XV.B, including employees of companies under contract to furnish such service, shall receive initial training and recurrent training each 12 months thereafter.  The training shall include training and testing in the appropriate subject areas specified in Appendix XI.  Profilers who have been trained prior to April 1, 1995, must pass the test specified in Appendix XI before they can apply the FAA Criteria.  If a profiler does not pass the test, he or she must receive specific training on the subject areas failed.

    2.   Current and accurate training records shall be maintained at each airport for each employee performing extraordinary procedures at the airport.  The training record shall reflect the date, test results and type of training received.  Training records shall be made available to FAA inspectors upon request and maintained for at least 90 days following termination of that employee.

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011317

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 159h

THIS PAGE INTENTIONALLY LEFT BLANK

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

**AAL 011318**

Confidential - Do Not Copy or Disclose

Page 160

XVI.  **31- THROUGH 60-SEAT OPERATIONS.**

A.    **LAW ENFORCEMENT RESPONSE.**

1.    At airports not governed by FAR Part 107, each air carrier engaging in public charter passenger operations shall, when using airplane with a passenger seating configuration of 31 through 60 seats in an operation for which screening is not required, arrange for law enforcement officers meeting the qualifications and standards specified in FAR Part 107 to be available to respond to an incident and provide to its employees, including crewmembers as appropriate, current information with respect to procedures for obtaining law enforcement assistance at each airport.

2.    At airports governed by FAR Part 107, each air carrier engaging in scheduled or public charter passenger operations, when using airplanes with a passenger seating configuration of 31 through 60 seats for which screening is not required, shall advise the airport operator reasonably in advance of commencement of operations to enable the operator to assure that law enforcement officers are available to respond to an incident when summoned by the air carrier.

3.    At airports not governed by FAR Part 107, each air carrier engaging in public charter passenger operations, shall when using airplanes with a passenger seating configuration of 31 through 60 seats in an operation for which screening is required, provide for law enforcement officers meeting the qualifications and standards specified in FAR Part 107 to respond to an incident and provide to its employees, including crewmembers as appropriate, current information with response to procedures for obtaining law enforcement assistance at each airport.

B.    **SECURITY THREAT PROCEDURES.**  For each scheduled or public charter passenger operation with an airplane having a passenger seating configuration of 31 through 60 seats, for which screening is not required, the air carrier shall implement the procedures contained in appropriate sections of this program when FAA notifies the air carrier that a security threat exists with respect to the operation.

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011319

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Pages 161 through 169

THIS PAGE INTENTIONALLY LEFT BLANK

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011320

Confidential - Do Not Copy or Disclose

Page 170

## XVII. AIRPORT OPERATOR NOTIFICATION -- LAW ENFORCEMENT SUPPORT.

A.   **SCHEDULED OPERATIONS.**  Except when otherwise agreed to by the air carrier and the airport operator, at airports governed by FAR Part 107, each air carrier engaging in scheduled passenger operations for which security screening is required shall advise the airport operator at least 30 days in advance of commencing operations to enable the operator to assure that law enforcement support is available, and advise the airport operator at least 30 days in advance of discontinuing that service.

B.   **PUBLIC CHARTER OPERATIONS.**  At airports governed by FAR Part 107, each air carrier engaging in public charter passenger operations for which security screening is required shall advise the airport operator reasonably in advance of the operation to enable the operator to assure that law enforcement support is available.

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011321

Confidential - Do Not Copy or Disclose

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

**AAL 011322**

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Pages 171 through 179

**THIS PAGE INTENTIONALLY LEFT BLANK**

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011323

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 180

XVIII.     AIRPORT CATEGORIZATION.

A.   AIRPORT CATEGORIES.

    1.   For purposes of the requirements contained in the
following subparagraphs, airports governed by
14 CFR § 107.3(b) are further defined as follows:

       Category X--An airport where screening is performed
pursuant to 108.5(a)(1) or 129.25(b)(1) and the
number of annual enplanements is 5 million or more
and international enplanements of 1 million or more.

       Category I--An airport where screening is performed
pursuant to 108.5(a)(1) or 129.25(b)(1) and the
number of annual enplanements is 1.25 million or
more.

       Category II--An airport where screening is performed
pursuant to 108.5(a)(1) or 129.25(b)(1) and the
number of annual enplanements is 250,000 or more,
but less than 1.25 million.

       Category III--An airport where screening is
performed pursuant to 108.5(a)(1) or 129.25(b)(1)
and the number of annual enplanements is less than
250,000.

    2.   For purposes of the requirements contained in the
following subparagraphs, airports governed by
14 CFR § 107.3(f) and (g) are further defined as follows:

       Category IV--An airport with screening operations
pursuant to 108.5(a)(2) or (3) or 129.25(b)(2) or
(3).

    3.   The Associate Administrator for Civil Aviation Security
has the discretion to, or an airport operator may petition
to, adjust an airport's categorization based upon special
considerations, such as:

         • Threat conditions at that location



Change 60, 5/20/2001

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011324

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 181

B.     LAW ENFORCEMENT OFFICER RESPONSE TIMES.  Law enforcement officer
       maximum response times to a screening checkpoint:



Change 60, 5/20/2001

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011325

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 182 - 189

INTENTIONALLY LEFT BLANK

Change 60, 5/20/2001

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011326

Confidential - Do Not Copy or Disclose

Page 190

## XIX.   PAST EMPLOYMENT CHECKS

A.   **EMPLOYMENT HISTORY, VERIFICATION AND CRIMINAL HISTORY RECORDS CHECK:**  This paragraph applies at airports within the United States, its territories or commonwealths. You, the air carrier operator, will apply the procedures in title 14 CFR § 108.33 to your direct air carrier employees or authorized air carrier representatives (contractors) at those locations who:

   1.   Require unescorted access to SIDA's;

   2.   Screen passengers or property that will be carried in the cabin of an airplane; or

   3.   Who are immediate supervisors (CSS) or the next supervisory level (shift supervisor or site supervisor), to those individuals described in paragraph A.2 of this paragraph.

B.   **EMPLOYMENT HISTORY, VERIFICATION AND CRIMINAL HISTORY RECORDS CHECK – AUDIT**

   1.   **General.**  You, the air carrier operator, shall conduct an annual audit (audit) to measure the compliance with the requirements of § 108.33 relating to employment history investigations (investigations) conducted on your employees and contractors:

      a.   Seeking unescorted access privileges;

      b.   Issued air carrier media which allows them movement within a SIDA; or

      c.   Performing screening functions, or performing supervisory screening functions.

   2.   The required audit, and any alternate amendment approved by the FAA, must consist of a review and revalidation of the prior calendar year's investigations as indicated below:



      a.   

      b.   

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011327

Confidential - Do Not Copy or Disclose

Page 191

c.    ■ of individuals performing screening functions, and their supervisors, at each airport.

3.    The investigations to be reviewed and revalidated (file review) must be <u>randomly</u> selected.  The random selection is expected to be a process that exposes every investigation to potential selection and is not predictable or exploitable. The individual conducting the file review may not be the same individual who conducted or reviewed the original investigation.

4.    You may accomplish the audit through an on-going process or as a look-back of the prior year as a whole.  The audit requirements do not apply to paragraph C., Five Year Background Check for Unescorted Access to Non-SIDA Areas.

5.    Multiple-use checkpoints.  Each air carrier using a multiple-use screening checkpoints shall conduct these audits by:

a.    Conducting the audits individually; or

b.    Rotating auditing responsibility between each carrier using the checkpoint;

(1)    This process must include a rotation schedule developed locally and jointly by each air carrier using the checkpoint;

(2)    A copy of this rotation must be provided to the responsible FAA security office; or

c.    Designating and assigning audit responsibility to one air carrier operating from the multiple-use checkpoint.

(1)    If this option is used a written agreement must be developed, locally and jointly by each air carrier using that checkpoint.

(2)    A copy of this agreement must be provided to the responsible FAA security office.

6.    Audit Summary.  You must create a written audit summary (Summary). One individual may conduct the file reviews, write the Summary, and sign the Summary (if the individual is an air carrier management official).

Change 58, 7/5/2000

<u>WARNING</u>: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011328

Confidential - Do Not Copy or Disclose

Page 192

a.   In the Summary you will:

    (1)   Summarize the <u>preceding calendar year</u> file reviews;

    (2)   Make the Summary available not later than <u>August 20</u> of each year, beginning in year 2001;

    (3)   Have an air carrier management official sign the Summary;

    (4)   Make the Summary, with an original signature, available for inspection by the FAA;

    (5)   Retain the summary for two years.

b.   Alternate audit amendments must contain a.(1)-(5).

c.   Your summary must contain a brief assessment of your implementation of the requirements in § 108.33 and a description of any problems you identified.  Your Summary must include the items listed below:

    (1)   The total number of investigations completed in the calendar year, at the applicable location;

    (2)   The number of file reviews completed for the audit;

    (3)   The name of the file reviewer;

    (4)   The names of the individuals whose file were audited and his or her employer;

    (5)   The name of the entity (air carrier or contractor who conducted each investigation;

    (6)   A statement indicating which if any of the requirements of § 108.33 were not followed in conducting any of the investigations;

    (7)   A brief description of any corrective action taken by you in response to items listed in (6).

Change 59, 4/6/2001

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011329

Confidential - Do Not Copy or Disclose

Page 193

d.   Your Summary must be maintained for each group
     listed in B.2., at the following locations:

     (1)   Contract employees not performing screening
           functions, who have been granted unescorted
           access, must have an audit Summary available
           and maintained at the airport where the
           individual is assigned.  <u>This element of the
           audit must be included in any alternate audit
           approved by the FAA.</u>

     (2)   Crewmembers who are granted movement within an
           airport's SIDA must be included in a Summary
           maintained and available at the your corporate
           office.

     (3)   Direct employees who perform screening or
           supervisory screening functions, or those
           direct employees who have unescorted access,
           ██████████████████, must be included in a
           Summary available and maintained at the
           corporate office.

     (4)   Your contractor employees performing screening
           and supervisory screening functions must be
           included in a Summary available at the airport
           where they are employed.  <u>This element of the
           audit must be included in any alternate audits
           approved by the FAA.</u>

7.   File Review.  You must determine, with each file review,
     whether the investigation was properly accomplished.
     Appendix XXI contains a checklist to assist you in
     conducting an orderly review of the file.  Additionally,
     you may use copies of the original file to conduct the
     audit.

     a.   The file reviewer must determine that the
          investigation includes:

          An application completed by the applicant providing
              all information required in accordance with §
              108.33;

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011330

Confidential - Do Not Copy or Disclose

Page 194

    (2)   Documentation that an employment history
           verification was conducted; and

    (3)   Documentation that a criminal history records
           check was conducted in the case where the
           application reveals a trigger.

b.   The file reviewer must attempt to re-verify for each
     investigative file the entire five-year period
     before the date of the application. ████████

████████████████████████████████████████████

c.   The file reviewer must document for each file
     reviewed either separately or as part the Summary
     document, the information required by 5.c.

d.   In the event that ██████████████████████████
████████████████████ to confirm past employment,
you must —

    (1)   Contact the individual and his or her employer
           requesting additional documentation to resolve
           the situation within 30 days;

    (2)   Immediately after the 30th day has passed take
           action to either suspend or remove the
           individual's unescorted access authority if
           the additional information does not
           satisfactorily resolve the situation or if no
           documentation is provided;

    (3)   If a screener, immediately after the 30th day
           has passed take action to either suspend or
           remove the individual from his or her screener
           or supervisory screening functions if the
           additional information does not satisfactorily
           resolve the situation or no documentation is
           provided; and

    (4)   If removing the individual's unescorted access
           provide written notification to the airport
           operator for those certified under
           § 107.31(n)(1).

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011331

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 195

    e.    Failure to resolve the situation in 30 days will require the application process to restart.

C.    **FIVE YEAR BACKGROUND CHECK FOR UNESCORTED ACCESS TO NON-SIDA AREAS**

    1.    **General**. You, the air carrier operator, will apply this paragraph as needed. This paragraph applies at any airport within the United States, its territories or commonwealths, regulated under part 107 that have non-SIDA areas requiring security controls. Each airport will have these areas identified within their security program.

    2.    **Requirements**.

        a.    You may not apply this measure to those individuals subject to the requirements of paragraph A. of this section.

        b.    You may not collect fingerprints if you are conducting a background check in compliance with this paragraph.

        c.    The required 5 years may be shortened if the individual is entering he workforce from school and has no previous employment references.

        d.    There are no FAA requirements for police checks, education checks, or credit checks to meet compliance with this paragraph.

        e.    The requirements in paragraph B do not apply to background checks conducted in accordance with this paragraph.

    3.    Your direct air carrier employees or authorized air carrier representatives requiring unescorted access to areas controlled for security reasons that are not part of a SIDA will undergo a 5-year background check.

    4.    The 5-year background check must include checking the references and prior employers to the extent allowable by law. The purpose is to verify the representations made by the applicant relating to his or her employment during the preceding 5-year period.

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011332

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Page 196 through 199

THIS PAGE INTENTIONALLY LEFT BLANK

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011333

Confidential - Do Not Copy or Disclose

Appendix I

## DEADLY OR DANGEROUS WEAPON GUIDELINES

The following guidelines are furnished to assist in making a
reasonable determination of what property in the possession of a
person should be considered a deadly or dangerous weapon.  They are
only guidelines, however, and common sense should always prevail.

**Firearms** -- Any weapon from which a shot may be fired by the
force of an explosion including starter pistols, compressed air
or BB guns, and flare pistols.

**Knives** -- Including sabers, swords, hunting knives, souvenir
knives, martial arts devices, and such other knives with blades
4 inches long or longer and/or knives considered illegal by
local law.

**Bludgeons** -- Blackjacks, billy clubs, or similar instruments.

**Explosives/Ammunition/Flammable Liquids** -- Any explosive or
incendiary components which by themselves or in conjunction with
other items can result in an explosion or fire.  These include
explosive materials, blasting caps, fireworks, gasoline, other
flammable liquids, ammunition, etc., or any combination of these
items (generally referred to as a "bomb").

**Disabling or Incapacitating Items** -- All tear gas, mace, and
similar chemicals and gases whether in pistol, canister, or
other container, and other disabling devices such as electronic
stunning/shocking devices.

**Other Articles** -- Such items as ice picks, straight razors, and
elongated scissors, even though not commonly thought of as a
deadly or dangerous weapon, but could be used as a weapon,
including toy or "dummy" weapons or grenades.

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011334

Confidential - Do Not Copy or Disclose

Appendix II
Page 1

## PHYSICAL INSPECTION GUIDELINES

1.   **GENERAL**.  Below are guidelines for physical inspection.  Of course, the best guideline of all is common sense and caution.

    a.   In the whole approach to the screening process, good judgment should prevail.  For example, a pair of dressmaker scissors with other items indicating a hobby of sewing carried by a lady would probably result in a decision permitting her to carry the scissors.  The same scissors carried by a man or without other sewing items might be reason to restrict carriage.  Other devices or objects even though not commonly thought of as a dangerous object, e.g., tools, knitting needles, elongated scissors, and the like, when carried by an individual who does not obviously have a need for such items, may be questionable or may be treated as dangerous objects.

    b.   Likewise, search of luggage also requires common sense and organization.  First, all sections of a bag whether zipper compartments, including shaving kits, etc., must be opened and inspected.  Second, work in an organized manner so you know precisely what you have inspected.  Remember that weapons generally have common characteristics.  They weight more than clothing.

    c.   Within the context of a reasonable search, a garment draped over the shoulders or hand-carried in a manner which does not appear likely to conceal a nonmetallic dangerous device. e.g., an explosive or flammable liquid, could be inspected by the passenger's wearing or carrying it through the metal detector.  If a garment is "bunched up" or appears to be wrapped around something, a physical or x-ray inspection would be required.  Similarly, magazines and newspapers can be screened by the metal detector providing they do not appear to be concealing some nonmetallic dangerous object.  Some very small or thin objects, e.g., boarding passes or tickets, can be screened by simple visual observation or by passage through the metal detector.

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011335

Confidential - Do Not Copy or Disclose

Appendix II
Page 2

d. 

2.    **SPECIAL ITEMS**.  Certain items have a greater potential for concealment or pose special search problems.  They are detailed in the following section:

a.    Containers such as wrapped packages, boxes, and shaving kits packed in carry-on luggage could contain a weapon or dangerous object.  Each one should be opened for inspection.

b.    Thick layers of packed clothing can be checked ▮▮▮▮▮▮

c.    Garment bags need careful checking. ▮▮▮▮▮.

d.    Umbrellas should be slightly opened to insure they do not contain weapons. ▮▮▮▮▮

e.    Attaché cases and small suitcases should be examined to assure that there is no false bottom or concealed compartment. ▮▮▮▮▮

f.    Stuffed pillows and toys ▮▮▮▮▮ to inspect. ▮▮▮▮▮

g.    Cigarette cartons, cigar boxes, and other tobacco containers are also ▮▮▮ items.  They can be inspected by ▮▮▮ open the container and ▮▮▮ check contents.

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011336

Confidential - Do Not Copy or Disclose

Appendix II
Page 3

h.   Even shoes have been used to conceal weapons or explosive
     devices.  The inspection of shoes must include the removal
     of shoe trees to ascertain that nothing is concealed in
     the toe of the shoe.

i.   Aerosol cans should be inspected by holding them so as to
     determine that the ███████ is consistent with what is
     normally expected.
     █████████████  If the can is suspicious in any way, it must
     be cleared of suspicion before being transported.

j.   Cameras or photography equipment should be █████████
     inspected ███████
     █████████████████████████████

k.   All portable electrical devices such as tape recorders,
     dictaphones, and phonographs should also be █████████
     inspected ███████
     █████████████████████████

l.   Books should be inspected to determine that they have not
     been altered to conceal a dangerous object.

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix III
Page 1

## PERSON/HAND-CARRIED (CARRY-ON) ITEM SCREENING GUIDELINES

Section 316 of the Federal Aviation Act provides in part that, to the maximum extent practicable, the FAA Administrator shall require uniform procedures for the inspection, detention, and search of persons and property in air transportation to assure their safety and to assure that they receive courteous and efficient treatment by air carrier representatives and law enforcement personnel engaged in carrying out any air transportation security program. The functions and procedures delineated herein are for the guidance of air carrier and law enforcement personnel assigned to conduct or support established preboard screening. They are consistent with current legal guidelines and are designed to effect uniform application, optimum safety, and the courteous and efficient treatment of all persons subject to preboard screening.

I.   **AIR CARRIER PREBOARD SCREENING FUNCTIONS.**

   A.   Air carriers are responsible for carrying out prescribed preboard screening procedures.

   B.   Air carriers are required to deny passage beyond the screening point to any person or property that has not been screened or inspected.

   C.   Air carriers are required to immediately notify the supporting law enforcement officer when a weapon, explosive, or incendiary is discovered or suspected during the screening process. Notification should be accomplished discreetly to prevent undue alarm.

II.  **GUIDELINES FOR SCREENING PERSONS.**

   A.   **Step #1** -- Initial processing is conducted by an air carrier representative employee or agent of the air carrier using either a walk-through metal detector or a hand-held metal detector. If the person being screened does not alarm the detector, the person is cleared to proceed beyond the screening point. If the metal detector alarms, the person must be reprocessed to determine the cause of the alarm prior to being cleared to proceed beyond the screening point.

   B.   **Step #2** -- Reprocessing is conducted by an air carrier representative whenever a person causes a metal detector to alarm during initial processing. The person causing the alarm divests his/her person of metal and is then reprocessed through a walk-through

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY IS TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011338

Confidential - Do Not Copy or Disclose

Appendix III
Page 2

metal detector. (If the air carrier elects to do so, reprocessing may be done by hand-held metal detector in accordance with procedures described in Step #3.) Items taken from the person should be ███████ inspected. Persons who do not alarm the metal detector during reprocessing are cleared to proceed beyond the screening point. However, if the walk-through metal detector alarms during reprocessing, the person must undergo additional screening prior to being cleared to proceed beyond the screening point.

C.    **Step #3** -- Additional screening is conducted by an air carrier representative whenever individuals cannot be cleared during Step #2. The person should again be requested to divest himself of metal. A hand-held metal detector is then used to determine and isolate the area of the alarm. Once the area has been isolated, the cause of the alarm should be determined, with the person's assistance, through a consent search either by observation, physical inspection of outer garments, or by inspection of the contents of a pocket. The system used should be the least offensive to the person while assuring positive identification of the unidentified metal. Physical inspections should be conducted by the most experienced personnel. A physical inspection of an isolated area that extends beyond inspection of the contents of a pocket may be considered sensitive and should be conducted by a person of the same sex as the person being inspected. In such instances, the screener may call upon the LEO to conduct this more extensive physical inspection. Good judgment must be used to ensure the LEO is alerted and performs the search whenever appropriate or necessary. Assurances that large belt buckles, prosthetic devices, etc., which cause a metal detector to alarm, are not being used to conceal a weapon, in most instances, can be accomplished by examination by the air carrier representative. All metal detector alarms must be resolved prior to a person being cleared to proceed beyond the screening point. In the event an alarm cannot be resolved or there is reason to believe a weapon may be concealed on the person being screened, the supporting LEO shall be advised.

D.    **Step #4** -- Further consent searches by the LEO providing support for the preboard screening procedures are conducted when the cause of a metal detector alarm cannot be ascertained by air carrier personnel after

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011339

Confidential - Do Not Copy or Disclose

Appendix III
Page 3

carrying out the procedures described in Steps 1 through
3. Under such circumstances, the law enforcement officer
acts to assist the air carrier by virtue of his or her
expertise and is not considered to be conducting a law
enforcement frisk/search, unless in his or her
professional judgment, the circumstances require same.
Such a voluntary search shall be limited to the area of
the unresolved alarm and only be conducted to the extent
necessary to assure the absence of a weapon. These
searches should be conducted by persons of the same sex as
the person being frisked. If the cause for alarm is
determined to be other than a deadly or dangerous weapon
and not an object inimical to flight safety, an air
carrier representative is to be advised. The air carrier
representative may then grant permission for the person to
proceed to board. If an explosive, incendiary, or deadly
or dangerous weapon or other contraband is discovered, the
LEO will take custody of and determine proper disposition
of the item, and initiate any appropriate law enforcement
action. If at any time during a voluntary search, when
his or her professional judgment demands it, the LEO may
conduct a full law enforcement frisk/search incident to
arrest.

E.    Complete searches are to be conducted by a LEO whenever
there is reason to believe a deadly or dangerous weapon
may be concealed on the person, or at any time when, in
the judgment of the LEO, circumstances or facts exist that
require a more extensive search. The extent of these
searches will be dictated by the necessity of the
situation and the legal authority possessed by the LEO.

III. **HAND-CARRIED (CARRY-ON) ITEM SCREENING GUIDELINES.**

A.    **Step #1** -- Carry-on Item Inspection is conducted by an air
carrier representative using an x-ray device or by
physical inspection of the item (see Step #2). Metal
detectors are not to be used to screen carry-on items.
When using the x-ray, if all objects contained in the item
are clearly identifiable as being other than an explosive,
incendiary, or deadly or dangerous weapon, the item is
cleared to be taken beyond the screening point. If the x-
ray displays an image of an explosive, incendiary, or
deadly or dangerous weapon, the law enforcement officer
shall be advised immediately. Notification should be
accomplished as discreetly as possible. Air carrier
representatives should maintain positive control of the
item until the supporting LEO

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011340

Confidential - Do Not Copy or Disclose

Appendix III
Page 4

is able to witness the opening of the item and verify that
it contains an explosive, incendiary, or deadly or
dangerous weapon.  Air carrier personnel should refrain
from removing or touching such objects and defer further
action to the LEO.  If the x-ray displays an image of an
unidentifiable object ████████████ explosive,
incendiary, or deadly or dangerous weapon to █████ or
████████ such objects, the item must be subjected to
physical inspection prior to being permitted beyond the
screening point as in Step #2 below.  Until an item is
cleared, care shall be taken to assure that it remains in
the control of the air carrier representative or LEO.

B.     **Step #2** -- Physical inspection is conducted by an air carrier
       representative where there is no operable x-ray device at the
       screening point or whenever an item cannot be cleared by
       observation of the x-ray image.  If no explosive, incendiary, or
       deadly or dangerous weapon is discovered, the carry-on item may
       be permitted beyond the screening point.  If an explosive,
       incendiary, or deadly or dangerous weapon is discovered, the LEO
       shall be advised immediately.  Notification should be made as
       discreetly as possible.  If a questionable object which might be
       inimical to the safety of the flight is discovered, the air
       carrier beyond the screening point.  In determining if an object
       would be inimical to flight safety, it may be appropriate to
       secure the professional opinion of the supporting LEO.  If an
       object or its possession is unlawful, the LEO will take
       appropriate action.  If it is determines that a questionable
       object is not inimical to flight safety, the object may be
       permitted beyond the screening point.  Here again, care should
       be taken to assure that items undergoing inspection are retained
       in the control of the air carrier representative or LEO until
       cleared.

C.     **Step #3** -- LEO's, upon learning of the discovery of an
       explosive, incendiary, or deadly or dangerous weapon, shall take
       steps to verify the discovery, take custody of the item, and
       initiate appropriate law enforcement action.

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011341

Confidential - Do Not Copy or Disclose

Appendix IV
Page 1

## SCREENING PERSONNEL TRAINING GUIDELINES

### INITIAL TRAINING.

A.   **The Reason for Passenger Screening.**

    1.   The history of the threat against civil aviation.

B.   **The Legal Basis for Passenger Screening.**

    1.   FAR 108.9.
    2.   ICAO Annex 17, Section 5.1.5.

C.   **The Effectiveness of Passenger Screening.**

    1.   The evolution of passenger screening.

D.   **How Aviation Security Works.**

    1.   Air carrier responsibilities.
    2.   Airport operator responsibilities.
    3.   FAA responsibilities.
    4.   How passenger screening works.
        a.   The sterile area.
        b.   Screening checkpoint plans.
        c.   How a screening checkpoint works.
        d.   Screening tasks.
        e.   Screener-In-Charge.
        f.   Checkpoint Security Supervisor.
        g.   Ground Security Coordinator.
        h.   The passenger's rights.

E.   **The Importance of the Screener.**

    1.   Screener attributes.
    2.   Tact, courtesy, and caution.

F.   **Identifying the Threat.**

    1.   Potential weapons.
    2.   Obvious weapons.
        a.   Firearms and knives.
        b.   Explosive devices.
            i.   The power source.
            ii.   The initiator.
            iii.   The explosive charge.
            iv.   The timing device.
        c.   FAA test objects.
        d.   Air carrier testing.
    3.   Hazardous materials.

Change 29, 3/10/91

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011342

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix IV
Page 2

G.    **Screening the Passenger.**

    1.    The walk-through metal detector.
    2.    The hand-held metal detector.
    3.    The consent search.

H.    **Screening Hand-carried Items.**

    1.    The x-ray system.
    2.    X-ray safety.
    3.    Image interpretation
    Image categories:  No threat
                  Possible threat
                  Obvious threat
    4.    Conducting a physical inspection.

(1-3 only where x-ray systems are used for screening)

I.    **Screening Atypical Passengers.**

    1.    Private screenings.
    2.    Law enforcement officers.
    3.    Non-ambulatory and other physically impaired passengers.
    4.    Dignitaries, VIP's, Witnesses
    5.    Non-English speaking passengers.
    6.    Elderly Passengers
    7.    Children in strollers.
    8.    Air carrier and airport employees.
    9.    Electric carts.

J.    **Special Situations.**

    1.    Classified or diplomatic documents.
    2.    Extraordinary items.
    3.    Religious articles.
    4.    Contraband.

K.    **Information Circulars and Security Directives.**

L.    **Denied Entry into the Sterile Area.**

M.    **Station Specific Instruction.**

    1.    Alarm procedures.
    2.    Equipment operation.
    3.    Law enforcement support procedures.
    4.    Air carrier procedures.

Change 29, 3/10/91

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011343

Confidential - Do Not Copy or Disclose

Appendix IV
Page 3

N.    **Screener Test and Evaluation.**

1.    Qualifying score (85% or more correct answers): review any incorrect responses.
2.    Partially qualifying score (51-84% correct answers): remedial instruction and retesting in appropriate subject areas.
3.    Disqualifying score (50% or less correct answers) repeat entire training program.

O.    **Approved Audiovisual Presentations.**

FAA Productions:

"Screening Techniques", Part I.
"Screening Techniques", Part II. (Presentation of Part II may be omitted for personnel employed at screening points not using x-ray equipment.)

or

**ATA Productions:**

"The First Line of Defense"
"Security Screener"

**RECURRENT TRAINING.**

A.    Annual.

B.    Brief Screeners on New Threat Information.

C.    Review Pertinent Security Experience and Applicable Security Incidents.

D.    Review Basic Screening Procedures and Techniques.

E.    Approved Audiovisual Presentations.

FAA Production:

"Advanced Screening Techniques".

Change 29, 3/10/91

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011344

Confidential - Do Not Copy or Disclose

Appendix V
Page 1

CHECKPOINT SECURITY SUPERVISOR TRAINING GUIDELINES.

A.    **Checkpoint Security Supervisor Personnel.**

    1.    The Checkpoint Security Supervisor
    2.    The Screener-in-Charge.

B.    **The Supervisor's Job Responsibilities.**

C.    **Exceptional Screening and Special Situations.**

    1.    The passenger's rights.
    2.    The consent search.
    3.    Authorized armed individuals.
    4.    Private screening.
    5.    Information Circulars and Security Directives.
    6.    Contraband.

D.    **Equipment Testing Responsibilities and Techniques.**

    1.    The walk-through metal detector operational test.
    2.    FAA walk-through metal detector testing.
    3.    The x-ray system operational test.
    4.    The hand-held metal detector.
    5.    Reporting equipment deficiencies.
    6.    FAA and air carrier testing.

E.    **Recordkeeping.**

    1.    Operator logs.
    2.    Walk-through metal detector test logs.
    3.    X-ray system operational test logs.
    4.    Incident logs.
    5.    Screener training records.

F.    **Conflict Avoidance and Problem Resolution.**

    1.    Anticipating problems.
    2.    LEO notification.
    3.    Passenger complaints.

G.    **Working with Management.**

    1.    Knowing your responsibilities.
    2.    The information chain.
    3.    Ground Security Coordinator.

Change 29, 3/10/91

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix V
Page 2

H.   **Incident Management.**

    1.    Detaining passengers.
    2.    Weapons guidelines.
    3.    Interviewing witnesses.
    4.    Collecting evidence.
    5.    Incident reports.

I.   **Checkpoint Supervision.**

    1.    The team concept.
    2.    Review of positions.
    3.    Rotation of screeners.
    4.    Supervision of OJT training.
    5.    Observation of screeners.

J.   **Motivational Techniques.**

K.   **Station Specific Instruction.**

    1.    Alarm procedures.
    2.    Station chain of command.
    3.    OJT practices.
    4.    Duty hours.
    5.    Assignment rotation.
    6.    Rest breaks.
    7.    Scheduling practices.
    8.    Uniform requirements.
    9.    Inspection procedures.
    10.   LEO Identification.
    11.   Law enforcement procedures.
    12.   Specific air carrier policy.

L.   **Supervisor Test and Evaluation.**

    1.    Qualifying score (90% or more correct answers):
        review any incorrect responses.
    2.    Partial qualifying score (51-89% correct answers):
        remedial instruction and retesting in appropriate subject
        areas.
    3.    Disqualifying score (50% or less correct answers):
        repeat entire training program.

The above training program shall encompass at least 8 hours of
classroom and onsite instruction in addition to the screener training
specified in Section XIII.C.2.d.

Change 29, 3/10/91

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011346

Confidential - Do Not Copy or Disclose

Appendix VI
Page 1

## FAA-APPROVED TEST OBJECTS.

A.    DESCRIPTION OF FAA-APPROVED TEST OBJECTS:

1.    **Three Stick Simulated Dynamite Time Bomb:**

Specifications:
- 3 EA natural nylon dowels; 1 1/4" diameter x 8" long
- 1 EA dummy, electric blasting cap, ▮▮▮▮▮▮▮▮▮▮
- 1 EA battery, dry cell, 9-volt transistor-type with snap on cup
- 1 EA clock, mechanical, alarm; approximate dimensions 4" x 4" x 1 1/2"

2.    **Simulated Pipe Bomb:**

Specifications:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3.    ▮▮▮▮▮▮      practice hand grenade ▮▮▮▮▮▮

4.    Pistol, revolver, ▮▮▮▮▮▮▮▮▮▮▮

5.    **Firearm, toy, metal.** ▮▮▮▮▮▮▮▮▮▮▮

6.    **Opaque Test Objects:**

Specifications of each configuration:





Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011347

Confidential - Do Not Copy or Disclose

Appendix VI
Page 2

7. **Operational Test Piece (OTP), Testing the Operating Condition of a Walk-Through Metal Detector or Testing Walk-Through Metal Detector Operators.**

An OTP must be used to test the effectiveness of a walk-through metal detector device, and can be used to test walk-through metal detector operators.

An OTP is described as a simulated weapon fabricated from ███ ███████████ and composed of the following three parts:
- Barrel: ███████████████████████
- Mid-section ██████████████████
- Handle ████



8. **Encapsulated OTP, Testing the Operating Condition of a Walk-Through Metal Detector or Testing Walk-Through Metal Detector Operators:**

An OTP must be used to test the effectiveness of a walk-through metal detector device, and can be used to test walk-through metal detector operators. An encapsulated OTP is deemed equivalent to the ███ described in paragraph A.4. of this appendix.

The OTP shall be encapsulated in epoxy to an overall size of ██████████

9. ██████████████████████████████████

████████████revolver shall be non-operational and encapsulated in epoxy to an overall size of ███████



Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011348

Confidential - Do Not Copy or Disclose

Appendix VI
Page 3

**TEST OBJECTS TO BE USED FOR TESTING X-RAY OPERATORS:**
- Three Stick Simulated Dynamite Time Bomb.
- Simulated Pipe Bomb.
- Grenade, hand, practice with inert fuse.
- Pistol, revolver, ██████████████ caliber, encapsulated in epoxy.
- ████████ LR revolver, encapsulated in epoxy.
- Opaque Test Objects.

C.   **TEST OBJECTS TO BE USED FOR TESTING WALK-THROUGH METAL DETECTOR OPERATORS:**
- ██ Pistol, revolver ████ barrel, ████ caliber,
- ████████ revolver, encapsulated in epoxy.
- OTP, encapsulated in epoxy.
- OTP, unencapsulated.

D.   **TEST OBJECTS TO BE USED FOR TESTING SCREENERS PERFORMING PHYSICAL INSPECTIONS OF CARRY-ON ITEMS:**
- Three Stick Simulated Dynamite Time Bomb.
- Simulated Pipe Bomb.
- Grenade, hand, practice with inert fuse.
- Firearm, toy, ████████████████████

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011349

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix VI.A.
Page 1

### SIMULATED IMPROVISED EXPLOSIVE DEVICE (IED) TEST COMPONENTS.

The IED test components contains ██ items, which can be assembled into
different combinations representing simulated IED's. Each simulated
IED will consist of one item from each of the four areas: an
████████████████████████████████████████. The ████
components will be connected together with ██ gauge wire to complete a
simulated IED.

### Simulated IED Components:

#### Explosives
1.    Dynamite
   • Specifications:  3 each natural nylon 6/6 dowels;
     1 1/4" diameter x 7 7/8" long.



#### Power Sources
5.    Polaroid battery
6.    9-volt battery
7.    Two 1.5 volt batteries

#### Timing Devices
8.    Digital travel clock
9.    Small analog pocket watch
10.   Analog travel clock
11.   Large analog clock

#### Initiator
12.   ██████████████████████████████████)


   ████      gauge wire

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011350

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix VII.A.
Page 1

**DESIGNATED FLIGHTS--EXTRAORDINARY SECURITY.**

**Applicability**

The procedures in Section XV.B. shall be applied at airports in the
regions and countries listed in Paragraph B. of this appendix for
the following:

a.    To all air carrier scheduled flight operations; and

b.    To all public charter operations 

The procedures in Section XV.B. shall be applied at airports in the
regions and countries listed in Paragraph B. of this appendix for
operations in which the air carrier has ████████ to a ████████
████████ except as provided in Appendix VII.C.

3.    The procedures in Section XV.B. shall be applied at airports in
the regions and countries listed in Paragraph B. of this appendix
████████████, except as provided in Appendix VII.D.

B.    **Section XV.B., Designated Regions and Countries:**

1.    

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011351

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix VII.A.
Page 2



Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE
PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN
PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION
ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER
ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011352

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix VII.B.
Page 1

## U.S. AIRPORTS DESIGNATED AS CATEGORY "X"

1.   Atlanta (ATL)
2.   Baltimore-Washington (BWI)
3.   Boston (BOS)
4.   Chicago (ORD)
5.   Dallas/Fort Worth (DFW)
6.   Denver (DEN)
7.   Detroit (DTW)
8.   Honolulu (HNL)
9.   Houston (Intercontinental) (IAH)
10.  Los Angeles (LAX)
11.  Miami (MIA)
12.  New York (JFK)
13.  Newark (EWR)
14.  Orlando (MCO)
15.  St. Louis (STL)
16.  San Francisco (SFO)
17.  San Juan (SJU)
18.  Washington (Dulles - IAD)
19.  Washington (National - DCA)
20.  Seattle-Tacoma (SEA)

Change 56, 5/1/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011353

Confidential - Do Not Copy or Disclose

Appendix VII.C.
Page 1

## OPERATIONS OF U.S. AIR CARRIER AIRCRAFT WET LEASED
## TO FOREIGN AIR CARRIERS.

A.   The term "wet lease" means any leasing arrangement whereby a
     person agrees to provide an entire aircraft and at least one
     crewmember.

B.   When the following conditions exist, a U.S. air carrier engaged
     in wet lease [passenger flight] operations with a foreign air
     carrier that is performing scheduled passenger or public charter
     operations is not required to perform the security requirements
     detailed in Sections ███████████████████. when departing
     from nonextraordinary locations (countries and regions not
     included in Appendix █████.) or the security requirements
     detailed in Sections ████████ and ████. when
     departing from extraordinary locations (countries and regions
     included in Appendix VII.A.):

     1.   Written confirmation is received from the PSI for each wet
          lease operation before the start of operation that neither
          the foreign air carrier nor the departure airport is
          designated by the FAA as warranting additional security
          measures; AND



     3.   EITHER a. or b. below applies:



          b.   █████████████████████████████████

               (1)  ████████████████████████████████

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011354

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix VII.C.
Page 2

(2) 

C.    **Air Carrier Responsibilities:**

The U.S. air carrier shall notify its PSI prior to the start of
each planned operation.

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011355

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix VII.D.
Page 1

## OPERATIONS OF U.S. AIR CARRIER CONDUCTING CHARTERS FOR
## FOREIGN AIR CARRIERS.

A.    The term "charter" is an agreement whereby a person agrees to
      provide all or part of the lift capacity of an aircraft it
      operates to another person for a defined period of time or number
      of flights.

B.    When the following conditions exist, a U.S. air carrier conducting a
      charter operation for a foreign air carrier that is performing
      scheduled passenger or public charter operations is not required to
      perform the security requirements detailed in Sections ████.,
      ████████████. when departing from nonextraordinary locations
      (countries and regions not included in Appendix ████.) or the
      security requirements detailed in Sections ████████████████
      and ████. when departing from extraordinary locations (countries and
      regions included in Appendix ████.):



      1.

      2.

      3.

         a.

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011356

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix VII.D.
Page 2



(2)

(a)

(b)

(c)

C.    **Air Carrier Responsibilities:**

The U.S. air carrier shall notify its PSI prior to the start of
each planned operation.

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011357

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix VIII
Page 1

### PROCEDURES FOR SCREENING BATTERY-OPERATED, ELECTRICAL, OR ELECTRONIC DEVICES.

A.    After applying the following FAA criteria, for baggage containing a battery operated device or an electrical or electronic device identified as suspect, the following procedures shall apply:

1.    ███████████████████████████████████ ████████████████████ must be physically inspected. If a device listed in a ███████████████ is discovered, the procedures in paragraph D. of this Appendix shall be followed.

2.    For all other devices, the screener will determine whether the device belongs to the passenger, how and when the device was obtained by the passenger, and if the device has been out of the personal control of the passenger.

a.    

Change 37, 7/23/93

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011358

Confidential - Do Not Copy or Disclose

Appendix VIII
Page 2

b. 

B.  For any device which cannot be cleared ████████████, the
    following procedures shall be followed:

    1.  The device shall be subjected to physical inspection
        

    2.

C.

Change 37, 7/23/93

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011359

Confidential - Do Not Copy or Disclose

Appendix VIII
Page 3

████████    If cleared by the supervisor the item may be
transported.  If not cleared, the procedures in paragraph D. of
this Appendix shall be followed.

D.    The following procedures apply for devices matching the
description of any of the suspect devices listed ███████████████
██████████████ or devices that cannot be cleared in
accordance with paragraph C. of this Appendix:

1.    The item may not be transported unless subjected to
inspection and clearance by government ████████████████
██████████████████████████ personnel.

2.    Baggage containing the suspect device(s) shall be
physically inspected to identify ██████████████████████████
███████████████████████████████████████ Following this
physical inspection, the baggage shall be subjected to at
least a two-plane x-ray screening for any signs of
tampering or modification█████████████████████████████████
████████████████████████████████████████

3.    The passenger becomes a selectee in accordance with
Section XV.B.2 and 3.

4.    The air carrier must immediately provide the appropriate
airport authority, as well as U.S. air carriers operating
from that airport, a description of any items it has
prohibited from transportation, as well as the name and
destination of the passenger attempting to transport the
item.

Change 37, 7/23/93

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011360

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix IX
Page 1

### FAA APPROVED SEALING PROCEDURES.

When required by this program, these sealing procedures shall be used for an airplane, or for a vehicle/container used to transport checked baggage.

A.   Seals used shall be tamper-evident ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    1.   The carrier shall record ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    2.   Records shall be maintained ▮▮▮▮▮▮▮▮▮▮▮▮▮

B.   Prior to opening a sealed airplane or a vehicle/container used to transport checked baggage, each seal shall be inspected ▮▮▮▮▮▮

C.   When it appears that a seal has been tampered with ▮▮▮▮▮▮▮▮



Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011361

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix X

**PROGRAM AMENDMENT EXPLANATIONS**

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011362

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XI
Page 1

### SPECIAL PROCEDURES TRAINING GUIDELINES.

A.    **SCREENERS**:  Personnel used to screen passengers, carry-on
       articles, checked baggage, electronic devices, freight, and
       other persons boarding the airplane.

   1.    **Initial Training.**

         a.    Pertinent procedures from Section XV.

         b.    Physical search techniques.

         c.    Use of hand wand (when trainee's duties will include
               screening of persons).

         d.    Use of x-ray equipment and safety procedures (when
               trainee's duties will include x-ray inspection).

         e.    Recognition of weapons and explosives.

         f.    Procedures to summon authorities when weapon or
               explosive is detected.

         g.    Function of Ground Security Coordinator.

         h.    Applicable Security Directives.

         i.    Testing which demonstrates task proficiency and
               conceptual mastery.

   2.    **Recurrent training.**

         a.    Annual review of new or changed requirements.

         b.    Testing which demonstrates task proficiency and
               conceptual mastery.

B.    **SUPERVISORS AND PERSONNEL USED TO GUARD OR SEARCH AIRPLANES.**

   1.    **Initial Training.**

         a.    Pertinent procedures from section XV.

         b.    Recognition of weapons and explosives.

         e.    Procedures to summon authorities when weapon,
               explosive, or intruder is discovered.

Change 28, 2/15/91

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011363

Confidential - Do Not Copy or Disclose

Appendix XI
Page 2

    d.   Function of the GSC.

    e.   Testing which demonstrates task proficiency and conceptual mastery.

**2.   Recurrent Training.**

    a.   Annual review of new or changed requirements.

    b.   Testing which demonstrates task proficiency and conceptual mastery.

**C.   PROFILERS AT EXTRAORDINARY SECURITY LOCATIONS.**

**1.   Initial Training.**

    a.   Threats to U.S. Civil Aviation/Dynamics of international terrorism.

        (1)   Overview.

        (2)   General threat to U.S. civil aviation.

        (3)   Current threat to U.S. civil aviation.

    b.   Air carrier security program.

        (1)   Security planning and organization.

            i.    International/ICAO.

            ii.   National Civil Aviation Authority - DOT.

            iii.  Federal Aviation Administration, Civil Aviation Security.

            iv.   Roles of the air carrier, airport operator law enforcement officers, and the FAA.

        (2)   Purpose of the Air Carrier Standard Security Program:  How the program is implemented in the U.S. and at foreign airports.

        (3)   Nondiscrimination policy and courtesy toward passengers.

Change 50, 6/27/98

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011364

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XI
Page 3

c.   Sections IV, V, VII, VIII, XII, XIII, and XIX.
     Appendices I, II, III, VII, and VIII.

d.   Application of Profile.

   (1)   Pertinent procedures from Section XV.

   (2)   FAA Criteria.



      iv.   Mandatory Baggage Control
            Questions

      v.    Procedures for processing
            selectees.

   (3)   Interview Techniques.

e.   Communication equipment.

f.   Liaison.

   (1)   Identification of support elements.

   (2)   Information exchange.

   (3)   Integrated operations.

g.   Confidentiality of profile criteria.

h.   Recognition of behavioral signs and cross culture
     differences.

i.   Testing which demonstrates task proficiency and
     conceptual mastery.

2.   **Recurrent Training.**
     a.   Review of new or changed requirements.

     b.   Topical or issue-oriented discussion.

     c.   Review of recent incidents involving U.S. air
          carriers.

     d.   Review of profiler performance.

Change 41, 4/1/95

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011365

Confidential - Do Not Copy or Disclose

Appendix XI
Page 4

    e.    Testing which demonstrates task proficiency and conceptual mastery.

3.    **Testing.**  Profilers must be tested as part of initial and recurrent training on the following topics:

    a.



    b.    The test must require the profiler to diagram or describe each successive step in the process of applying the intensive interview elements.

D.    **PROFILERS AT DOMESTIC LOCATIONS.**

    **Training Outline.**

1.    **Air Carrier Standard Security Program (ACSSP).**

    a.    Purpose of the ACSSP:  How the program is implemented in the United States.

    b.    Nondiscrimination policy and courtesy toward passengers.

2.    **Application of Profile.**  Direct air carrier employees or authorized air carrier representatives who do NOT perform passenger profiling, need not be trained on this subject.

    a.    Computer assisted passenger screening (CAPS) system, when used to profile passengers.  (CAPS training programs will be considered for approval by the air carrier's assigned PSI, after the functional specifications documents are submitted to the PSI.)

        (1)    Only the necessary procedures to enable the air carrier employee or authorized air carrier representative to check in the passenger

        (2)    The employees or authorized representatives are NOT to be provided the ▮▮▮▮▮ CAPS profile.

        (3)    Procedures for processing selectees.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

Confidential - Do Not Copy or Disclose

Appendix XI
Page 5

    b.   FAA Domestic Selection Criteria, when used to profile passengers.

       (1)   Random selection procedures, when used for ▮ ▬▬▬▬▬▬ aircraft operations within the U.S., its territories and commonwealths.

       (2)   ▬▬▬▬▬▬ that can be used to clear a selectee.

       (3)   Procedures for processing selectees.

3.   **Mandatory Baggage Control Questions.**  Direct air carrier employees or authorized air carrier representatives who do NOT perform passenger questioning, need not be trained on this subject.

    a.   Purpose of questioning passengers, i.e. questions designed to identify the "dupe" passenger; questions reduce the risk that a passenger unknowingly transports a deadly or dangerous item.

    b.   Identification of suspect items and associated clearance procedures.

    c.   Identification of checked baggage not controlled by the passenger and associated clearance procedures.

    d.   Clearance procedures of carry-on items and checked baggage belonging to a passenger unable to provide answers during questioning.

4.   **Identification media (ID)** requested from the passenger. Direct air carrier employees or authorized air carrier representatives who do NOT request ID from passengers, need not be trained on this subject.

    a.   Acceptable forms of ID.

    b.   Procedures for processing selectees.

5.   **Liaison.**  Whom to notify if support is needed.

6.   **Confidentiality of profile criteria, 14 CFR part 191, and penalties for release of such information.**

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011367

Confidential - Do Not Copy or Disclose

Appendix XI
Page 6

7.   **Testing which demonstrates task proficiency.**

   a.   Profilers shall be given a written or computer-based test upon completion of training.

   b.   The test shall require that the profiler correctly identifies:

      (1)   ▉▉▉▉▉▉ percent of the elements described in paragraph D.2.b. of this appendix, if applying the FAA Domestic Selection Criteria;

      (2)   clearance procedures for checked baggage belonging to a selectee identified through passenger profiling, if performing passenger profiling;

      (3)   the purpose of questioning passengers and subsequent clearance procedures, if performing passenger questioning; and

      (3)   from whom ID is requested, acceptable forms of ID, and subsequent checked baggage clearance procedures, if requesting ID from passengers.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011368

Confidential - Do Not Copy or Disclose

Appendix XII
Page 1

## GROUND SECURITY COORDINATOR TRAINING SUBJECT OUTLINE.

**Duties and Responsibilities.**

- Delegation of Duties
- Interface with the ISC
- Interface with the ASC When Serving as the Air Carrier's Representative
- Interface with Ground Personnel
- Effective Security System Monitoring
- Lines of Communication to and from Ground Security Coordinator

B.    **Threat Analysis.**

General Threat

Current Threat
- Geographical areas
- At departing airports
- At destination airports

Shared Intelligence
- Other carrier experience
- Other airport experience
- Intelligence sources

C.    **Ground Security.**

Regulatory Requirements
- Areas to be monitored
- Checkpoints
- Auditing and Testing Screening Checkpoint Operations
- Restricted areas

Identification Requirements

Extraordinary measures

Monitoring of Ground Service Activities
- Maintenance operations
- Cleaning
- Catering
- Fueling

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011369

Confidential - Do Not Copy or Disclose

Appendix XII
Page 2

- Baggage loading
- Other ground support activities performed on aircraft
  and adjacent area

Perimeter Controls

Air Operations Area Controls

Guards/LEO's

ICAO Standards and Recommended Practices

D.   **Preboard Screening.**

Screening Procedures
- Regulatory requirements
- Personnel assignments
- Detection objectives
- Training procedures
- Monitoring by FAA/GSC
- Testing of screening personnel

System Operations
- Supervision
- Law enforcement support
- Use of profiles

E.   **Baggage/Cargo Security.**

Baggage Acceptance Procedures
- Regulatory requirements
- Normal procedures
- Extraordinary procedures when in effect
- Search/X-ray
- Passenger/bag match
- Curbside acceptance

F.   **Aircraft Security.**

Access controls

Attended

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011370

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XII
Page 3

Unattended

Aircraft Characteristics
- Secure procedures
- Recognition of properly secured aircraft
- Areas of concealment of individuals or objects

Crew Baggage
- Company procedures

Crew Security Training
- Scope of training
- Security coordinator input as needed

G.   **Emergency Response.**

Scope of Assistance
- Airport command post
- Local law enforcement
- FBI
- Other

Threat Definition



Response Action
- Utilize action plan
- Team concept
- All available resources

H.   **Liaison.**

Identification of Support Elements
- Nature of support
- Capabilities
- Contact methods

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011371

Confidential - Do Not Copy or Disclose

Appendix XII
Page 4

Information Exchange
- Agencies/parties involved
- Formal and informal

Integrated Operations
- Participants in integrated operations
- Scope of integrated operations

I.    **Deadly and Dangerous Weapons.**

Identification of Deadly and Dangerous Weapons and Objects
- Screening program guidance
- ███████████████████████
- FAA security directives/information circulars

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011372

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XIII
Page 1

CREWMEMBER TRAINING.

1.   **Subject Outline.**

   a.  **Crewmembers' Role in Security.**

       Confidentiality of Information.

       Eyes and Ears of Certificate Holder.

       Most Important Player.

       Pilot-in-Command as Inflight Security Coordinator.
       -     Duties
       -     Responsibilities
       -     Other crewmembers' interface with in-flight and
             ground security coordinators

   b.  **Preventive Security.**

       Why Crewmembers Are Involved.
       -     Authority/regulations
       -     Certificate holder responsibilities

       Levels and Types of Threats.
       -     Definition of terms (designated flights/airports)
       -     Federal Air Marshal Program
       Responsibilities of Crewmembers.
       -     Continuous involvement
       -     Potential involvement (e.g., FBI
             debriefing/prosecution)

       Coordination With Other Program Elements (e.g.,
       designated security coordinators/law enforcement
       agencies).

       Integration of Existing Security Procedures.
       -     Ground procedures (i.e., crew ID, crew bags,
             attended/unattended aircraft, uniforms,
             screening)
       -     Flight procedures (i.e., crewmember
             communications/coordination)

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011373

Confidential - Do Not Copy or Disclose

Appendix XIII
Page 2

Airport Operations Area Protection.
- Barriers (e.g., perimeter/gates)
- Ramp/cargo area
- ID system
- Challenge procedures

Aircraft Protection.
- Attended
- unattended

Emergency Response.
- Crewmember-initiated
- Airport-initiated

Foreign Airport Security.
- ICAO standards
- Increased vigilance
- Airport-specific conditions
- What to expect from host government, e.g., Cuban Government during hijacking

c.  **Reactive Strategy.**

Common Strategy.

Corporate/Government Support.
- Aircraft maintenance and systems specialists
- Explosives specialists
- Negotiators
- Medical doctors, including psychologists/ psychiatrists
- Incident management (e.g., specific flight security information)
- Communications (e.g., ██████████████)

Crewmember Tactics.
- Response to hijacking
- Response to sabotage

Deadly and Dangerous Weapons.

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XIII
Page 3

-    Identification of weapons, e.g., weapons that
     have been broken down into components
-    Identification of bombs and flammable devices
-    How bombs and weapons are smuggled onboard
-    Dealing with bombs.  When to leave them alone,
     and when to move them
-    ██████████████████

Interpretation of Threat (e.g., interference vs.
hijacking).

Support Available During Emergency.

Scope of Assistance.
-    Airport command post
-    Local law enforcement
-    FBI/FAA
-    Other
-    Hostage negotiation
-    Armed intervention
-    



-
-
-    Post-resolution procedures, e.g., FBI debriefing
-Press/media interface

d.   **Threat Definition and Appropriate Response.**

     -
     -
     -
     -

Response Action.
-    Utilize action plan
-    Team concept
-    All available resources

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011375

Confidential - Do Not Copy or Disclose

Appendix XIII
Page 4

2.  **Outline for Alternative Crewmember Initial Training.**
Pursuant to the requirements in Section XIII J.2.a.(2), the
air carrier shall provide to the FAA for review and
approval, the proposed classroom curriculum to ensure
training covering the following subject areas:

   a.  **Common Strategy.**  Train crewmembers in a common
strategy for airline security.  (FAA video must be
shown.)

   b.  **Hostage Negotiations and Victimology.**  Train
crewmembers in causes and effects of ███████
███████████████ crewmember behavior
during various phases of an incident and hostage
reaction during all phases of an incident.

   c.  **Weapons and Explosive Devices.**  Description of
automatic and revolver handguns and description of the
differences in their operation.  Contents and makeup of
explosive devices explained.

   d.  **Security Requirements.**  Situations that would require
briefing (GSC to ISC, ISC to crew) and definition of
who is designated as a Ground or In-flight Security
Coordinator. Discuss other pertinent information such
as GSC/ISC interface and documentation of the
interface.  Review general security procedures in
Sections II, V, VI, XI, and XV.A. of the air carrier's
approved security program and Federal Aviation
Regulations Part 108.  Crewmembers flying international
routes at the time of scheduled training shall be
provided instruction on the applicable Section XV.B.
requirements.

   e.  **Appropriate Carrier Security Experiences.**  Experiences
relevant to individual airline operations.  In the
event of an incident occurring during the current year,
information on that incident may be substituted upon
approval of the FAA.

   f.  **Current Threat.**  Threat information as provided by the
FAA.  In addition, the carrier, in conjunction with its
PSI, may develop additional training material.

[Corrected Page 2/1/94]

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011376

Confidential - Do Not Copy or Disclose

Appendix XIII
Page 5

3.   **Outline for Alternative Crewmember Annual Recurrent
     Training**. Pursuant to the requirements in Section XIII
     J.3.a.(4), the air carrier shall provide to the FAA for
     review and approval, the proposed classroom curriculum to
     ensure training covering the following subject areas:

   a.   **Common Strategy**.  Train crewmembers in a common
        strategy for airline security.  If FAA video is not
        shown, all teaching points in paragraph 4 must be
        covered in the training.

   b.   **Security Requirements**.  Security program revisions and
        initiatives and GSC/ISC issues.  Crewmembers flying
        international routes at the time of scheduled training
        shall be provided instruction on the applicable
        Section XI and XV.B. requirements.

   c.   **Appropriate Carrier Security Experiences**.  Experiences
        relevant to individual airline operations.  In the
        event of an incident occurring during the previous
        calendar year, information on that incident may be
        substituted upon approval of the FAA.

   d.   **Current Threat**.  Threat information as provided by the
        FAA.  In addition, the carrier, in conjunction with
        its PSI, may develop additional training material.

4.   **Common Strategy Tactics.**

   a.   Cockpit Crew.

      (1)  Pre-Flight Security Procedures:
           -  Security of crewmembers' baggage.
           -  Review PIC's duties as Inflight
              Security Coordinator (ISC) - interface with
              GSC.
           -  Coordinate ▮▮▮▮▮▮▮▮▮▮ prior to each
              trip with flight attendants.
           -  Review armed LEO procedures/paperwork.
           -  Check for suspicious or out of ordinary
              objects in cockpit to ensure suspicious items
              are not aboard aircraft.

[Corrected Page 2/1/94]

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011377

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XIII
Page 6

(2) In-Flight Hijacking Tactics:
- Stay calm.
- Link with ground - 

- Establish rapport with hijackers.
- Relay information to ground regarding
  hijackers:



  Hijackers' seat numbers(s),
  Physical description of hijackers.
- If hijacker has possible explosive device,



- Evaluate armed persons on board who might
  assist, no action without cockpit approval -
  may be unknown hijackers - be alert for
  passengers wanting to be "heroes."
- Encourage flight attendant to stay with
  hijackers in cockpit.
- Always communicate ███████ if you can.
-



- Crew should not negotiate with hijackers -
  allow all negotiating to take place with
  trained negotiators on ground.
- Do not try to overpower hijacker.
- No rapid moves - describe what you are going
  to do before proceeding.
- Try to land aircraft ████████████

- Park aircraft, ████████

[Corrected Page 2/1/94]

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011378

Confidential - Do Not Copy or Disclose

Appendix XIII
Page 7



- DELAY - Key word - buys time - raises
frustration level - consistently proven
effective in wearing down hijackers.

(3) Post-Flight Procedures:
- Cooperate with LEO

- If aircraft lands in foreign country and
hijacker(s) talk of having explosive, crew
should search aircraft prior to departure.    Ask
to contact carrier and U.S. Government.
- Do not discuss the hijacking with the news
media, refer questions to carrier's public
relations department.
- Do not discuss common strategy

b.    Cabin Crew.

(1) Pre-Flight Security Procedures:
- Security of crewmembers' baggage.
- Pre-flight inspection of aircraft to ensure
suspicious items are not aboard aircraft.
- PIC will coordinate cockpit signals.
- Be alert during boarding for unusual activity.
- Inform PIC of armed individuals aboard
aircraft.

(2) In-Flight Hijacking Tactics:
- Stay calm.

[Corrected Page 2/1/94]

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011379

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XIII
Page 8

- Assure hijackers that crew will cooperate with whatever their demands are.
- Inform PIC of the situation immediately. Flight attendant observes the following and pass to cockpit:



- Write down hijackers' demands.
- Evaluate armed persons on board - no action without PIC approval - may be unknown hijackers - be alert for passengers who want to be "heroes" - do not try to overpower hijacker(s).
- Do not serve alcohol to hijackers or passengers, serve water or other beverages.
-



- Attempt to keep hijacker(s) out of cockpit - try tactics to deter.
-

- DELAY - Raises frustration level - consistently proven to be effective in wearing down hijacker(s).
- When aircraft lands,                          , sickly and old persons, and others).
- Do not attempt to negotiate with hijacker(s) - let experts on the ground negotiate.

(3) Post-Flight Procedures:

- Cooperate with LEO officials

[Corrected Page 2/1/94]

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011380

Confidential - Do Not Copy or Disclose

Appendix XIII
Page 9

- If aircraft lands in foreign country and
  hijacker(s) talk of having an explosive, crew
  should search aircraft prior U.S. Government
  to departure.  Ask to contact carrier and
- Do not discuss the hijacking with the news
  media, refer questions to carrier public
  relations department.
- Do not discuss common strategy with anyone
  without an operational need to know.

[Corrected Page 2/1/94]

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011381

Confidential - Do Not Copy or Disclose

Appendix XIV
Page 1

### GSC/CSS/SIC PERFORMANCE STANDARDS.

For all Ground Security Coordinators (GSC's), Checkpoint Security
Supervisors (CSS's) and Screeners-In-Charge (SIC's), the air carrier
shall ensure that annual performance appraisals are completed in
accordance with the following requirements.

1.  The appraisal shall consist of a narrative evaluation addressing
    the topics cited in subparagraph 8, below, for CSS's and SIC's,
    and subparagraph 9 for GSC's.

2.  Commencing 12 months after the effective date of this Appendix,
    the appraisal for each GSC, CSS and SIC shall be completed not
    earlier than 30 days prior to, nor later than 30 days after, the
    individual's anniversary of appointment to the position for
    which he or she is being evaluated.

3.  The current and previous year's appraisals shall be maintained
    by the air carrier, and shall be made available to the FAA upon
    request.  In the event the person is terminated from the duties
    which required the appraisal, the forms shall be retained by the
    air carrier for at least 180 days following the date of the
    person's termination from those duties.

4.  Supplemental appraisals may be completed at any other time, at
    the air carrier's option.  These may be used for such purposes
    as documentation of recent performance, mid-period reviews,
    performance awards or improvement, etc.

5.  For each person, and for each topic appraised in accordance with
    this section, one of the following ratings must be assigned:

    1 - Acceptable
    2 - Unacceptable
    3 - Person did not have the opportunity to perform these duties
        during the rating period.

6.  No person receiving a rating of "Unacceptable" in any topic may
    be permitted to perform those security-related duties until that
    person has successfully completed a course of corrective
    training in the area(s) rated as "Unacceptable", and the air
    carrier has made an affirmative finding of the person's fitness
    to resume those duties.  Each such finding shall be appended to
    the appraisal form which documented the "Unacceptable"
    rating(s).

[Corrected Page 2/1/94]

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011382

Confidential - Do Not Copy or Disclose

Appendix XIV
Page 2

7.    Each appraisal shall include a brief plan for the individual's performance enhancement/improvement during the upcoming rating period.  The plan shall address provisions for continuing job-related education and professional development, such as seminars, correspondence courses, formal training, cross-training opportunities, etc.

8.    The following topics will be rated according to the following standards.  Each narrative rating must clearly reflect the quality of the person's performance, with specific incidents cited as example of unusually good or unacceptable performance:

    a.    **Knowledge of security requirements and procedures**.

        **Acceptable** - Through actual job performance, and performance in formal training/retraining, the individual has demonstrated an understanding of the security requirements and provisions of FAR 108 (and FAR 129, where appropriate), as well as the provisions of the ACSSP. Additionally, the individual has exhibited an understanding of the inter-relationship between the security responsibilities of the air carrier and those of the airport operator, e.g., law enforcement support, identification/access media issue and control.  A rating of "Acceptable" will be awarded only if the individual has successfully applied this body of knowledge to maintain an effective security operation in compliance with applicable regulations, security program provisions, and guidance.

        Indicators of acceptable performance may include:

    1.    Consistent and effective communications between GSC's, CSS's, ISC's, ASC's and other parties, as appropriate.

    2.    Timely and satisfactory resolution of security-related questions or incidents as they may arise.

    3.    Maintenance of complete and accurate documentation as is necessary or as required by the ACSSP.

    4.    Demonstrated ability to effectively manage or respond to unusual or stressful situations.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011383

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XIV
Page 3

5.    Consistent and effective oversight of the security
provisions.

**Unacceptable** - The individual has failed to demonstrate
the knowledge, skills or abilities associated with the
maintenance of a successful security program.  The
following are examples of situations which indicate
unacceptable performance:

1.    Improperly maintained screening equipment, training
records or operational/maintenance logs.

2.    Repeated failures, or the tolerance by the GSC/CSS
of egregious behavior which resulted in failures, by
screeners to properly detect FAA approved test
objects.  Those tests must have been conducted by
the FAA or the air carrier in accordance with
guidance provided in Section II of the Air Carrier
Standard Security Program.

3.    Repeated failure to ensure adequate staffing at each
checkpoint.

4.    Use of improperly or inadequately trained screeners.

5.    Failure to satisfactorily monitor the performance of
supervised personnel.

6.    Failure to operate the checkpoint in accordance with
the requirements of the Air Carrier Standards
Security Program.

7.    Failure to properly communicate security-related
information to other parties having a need to know,
e.g., GSC's, ISC's, CSS's, etc.

b.    **Quality of judgment, as demonstrated during:**

(1)    **Routine security conditions.**

**Acceptable** - The person has clearly demonstrated sound
judgment in routine situations.  That judgment will have
facilitated day-to-day operations, while having maintained
a safe and secure environment, in compliance

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011384

Confidential - Do Not Copy or Disclose

Appendix XIV
Page 4

with all regulatory and security program provisions.
Routine operational problems will have been resolved
satisfactorily and in a timely and efficient manner.  The
magnitude of corrective actions or responses will have
been commensurate with the nature of the incident
requiring the response.

**Unacceptable** - The person has failed to demonstrate sound
judgment in routine situations.  The person's decisions
will have failed to provide satisfactory or timely and
efficient resolutions, when the situation was within the
person's control.  The magnitude of corrective actions or
responses will not have been commensurate with the
incident, such that too weak or too strong a response was
made.  The person's exercise of judgment will have
hindered, rather, than facilitated routine operations.

(2)    Stressful or other non-routine periods.

**Acceptable** - The person has maintained his or her
composure during stressful or non-routine periods.  They
will have performed the full range of their duties such
that all security provisions required by regulation,
security programs or policy will have been successfully
performed, or alternate arrangements undertaken to ensure
a safe and secure operation.

**Unacceptable** - During stressful or other non-routine
periods, the person has failed to maintain an appropriate
oversight and control of the security provisions within
their responsibility.  A finding of "Unacceptable" can be
made only if the circumstances giving rise to the finding
were such that the actions of the person being evaluated
could have significantly influenced the outcome.

9.    The GSC may be evaluated through direct observation by more
senior air carrier officials.

Change 38, 2/1/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011385

Confidential - Do Not Copy or Disclose

Appendix XV
Page 1

AVIATION SECURITY CONTINGENCY PLAN
(AVSEC PLAN).

GENERAL.

**Contingency planning supports crisis management.**  The FAA developed
the Aviation Security Contingency Plan (AVSEC Plan) to ensure that the
FAA, airport operators, and air carriers are able to respond on short
notice to all civil aviation threats.  A well-exercised contingency
plan ensures a timely, yet economical, response to these threats with
temporary measures.

The AVSEC Plan will allow the FAA to target the application of
countermeasures to threats by geographic location, air carrier,
airport, threat vector, or any combination thereof, and only for the
time considered necessary, thereby more efficiently allocating
industry and government resources.

When the FAA declares an Alert Level under the AVSEC Plan, the FAA may
not require all the countermeasures listed under that level.  The
AVSEC Plan assigns countermeasures to a particular AVSEC Alert Level
based upon their effectiveness, sustainability, and impact on civil
aviation, and provides some level of predictability for air carriers
and airports.  However, certain threat situations may require specific
countermeasures at any alert level if the threat information requires
its application; that is why each countermeasure has its own number.
Under various threat conditions, the FAA may require countermeasures
 not listed in the AVSEC plan.



Whenever possible

It is the FAA's responsibility to identify the appropriate AVSEC Alert
Level and to determine which countermeasures to apply, and where.  To
improve the quality of implementation, the FAA will consult with the
affected air carriers and airports to the extent allowed by the
circumstances.  Also, the FAA will share threat information, to the
extent appropriate, with the affected parties.

Change 39, 3/15/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011386

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XV
Page 2

In any particular situation, the FAA will implement the AVSEC Plan by notifying airport and air carriers of the AVSEC Alert Level declared, and the specific countermeasures to be implemented.  The FAA will issue a Security Directive (for air carriers) and Emergency Airport Security Program Amendments (for airports), both of which will reference the appropriate numbered countermeasures from this plan.  Additionally, Security directives and emergency amendments will have expiration dates to trigger a timely review of the threat and a decision to continue, modify or eliminate the countermeasures.

## AVSEC ALERT LEVELS

The four AVSEC Alert Levels described below correspond to various levels of threat to security.  The FAA will determine whether to increase or decrease the AVSEC Alert Level for civil aviation security.  The specific AVSEC Level assigned will indicate the FAA's overall assessment of the threat.  The FAA has identified below typical responses for each AVSEC Alert Level, but will determine, on a case-by-case basis, which countermeasures to require in response to a specific threat condition.

### AVSEC ALERT LEVEL I:

Political tensions may provoke elements hostile to the U.S. to initiate demonstrations and/or low level attacks against symbols of the U.S.; or there is reason to believe that civil unrest could increase the risk to civil aviation.

### AVSEC ALERT LEVEL II:

Information suggests that groups previously known to attack civil aviation may be preparing actions against symbols of the U.S.; or civil disturbances with the potential to affect civil aviation are likely.

### AVSEC ALERT LEVEL III:

Information indicates a terrorist group or other hostile entity with a known capability of attacking civil aviation is likely to carry out attacks against U.S. targets; or civil disturbances with a direct impact on civil aviation have begun or are imminent.

Change 39, 3/15/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011387

Confidential - Do Not Copy or Disclose

Appendix XV
Page 3

**AVSEC ALERT LEVEL IV:**

Information confirms that terrorist organizations with
demonstrated capability are planning an attack against U.S.
civil aviation; or, in the estimation of the Assistant
Administrator for Civil Aviation Security, ACS-1, the highest
level of security possible is required to protect U.S. air
travelers.

**AVSEC ALERT LEVEL I:**

**AIRPORT OPERATOR MEASURES:**

A100   Inform airport, air carrier, and airport tenant management
       with an operational need to know of the increased threat
       and corresponding AVSEC Alert Level.  Airport management,
       tenant and contractor management should communicate this
       information to their employees who have an operational
       need to know.  The airport operator will be responsible
       for ensuring that the initial notification process occurs.

A101   Review and ensure adequacy of personnel and vehicle ID
       issuance and control procedures.

A102   Review and test its contingency and emergency
       communications procedures.

**AIR CARRIER MEASURES:**

100    Inform its employees working at the affected airport(s)
       who have an operational need to know of the increased
       threat and corresponding AVSEC Alert Level.

101    Review and test its contingency and emergency
       communications procedures.

102    Establish liaison with each airport it serves to
       coordinate measures that may be necessary if the AVSEC
       Alert Level increases.

Change 39, 3/15/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011388

Confidential - Do Not Copy or Disclose

Appendix XV
Page 4

**AVSEC ALERT LEVEL II:**

**AIRPORT OPERATOR MEASURES:**

A200  Deploy uniformed security patrols, or Law Enforcement Officers (LEO's) at airports to provide surveillance, act as a deterrent, and respond as necessary to security related incidents.

A201  Develop and implement a schedule for increasing the frequency of inspections

A202  Discontinue service to and secure lockers located in non-sterile public areas of passenger terminals.

A203  Increase the number and frequency of random identification checks

A204  Advise Explosive Ordnance Disposal (EOD), tactical, and/or K-9 units of the increased threat.  Verify their familiarity with the airport layout, and have units advise the airport of their ability to respond if needed.

**AIR CARRIER MEASURES:**

200  Deploy personnel to provide increased surveillance and prevent unauthorized access to checked baggage in baggage make-up areas.

201  Search for weapons and explosives all vehicles left unattended outside of areas controlled under FAR 107.14 and used to transport passengers from a terminal building to a departing aircraft.

Change 39, 3/15/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011389

Confidential - Do Not Copy or Disclose

Appendix XV
Page 5

AVSEC ALERT LEVEL III:

AIRPORT OPERATOR MEASURES:

A300   Arrange for and deploy plainclothes security personnel or
LEO's for surveillance in terminals and other locations as
appropriate.  Security personnel shall be able to summon
LEO's if needed.

A301   Where available, the airport operator will request EOD and
tactical teams to respond and/or utilize explosives
detection measures such as K-9 or electronic sniffers.

A302   Post signs at each ticket counter and screening checkpoint
or make routine public announcements that emphasize the
need for all passengers to closely control baggage and
packages to avoid transporting items without their
knowledge.

AIR CARRIER MEASURES:

300    Apply the Contingency Passenger Profile Criteria, issued
by the FAA, to all originating passengers and those
passengers transferring from air carriers not subject to
this requirement.  The FAA will determine the profile
criteria when it receives threat information.  Air carrier
personnel will apply the criteria passively (without
subjecting the passenger to questioning) using information
already available within the air carrier reservation
systems and on the passenger ticket.  Questioning is
optional to resolve concerns discovered during application
of the passive profile.  Countermeasures numbered from 301
through 304 below apply only in conjunction with this
requirement.

301    Physically search or screen, with an approved device
specifically identified in the security directive, the
carry-on property of persons or passengers identified as
selectees by the Contingency Passenger Profile and hand
wand or pat down that person.

302    Inspect by x-ray, physically search, or screen with an
approved EDS or other device specifically identified in
the security directive the checked property of persons or
passengers identified as selectees by the Contingency
Passenger Profile.

Change 39, 3/15/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011390

Confidential - Do Not Copy or Disclose

303     Remove batteries (C, D, AA, AAA, 9v and 6v Lantern) from all electrical and electronic devices in the checked baggage of passengers identified as selectees by the Contingency Passenger Profile and place the batteries separate from the device in checked baggage except where the air carrier screens baggage with an approved EDS or other device specifically identified in the security directive.

304     Do not transport the checked baggage of any passenger identified as a selectee by the Contingency Passenger Profile unless either the passenger and his/her checked baggage are aboard the same airplane or a verifiable, demonstrable tracking system establishes that the unaccompanied baggage is a result of circumstances beyond the passenger's control. As an alternative to the preceding two options, air carriers may screen the selectee's checked baggage with an approved EDS or other device specifically identified in the Security Directive.

**AVSEC ALERT LEVEL IV:**

**AIRPORT OPERATOR MEASURES:**

A400     Deploy uniformed security patrols or LEO's at airports to provide surveillance, act as a deterrent, and respond as necessary in monitoring of vehicle traffic flow to the terminal areas.

A401     ███████████████████████████ assist law enforcement personnel or security patrol personnel in monitoring individuals gaining access to sterile areas, restricted areas, AOA, or SIDA of an airport.

A402     Increase random ID checks ██████████ by security personnel, airport operations personnel, or LEO patrol.

**AIR CARRIER MEASURES:**

400     Discontinue curbside check-in. The air carrier may submit a plan to its FAA Principal Security Inspector providing for the application of countermeasures that the FAA requires for checked baggage at its other baggage check-in locations. Upon written notification that the plan has been approved, the air carrier may continue curbside check-in. Until their plan is approved, the air carrier shall cease curbside check-in.

Change 39, 3/15/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011391

Confidential - Do Not Copy or Disclose

Appendix XV
Page 7

**401**  Screen the checked and carry-on baggage of all passengers by a physical search, or x-ray inspection, or by screening with an approved EDS or other device specifically identified in the security directive.

**402**  Physically search, inspect by x-ray, inspect with FAA approved and U.S. Air Force certified explosives detection K-9, or screen with an approved EDS or other device specifically identified in the security directive, all cargo offered for air transportation by other than a known shipper.

**403**  Either ensure that originating passenger baggage is not transported unless the passenger and his/her baggage are aboard the same aircraft or screen all checked baggage with an approved EDS or other device specifically identified in the Security Directive.

**404**  Search all service personnel and equipment permitted aboard the airplane (excluding direct U.S. air carrier employees) at the aircraft door.  Where security personnel cannot hear an audible alarm, hand wands must be capable of displaying both visual and audible alarms.

**405**  Hand wand all personnel and passengers immediately before entering the aircraft. (International points only.)

**SPECIAL CATEGORY.**

These measures would impose relatively high operational and economic burdens on airports and air carriers.  Insofar as these countermeasures are difficult for airports and air carriers to sustain, the FAA would consider limiting their implementation to specific threats at specified airports or for specified flights.  Nevertheless, in compelling circumstances, application of one or more of the measures in this category may be necessary to counter a wider threat.  A requirement to implement these countermeasures would be subject to the highest levels of government review.

**AIRPORT OPERATOR MEASURES:**

**SCA1**  Reduce restricted area access points to an operational minimum in coordination with air carriers and airport tenants.

Change 39, 3/15/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011392

Confidential - Do Not Copy or Disclose

Appendix XV
Page 8

SCA2   Limit individual access by time and date when appropriate
       in accordance with FAR 107.14(a) requirements.
       (Applicable only to airports with 107.14 systems.)

SCA3   Remove any unattended, unauthorized vehicles parked within
       300 feet of a terminal building where passengers load or
       unload, or where curbside check-in takes place.



**AIR CARRIER MEASURES:**

SC1    Apply the Contingency Passenger Profile criteria issued by
       the FAA, using interview techniques, to each passenger.
       The FAA will develop a profile criteria, if possible,
       after it receives threat information. (Active profile)

SC2    Physically search, inspect by x-ray, inspect with FAA
       approved and U.S. Air Force certified explosives detection
       K-9, or screen with an approved EDS or other device
       specifically identified in the security directive all
       cargo shipments. (Cargo specific threat only)

SC3    Conduct an x-ray inspection, or screen with an approved
       EDS, or other device specifically identified in the
       security directive, or physically search small package
       shipments accepted from all shippers.  Under Section
       IX.A.(10), small packages are defined as a type of small
       cargo package tendered to an air carrier for transport on
       the next available flight under the air carrier's
       designated express/small package service.

SC4    Apply one of the following measures to cargo received from
       shippers establishing new accounts:

1.     Apply the profile criteria issued by the FAA (if
       applicable) to each new shipper and physically search the
       shipments of those designated as a selectee;

2.     Screen with an approved EDS, or other device specifically
       identified in the security directive; or

Change 39, 3/15/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011393

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XV
Page 9

3.    Reject all cargo from new shipping accounts opened since increase of threat.  (Cargo-specific threat only)

SC5    Reject all cargo shipments, except at the air carrier's discretion cargo shipments related to life saving situations, and other shipments identified in the Security Directive.  (Cargo-specific threat only)

SC6    Inspect mail parcels ███████████ by x-ray, an approved EDS, or other device specifically identified in the security directive, before transport ████████████████████████████████████████

SC7    Inspect mail parcels ███████████ by x-ray, an approved EDS, or other device specifically identified in the security directive, before transport ████████████████████████████████████████

SC8    Restrict access to boarding areas to ticketed passengers. [The Security Directive may however, permit air carriers to grant access to individuals such as those who are escorting or meeting unaccompanied minors or passengers requiring assistance.]  In lieu of the above, air carriers may conduct screening with advanced security devices specifically identified in the security directive.

Change 39, 3/15/94

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011394

Confidential - Do Not Copy or Disclose

Appendix XVI
Page 1

### CHECKPOINT AUDIT OUTLINE.

A.   **OPERATIONAL AUDIT.**

   1.   **Screeners:**

      a.   Number of screeners on duty (ensure compliance with staffing standards).

      b.   Screeners' attentiveness to duties.

      c.   Verify that dosimeters are worn by each person at the screening checkpoint, and dosimeters are not expired. (Dosimeter requirements shall be implemented only so long as dosimeters are required under 14 CFR part 108.)

   2.   **Checkpoint Security Supervisors/Screeners-In-Charge:**

      a.   Effectiveness of supervisory oversight, which they are trained to perform as outlined in appendix V.

      b.   Verification that supervisors are not routinely performing any screening duties.

   3.   **Physical Inspection:**

      a.   Verify that random physical inspections of carry-on items are continually conducted.

      b.   Verify that physical inspection procedures for carry-on items are conducted within the guidelines outlined in the ACSSP, or FAA amendments to the ACSSP.

      c.   Number and description of types of items searched during time of observation.

   4.   **ETD device (where deployed):**

      a.   Verify that proper clearance procedures are used for carry-on items selected at random.

      b.   Verify that proper clearance procedures are used for carry-on items designated by the x-ray operator as being suspect.

      c.   Number and description of types of items searched during time of observation.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011395

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

5.  Description of general observations and any corrective
    actions taken during the audit.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011396

Confidential - Do Not Copy or Disclose

Appendix XVI
Page 2

B.   **ADMINISTRATIVE AUDIT.**

   1.   **Equipment Records and Logs.**

      a.   Verify that equipment logs are current and
           operational tests have been conducted.

      b.   Where available and in use, verify that ETD device
           calibration logs are current and calibrations have
           been conducted.

      c.   Verify that the annual radiation survey has been
           completed for each x-ray unit.

   2.   **Screener Records.**

      a.   Select ███████ screeners on duty during the time
           of the audit.

         (1)   Verify that training records are accurate and
               complete.

         (2)   Verify verbally with the screeners, that they
               did in fact receive the training documented.

         (3)   Verify that the air carrier testing records
               are accurate and complete.

         (4)   Verify that an annual evaluation has been
               completed, if appropriate.

         (4)   Verify that the screener meets the employment
               standards requirements, as outlined paragraph
               B. of section XIII.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011397

Confidential - Do Not Copy or Disclose

Appendix XVI
Page 3

b.    Select ▮▮▮▮▮▮ ETD device operators on duty during the time of the audit.

    (1)    Verify that training records are accurate and complete.

    (2)    Verify verbally with the operators that they did receive ETD device training, and that the training adequately prepared them for use of the equipment.

    (3)    Verify that the operators are knowledgeable of clearance procedures when an item alarms the ETD device, and the notification requirements when an alarm cannot be resolved.

6.    Description of general observations and any corrective actions taken during the audit.

Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011398

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)



Appendix XVII
Page 1



Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011399

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XVIII
Page 1



Change 54, 6/28/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011400

Confidential - Do Not Copy or Disclose

Appendix XIX
Page 1

### CARGO SCREENING.

**Section I - <u>GENERAL REQUIREMENTS</u>**

1. The air carrier shall ensure that the cargo being screened does not contain unauthorized explosives or incendiaries.

2. Air carrier personnel, or persons contracted by the air carrier, shall perform the screening and be trained in accordance with the standards contained in this program.

3. No person shall be used to perform a specific screening method unless that person has the ability required to perform the functions of a specific method. The air carrier shall test and evaluate each person's ability to perform the screening functions.

4. The air carrier shall ensure that all persons used to perform screening functions in the United States are citizens of the United States or possess a resident alien card or other employment authorization from the U.S. Immigration and Naturalization Service.

Change 55, 9/9/99

<u>WARNING</u>: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011401

Confidential - Do Not Copy or Disclose

Appendix XIX
Page 2

Section II - <u>X-RAY SYSTEMS.</u>

5.   X-ray systems may be used for the screening of cargo.

6.   The x-ray cargo screening system shall be operated and maintained as described in this section.

7.   ███████████████████████████████ the cargo shall be subjected to a second method of screening described in Section IX.J.3. of this security program.

8.   Any cargo that cannot be cleared by x-ray inspection shall be subjected to a second method of screening as described in Section IX.J.3. of this security program.

9.   **Equipment Requirements.**

   a.   The x-ray system shall meet the performance standards for cabinet x-ray systems issued by the Food and Drug Administration (FDA), Department of Health and Human Services:

      (1)   Those manufactured prior to April 25, 1974, shall meet either the guidelines published in the Federal Register (38 F.R. 21442, August 8,1973) or the performance standards published in 21 CFR 1020.40 (39 F.R. 12985, April 10, 1974).

      (2)   Systems manufactured after April 24, 1974, shall meet the standards published in 21 CFR 1020.40 (39 F.R. 12985, April 10, 1974).

   b.   **A radiation survey shall be conducted for each x-ray machine:**

      (1)   When initially installed, or when moved, and

      (2)   At least every 12 months to assure that performance standards are being met, or

      (3)   Whenever it becomes known that a x-ray device does not meet performance standards described below in paragraph 9.d.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011402

Confidential - Do Not Copy or Disclose

Appendix XIX
Page 3

c.   A copy of the radiation survey shall be:

(1)  Maintained at the air carrier's principal
     business office,

(2)  Maintained at the location where the x-ray
     surveyed is in operation,

(3)  Made available for inspection upon request by
     FAA,

(4)  Retained for two years.

d.   **FAA imaging requirements**:  X-ray systems must be
     operated at a level to ensure maximum effectiveness
     in detecting explosive or incendiaries and must meet
     imaging capabilities as follows:

(1)  Systems used to screen cargo must distinguish
     ▇gauge wire under the ▇▇▇ step using a
     Test Step Wedge specified in American Society
     for Testing and Materials Standard F792-88.

(2)  If only ▇gauge wire can be seen at the
     required step, the system may be used but must
     be adjusted within 48 hours to distinguish ▇-
     gauge wire.

(3)  If only ▇-gauge wire can be seen at the
     required step, the system may be used but must
     be adjusted within 24 hours to distinguish ▇-
     gauge wire.

(4)  Whenever ▇gauge wire cannot be seen at the
     required step, the use of the system shall be
     discontinued immediately, and the system shall
     not be used until it has been adjusted or
     repaired to distinguish ▇-gauge wire.

(5)  Each time each x-ray system is turned on the
     air carrier shall conduct a test of using the
     Test Step Wedge specified in ASTM standard
     F792-88 prior to using the system.

(6)  Notification shall be made to the local FAA
     security office whenever each tested system is
     unable to distinguish ▇-gauge wire.  Results
     of tests shall be recorded and maintained for
     at least 30 days.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011403

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XIX
Page 4

e.   **Signs that indicate use of x-ray equipment.**   Signs shall be placed in conspicuous location(s) to indicate to those persons tendering cargo that x-ray systems are being used.

10.   **Screener Requirements.**

a.   X-ray operators must be able to distinguish ▮-gauge wire as displayed on the x-ray monitor, under the ▮▮▮▮ step of the Test Step Wedge specified in ASTM Standard F792-88 (if that detection level is required for the x-ray device being used).   If corrective lenses are required for an individual to distinguish this standard, that individual must wear corrective lenses when operating the x-ray device. A note of any such corrective lenses requirement will be prominently posted in the individual's training and qualification records.   Whenever the x-ray system uses a color monitor, the operator must be able to identify each color used by the display and, at the completion of training, to explain what each color signifies.

b.   Screeners must be able to identify the components which may constitute an explosive or an incendiary.

c.   Screeners must be able to hear and respond to the spoken voice and audible alarms generated by screening equipment in an active cargo processing environment.

d.   Screeners must be able to perceive each color used for a visual alarm by an x-ray system and explain what each color signifies.

e.   Screeners must be able to:

(1)   Read English - (Specifically documents such as air waybills, labels, invoices, etc.)

(2)   Understand and carry out instructions written in English regarding the proper performance of their screening functions.

(3)   Speak and understand English sufficiently to understand and answer questions and to provide information in English.

f.   Screeners must be able to follow appropriate notification procedures, as specified in Section IX.O. of this security program.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011404

Confidential - Do Not Copy or Disclose

Appendix XIX
Page 5

    g.    Screeners must be able to stop the transfer of any suspect cargo to a passenger air carrier.

11.    **Recordkeeping and Responsibilities.**

    a.    The air carrier shall maintain a record or roster of operator duty time, for a least 30 days, at each location.

Individual screener training and qualification records, and equipment logs shall be signed and dated by the air carrier.  The signature shall certify that the records are accurate and current.

    c.    Each screener shall affix their signature to the record or roster, signifying their corresponding work hours, upon completion of their workday.

    d.    The air carrier shall maintain the roster for 30 days at the location where the screening was performed.

    e.    The air carrier shall provide these records to the FAA upon request.

12.    **Training Program.**

    a.    **Initial Training.**  Each x-ray operator shall be given an initial 7-hour training program. The training should be presented in a formal manner with ample opportunity for questions and answers.  This shall include safety aspects of the system in use, as well as technical guidance in explosive or incendiary identification through x-ray utilization. No person shall be used to perform any screening function that requires the exercise of independent judgment to screen cargo, unless that person has received formal training in the quantity and the manner described below, and has satisfactorily demonstrated the ability to detect each test object under realistic conditions, and able to explain the elements which resulted in such detection.

Training shall include not less than 7 hours of instruction covering the following subjects:

    (1)    Reason for Screening:
        (a)    History of the threat against civil aviation

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011405

Confidential - Do Not Copy or Disclose

Appendix XIX
Page 6

    (2)   How Aviation Security Works:
        (a)   Air carrier responsibilities
        (b)   Indirect air carrier responsibilities
        (c)   FAA responsibilities

    (3)   Explosive Devices:
        (a)   The power source
        (b)   The initiator
        (c)   The explosive charge
        (d)   The timing device

    (4)   FAA Test Objects.

    (5)   Classified or Diplomatic Documents.

    (6)   Screening Cargo:
        (a)   The x-ray system
        (b)   X-ray safety
        (c)   Image interpretation

   Image Categories:  (No threat, Possible threat,
   Obvious threat.).

    (8)   Information Circulars and Security Directives.

    (9)   Conducting a Manual Search.

   (10)   Location Specific Instruction:
        (a)   Alarm procedures
        (b)   Equipment operation
        (c)   Law enforcement support procedures
        (d)   Notification procedures

b.    Initial training shall include written testing in
the English language, without translation into
another language, to determine whether the trainee
has absorbed the classroom portion of initial
training.

    (1)   **Qualifying** - ▮▮▮▮▮▮▮ correct answers:
review any incorrect responses.

    (2)   **Disqualifying** - ▮▮▮▮▮▮▮ correct answers:
repeat entire training program.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011406

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XIX
Page 7

c.    Initial training shall include successful detection,
      individually, of each FAA/industry approved test
      object appropriate for the equipment in use, under
      realistic conditions.  The air carrier may use, in
      addition to the FAA test objects described in
      paragraph 16. and 17. of this appendix, a simulated
      improvised explosive device described in paragraph
      18. of this appendix.  Where a trainee fails to
      detect an FAA test object:

      (1)   The air carrier shall repeat the training
            procedure as appropriate to ensure the trainee
            is able to identify the test object(s).

      (2)   Retrain the trainee regarding proper screening
            procedures.

d.    Following successful completion of the testing
      required in 12.b. and c. above, the trainee shall
      undergo a formal on-the-job (OJT) training program.
      During this time, the trainee shall:

      (1)   Work with and under the close supervision of a
            fully qualified screener to further
            familiarize themselves with screening
            equipment, procedures, and duties.

      (2)   Not make any independent judgments as to
            whether cargo contains unauthorized explosives
            or incendiaries.

e.    The air carrier shall ensure that the performance of
      the trainee is observed and checked during the first
      40 hours of duty by a supervisory level individual
      to ensure the trainee knows and understands the job
      requirements and procedures.  The air carrier shall
      annotate the trainee's training and qualification
      records with significant observations made and
      deficiencies noted.

f.    The trainee's completion of initial training shall
      be certified in writing by a supervisory level
      individual with the certification and signature
      remaining in the individual's training and
      qualification record.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011407

Confidential - Do Not Copy or Disclose

Appendix XIX
Page 8

13.    **Recurrent Training.**

a.    Shall be completed for each screener annually by the
air carrier.

b.    Shall include briefing screeners on new threat
information.

c.    Shall review pertinent security experience and
applicable security incidents.

d.    Shall include a review of basic screening procedures
and techniques.

e.    Shall include written testing in the English
language, without translation into another language,
to determine whether the screener has absorbed the
material presented.

    (1)    Qualifying - ▮▮▮▮▮▮ correct answers:
review any incorrect responses.

    (2)    Disqualifying - ▮▮▮▮▮ correct answers:
repeat recurrent training program.

f.    Shall include testing utilizing FAA test objects
described in this appendix.  Where a screener fails
to detect an FAA test object:

    (1)    The air carrier shall repeat the training
procedure as appropriate to ensure the
screener is able to identify the test
object(s).

    (2)    Retrain the screener regarding proper
screening procedures.

g.    The air carrier shall record the initial training
and recurrent training tests:

    (1)    Together with the results and corrective
actions planned or taken, and

    (2)    Shall maintain this information in the
screener's training and qualification records
for at least 180 days after the screener
ceases to perform screening functions.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011408

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XIX
Page 9

14.    Air Carrier Testing.

Testing.  The air carrier shall develop and use an initial
and recurrent testing procedure.

b.    Recurrent Testing. The air carrier shall test each
screener semiannually.  Tests shall be conducted so
that each screener is tested one time during each
six calendar month period for each screening
function they are qualified to perform.  Testing of
the screener's performance shall be unannounced,
using the test objects described in paragraphs 16.,
17., and 18.  The following test procedures shall be
used:

(1)    A rotation of test objects shall be used for
testing the x-ray operators.

(2)    Where a screener fails to detect an FAA-
approved test object, the air carrier shall
repeat the procedure as appropriate to ensure
the screener is able to identify the test
object and counsel the screener regarding
proper screening procedures.

c.    The air carrier shall record all tests,

(1)    Together with the results and corrective
actions planned or taken, and

(2)    Shall maintain this information in the
screener's training and qualification records
for at least 180 days after the screener
ceases to perform screening functions.

15.    FAA's Testing Program.

a.    The FAA will test the proficiency of screeners by
using items listed in paragraphs 16. and 17. of this
appendix.  The air carrier, acting through its
employees, contractors, and agents who perform
screening functions, shall detect each FAA-approved
test object during each screening system operator
test conducted by the FAA.

FAA tests are conducted without notice.

[Revised 8/20/99]

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011409

Confidential - Do Not Copy or Disclose

Appendix XIX
Page 10

(2)   The FAA representative conducting the test
places a FAA-approved test object within a
box/carton/package appearing to be "normal"
cargo.

When it is determined that a test item is not detected due
to equipment failure, the air carrier shall
immediately test the equipment as specified in
paragraph 9.d. (as appropriate for the type of
equipment) of this appendix.

c.   When a screener misses a test object the air carrier
shall immediately remove the screener from the
screening function and provide the screener with
remedial training.  Such remedial training shall
sufficiently enable the screener to demonstrate the
ability to again detect the test object associated
with the failure and explain the elements that lead
to the detection.  The remedial training shall
reflect pertinent portions of the initial training.

16.   **FAA-Approved Test Objects for X-ray and Manual Search
Screening.**

a.   Three Stick Simulated Dynamite Time Bomb.
Specifications:
3  (each) natural nylon dowels; 1 1/4" diameter x 8"
long
1  dummy, electric blasting cap ███████████████
████████████
1  battery, dry cell, 9-volt transistor-type with
snap on cup
1  clock, mechanical, alarm; approximate dimensions:
    4" x 4" x 1 1/2"

b.   Simulated Pipe Bomb.
Specifications:
███████████████████████████████████████████
███████████████████████████

c.   Any type of practice ███████████, regardless of
shape, either domestic or foreign in origin with an
inert fuse.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011410

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XIX
Page 11

17.   **Additional FAA Approved Test Objects for X-ray Systems.**

Opaque Test Objects.  Specifications of each
configuration:
Rectangular
Bar
Circle
To be fabricated



18.   The Improvised Explosive Device (IED) Test Kit contains ▮
components, listed below, which can be assembled into
different combinations representing simulated IED's.  Each
simulated IED will consist of four components, i.e., an
explosive, initiator, timing device and power source, and
will be assembled with ▮gauge wire in that order.  When
tested, the screener shall take appropriate action when
the components appear to be assembled into a simulated
IED.

Simulated IED Components:
   a.     Explosives
          (1)   Dynamite



   b.     Power Sources
          (1)   Polaroid battery
          (2)   9-volt battery
          (3)   Two 1.5 volt batteries

   c.     Timing Devices

   d.     Initiator, ▮

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011411

Confidential - Do Not Copy or Disclose

Appendix XIX
Page 12

SECTION III  - **Manual Search**.

19.   Manual search may be used for screening cargo.

20.   All manual search screening shall be conducted as
      described in this section.

21.   Any cargo that cannot be cleared by manual search
      screening shall be subjected to a second method of
      screening as described in Section IX.J.3. of this security
      program.

22.   **Manual Search Screener Requirements**.

      a.    Screeners shall be able to identify the components
            that may constitute an explosive or incendiary.

      b.    Screeners shall be able to identify objects that
            appear to match those items described in all current
            security directives.

      c.    Screeners shall be able to meet the requirements
            contained in paragraph 10.e.

      d.    The screener shall be able to:

            (1)   Use tools that allow for the opening and
                  closing of boxes, crates, or other common
                  cargo packaging,

            (2)   Physically search all areas and contents of
                  the container,

23.   Screeners shall be able to follow appropriate notification
      procedures, as specified in Section IX.O. of this security
      program.

24.   Screeners shall be able to stop the transfer of any
      suspected cargo to a passenger air carrier.

25.   **Recordkeeping and Responsibilities**.

      a.    The air carrier shall meet the same requirements
            contained in paragraph 11.a. and e.

      b.    Each screener shall affix their signature to the
            record or duty roster, signifying their
            corresponding work hours, upon completion of their
            workday.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011412

Confidential - Do Not Copy or Disclose

Appendix XIX
Page 13

26.  **Training Program.**

    a.    Initial Training.  Each screener shall undergo initial training and be trained to proficiency.  No person shall be used to perform any screening function that requires the exercise of independent judgment regarding the inspection of cargo, unless that person has received formal training in the quantity and the manner described below, has satisfactorily demonstrated the ability to detect each test object under realistic conditions and to explain the elements which resulted in such detection.

        Initial training shall include instruction covering the following subjects:

        (1)    Those listed in paragraphs 12.a.(1), (2), (3), (4), and (5).

        (2)    Information Circulars and Security Directives.

        (3)    Conducting a Manual Search.

        (4)    Location Specific Instruction
            (a)    Notification procedures.
            (b)    Law enforcement support procedures.

    b.    Initial training shall include written testing requirements listed in paragraph 12.b.

    c.    Initial training shall include testing utilizing requirements listed in paragraph 12.c.

    d.    Following successful completion of the testing required in 12.a., b., and c., the trainee shall undergo a formal on-the-job (OJT) training program, as listed in paragraph 12.d.

    e.    The air carrier shall ensure that the performance of the trainee is as required in paragraph 12.e.

    f.    The trainee's completion of initial training shall be certified as required in paragraph 12.f.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011413

Confidential - Do Not Copy or Disclose

Appendix XIX
Page 14

g.    Recurrent Training.

(1)    Shall be provided as required in paragraph 13
a., b., c., and d.

(2)    Shall include written testing as required in
paragraph 13.e.

(3)    Shall include testing utilizing FAA test
objects as required paragraph 13.f.

27.    The air carrier shall record all tests.  The requirements
as listed in paragraph 13.g. of this appendix shall be
met.

28.    Air Carrier Testing.

a.    Testing.  The air carrier shall develop and use an
initial and recurrent testing procedure.

b.    Recurrent Testing. The air carrier shall test each
screener semiannually.  Tests shall be conducted so
the each screener is tested one time during each six
calendar month period for each screening function
they are qualified to perform.  Testing of the
screener's performance shall be unannounced, using
the test objects described in paragraph 16.  The
following test procedures shall be used:

(1)    A rotation of test objects shall be used for
testing the manual search screeners.

(2)    Where a screener fails to detect an FAA-
approved test object, the air carrier shall
repeat the procedure as appropriate to ensure
the screener is able to identify the test
object and counsel the screener regarding
proper screening procedures.

c.    The air carrier shall record all tests,

Together with the results and corrective actions
planned or taken, and

[Revised 8/20/99]

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011414

Confidential – Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XIX
Page 15

 (2) Shall maintain this information in the
screener's training and qualification records
for at least 180 days after the screener
ceases to perform screening functions.

29. **FAA's Testing Program**.

 a. FAA's testing program information is provided in
paragraph 15.a.

 e. The air carrier shall follow the requirements of
paragraph 15.c. should a screener fail a FAA test.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011415

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XX
Page 1

## SELF-AUDIT OUTLINE.

A.  **OPERATIONAL AUDIT.**

    1.  **Screeners:**

        a.  Name(s) and number of screener(s) on duty, and name of screening company if applicable.

        b.  Screeners' attentiveness to duties.

    2.  **Manual Search:**

        a.  Description of procedures.

        b.  Number of shipments and pieces of cargo searched.

        c.  Description of criteria for selecting cargo to be inspected.

    3.  Description of any general observations and any corrective actions taken during the audit.

B.  **ADMINISTRATIVE AUDIT.**

    1.  **Equipment Records.**

        a.  Verify that equipment logs are current and operational tests have been conducted.

        b.  Verify that the annual radiation survey has been completed for each x-ray unit.

    2.  **Personnel Records.**

        a.  Verify that training records are accurate and complete.

        b.  Verify verbally with the screener(s), that they did in fact receive the training documented.

        c.  Verify that the air carrier testing records are accurate and complete.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191. NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011416

Confidential - Do Not Copy or Disclose

Appendix XX
Page 2

d.   Verify that semiannual air carrier testing for
screeners has been completed, if appropriate.

e.   Verify that the operators are knowledgeable of
clearance procedures when cargo is suspect and the
notification requirements when the suspected cargo
cannot be resolved.

3.   Description of any general observations and any corrective
actions taken during the audit.

Change 55, 9/9/99

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011417

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XXI
Page 1

## Audit Requirements for Employment History, Verification and Criminal History Records Checks §108.33

A.    **GENERAL**: You, the air carrier operator, should answer the following questions for each file review.  Section D questions are not intended to be answered file by file but rather from the perspective of the overall audit process.  All answers and information should be included in the audit Summary.

B.    **Questions on Part 1 – Did you find evidence for #1-9?**

   1.   Was the employment history investigation conducted for unescorted access privileges to a SIDA?  [§ 108.33 (a)(1)]

   2.   Was the employment history investigation conducted because the individual's air carrier identification media will be accepted as airport approved media for movement within a SIDA?  [§ 108.33 (a)(2)]

   3.   Was the employment history investigation conducted on an individual performing preboard screening functions after November 30, 1998?  Or conducted because the individual serves as a first level (CSS) or second level (shift or site) supervisor of preboard screeners?  [§ 108.33 (a)(3)]

   4.   Is notification provided, on the application/form, that the individual will be subject to employment history verification and possible criminal history records check?  [§ 108.33(c)(2)]

   5.   Does the applicant provide full name and any aliases or nicknames used?  [§ 108.33 (c)(1)(i)]

   6.   Has the applicant provided the names, telephone numbers, and addresses of previous employers for the last 10 years?  [§108.33 (c)(1)(ii)]

   7.   What indicates the employment dates or other activities were verified?  [§ 108.33(c)(4)]

   8.   Has the applicant provided explanations for any employment gap of 12 consecutive months or longer?  [§ 108.33(c)(1)(ii)]  (One example: a 12-month or more time gap must be met prior to requesting the individual to submit his or her fingerprints.)

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE DETERMINED UNDER 5 U.S.C. 552.

AAL 011418

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XXI
Page 2

Has the individual been asked if he or she had been convicted of
    any of the disqualifying crimes listed in § 108.33 (b)(2)?
    Is the list of crimes provided?

10.   Were the most recent 5-year employment dates verified?
    [§ 108.33(c)(4)]

Was a trigger discovered?  If the answer is no, then go to
    paragraph D.

    a.    What was the trigger?  [§ 108.33 (c)(5)(i-iv)]

    b.    Was the individual notified of need for part 2?

    c.    Did you initiate part 2?

C.    **Questions for Part 2  - Did you find evidence of #1-3?**

    Did you collect fingerprints?  [§ 108.33(e)(1)].

    Did you submit fingerprints to the FAA?  [§108.33(c)(4)]

    Do you have either the criminal record or summary of the
        criminal record or an indication that no criminal record
        existed?  [§ 108.33 (k)(2)]

D.    **PROCESS QUESTIONS - Do these things happen?**

    Is the individual, at the time of application, asked to present
        two forms of identification, one with a photograph?  [§
        108.33(c)(3)]

    How is the individual told who would serve as the airport's
        point of contact?  [§ 108.33(d)]

    Is your collection of fingerprints processed under the direct
        observation of your representative, or a law enforcement
        officer?  [§ 108.33(e)(2)]

    Do you require two forms of identification, one with a
        photograph, prior to the collection of fingerprints?
        [§ 108.33(e)(3)]

    Do you tell individuals they may request a copy of their
        criminal record?  [§ 108.33(g)(1)]

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011419

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21MC101 (AKH)
Subj. to Protect. Order 21MC97(AKH)

Appendix XXI
Page 3

Do you provide a copy of the criminal record to the individual
   or his/her representative upon request?  [§ 108.33(g)(1)]

Did you receive notification from the individual that a
   correction would be sought for his/her criminal record?
   [§ 108.33(h)(1)]

Have you received corrected FBI criminal records? [§ 108.33
   (h)(2)]


9.    When did you grant the individual unescorted access?
      (This date should not precede the date in #8 above when a
      criminal check has been processed.)

Change 58, 7/5/2000

WARNING: THIS DOCUMENT CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER
THE PROVISIONS OF 14 CFR PART 191.  NO PART OF THIS DOCUMENT MAY BE RELEASED WITHOUT THE
WRITTEN PERMISSION OF THE ASSOCIATE ADMINISTRATOR FOR CIVIL AVIATION SECURITY, FEDERAL
AVIATION ADMINISTRATION, WASHINGTON, DC 20591.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL
PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC AVAILABILITY TO BE
DETERMINED UNDER 5 U.S.C. 552.

AAL 011420

**Confidential - Do Not Copy or Disclose**

Subj. to Protect. Order 21 MC 101 (AKH)
Subj. to Protect Order 21 MC 9716 (AKH)

OCT.27.1997   6:55AM   CIVIL AVIATION SECURITY

Wanda    bcc  ...
H. Brooks
A. Pepper
P. Howland
B. Schmidt
D. Dixon
B. Wilson
J. Corrigan
10/27/97



**US Department
of Transportation**

**Federal Aviation
Administration**

Civil Aviation Security

Security Directive
Information of Concern to Aviation Security Personnel:
Current Security Procedures Should be Reviewed

Subject: Threat to Air Carriers

Number: SD 97-01

Date: October 27, 1997

**EXPIRATION: March 31, 1998**

Security Directive (SD) 97-01 shall be implemented at 0100 hours EST on October 29, 1997. At that time, SD 97-01 will supersede SD 96-05F and Alternative Measure 96-05F.1. All other alternative measures corresponding to the SD 96-05 series will be reviewed and reissued by the air carrier's Principal Security Inspector (PSI) to correspond with SD 97-01, or cancelled.

REVISION SUMMARY: The following highlights most of the changes, deletions, and additions from the previous SD (SD 96-05F). This SD must be reviewed thoroughly to determine what adjustments to current procedures must be implemented by each air carrier.

- Allows for the use of an FAA-approved Computer Assisted Passenger Screening (CAPS) system to profile passengers. [see Section I.]
- Requires profiling of ONLY those passengers CHECKING BAGGAGE. [see Section I.]
- Adds another exception to the profiling criteria. [see Section I.C.11.]
- Requires that the air carrier request ID from ALL passengers appearing to be 18 years of age or older. [see Section II.]
- Moves the ████████████████████████ selectee criterion to the Identification Check section. [see Section II.]
- Adds 2 measures to clear selectees ████████████████ [see Section II.B.3.]
- Provides exceptions to questioning for family groups and family members with children under the age of 12. [see Section III.A.]
- Adds an option to use a sign to pose questions, in conjunction with the air carrier asking and receiving a verbal response to each question. [Section III.D.]
- ████████████████████████████████████████████████████████████████
- Adds provisions for airplane searches for international flights. [see Section XI.A.2. and 3.]
- Removes the requirement to conduct a bag match for domestic overwater flights.
- Removes the requirement to conduct random ID checks █████████████
- Removes the requirements to: ███████████████████████████████████████
████████████████████████████████████████████
- Removes the requirement to complete a written declaration for GSC/ISC communications.
- Removes the curbside and off-airport checked baggage restrictions for flights operating between points in the continental United States and points in Hawaii, Puerto Rico, and all U.S. territories and commonwealths.
- Removes the requirement to observe the passenger screening checkpoint for a mandatory 20 minute period.

For Use by Aviation Security Personnel Only. Unauthorized Dissemination of this Document or Information Contained Herein is Prohibited. 14 CFR 108.18 and 191.5. No part of this document may be released without the express written permission of the Associate Administrator for Civil Aviation Security, ACS-1, Federal Aviation Administration, Washington, DC, 20591.

AAL 011596

AAL TSA000893

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21 MC 101 (AKH)

OCT.27.1997  6:55AM  CIVIL AVIATION SECURITY

Subj. to Protect Order 21 MC 97 (AKH)

Security Directive 97-01
Page 2 of 10

## FAA COMMENTS:

On August 5, the FAA issued a proposed amendment to the Air Carrier Standard Security Program (ACSSP) for comment. The comment period closed October 10. The proposed amendment involved domestic baseline measures that also are addressed in this SD. Should the FAA issue an amendment to the ACSSP based on the August 5 proposal prior to the expiration date of this SD, this SD may be canceled on the effective date of any such amendment. If this occurs, the FAA will provide appropriate advance notification.

Regarding the removal of the requirement for the 20 minute checkpoint observation period, air carriers are reminded of the GSC requirements outlined in Federal Aviation Regulation (FAR) Part 108. Specifically, FAR 108.29(a)(2)(i) and (ii) states, in part, that the GSC will review daily all security related functions for effectiveness and compliance with FAR 108, the ACSSP, and all applicable SD's. The GSC will immediately initiate corrective action for each instance of noncompliance.

AVSEC Alert Level III remains in effect.

## INFORMATION:

Available information points not only to a continuing high level of threat to U.S. interests in many areas abroad, but to an increasing threat from international terrorist groups in the United States as well.

In recent years, the United States has become a more attractive target for terrorist attacks. Between 1983 and 1990, there were no international terrorist attacks in the United States. Since then, however, several politically motivated, violent terrorist incidents have occurred. The most spectacular was the February 26, 1993, bombing of the World Trade Center in New York City. This attack dramatically demonstrated the capabilities and intent of international terrorists to operate in the United States. Since that time, the threat posed by foreign terrorists in the U.S. has increased, and the FAA believes that the threat will continue for the foreseeable future.

Of specific concern are individuals, groups, and states hostile to the United States which continue to threaten violence against America and American citizens in retaliation for U.S. policies. For example, the "Islamic Group" (IG) in early 1997 declared the United States to be Islam's number one enemy, saying that Americans and American interests everywhere were legitimate targets for attack because of the earlier U.S. imprisonment of the group's spiritual leader, Sheik Omar Abdel Rahman. In early October 1997, the IG again reiterated its earlier warnings that the United States would be held accountable should anything "untoward" happen to Sheik Rahman. The government of Iran, for its part, responded to U.S. military exercises in the Persian Gulf by repeating earlier warnings of unspecified worldwide retaliation for any foreign attack on the Islamic regime.

███████████████████████████████████

In addition, a variety of other transnational radical Islamic terrorist groups have a presence in the United States. Among these are loosely-affiliated extremists who operate outside the tightly structured, centralized manner of traditional groups. Instead, these individuals rely on their personal connections to other individuals with similar political agenda in order to perpetrate an act of terrorism. The amorphous, ad hoc nature of these elements poses a new challenge to law enforcement in identifying, predicting, or interdicting their activities. The individuals responsible for the bombing of the World Trade Center and those convicted of the plan to attack several U.S. air carriers in East Asia in early 1995 are examples of the threat posed by loosely-affiliated terrorists.

For Use by Aviation Security Personnel Only
Unauthorized Dissemination of this Document or Information Contained Herein is Prohibited: 14 CFR 108.18 and 191.5. No part of this document may be released without the express written permission of the Associate Administrator for Civil Aviation Security, ACS-1, Federal Aviation Administration, Washington, DC 20591.

AAL 011597

AAL TSA000894

Confidential - Do Not Copy or Disclose

OCT.27.1997  6:56AM    CIVIL AVIATION SECURITY

Subj. to Protect. Order 21 MC 101 (AKH)
Subj. to Protect Order 21 MC 97 (AKH)

**Security Directive 97-01**
Page 3 of 10

Civil aviation has been a prominent target of these and other transnational terrorists. In the past several years, information has been received that individuals in the U.S. associated with loosely-affiliated extremists have discussed targeting commercial aircraft and civil aviation facilities. Loosely-affiliated extremists have also shown a particular interest in media reporting regarding airline and airport security.

Civil aviation is not the only possible target for terrorists operating in the United States, and it may not even be the most likely one, but it remains a current target in the terrorists' inventory. The possibility continues to exist for anti-U.S. violence in the United States by international terrorist groups or loosely-affiliated individuals who are motivated by their hatred of the United States and Israel. As such, a terrorist attack in the United States could occur with little or no warning.

ACTIONS REQUIRED BY U.S. CARRIERS:

The measures outlined in this SD shall be applied by direct air carrier employees, or representatives contracted by the air carrier, to each scheduled and public charter flight departing from any location within the United States, its territories and commonwealths.

I.    Profile. At the initial point of contact, the air carrier shall profile each passenger checking baggage. The profile shall be applied by using an FAA-approved Computer Assisted Passenger Screening (CAPS) system, or by applying the profiling criteria outlined in paragraphs B. and C. of this section.

      A.    The checked baggage belonging to a passenger identified as a selectee using CAPS or the profiling criteria outlined in paragraphs B. and C., shall be cleared using one of the procedures outlined in Section IV. The air carrier shall ensure that no one other than the carrier, its agent, or government agents have access to the contents of the bags, including any of their compartments, after they have been cleared in accordance with one of the procedures outlined in Section IV, paragraphs A. through D.

      B.    A passenger becomes a selectee ██████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

      C.    Verification of any one of the following conditions may clear a passenger identified as a selectee under the profile outlined in paragraph B. of this section.

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

For Use by Aviation Security Personnel Only.
Unauthorized Dissemination of this Document or Information Contained Herein is Prohibited. 14 CFR 108.18 and 191.8. No part of this document may be released without the express written permission of the Associate Administrator for Civil Aviation Security, ACS-1, Federal Aviation Administration, Washington, DC, 20591.

AAL 011598

AAL TSA000895

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21 MC 101 (AKH)

OCT.27.1997  6:57AM    CIVIL AVIATION SECURITY

Subj. to Protect Order 21 MC 97 (AKH)



Security Directive 97-01
Page 4 of 10



II.   Identity Check.  At the initial point of contact, the air carrier shall request that each passenger, appearing to be 18 years of age or older, present a valid identification medium (ID).

A.   The air carrier shall request presentation of:

1.   an unexpired and valid photo ID issued by a government authority;

2.   two other forms of unexpired and valid ID, at least one of which must be issued by a government authority; or

3.   

B.   The passenger shall be designated as a selectee, and his/her checked baggage AND carry-on items shall be cleared using one of the procedures outlined in Section IV., if:



For Use by Aviation Security Personnel Only
Unauthorized Dissemination of this Document or Information Contained Herein is Prohibited: 14 CFR 108.18 and 191.5. No part of this document may be released without the express written permission of the Associate Administrator for Civil Aviation Security, ACS-1, Federal Aviation Administration, Washington, DC, 20591.

AAL 011599

AAL TSA000896

**Confidential - Do Not Copy or Disclose**    **Subj. to Protect. Order 21 MC 101 (AKH)**
OCT.27.1997   6:57AM    CIVIL AVIATION SECURITY    **Subj. to Protect Order 21 MC 97 (AKH)**

Security Directive 97-01
Page 5 of 10



C.   A Federal law enforcement officer (LEO)

III.   Questioning.

A.   At the initial point of contact with each passenger, the air carrier shall question, verbally or in writing, each passenger individually, to obtain a response to the following questions. The air carrier may question: (1) a family group traveling together; (2) a husband and wife may be questioned together; and (3) parents may answer for children under the age of 12.

1.   "Has anyone unknown to you asked you to carry an item on this flight?"

2.   "Have any of the items you are traveling with been out of your immediate control since the time you packed them?"

B.   The passenger answers "YES" to either of the questions:

1.   "YES" to Question #1:   Under the direct supervision of the air carrier, the passenger shall identify the item that he/she has been asked to carry.  That item shall be cleared using one of the procedures outlined in Section IV., paragraphs A. through D.

2.   "YES" to Question #2:

a.   Under the direct supervision of the air carrier, the passenger shall be asked to open and inspect the carry-on item or checked baggage that has not been controlled by the passenger.  If the passenger discovers that an unknown, therefore suspect, item has been added to the contents of his/her carry-on items or checked baggage, the suspect item shall be cleared using one of the procedures outlined in Section IV., paragraphs A. through D.

b.   For checked baggage only.  The inspection is not required if the air carrier determines that the checked baggage was left in the control of:

(1)   an air carrier representative;

For Use by Aviation Security Personnel Only
Unauthorized Dissemination of this Document or Information Contained Herein is Prohibited:  16 CFR 108.18 and 191.5.  No part of this document may be released without the express written permission of the Associate Administrator for Civil Aviation Security. ACS-1, Federal Aviation Administration, Washington, DC, 20591.

AAL 011600

AAL TSA000897

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21 MC 101 (AKH)
Subj. to Protect Order 21 MC 97 (AKH)

OCT.27.1997  6:58AM   CIVIL AVIATION SECURITY

Security Directive 97-01
Page 6 of 10



C.  When a written form is used, the passenger must reply, in writing, on the same form and return it to the air carrier for resolution. When the written form is used for non-English speaking passengers, it shall be:

   1.  printed in the appropriate language and written so that the non-English speaking passenger can communicate that he/she understands the questions, by recording his/her responses; and

   2.  designed so that an English speaking air carrier employee or representative can determine if the responses indicate the need for additional screening and clearance measures of the passenger's carry-on items or checked baggage.

D.  The air carrier may use a printed sign to pose the questions to the passengers. When such signs are used, the air carrier employee and/or contracted representative shall instruct each passenger to read the sign, and then obtain a specific verbal response to each of the questions.

E.  A translator may be used to pose the questions, when that translator is an employee or contracted representative of the air carrier.

F.  If the air carrier is unable to communicate with the passenger to determine the answers to each of the questions, then all carry-on items and checked baggage belonging to that passenger shall be cleared using one of the procedures outlined in Section IV., paragraphs A. through D.

G.  A Federal LEO.



IV.  Clearance Procedures. The air carrier shall use one of the procedures in this paragraph to clear:

   (1) the checked baggage of a selectee identified by the profile;
   (2) the checked baggage AND carry-on items of a selectee who did not present the

   (3) the suspect items identified during questioning; and
   (4) the checked baggage and carry-on items belonging to a passenger who was unable to communicate with the air carrier during questioning.

A.  In the presence of the passenger, the suspect item, checked baggage or carry-on item shall be emptied. A physical inspection of each emptied bag/box/container and its contents shall be conducted using a qualified screener.

For Use by Aviation Security Personnel Only
Unauthorized Dissemination of this Document or Information Contained Herein is Prohibited: 14 CFR 108.18 and 191.5. No part of this document may be released without the express written permission of the Associate Administrator for Civil Aviation Security, ACS-1, Federal Aviation Administration, Washington, DC, 20591.

AAL 011601

AAL TSA000898

Confidential - Do Not Copy or Disclose

OCT.27.1997  6:58AM    CIVIL AVIATION SECURITY

Security Directive 97-01
Page 7 of 10

shall be subjected to a two-plane x-ray inspection to ensure that an explosive or incendiary has not been concealed within the bag/box/container.

B. In the presence of the passenger, examine the suspect item, checked baggage or carry-on item, using an Explosive Trace Detection Device (ETD) which has been assessed by the FAA as effective. The ETD shall be operated using the procedures outlined in the air carriers' FAA-approved amendment.

C. Screen the suspect item, checked baggage or carry-on item, using an FAA-certified Explosives Detection System (EDS), or Advanced Technology Equipment (AT) purchased and provided to the air carrier by the FAA. EDS and AT equipment shall be operated using the procedures outlined in the air carriers' FAA-approved amendment.

D. Subject the suspect item, checked baggage or carry-on item, to screening by using an FAA-approved explosive detection K-9 team.

E. For flights departing AND landing at locations within the U.S., its territories or commonwealths, the checked baggage belonging to a selectee shall not be transported on the airplane without the passenger.

V. Unaccompanied checked baggage of selectees shall be transported in accordance with Section XV.A.3.a. of the ACSSP.

VI. Warn all passengers at check-in to control their carry-on baggage to prevent the introduction of dangerous items without their knowledge. Admonish all passengers not to accept items from unknown persons.

VII. Notify all passengers that carry-on items and checked baggage are subject to search.

VIII. Ground Security Coordinators (GSC's) shall immediately notify Airport Security Coordinators (ASC's) of suspicious items or activities at the airport.

IX. The following measures shall be implemented on all flights or flight segments departing from the U.S., its territories or commonwealths, which serve as the last point of departure to an international location.

A. Conduct a positive passenger baggage match (PPBM) in accordance with Section XV.A.3.a. of the ACSSP. This measure supersedes the PPBM procedures outlined in Section VIII.B. of the ACSSP.

B. The air carrier shall not accept checked baggage at curbside or at any off-airport location, unless an amendment was approved by the PSI after July 25, 1996.

X. Continual Physical Inspections. The following measures shall be implemented at all ████████ airports. Physical inspections of carry-on items shall be continually conducted at each x-ray unit in operation at each passenger screening checkpoint.

A. When the number of items selected by the x-ray operator for image resolution are not sufficient to ensure continual physical inspections, other items shall be randomly selected to meet this requirement.

B. When space restrictions at a checkpoint do not permit a search area for each x-ray unit, one search area may serve 2 x-ray units in operation.

C. In lieu of continual physical inspections, the air carrier may conduct continual inspections using an ETD. The ETD shall be operated using the procedures established in the air carriers' FAA-approved amendment. One ETD search area may serve 3 x-ray units in operation.

For Use by Aviation Security Personnel Only
Unauthorized Dissemination of this Document or Information Contained Herein is Prohibited; 14 CFR 108.18 and 191.5. No part of this document may be released without the express written permission of the Associate Administrator for Civil Aviation Security, ACS-1, Federal Aviation Administration, Washington, DC, 20591.

AAL 011602

AAL TSA000899

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21 MC 101 (AKH)
Subj. to Protect Order 21 MC 97 (AKH)

OCT.27.1997   6:59AM    CIVIL AVIATION SECURITY

Security Directive 97-01
Page 8 of 10

D.   During low activity operations, as described in the ACSSP, Section II., paragraph D., continual physical inspections need not be conducted.

XI.  Airplane Searches. The following measures shall be applied to the AIRPLANE.

A.   The following measure shall be applied at the last point of departure from the U.S., to all airplanes destined for an international location, and at the first landing point in the U.S., to all airplanes arriving from an international location:

   1.   The empty passenger cabin shall be searched

      a.   The search shall include:

      b.   Personnel conducting the search must be familiar with the aircraft, and shall be provided instructions for notifying the appropriate authorities if suspicious items are detected.

B.   The following measure shall be applied at the last point of departure from the U.S., to all airplanes destined for an international location:
the airplane shall be searched

C.   The following measure shall be applied at the U.S. origination point of any airplane destined for an international location:                              the cargo hold areas shall be searched

AIR CARRIER ACKNOWLEDGMENT: Within 24 hours of receipt of this SD, the air carrier shall provide written confirmation to its assigned PSI, acknowledging receipt.

AIR CARRIER DISSEMINATION REQUIRED: The air carrier shall provide written confirmation to its assigned PSI, indicating that all stations affected have acknowledged receipt of the information in this SD, to ensure full implementation by the effective time and date.

The air carriers shall disseminate this information to senior management personnel, GSC's, and supervisory security personnel at domestic locations only. U.S. air carrier local station security personnel should coordinate the information in this SD with local airport management and law enforcement personnel on a strict need-to-know basis. All recipients must limit dissemination within their respective organizations to personnel with an operational need-to-know.

All air carrier personnel performing security duties implementing this SD must be briefed by the air carrier on its content and the restrictions governing dissemination. No other dissemination may be made without prior approval of the Associate Administrator for Civil Aviation Security. Unauthorized dissemination of this document or information contained herein is prohibited by 14 CFR 108.18 and 191.5.

For Use by Aviation Security Personnel Only
Unauthorized Dissemination of this Document or Information Contained Herein is Prohibited. 14 CFR 108.18 and 191.5. No part of this document may be released without the express written permission of the Associate Administrator for Civil Aviation Security, ACS-1, Federal Aviation Administration, Washington, DC, 20591.

AAL 011603

AAL TSA000900

Confidential - Do Not Copy or Disclose

OCT.27.1997   6:59AM    CIVIL AVIATION SECURITY

Subj. to Protect. Order 21 MC 101 (AKH)
Subj. to Protect Order 21 MC 9P (AKH)

**Security Directive 97-01**
**Page 8 of 10**

APPROVAL OF ALTERNATIVE MEASURES: With respect to the provisions of this SD, according to FAR 108.18(c), air carriers may submit in writing to their PSI, proposed alternative measures and the basis for submitting the alternative measures, for approval by the Director of the Office of Civil Aviation Security Operations.

FOR FAA ACTION ONLY: PSI's shall review their assigned air carriers' alternative measures corresponding to the SD 96-05 series. Any alternative measures applicable to SD 97-01 shall be reissued to correspond with this SD. All other alternate measures shall be canceled. The FAA shall issue this SD immediately to the corporate security element of all affected U.S. air carriers.

FOR STATE DEPARTMENT: Retransmittal to appropriate foreign posts is authorized. Post must refer to STATE 093752, 300308Z Mar 93, Subject: FAA Security Directives and Information Circulars: Definitions and Handling, for specific guidance and dissemination.

Cathal L. Flynn
Associate Administrator for
  Civil Aviation Security

For Use by Aviation Security Personnel Only
Unauthorized Dissemination of this Document or Information Contained Herein is Prohibited: 14 CFR 108.18 and 191.5. No part of this document may be released without the express written permission of the Associate Administrator for Civil Aviation Security. ACS-1, Federal Aviation Administration, Washington, DC, 20591.

AAL 011604

AAL TSA000901

**Confidential - Do Not Copy or Disclose**

Subj. to Protect. Order 21 MC 101 (AKH)

OCT.27.1997  7:00AM   CIVIL AVIATION SECURITY      Subj. to Protect Order 21 MC 97 (AKH)

Security Directive 97-41
Page 10 of 10

**Attachment 1**



For Use by Aviation Security Personnel Only
Unauthorized Dissemination of this Document or Information Contained Herein is Prohibited; 14 CFR 108.18 and 191.5. No part of
this document may be released without the express written permission of the Associate Administrator for Civil Aviation Security,
ACS-1, Federal Aviation Administration, Washington, DC, 20591.

AAL 011605

AAL TSA000902

Confidential - Do Not Copy or Disclose

Subj. to Protect. Order 21 MC 101 (AKH)
Subj. to Protect. Order 21 MC 97 (AKH)



U.S. Department
of Transportation

**Federal Aviation
Administration**

# Civil Aviation Security
# Information Circular

### Information of Concern to Aviation Security Personnel
### Current Security Procedures Should be Reviewed in Light of
### This Information

**Subject: Possible Terrorist Activity**
**Number: IC-99-13**          **Date: December 23, 1999**          **Page 1 of 2**

---

**EXPIRATION:** January 31, 2000

**INFORMATION:** On December 14, 1999, U.S. authorities arrested an Algerian-born man in possession of explosive materials, including liquid explosives, as he attempted to enter the United States at Port Angeles, Washington, from Canada. The arrest follows recent warnings by the U.S. State Department concerning possible terrorist threats to American citizens worldwide. Some of the components found in possession of the suspect could be used in devices which could target civil aviation. We cannot rule out the possibility that aviation could be targeted.

**COMMENT:** Absent information indicating a specific threat, the existing security program provides an appropriate level of protection. Elements of the program such as pre-board screening, checked baggage procedures, and the use of trace detection equipment are being applied with diligence. Increased visibility of K-9 and law enforcement personnel also add deterrence to a defensive value.

FAA has prepared images of several possible improvised explosive devices (IED) using combinations of components (similar to those seized in Port Angeles) for the use of screening companies. These images are notional and do not represent all combinations or uses of the components. The images will be shown to checkpoint screeners by local FAA security representatives.

It is essential that screeners treat all passengers – regardless of race, color, ethnicity, religion, or gender – equally, both in terms of their being potential

---

For Use by Aviation Security Personnel Only
Unauthorized Dissemination of This Document or Information Contained Herein
is Prohibited. 14 CFR 108.18

AAL 011915

AAL TSA001212

Confidential - Do Not Copy or Disclose     **Information Circular**     Subj. to Protect. Order 21 MC 101 (AKH)
Subj. to Protect. Order 21 MC 97 (AKH)

| **Number: IC-99-13** | **Date: December 23, 1999** | **Page 2 of 2** |

threats and of their deserving courteous, professional treatment during the conduct of security procedures.

## DISSEMINATION GUIDANCE:

(1) This IC shall be disseminated to all U.S. air carriers. It is intended for the information of carrier corporate security directors, senior management personnel, ground security coordinators, and supervisory security personnel at overseas locations.

(2) This IC may also be disseminated to managers and security elements at Part 107 airports. Such dissemination must include the dissemination guidance contained in this IC.

(3) If required in the course of aviation security duties, U.S. air carrier local station security personnel outside the U.S. may coordinate the information in this circular with local airport management and law enforcement personnel on a strict need-to-know basis only.

(4) All recipients must limit dissemination within their respective organizations to personnel who have an operational need-to-know.

(5) No other dissemination may be made without the prior approval of the FAA Associate Administrator for Civil Aviation Security. Unauthorized dissemination of this document or information contained herein is prohibited by 14 CFR 108.18.

**FOR STATE DEPARTMENT:** Retransmittal to appropriate foreign posts is authorized. Posts must refer to STATE 093752, 300308Z Mar 93, Subject: FAA Security Directives and Information Circulars: Definitions and Handling, for specific guidance on handling and dissemination.

For Use by Aviation Security Personnel Only
Unauthorized Dissemination of This Document or Information Contained Herein
is Prohibited: 14 CFR 108.18     AAL 011916

AAL TSA001213

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------------x
                                      :
IN RE SEPTEMBER 11 LITIGATION         :
                                      :     21 MC 97  (AKH)
--------------------------------------------------------x     21 MC 101 (AKH)
                                      :
IN RE SEPTEMBER 11 PROPERTY DAMAGE    :
AND BUSINESS LOSS LITIGATION          :
                                      :
--------------------------------------------------------x
```

## PLAINTIFFS' JOINT MASTER DISCOVERY – SCREENING EQUIPMENT (NEWARK AND DULLES)

PLEASE TAKE NOTICE that pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, the PD/BL Plaintiffs' Executive Committee and the PI/WD Plaintiffs' Executive Committee, by and through their respective Liaison Counsel, and on behalf of all plaintiffs in 21 MC 97 and 21 MC 101 (the "September 11 Actions"), serve the following Requests and Interrogatories upon all Defendants and cross-claim defendants in 21 MC 97 and 21 MC 101 (excluding The Boeing Company, the Massachusetts Port Authority, Globe Aviation Services Corp., AirTran Airways, Inc., Atlantic Coast Airlines, Inc., Burns, Colgan Air, Inc., Continental Airlines, Inc., Delta Air Lines, Inc., Huntleigh U.S.A. Corporation, ICTS International, N.V., Midway Airlines Corporation, National Airlines, Inc., Northwest Airlines Corporation, Pinkerton's, Securitas, US Airways, Inc., and the Ground Defendants), in accordance with the procedures set forth in paragraph 4(a) of the September 28, 2005 Supplemental Case Management Order entered in the September 11 Actions. All Documents requested herein are requested to be produced to all Liaison Counsel no later than March 28, 2007. All items for which requests for inspection, etc. are made herein are requested to be made available no later than March 28, 2007.

These Requests are governed by Local Civil Rule 26.3. All defined terms and rules of construction set forth in Local Civil Rule 26.3 are incorporated into these Requests by reference, and are supplemented as permitted by Local Civil Rule 26.3(a) by the definitions and instructions set forth herein.

<u>**DEFINITIONS**</u>

1.    "Screening Equipment" means magnetometers, x-ray machines, ETD machines, hand wands, baggage inspection tables, divest containers and any other equipment used to screen passengers passing through a checkpoint.

2.    "9/11 TIP Information" means documents and electronically stored information concerning the use on September 11, 2001 of x-ray machines with the Threat Image Projection System at any Hijacker Checkpoint, including all tests, test results, login or sign-in information and codes.

3.    "9/11 Screener TIP Information" means documents and electronically stored information concerning the use of x-ray machines with the Threat Image Projection System by any 9/11 Screener, including such 9/11 Screener's tests, test results, login or sign-in information, codes and training.

4.    "Training Items" means any tangible things, objects, pictures or images used to train screeners on and immediately prior to September 11, 2001 and/or used to train any 9/11 Screener, including weapons, prohibited items, confiscated items, mace, pepper spray, tear gas, box cutters, knives, razors, bombs, fake bombs, computerized libraries, images of the foregoing, Threat Image Projection images, and 'Operation Safe Passage' or similar images, items or catalogues.

5.    "9/11 Screener" means any checkpoint screener, supervisor or manager on duty at any Hijacker Checkpoint on September 11, 2001.

2

6.    "Hijacker Checkpoint" means the security checkpoints at Newark airport and Dulles airport through which any 9/11 hijacker passed on September 11, 2001 or through which a passenger could gain access to Flight 93 or 77.

7.    "Instruction Manual" means, with respect to a given item, all documents describing the use, testing, calibration, technical characteristics, maintenance, repair or other procedures concerning such item in your possession, custody and control on September 11, 2001.

8.    "Test Item" means any item, equipment, test piece or other tangible thing used to test Screening Equipment.

9.    "Describe" means set forth in detail the facts within your knowledge concerning a given matter and identify all persons with relevant knowledge.

## INSTRUCTIONS

The following Instructions apply to each request set forth herein.

1.    To the extent any document or tangible things requested herein were produced in response to Plaintiffs' Master Discovery (First Set) or Master Discovery (Second Set), such document or tangible thing need not be reproduced in response to this Request.

2.    To the extent you redact any portion of any document, such redaction must be clearly marked "redacted" with the name of the party making the redaction (*e.g.*, "UAL Redaction" or "AA Redaction") and identified on a log of all redactions indicating the Bates number where the redaction appears and the purported justification for the redaction. Nothing in this instruction shall be interpreted as an agreement as to the appropriateness of any redaction made by you to any document.

3.    A request for a document shall be deemed to include a request for any and all file folders within which the document was contained, transmittal sheets, cover

3

letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

  4. Documents shall be produced in such fashion as to identify the department, branch or office in which each document was located and, where applicable, the natural person in whose possession it was found and the business address of its custodian(s).

  5. Documents attached to each other (physically or via electronic mail) should not be separated.

  6. Produce all non-identical copies of any document responsive to any Request (including all notes, markings, flags or highlighting on any such non-identical copy).

## DOCUMENT AND INSPECTION REQUESTS

  1. Produce for inspection, copying, testing, sampling and photographing all Screening Equipment used or present at the Hijacker Checkpoints on September 11, 2001.

  2. Produce a copy of all Instruction Manuals for all Screening Equipment used or present at the Hijacker Checkpoints on September 11, 2001.

  3. Produce all documents and electronically stored information concerning the purchase, calibration, testing, maintenance and repair of all Screening Equipment used or present at the Hijacker Checkpoints on September 11, 2001, including calibration stickers, calibration logs, equipment test logs and documents concerning equipment test failures.

  4. Produce all photographs of the Screening Equipment used or present at the Hijacker Checkpoints on September 11, 2001.

  5. Produce all 9/11 TIP Information.

  6. Produce for inspection, copying, testing, and sampling all 9/11 TIP Information.

4

7.    Produce all 9/11 Screener TIP Information.

8.    Produce for inspection, copying, testing and sampling all 9/11 Screener TIP Information.

9.    Produce for inspection, copying, testing, sampling and photographing all Training Items.

10.    Produce all documents concerning Operation Safe Passage.

11.    Produce for inspection, copying, testing, sampling and photographing each Test Item used to test the Screening Equipment at the Hijacker Checkpoints on September 11, 2001.

12.    Produce a copy of all Instruction Manuals for all Test Items used to test the Screening Equipment at the Hijacker Checkpoints on September 11, 2001.

13.    Produce all documents concerning the testing on September 11, 2001 of all Screening Equipment at the Hijacker Checkpoints.

14.    Produce all incident reports concerning the Hijacker Checkpoints dated September 11, 2001.

15.    Produce for inspection, copying, testing, sampling and photographing all tangible things, including weapons, knives, boxcutters or mace, confiscated, abandoned or otherwise recovered or received from any passenger at the Hijacker Checkpoints or by any 9/11 Screener on September 11, 2001.

## INTERROGATORIES

1.    For each item of Screening Equipment used or present at the Hijacker Checkpoints on September 11, 2001:

(a) Identify such Screening Equipment by manufacturer, make, model number, serial number and any other identifying characteristics;

5

(b) Identify the date such Screening Equipment was first purchased, acquired and/or put into operation at the Hijacker Checkpoint;

(c) Identify the person from whom such Screening Equipment was purchased and/or acquired;

(d) Identify the location of such item of Screening Equipment as of the date of your Response;

(e) Identify the entity in whose possession, custody and control such item of Screening Equipment is as of the date of your Response;

(f) Identify by name, title, employer, business and home address the natural person who is the custodian of such item of Screening Equipment as of the date of your Response;

(g) Identify the entity in whose possession, custody and control such item of Screening Equipment was on September 11, 2001;

(h) Describe the chain of custody such item of Screening Equipment from September 11, 2001 to the date of your Response; and

(i) Identify all persons responsible for or personally involved in the maintenance and/or repair of such item of Screening Equipment during the one year period prior to and including September 11, 2001.

2.      Identify each item of Screening Equipment used or present at the Hijacker Checkpoints on September 11, 2001 that was in your possession, custody and control on September 11, 2001 that is no longer in your possession, custody and control and the circumstances under which such item of Screening Equipment was relinquished from your possession, custody and control.

6

3.    For each Test Item used to test the Screening Equipment at the Hijacker Checkpoints on September 11, 2001:

   (a) Identify such Test Item by manufacturer, make, model number, serial number and any other identifying characteristics;

   (b) Identify the date such Test Item was purchased, acquired, and/or put into operation at the Hijacker Checkpoint;

   (c) Identify the person from whom such Test Item was purchased and/or acquired;

   (d) Identify the location of such Test Item as of the date of your Response;

   (e) Identify the entity in whose possession, custody and control such Test Item is as of the date of your Response;

   (f) Identify by name, title, employer, business and home address the natural person who is the custodian of such Test Item as of the date of your Response;

   (g) Identify the entity in whose possession, custody and control such Test Item was on September 11, 2001;

   (h) Identify all natural persons who physically touched or viewed such Test Item on September 11, 2001; and

   (i) Describe the chain of custody such Test Item from September 11, 2001 to the date of your Response.

4.    Identify each Test Item used to test Screening Equipment at the Hijacker Checkpoints on September 11, 2001 that was in your possession, custody and control on September 11, 2001 that is no longer in your possession, custody and control and describe in detail the circumstances under which such Test Item was relinquished from your possession, custody and control.

7

Date:   February 26 , 2007

                              _Robert A. Clifford_
                              Robert A. Clifford, Esquire
                              Timothy S. Tomasik, Esquire
                              Clifford Law Offices, P.C.
                              120 N LaSalle Street
                              Suite 3100
                              Chicago, Illinois 60602
                              (312) 899-9090
                              PD/BL Plaintiffs' Executive Committee

                              -and-

                              Gregory P. Joseph, Esquire
                              Douglas J. Pepe, Esquire
                              805 Third Avenue
                              31st Floor
                              New York, New York 10022
                              (212) 407-1200
                              PD/BL Plaintiffs' Executive Committee

                              -and-

                              Marc S. Moller, Esquire
                              Kreindler & Kreindler LLP
                              100 Park Avenue
                              New York, New York 10017
                              (212) 687-8181
                              PI/WD Plaintiffs' Executive Committee

                              -and-

                              Richard A. Williamson, Esquire
                              Flemming Zulack Williamson Zauderer LLP
                              One Liberty Plaza
                              New York, New York 10006
                              (212) 412-9500
                              Counsel for Cross-Claim Plaintiffs

                              -and-

                              Ronald L. Motley, Esquire
                              Donald A. Migliori, Esquire
                              Motley Rice LLC
                              P.O. Box 1792
                              Mount Pleasant, South Carolina 29465
                              (843) 216-9000

8

## AFFIDAVIT OF SERVICE

STATE OF ILLINOIS          )

                              ) ss.:

COUNTY OF COOK          )

Robert A. Clifford, being duly sworn, deposes and says that deponent is not a party to the action, is over 18 years of age and resides in Chicago, Illinois and that on the 23rd day of February 2007, deponent served the within PLAINTIFFS' JOINT MASTER DISCOVERY – SCREENING EQUIPMENT (Newark and Dulles) upon:

1. Richard A. Williamson

2. Desmond T. Barry

3. Marc S. Moller

4. Beth D. Jacobs

5. Beth E. Goldman

by emailing a copy of the papers to the attorneys in accordance with the Court's March 10, 2005 Order.

Robert A. Clifford

Sworn to before me this 26th day of February 2007.

Notary Public

"OFFICIAL SEAL"
Jennifer L. Gordon
Notary Public, State of Illinois
My Commission Expires July 27, 2010

9