UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE: SEPTEMBER 11 LITIGATION

-----------------------------------------------------------x

Case No.: 21 MC 97 (AKH)

THIS DOCUMENT RELATES TO:

03 CV 6800
**Teague v. AMR Corp., et al.**

## ATTORNEY AFFIDAVIT OF MARY SCHIAVO IN SUPPORT OF PLAINTIFF'S MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT BETWEEN THE PARTIES

STATE OF SOUTH CAROLINA)
                       )
COUNTY OF CHARLESTON   )

Mary Schiavo, being duly sworn, deposes and says:

1. I am a member of Motley Rice LLC, attorneys for plaintiff Elaine Teague in the above action, am fully familiar with this litigation, and respectfully submit this affidavit in support of Plaintiff's Motion for Enforcement of the Settlement Agreement between the parties. Elaine Teague lost her daughter on American Airlines Flight 77. An unredacted copy of this motion and exhibits are being filed with the Court under seal.

2. On August 14, 2007, this Court awarded Plaintiff Elaine Teague partial Summary Judgment in the amount of $153,078.00. See Exhibit 6.

3. On October 16, 2007, the clerk entered judgment for Plaintiff in the amount of $153,078.00. See Exhibit 1.

4. I was informed, on August 23, 2007, by Eric McNamar, with a copy to Desmond Barry, Jr., that Defendant American Airlines refused to pay the judgment pursuant to this Court's Order dated August 14, 2007, without the Plaintiff's execution of a partial release and receipt. Eric

McNamar further stated "the partial releases we have sent to you have been used for several years in aviation cases governed by Warsaw and the Intercarrier Agreement. The bottom line is if your clients want this money right now they will have to sign the partial releases." See Exhibit 7.

5. On August 23, 2007, I replied to Eric McNamar stating that there was a stark absence of legal precedent to support Defendants demands, and requested that if Defendant relied on any precedent to support their demands, to forward it. See Exhibit 9. None was forwarded.

6. Eric McNamar was orally informed that plaintiffs would neither sign nor agree to the provisions of the document and that plaintiff would make no additional agreements in order to collect their judgment. Defendants were advised the only document plaintiff would sign was a receipt for the payment of the judgment.

7. Not only did I, Plaintiff's counsel, refuse to accept any part of the document titled "100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising from American Airlines Flight 77 Incident in Arlington, Virginia on September 11, 2001" (hereinafter Advance Payment Document), I declined to red-line, edit, amend or even proffer different language for such an agreement. I refused any such documents or agreements precedent for payment of the judgment and insisted on payment of the judgment.

8. When settlement negotiations resumed for American Airlines for Flight 77 in October 2007, and in the midst of those settlement negotiations, Joe Rice, with Desmond Barry, Jr. and others on the speakerphone, telephoned me at the Motley Rice headquarters office. I was asked by Joe Rice, Desmond Barry, Jr., and others within hearing of the speakerphone as to why Plaintiff Teague (as well as one other case) had withdrawn all settlement authority. I informed Joe Rice, Desmond Barry Jr., and others within hearing of the speakerphone in the negotiation room that it was because of Defendant American Airline's attempt to coerce the clients to agree to additional conditions and

2

concessions contained in the Advance Payment Document before paying the lawful judgment entered against American Airlines. I again reminded American Airline's counsel that no law required Plaintiff to agree to any such concessions in order for them to receive payment of their judgment. Furthermore, Plaintiff did not perceive that American Airlines was proceeding in good faith and American Airlines was perceived as less than trustworthy.

9. In that same call, Desmond Barry disputed that his office had sent such an agreement to Plaintiffs and disputed that his office demanded Plaintiff sign that Advance Payment Document before American would pay the judgment. Mr. Barry and anyone else listening to the call was again informed that the Plaintiff would not agree to any concessions on the court ordered judgment and would not sign the defendant's Advance Payment Document.

10. Soon after that call, in fact the very next day, my office was contacted by Eric McNamar through email correspondence and informed that the payment for the judgment would be forthcoming and the clients would not be required to agree to sign the Advance Payment Document or agree to the terms and conditions therein to receive payment of their judgment. See Exhibit 10.

11. I insisted the satisfaction of judgment not be dated until the full sum was actually received due to the extremely low credibility of American Airlines and because of the defendants' attempted threats and coercion.

12. On October 8, 2007, I signed a satisfaction of Plaintiff's partial judgment but with instructions to defendants that it could not to be dated and effective until the judgment was paid. The funds were paid to Ms. Teague in the full amount on October 12, 2007. Exhibit 14, Exhibit 15.

13. After Defendants' acceptance of the Flight 77 settlement terms, Eric McNamar sent an email to Plaintiff's counsel with the subject line: "9/11 Litigation: Settlement Documents- Ambrose, Brown, Cottom, Darlene Flagg, Wilson Flagg, Teague, and Hunt." The email contained fourteen

attachments. The settlement documents in Ambrose, Cottom, Darlene Flagg, Wilson Flagg, and Hunt cases were like all previous settlement agreements in regard to the subtraction of the $25,000.00 advance payment and were therefore signed.

14. Plaintiff Teague informed me she was exploring options regarding settlement structures, thus the Confidential Stipulation and Release were not immediately closely examined and were presumed to be the standard documents as used in over three dozen prior settlements, but set aside until needed. They were not signed nor agreed to by Plaintiff.

15. Shortly thereafter, my father was killed in a horrific accident and I immediately left the office and suspended my review of the settlement documents until my return.

16. Upon my return to the office and upon review of the Teague Confidential Stipulation and Release, I discovered that new terms were incorporated into the Teague documents that were not in any other settlement documents, nor in the settlement protocol established by defendants. The new language in the Stipulation and Release stated:

> "Plaintiff agrees that the sum of one hundred seventy-eight thousand, seventy-eight dollars and no/100 ($178,078.00) paid by the insurers of American and AMR shall be deducted from the settlement amount payable by American and AMR.

Exhibit 16, Confidential Draft Stipulation and Exhibit 17, Draft Release sent to Plaintiffs on October 26, 2007. The $178,078.00 sum included the $158,078.00 Partial Summary Judgment ordered by this Court and the $25,000.00 advanced by Defendants to the Plaintiff in the immediate aftermath of the September 11th, 2001, terror attack.

17. I advised LeAnn Lester, my paralegal, to contact Defendants and request that Defendants remove the altered language subtracting the judgment from the settlement. The defendant's refused.

18. Defense counsel Desmond Barry, Jr. and I have exchanged letters on this matter but are unable to agree. Desmond Barry, Jr. has refused further discussion on the matter.

4

_____
Mary Schiavo

SWORN TO AND SUBSCRIBED before me this 6th day of February, 2008.

_____
Notary Public (Signature)

Holly C. Hansen
NOTARY PUBLIC in and for the State
of South Carolina, residing at Charleston

7/10/2010
_____
My Commission Expires

5