UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  | : | No. 21 MC 97 (AKH) |
|  | : |  |
|  | : | This document relates to : |
| IN RE SEPTEMBER 11 LITIGATION | : | *Teague v. AMR Corp., et al.* |
|  | : | 03 CV 6800 |
|  | : |  |
|  | : |  |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFF'S MOTION FOR ENFORCEMENT OF SETTLEMENT AGREEMENT BETWEEN THE PARTIES

Plaintiff Elaine S. Teague, in her own right and as personal representative of the Sandra D. Teague, ("Plaintiff") hereby moves this Court to enter an Order enforcing the settlement agreement reached between Plaintiff and defendants American Airlines, Inc. ("American"), AMR Corporation ("AMR") and Argenbright Security, Inc. ("Argenbright"), on October 16, 2007, and confirmed in writing on October 24, 2007 and on October 26, 2007.

At issue is the defendants' obstruction of the settlement process in the *Teague* case, based on their surreptitious attempt to deduct a previous court ordered partial summary judgment for Plaintiff (see Exhibit1) from the agreed to settlement, after settlement was reached and after the settlement and amount were twice confirmed in writing. Further, defendant never asked for the reduction during the settlement discussions or in its settlement confirmation letters. With no legal support, defendants claim they are entitled to unilaterally reduce the mutually agreed upon settlement amount of ███████ by the $153,078.00 Partial Summary Judgment entered by this Court.    Defendants for the

1

first time after settlement was reached claim that the Partial Summary Judgment entered by this Court in Plaintiffs' favor on the issue of Special Drawing Rights on August 14, 2007 is an "advance payment" exactly like the $25,000 American Airlines gave to families in September 2001. Defendants make this claim even though before settlement negotiations Plaintiff rejected defendants' attempt to re-characterize Plaintiff's judgment as an "advance".

Plaintiff's attempts to resolve this conflict with defendants have been in vain. Correspondence between Mary Schiavo, Desmond Barry, Jr. and Joe Rice is attached as Exhibits 2 - 5. Defendants stated they will not further discuss the issue.

Almost a century of legal precedent in the Second Circuit, and the course of dealing between counsel for Plaintiffs and counsel for Defendants in many other 9/11 litigation settlements, establish that the settlement agreement in the amount of ████████ is valid and enforceable and that Defendants' claim is completely devoid of merit.

## STATEMENT OF FACTS

1.    On August 14, 2007, this Court awarded Plaintiff Teague Partial Summary Judgment in the amount of $153,078.00. See Exhibit 6.

2.    On October 16, 2007, the clerk entered judgment for Plaintiff in the amount of $153,078.00. See Exhibit 1.

3.    Defendant American Airlines refused to pay the judgment. Eric McNamar, with copy to Desmond Barry, Jr., informed Mary Schiavo on August 23, 2007 that Defendants would not pay the judgment pursuant to this Court's Order without the Plaintiff's execution of a partial release and receipt. Eric McNamar further stated "the partial releases we have sent to you have been used for several years in aviation cases

governed by Warsaw and the Intercarrier Agreement.  The bottom line is if your clients want this money right now they will have to sign the partial releases."  See Exhibit 7.

4.      The partial release Eric McNamar attached was entitled "100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising from American Airlines Flight 77 Incident in Arlington, Virginia on September 11, 2001."   [Hereinafter called the "100,000 SDR Advance Payment document"].  See Exhibit 8.

5.      On August 23, 2007, Mary Schiavo replied to Eric McNamar stating that there was a stark absence of legal precedent to support defendants' demands, and requested that if Defendant relied on any precedent to support their demands, to forward it.  See Exhibit 9.  None was forwarded.

6.      Defendants attempted to force the Plaintiffs to agree to the following additional terms, before defendants would pay the Court entered judgment.

  a.  Reduce the "judgment of July 30, 2007 ($153,078.00) by the $25,000.00 advanced to the decedent's family" in September 2001.

  b.  Force the Plaintiff to "agree to defend, indemnify, and hold harmless [American Airlines] from all claims and actions of any kind (including liens or liabilities relating to or arising out of any worker's compensation payments), and for all costs and expenses (including reasonable attorneys' fees)…."

  c.  Require Plaintiff to agree that "the international treaty commonly known as the Warsaw Convention governs all claims, and provides the sole and exclusive remedy for any claims, that the estate and family may have against AMERICAN and AMR CORPORATION…."

  d.  Require Plaintiff to agree not to seek to "expand the term "carrier" beyond what is provided in the Warsaw Convention and applicable case law….."

  e.  Force Plaintiff to agree to re-characterize her hard fought and won summary judgment order as an American Airlines advance payment, and

3

equate it with the $25,000.00 voluntarily paid by American almost seven years ago. "RELEASOR understands and agrees that AMERICAN'S payment of 100,000 SDRs is an advance on and a deduction from the total amount of any settlement by or judgment against RELEASEES in any action as a result of the death of Sandra D. Teague."

    f.   Force Plaintiff to agree to undo the finding of liability of American for the SDR's that the Court had ordered, "RELEASOR understands that receipt of the advance payment and the execution of this Partial Release and Receipt is not an admission of liability or responsibility of the RELEASEES for any wrongdoing, negligence, or other culpable conduct in connection with American Flight 77, all of which is denied…"

    g.   Force Plaintiff to re-cast the personal injury/wrongful death judgment as an "advance payment" with unknown tax consequences. "RELEASOR is responsible for all legal and income tax consequences related to this advance payment…"

    h.   Force Plaintiff to agree the applicable law is New York although the court applied Virginia Law.

7.    Eric McNamar was orally informed that Plaintiff would neither sign nor agree to the provisions of the document and that Plaintiff would make no additional agreements in order to collect the judgment.

8.    Defendants' attempt to force the Plaintiff to make additional concessions to obtain the payment of the Judgment she had already won was clearly and unequivocally rebuffed and refused. Defendants were advised that the Plaintiff and her counsel would not sign nor agree to the provisions in the Release and that Plaintiff was not required to sign or agree to any concessions or provisions contained in the Release to collect her judgment.

9.    Defendants were advised the only document Plaintiff would sign was a receipt for the payment of the judgment.

10.    There is no phone call, document, email, agreement, letter or any other evidence suggesting that Plaintiff did anything to accept any of the provisions in the proffered release which included many additional concessions.

11.    Defendants were clearly engaging in unethical strong arm tactics to attempt to force the Plaintiff to agree to additional conditions in order to receive payment of her court ordered judgment.  The defendants' threats were outrageous, had the appearance of ethical impropriety, and without any legal authority.

12.    Counsel for defendants American Airlines and AMR, Desmond Barry, Jr., admitted in Exhibit 3 that Plaintiff rejected and refused to sign the document entitled "100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising from American Airlines Flight 77 Incident in Arlington, Virginia on September 11, 2001".

13.    Not only did Plaintiff's counsel also refuse to accept any part of the 100,000 SDR Advance Payment Document, Plaintiff's counsel declined to red-line, edit, amend or even proffer different language for such an agreement.  The document and demand were rejected in their entirety.  Counsel for Plaintiff refused any such documents or agreements precedent for payment of the judgment and insisted on payment of the judgment.

14.    There were no immediate further discussions on Defendants' threats to withhold payment of judgment or their rejected document. Plaintiff's counsel commenced preparations for execution and attachment.

15.    On September 13, 2007, settlement negotiations for Flight 77 were renewed. In attendance in the settlement negotiations among others were Joe Rice, counsel for Plaintiff Teague, and Desmond Barry Jr., counsel for American Airlines and AMR.

16.    However, the day before commencement of those settlement negotiations, Plaintiff Teague (and one other case) withdrew all settlement authority from their counsel to engage in settlement negotiations because of American Airlines' strong-arm coercive behavior with regard to the refusal to pay the court-ordered judgment.   Because of American Airlines behavior with regard to refusing to pay the judgment, the defendants had no credibility with those Plaintiffs. Those Plaintiffs did not perceive defendants were acting in good faith, which concern by this Plaintiff turned out to be alarmingly accurate.

17.    With all authority withdrawn, Plaintiffs' counsel advised defendants of suspended settlement negotiations on Plaintiff Teague's case and one other case.   Mr. Rice advised the reason for this withdrawal of authority was defendant American Airline's refusal to pay the lawful court entered judgment to Plaintiffs for their Partial Summary Judgments and defendant's efforts to use coercive tactics to force the Plaintiffs to make additional concessions to receive payment of their court ordered judgment.

18.    In the midst of those settlement negotiations, Joe Rice, with Desmond Barry, Jr. and others on the speakerphone, telephoned Mary Schiavo at the Motley Rice headquarters office.   Mary Schiavo was asked by Joe Rice, Desmond Barry, Jr., and others within hearing of the speakerphone as to why Plaintiff Teague (as well as the other case) had withdrawn all settlement authority.   Mary Schiavo informed Desmond Barry Jr., and others within hearing of the speakerphone in the negotiation room that it was because of defendant American Airline's attempt to coerce the clients to agree to additional conditions and concessions as contained in the 100,000 SDR Advance Payment Document before paying the lawful judgment entered against American Airlines.   Mary Schiavo again reminded American Airline's counsel that no law required Plaintiffs to

6

agree to any such concessions in order for them to receive payment of their judgment. Furthermore, Plaintiffs did not perceive that American Airlines was proceeding in good faith and American Airlines was perceived as less than trustworthy.

19.    In that call, Desmond Barry disputed that his office had sent such an agreement to Plaintiffs and disputed that his office demanded Plaintiffs sign that "Advance Payment" document before American Airlines would pay the judgment.  Mr. Barry and anyone else listening to the call was clearly and in no uncertain terms informed that the Plaintiffs would not agree to additional concessions and would not sign the defendant's document in order to collect their judgment.

20.    Soon after that call, in fact the very next day, Mary Schiavo, counsel for Plaintiff, was contacted by Eric McNamar through email correspondence and informed that the payment would be forthcoming and the clients would not be required to agree to the "advance payment partial release" or agree to the terms and conditions therein to receive payment of their judgment.  See Exhibit 10.

21.    Plaintiffs' counsel further insisted the satisfaction of judgment not be dated until the full sum was actually received by counsel for Plaintiffs.

22.    With assurances from Desmond Barry Jr. that Plaintiff's judgment would be paid (as well as that in the other similar case) without requiring the Plaintiffs to agree to and sign the objectionable side agreement, the Teague case agreed to re-engage in negotiations and entertain settlement.  The settlement entered into for the Teague family was for ██████████ .

23.    At no time during the settlement negotiation did Desmond Barry, Jr., or any other person on behalf of the defendants request, ask, insist, demand, or interject that the

court's prior judgment and American Airline's payment of that judgment would be subtracted from the ████████ settlement.

24.    The $25,000.00 advance payment paid by American Airlines in September 2001, had previously been agreed to by Plaintiffs and defendants to be subtracted from all settlements in all cases as an advance payment.  See Exhibit 11.   This agreement was detailed in a July 2005 letter drafted by the defendants' counsel and signed by Plaintiffs' counsel as the protocol for 9/11 settlements.

25.    Joe Rice sent to Desmond Barry, Jr., a letter confirming the Teague settlement. See Exhibit 12.

26.    Des Barry Jr., responded on October 26, 2007, to Joe Rice by letter stating "I write in response to your letter of October 24, 2007, the aviation defendants agree to settle the Teague case for ████████.  The settlement is subject to the standard terms and conditions letter signed on July 20, 2005." See Exhibit 13.

27.    In the July 20, 2005, letter agreement the only the payment agreed to be subtracted from the settlements is the advance payment of $25,000.00.[1]  There was no agreement in that letter, or any other agreement or letter, to subtract any court ordered judgments or any other payments, expenses, or judgments.

28.    It is impossible to presume the $25,000.00 advance language also pertains to the subsequent judgment because American Airlines refused to pay the SDR's when demanded, denied they owed them, and forcefully fought the summary judgment motion. The SDR's are not an American Airlines advance payment and never were characterized by the court, by the defendants or by the Plaintiffs as an advance payment.

---

[1] The agreement also mentions funeral expenses.

29.    On October 8, 2007, a short, simple satisfaction of Plaintiff's partial judgment was signed by Mary Schiavo but with instructions to defendants that it could not to be dated and effective until the judgment was paid.  The funds were paid to Ms. Teague in the full amount on October 12, 2007.  See Exhibits 14 and Exhibit 15.

30.    After Defendants' acceptance of settlement terms for the flight 77 cases which settled in the last round of negotiations, Eric McNamar sent an email to Plaintiffs' counsel with the subject line: "9/11 Litigation: Settlement Documents- Ambrose, Brown, Cottom, Darlene Flagg, Wilson Flagg, Teague, and Hunt." The email contained fourteen attachments.  The settlement documents in Ambrose, Cottom, Darlene Flagg, Wilson Flagg, and Hunt cases were like all previous settlement agreements in regard to the subtraction of the $25,000.00 advance payment and were therefore signed.

31.    Plaintiff Teague was exploring options regarding settlement structures, and the Confidential Stipulation and Release was not closely examined, but set aside until needed.

32.    Shortly thereafter, Mary Schiavo's father was killed in a horrific accident and she immediately left the office and suspended her review of the settlement documents until her return.

33.    Upon Mary Schiavo's return to review the Teague Confidential Stipulation and Release, Plaintiff discovered that new terms were incorporated into the Teague documents that were not in any other settlement documents, nor in the settlement protocol established by defendants.  The new language in the Stipulation and Release stated:

> "Plaintiff agrees that the sum of one hundred seventy-eight thousand, seventy-eight dollars and no/100 ($178,078.00) paid by the insurers of American and AMR shall be deducted from the settlement amount payable by American and AMR.

Exhibit 16 and Exhibit 17 on October 26, 2007. The $178,078.00 sum included the $158,078.00 Partial Summary Judgment ordered by this Court and the $25,000.00 advanced by defendants to the Teagues in the immediate aftermath of the September 11th, 2001, terror attack.

34.    Subsequently, Plaintiffs' counsels' office contacted defendants on January 10th, 2008, and requested defendants remove the altered language subtracting the judgment from the settlement. See Exhibit 18.

**35.**    Defendants would not agree to remove the language including the $153,078.00 judgment as an advance payment and counsel have been unable to resolve the issue despite several attempts to do so. See Exhibits 2-5.


## ARGUMENT

### I.    Correspondence constituted a clear, unambiguous, binding agreement.

This issue comes before the Court because the settlement agreement, memorialized in Joe Rice's October 24, 2007 and Desmond Barry's October 26, 2007 correspondence, constitutes a clear and unambiguous agreement to settle the Teague case for ████████, subject to the $25,000.00 advance paid by American Airlines to the Teagues in September of 2001 (which $25,000.00 advance payment was accompanied by a letter stating it was an advance payment and would be subtracted from a future settlement). Though defendants now contend that they intended the $158,078.00 Partial Summary Judgment to be considered as an advance to be deducted from the settlement

amount of ████████, they failed to ever raise their intentions or interpolations at any time prior to their slight-of-hand tactic of slipping changes into what are supposed to be standard settlement documents. They also failed to request the same of the court before final Partial Summary Judgment was ordered. Defendant's post settlement contention is belied by the applicable law and the defendants' own actions in settlement negotiations and preceding this motion.

It is well settled law in the Second Circuit, and particularly the Southern District of New York, that a "[a] contract has, strictly speaking, nothing to do with the personal, or individual intent of the parties, usually words, which ordinarily accompany and represent a known intent.." *Hochkiss v. National City Bank*, 200 F.287, 293 (S.D.N.Y, 1911). Judge Learned Hand stated in his *Hochkiss* opinion:

> If, however, it were proved by twenty bishops that either party when he used the words intended something else than the usual meaning which the law imposes on them, he would still be held, unless there were mutual mistake or something else of the sort. Of course, if it appear by other words, or acts, of the parties, that they attribute a particular meaning to such words as they use in the contract, that meaning will prevail, but only by virtue of the other words, and not because of their unexpressed intent."

*Id.* Under New York law, it is well established that "[s]ettlement agreements are contracts and must therefore be construed according to general principles of contract law." *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir.2002) (quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir.1999)). In New York, a contract is valid if there is an offer and acceptance, consideration, mutual assent, and an intent to be bound. *See Register.com v. Verio,* 356 F.3d 393, 427 (2d Cir.2004). *McNamara v. Tourneau, Inc.* 464 F.Supp.2d 232, 237 (S.D.N.Y.,2006).

Sometimes, parties sign an informal document, with the understanding that a more formal contract will follow. Courts have recognized two types of informal agreements that bind parties in different ways. *See Adjustrite Sys. v. GAB Bus. Servs.,* 145 F.3d 543, 547-48 (2d Cir.1998) (applying New York law); *see also Teachers Ins. & Annuity Assoc. v. Tribune Co.,* 670 F.Supp. 491, 498 (S.D.N.Y.1987). First, there are preliminary agreements where parties agree on certain major terms but contemplate further negotiations over other terms. *Id.* These preliminary contracts-called "binding preliminary commitments"-are binding only in the sense that the parties "accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement." *Id.* Second, there are preliminary agreements where parties agree on all major negotiable terms of the contract and intend to be bound, but wish to memorialize their agreement in a formal document. *Id.* This type of preliminary agreement is fully binding on both parties "despite the anticipation of further formalities," *i.e.,* even if the parties do not execute a more formal contract. *Id.* In some cases, an informal stipulation of settlement may be such a fully binding agreement. *See Janneh v. GAF Corp.,* 887 F.2d 432, 436 (2d Cir.1989) (finding Plaintiff intended to be bound when he signed statement agreeing to settle Title VII claim for a particular sum), *rev'd on other grounds by Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); *Little v. Greyhound Lines,* No. 04-CV-6735 (RCC), 2005 WL 2429437, 2005 U.S. Dist. LEXIS 22247, at 4 (S.D.N.Y. Sept. 30, 2005) (finding Plaintiff who signed stipulation of settlement intended to be bound).

Even if parties intend to be bound, the contract is unenforceable if there is no mutual meeting of the minds. *See Int'l Paper Co. v. Suwyn,* 966 F.Supp. 246, 254

(S.D.N.Y.1997); *Brands v. Urban,* 182 A.D.2d 287, 587 N.Y.S.2d 698, 700 (2d Dep't 1992). To determine if the parties agreed on a contract's material terms, New York courts first look to the written contract to assess whether it contains clear and unequivocal language or whether the language is ambiguous such that the parties could reasonably interpret it in different ways. *See Brands,* 587 N.Y.S.2d at 700. McNamara v. Tourneau, Inc. 464 F.Supp.2d 232, 238 (S.D.N.Y.,2006). Additionally, "[w]hen a contract term is undefined, a court should look to the plain meaning of the language to ascertain whether there is ambiguity." *Lee v. BSB Greenwich Mortg.* L.P., 267 F.3d 172, 178 (2d Cir.2001) (citing *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 617 (2d Cir.2001) ("The fact that the language of the contract itself does not specify the meaning of a disputed term does not entail that an ambiguity ... exists.")) (additional citations omitted).

Furthermore, "a party cannot create an ambiguity in an otherwise plain agreement merely by 'urging different interpretations in the litigation.'" *Red Ball Interior Demolition Corp.*, 173 F.3d at 484 (quoting *Metro. Life Ins. Co. v. RJR Nabisco*, Inc., 906 F.2d 884, 889 (2d Cir.1990)); see also *Lee*, 267 F.3d at 179 (" '[A]ny ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms.'") (quoting *Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys.*, L.P., 746 A.2d 1277, 1288 (Conn.2000)). In other words, a court should not "'stretch words to create an ambiguity when their ordinary meaning leaves no room for such doubt.'" *Lee*, 267 F.3d at 178-79 (quoting *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1178 (2d Cir.1995)). "Importantly, the determination of whether contract language is unambiguous 'is made by the court with reference to the contract alone.'"

*Medinol Ltd. v. Guidant Corp.* 500 F.Supp.2d 345, 354 (S.D.N.Y.,2007) (citing *Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 988 (2d Cir.1991)).

At issue here is whether the term "advance" as written in the July 20, 2005 letter and incorporated into the October 26, 2007 acceptance drafted by Desmond Barry, Jr. includes the $153,078.00 Partial Summary Judgment entered by this honorable Court after a hard fought Partial Summary Judgment battle, strenuously contested by American Airlines. The legal definition of the term "advance" as well as the course of dealing between Plaintiffs and Defendants regarding settlements establishes that the agreement reached between the parties in the Teague case was clear on its face. According to Black's Law Dictionary, an advance is "the furnishing of money or goods before any consideration is received in return." Black's Law Dictionary (8th ed. 2004). The Restatement (Second) of Contracts also provides that "where language has a generally prevailing meaning, it is interpreted in accordance with that meaning. [T]echnical terms and words of art are given their technical meaning when used in a transaction within their technical field. REST 2d CONTR §202(3)(a), §202(3)(b).

The inclusion of the $153,078.00 Partial Summary Judgment in the new, altered terms of Defendants Confidential Stipulation and Release forwarded to Plaintiff's counsel on October 26, 2007, is a brazen attempt to mischaracterize Plaintiffs Summary Judgment and the Court's Judgment Order as an "advanced payment" and to threaten and attempt to coerce Plaintiffs to agree to subtract it from any subsequent settlement. See Exhibit 3, p. 2. Forty-two settlements have been reached between the parties throughout the course

of this litigation.[2]   In the immediate aftermath of the September 11th, 2001, terror attack, American Airlines made a payment of $25,000 to many of the bereaved families whose loved ones were killed on the American Airlines flights (the "bereavement payoff").  The advance was accompanied by a letter (which Plaintiffs dispute for the record in a few cases) stating: "This payment is an advance against any future sum that may be realized by settlement or judgment.  Please be assured that by accepting this payment you are not waiving any rights or claims against any person or any entity." See Exhibit 19.   Pursuant to the July 20, 2005 letter stating that "all sums advanced" will be credited against the final settlement amount that action was accordingly taken in the thirty-seven of the forty-two of the settlements which have been reached.

It is obvious defendants knew the Partial Summary Judgment was not an advance payment because defendant's history of attempts to mischaracterize the $153,078 Partial Summary Judgment as an advance is started after the court entered a judgment for Plaintiffs.  As mentioned previously, Eric McNamar informed Mary Schiavo on August 23, 2007 that defendants would not make payment of the Court's judgment without the Plaintiffs' execution of the partial release entitled "<u>100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising from American Airlines Flight 77 Incident in Arlington, Virginia on September 11, 2001</u>." ("<u>100,000 SDR Advance Payment Document</u>"). Plaintiffs unequivocally rejected that document.   There is no document, email or phone call in which Plaintiffs or their counsel accepted any of the terms in that document, any of the parts of that document, or any of the representations

---

[2] There would be two more but those settlements were destroyed by American Airline's refusal to pay court-ordered judgment coupled with attempts to strong-arm and threaten the Plaintiffs.

made in the document.  Yet defendants did, in fact, pay the 100,000 Partial Summary Judgment to the Teagues, despite the document being rejected it in its entirety.

In their correspondence with Plaintiff's counsel, defendant American Airlines cited to the case *Maddox v. American Airlines*, 115 F. Supp. 2d 993, 99 (E.D. Ar. 2000) to support their claim.  Whether defendants forgot, failed, declined, intentionally omitted or planned all along to surreptitiously slip the subtraction of the judgment into the settlement documents and hope no one would notice or Plaintiff would sign anyway, defendant American Airlines claimed it was entitled to deduct the $153,078.00 judgment from the settlement.  Interestingly, this Eastern District of Arkansas case is the only one that can be found in the annals of Westlaw that even deals with this issue.  In *Maddox*, the parties jointly agreed to reduce the ELEVEN MILLION DOLLAR ($11,000,000.00) single no dependent college student verdict by the amount of the $134,453 Special Drawing Rights which American Airlines apparently voluntarily paid well before trial. See *Maddox v. American Airlines*, 115 F. Supp. 2d 993, 99 (second and third paragraph of the opinion, where the Court simply states the parties agree to the reduction), (E.D. Ark. 2000); aff'd in part, rev'd in part, 298 F.3d 694, 700 (last paragraph of the opinion where the court stated only that "both parties agree") (8th Cir. 2002).

The case *Medinol Ltd. v. Guidant Corp*. 500 F.Supp.2d 345, 351 (S.D.N.Y.,2007), offers a more appropriate comparison.  In that case, the parties agreed to several material terms of a settlement on the record.  The dispute arose over the existence (or nonexistence) of a field-of-use restriction on the product.  The defendant argued that the agreement did not contain a field-of-use restriction and that Plaintiffs were attempting to add one after the fact.  Plaintiffs argued that the parties' use of the

term "Guidant" is a field-of-use restriction, and that the defendant was attempting to add licenses for other products. The Southern District of New York concluded that the terms of the settlement were clear and unambiguous. "Importantly, the determination 354 of whether contract language is unambiguous 'is made by the court with reference to the contract alone.'" Medinol Ltd. v. Guidant Corp. 500 F.Supp.2d 345, 354 (S.D.N.Y.,2007) (citing *Care Travel Co. v. Pan Am. World Airways, Inc.,* 944 F.2d 983, 988 (2d Cir.1991)). The Southern District of New York held "[i]n all, the missing term is clearly material and very important. If Medinol had meant to restrict its license to two products it had only to say so on the record. If this term, which it now deems critical, had defeated the settlement, then so be it." *Medinol Ltd. v. Guidant Corp.* 500 F.Supp.2d 345, 355 (S.D.N.Y.,2007)

Notwithstanding the provision of the July 20, 2005 letter stating that "offers and settlements are contingent upon (a) aviation defendants' receipt of mutually acceptable releases," defendants created a binding agreement upon acceptance of Plaintiffs offer to settle the Teague case for the amount of ███████, subject, as in many other cases, to the terms and conditions of the July 20, 2005 letter. The fact that a settlement has not yet been reduced to a writing that includes every detail of the agreement should not be a "green light" to permit a party to "inject new, deal-altering restrictions" which were not "disclosed to the Court." *Medinol Ltd. v. Guidant Corp.* 500 F.Supp.2d 345, 351 (S.D.N.Y.,2007) citing *Wallkill v. Tesa Tape Inc.,* 982 F.Supp. 300, 302 (S.D.N.Y.1997) (declining to interpret an in-court settlement to include an omitted provision finding that "[a] reopener provision represents such a clearly material term in a contract of this kind, and such a significant limitation on any covenant not to sue, that the

parties, in setting forth the terms of their settlement in open court, unquestionably would be expected to state such a term if it were included.")).  As in *Medinol*, defendants, as drafters of the July 20, 2005 document and as drafters of the acceptance letter authored by Desmond Barry, Jr. on October 26, 2007, had two opportunities to state that they intended the term "advance" to include the Partial Summary Judgment for Plaintiffs of 100,000 Special Drawing Rights provided for by the Warsaw Convention and ordered in this Court's August 14th, 2007 Partial Summary Judgment and Order, even if they intentionally declined or simply forgot to demand or request the same in settlement negotiations.  Defendants had the opportunity to state that they intended to expand the ordinary scope of the word "advance" to include a court-ordered judgment even when not furnished voluntarily and without consideration in the July 20, 2005, terms letter.  They did not.  Defendants again had the opportunity when it communicated its acceptance to Plaintiffs on October 26, 2007.  Defendants incorporated by reference the terms in the July 20, 2005 letter, but never stated that it intended to set-off the ████████ by the $153,078.00 judgment ordered by this Court.

It is simply not credible for defendants to argue that the settlement reached between the parties on October 26, 2007 was subject to the terms and conditions of the completely rejected document "100,000 SDR Advance Payment Document."  The fact that the defendants drafted the "100,000 SDR Advance Payment Document" document and attempted to threaten and strong-arm Plaintiffs to sign it in the first place evidences their recognition that absent such a signed agreement to agree to convert the judgment into an advance payment, the $153,078.00 Partial Summary Judgment would not otherwise be considered an advance under applicable New York law or according to the

parties' own course of dealing.   Any subjective intent on the defendants' part to treat the $153,078.00 Partial Summary Judgment as an advance payment of the Teague settlement is irrelevant, and without a mutual agreement by the parties does not alter the clear and unambiguous meaning of the term "advance" nor change the course of dealing between the parties in which the only advance was the $25,000.00 bereavement payment made by American and credited to them in thirty-eight out of forty-two cases that have settled thus far.   To put it plainly, "God may know, but the record must show." *Jones v. Vacco*, 126 F.3d 408 (2d Cir.1997) (citing *Peoples Coin Laundromat Corp. v. Beckmann*, 20 Misc.2d 867, 190 N.Y.S.2d 131, 133 (Sup.Ct. Nassau Co.1959)).   What Desmond Barry, Jr., now claims he intended is irrelevant.

        The reappearance of language from the rejected document entitled "100,000 SDR Advance Payment Document" in the Confidential Stipulation and Release is nothing more than defendants' surreptitious attempt to create an ambiguity where there would otherwise be none.   When strong-arming the Plaintiffs failed defendants tried slight-of-hand.   Should the court find that the phrase "sums to be advanced" is ambiguous, it is nevertheless well established in the Second Circuit and under New York law that ambiguity in contracts is construed against the drafter.   *Revson v. Cinque & Cinque, P.C.* 221 F.3d 59, 68 (C.A.2 (N.Y.),2000)("In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it."); *See, e.g., Albany Savings Bank, FSB v. Halpin,* 117 F.3d 669, 674 (2d Cir.1997); *Shaw v. Manufacturers Hanover Trust Co.,* 68 N.Y.2d 172, 176, 507 N.Y.S.2d 610, 612, 499 N.E.2d 864 (1986); *Jacobson v. Sassower,* 66 N.Y.2d 991, 993, 499 N.Y.S.2d 381, 382, 489 N.E.2d 1283 (1985).

Under the applicable analyses, the term "advance" can in no way be construed so as to include the $153,078.00 Partial Summary Judgment ordered by this Court and subsequently paid by defendants after extensive opposition briefing.  The agreement entered into by the parties on October 26, 2007 is nevertheless binding, and a mutually acceptable release must be drafted to properly reflect the settlement amount.  Plaintiffs request this Court's order enforcing the settlement agreement by ordering the defendants submit to Plaintiffs the proper settlement documents.[3]

## II.    In the alternative, Plaintiffs request that a liability trial date be set for *Teague v. AMR Corp., et al.*

In the alternative, should the court find that there was no meeting of the minds between the parties and rendering the settlement agreement unenforceable, Plaintiffs request that the Court set a liability trial date for the Teague (and also for the factually similar case of *Whittington v. AMR Corp., et al.*) case.  Plaintiff did not agree to reduce the settlement by the amount of the Partial Summary Judgment, gave no settlement authority therefore, and provided only settlement authority for the ███████ settlement to be reduced by no more than the amount of $25,000.  Thus, should this Court find that the settlement agreement is unenforceable, Plaintiff will vigorously pursue all claims first with a finding of liability, and then with appropriate damage verdicts rendered by the same jury.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request this Court to enforce the agreement entered into between the parties and order that the *Teague* settlement process recommence and order the defendants to produce forthwith the proper settlement

---

[3] Defendants have insisted preparing the settlement documents and they are provided to Plaintiffs in a "read-only" PDF format.

documents.   In the alternative, Plaintiffs respectfully request this Court to set a liability

trial date for *Teague v. AMR Corp., et al.*[4]

Dated: February 6, 2008                          Respectfully submitted,


                                                 MOTLEY RICE LLC

                                                 By:_____s/ Mary Schiavo_____
                                                      MOTLEY RICE LLC

                                                      Mary Schiavo, Esquire
                                                      Ronald L. Motley, Esquire
                                                      Jodi Westbrook Flowers, Esquire
                                                      Donald A. Migliori, Esquire
                                                      Elizabeth Smith, Esquire
                                                      Michael E. Elsner, Esquire
                                                      Robert T. Haefele, Esquire
                                                      Justin B. Kaplan, Esquire
                                                      P.O. Box 1792
                                                      28 Bridgeside Blvd
                                                      Mt. Pleasant, South Carolina 29465
                                                      Tel: (843) 216-9000
                                                      Fax: (843) 216-9440

---

[4] As well as *Whittington v. AMR Corp., er al., 02 CV 7145*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/16/07_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

IN RE SEPTEMBER 11 LITIGATION

21 **MC** 97 (AKH)

This document relates to:

02 **CIVIL** 7145  (AKH)

03 **CIVIL** 6800 (AKH)

------------------------------------------------------------X          **PARTIAL JUDGMENT**

#07, 1599

   Plaintiffs having moved for summary judgment, and the matter having come before the

Honorable Alvin K. Hellerstein, United States District Judge, and the Court, on August 14, 2007,

having rendered its Amended Opinion and Order granting plaintiffs' motion for summary judgment

as to Count Three in plaintiff Falkenberg's and plaintiff Teague's Amended Complaints for that

portion of their Warsaw Convention claims equivalent to 100,000 Special Drawing Rights, denying

without prejudice as to that portion of their Warsaw Convention claims in excess of 100,000 Special

Drawing Rights, denying plaintiffs' motion to recover litigation expenses, including attorneys' fees,

and directing the Clerk of the Court to enter partial judgment for plaintiff Ruth Falkenberg, as

Personal Representative for the Estate of Leslie Ann Whittington, and for plaintiff Elaine Teague,

as Personal Representative for the Estate of Sandra D. Teague, against defendant American Airlines,

Inc., in the amount of $153,078, without interest or costs, it is,

   **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Amended Opinion and Order dated August 14, 2007, plaintiffs' motion for summary

judgment is granted as to Count Three in plaintiff Falkenberg's and plaintiff Teague's Amended

Complaints for that portion of their Warsaw Convention claims equivalent to 100,000 Special

Drawing Rights and denied without prejudice as to that portion of their Warsaw Convention claims

in excess of 100,000 Special Drawing Rights; plaintiffs' motion to recover litigation expenses,

including attorneys' fees, is denied; and a partial judgment is entered for plaintiff Ruth Falkenberg,

as Personal Representative for the Estate of Leslie Ann Whittington, and for plaintiff Elaine Teague,

as Personal Representative for the Estate of Sandra D. Teague, against defendant American Airlines,

Inc., in the amount of $153,078, without interest or costs.

**Dated:** New York, New York
        August 16, 2007

                                    **J. MICHAEL McMAHON**
                                    _____
                                        **Clerk of Court**

                        **BY:**
                                    _____
                                        **Deputy Clerk**

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____



## MotleyRice

**JOSEPH F. RICE**
Licensed in SC
Direct Dial: 843.216.9159
Direct Fax: 843.216.9290
JRice@motleyrice.com

January 21, 2008

Desmond T. Barry, Jr., Esq.
Condon & Forsyth                                    **Via Facsimile:**
7 Times Square                                      **(212) 894-6771**
New York, NY 10036

Re:    Teague v. American Airlines, et al., 03 CV 6800

Dear Des:

    It has come to my attention that your office has unilaterally sought to adjust the ███████ settlement in Teague by subtracting the court ordered judgment of $153,078.00 of Special Drawing Rights. As you know American Airlines was ordered to pay the SDR as a result of the partial summary judgment. As you also know, you attempted to force our clients to sign an agreement and stipulation before American Airlines would pay that court ordered judgment. We refused. There was no agreement that the SDRs would be subtracted from any future settlement. Furthermore, there was no request by you, nor any discussion or agreement in our negotiation to subtract from the Teague settlement any of the previously paid judgment.

    As deducting said amount from our settlement was not agreed to, discussed, or ever raised by you in the settlement negotiations, we do not agree to your unilateral alteration of the settlement documents to include this provision. Therefore, please be advised that we will move to seek enforcement of this settlement for the full ██████ amount if proper settlement documents reflecting the proper ██████ amount are not provided within three business days.

    We look forward to immediately receiving the proper settlement documents.

Sincerely,

*Joseph F. Rice*

Joseph F. Rice

JFR:ll
cc: Don Migliori, Esq.

www.motleyrice.com | MT. PLEASANT | BARNWELL | PROVIDENCE | HARTFORD | ATLANTA

Motley Rice LLC
Attorneys at Law

MT. PLEASANT
28 BRIDGESIDE BLVD.
P.O. BOX 1792
MT. PLEASANT, SC 29465
843-216-9000
843-216-9450 FAX

BARNWELL
1750 JACKSON ST.
P.O. BOX 365
BARNWELL, SC 29812
803-224-8800
803-259-7048 FAX

PROVIDENCE
321 SOUTH MAIN ST.
P.O. BOX 6067
PROVIDENCE, RI 02940
401-457-7700
401-457-7708 FAX

HARTFORD
ONE CORPORATE CENTER
20 CHURCH ST, 17TH FLOOR
HARTFORD, CT 06103
860-882-1681
860-882-1682 FAX

ATLANTA
600 WEST PEACHTREE ST.
SUITE 800
ATLANTA, GEORGIA 30308
404-201-6900
404-201-6959 FAX

# CONDON & FORSYTH LLP

NEW YORK
LOS ANGELES

Direct Dial: (212) 894-6770
Direct Fax: (212) 894-6771
dbarry@condonlaw.com

January 24, 2008

## VIA FACSIMILE AND REGULAR MAIL

Joseph F. Rice, Esq.
Motley Rice LLC
28 Bridgeside Blvd., P.O. Box 1792
Mount Pleasant, SC 29465

Re: In re September 11 Litigation
  *Teague v. American Airlines, Inc., et al.*
  C & F Ref: DTB/CRC/28079

Dear Joe:

I was quite surprised to receive your letter of January 21, 2008 regarding the Teague settlement, and I write to correct your misconceptions.

You have been on notice since signing our July 20, 2005 settlement terms and conditions letter that "[a]ll sums advanced by a defendant" will be deducted from their share of any settlement amount. In all the settlements negotiated since then, you have recognized that all advances would be credited towards American's ultimate settlement payment without the need to negotiate the issue separately in each case. The draft partial release in the Teague case that my associate, Eric McNamar, sent to Mary Schiavo on August 22, 2007 (a copy of which is attached hereto) communicated unequivocally no less than ten (10) times our clear intent to apply the 100,000 SDR payment toward any future settlement or judgment. Eric's email to Mary on August 23, 2007 confirmed this intent.

Despite being fully aware of our consistent position considering advances, and our clear and unequivocal position in the Teague case as set forth in the draft partial release and the referenced email, you never stated during the subsequent negotiation of the settlement package involving nine (9) cases (including Teague) that the Teague settlement must consist entirely of "new money." Clearly, you were on notice of our intent to deduct the full amount of the SDR payment from any settlement. In addition to your failure to raise this issue during negotiations of the group settlement of nine (9) cases, your letter of October 24, 2007 confirming the settlement amount you attributed to the Teague case as part of the group settlement also failed to raise the issue. My reply dated October 26, 2007, however, specifically stated that the Teague settlement "is subject to our standard terms and conditions letter which you signed on July 20, 2005..."

CONDON & FORSYTH LLP
Joseph F. Rice, Esq.
January 24, 2008
Page 2

Mary never stated that the reason she did not sign the draft partial release was because of American's intent to treat the 100,000 SDR payment as an "advance" as that term is used in our settlement terms and conditions letter. Mary simply stated that the draft partial releases included "many concessions the judge did not order." Eric invited her to provide a revised partial release, but she never sent us a revised document and ultimately signed a Satisfaction of Partial Judgment that was filed on October 16, 2007. The argument that her non-specific refusal to sign a partial release was a rejection of our intent to treat the 100,000 SDR payment as an advance cannot be substantiated.

In summary, your position concerning the 100,000 SDR payment is contradicted by the following facts: 1) the Teague case was not negotiated separately but was part of a group settlement; 2) the draft partial release Mary received in August of this year, before the settlement package that included the Teague case was negotiated, clearly expressed our intent to deduct the payment from any settlement; 3) you were aware of the terms of the settlement conditions letter that you signed on July 20, 2005 as confirmed by our history of negotiating many other settlements in the 9/11 litigation with you where similar advances were credited; 4) we sent you draft settlement documents explicitly noting our intent to take the credit three days after receiving your letter advising us of the Teague settlement amount and you did not take issue with any of their terms until three months later; and 5) we are entitled to a set-off for the 100,000 SDR payment under the applicable law should the case proceed to verdict. *See Maddox v. American Airlines, Inc.*, 115 F. Supp. 2d 993, 994, 996 (E.D. Ark. 2000), *aff'd in part, rev'd in part*, 298 F.3d 694, 700 (8th Cir. 2000).

We intend to take full credit for the 100,000 SDR payments against the ▮▮▮▮ settlement amount allocated to the Teague case as well as against any settlement ultimately negotiated in the Whittington case.

Sincerely yours,

Desmond T. Barry, Jr.

Attachment

cc:    Joseph F. Wayland, Esq.
       Roger E. Podesta, Esq.
       Donald A. Migliori, Esq.
       Mary F. Schiavo, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE SEPTEMBER 11 LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:  No.: 21 MC 97 (AKH)
:
:  **THIS DOCUMENT RELATES TO:**
:
:  *Falkenberg v. AMR Corp., et al.*
:  **02 CV 7145 (AKH)**
:
:  *Teague v. AMR Corp., et al.*
:  **03 CV 6899 (AKH)**

## 100,000 SDR ADVANCE PAYMENT PARTIAL RELEASE AND RECEIPT RELATING TO CLAIMS ARISING FROM THE AMERICAN AIRLINES FLIGHT 77 INCIDENT AT ARLINGTON, VIRGINIA ON SEPTEMBER 11, 2001

I, Elaine S. Teague, having been duly appointed by a court of competent jurisdiction as the personal representative of the estate of decedent Sandra D. Teague (hereinafter referred to as "RELEASOR"), accept AMERICAN AIRLINES, INC.'S ("AMERICAN") check in the amount of $128,0781.00, as the sum equivalent of 100,000 Special Drawing Rights ("SDRs") as of the date of judgment, July 30, 2007 ($153,078.00), less the $25,000 already advanced to the decedent's family, as consideration for the release and discharge of AMERICAN and AMR CORPORATION and all of their heirs, executors, predecessors, parents, subsidiaries, and affiliated entities, past, present, and future, as well as their respective directors, officers, administrators, successors, reorganized successors, and assigns, past, present, and future, and their employees, agents, attorneys, insurers, coinsurers, reinsurers, representatives, and all other persons, partnerships, firms, and corporations, not specifically identified in this Partial Release and Receipt (hereinafter referred to collectively as the "RELEASEES" whether or not specifically named herein) who are or may be liable to RELEASOR, in whole or in part from any

liability or responsibility for payment of the initial SDR 100,000 in damages ($153,078.00) sustained under Articles 17 and 22 of the Warsaw Convention, as supplemented by the Intercarrier Agreement that has been implemented in AMERICAN'S tariffs on file with the United States Department of Transportation, as a result of the accident involving American Airlines Flight 77 on September 11, 2001 at Arlington, Virginia and the death of Sandra D. Teague as a result thereof.

It is expressly understood and agreed that:

1.   The payment and receipt of the sum of $128,078.00, the previous advance of $25,000.00, and this Partial Release and Receipt are without prejudice to the rights of the undersigned to pursue claims for additional damages, if any, against RELEASEES and other third parties.

2.   RELEASOR agrees to defend, indemnify, and hold harmless RELEASEES from all claims and actions of any kind (including liens or liabilities relating to or arising out of any worker's compensation payments), and for all costs and expenses (including reasonable attorneys' fees) in defending any claims and actions, relating to or arising out of any other person or entity claiming that they are the persons to whom American's 100,000 SDR advance payment, or any part thereof, should have been made.  This indemnification is limited as follows:  (a) If it is judicially determined that RELEASOR was not the appropriate person to receive all or part of the advanced sum, RELEASOR shall immediately return that amount to American; and (b) RELEASOR'S obligations under this paragraph for payment of American's costs and expenses (including reasonable attorneys' fees) shall in no event exceed an additional sum of $153,078.00 (i.e., exclusive of any amount of the advance that is returned to AMERICAN under clause (a), and shall be limited to AMERICAN'S costs and expenses (including reasonable attorneys' fees)

2

only for claims and actions that result in a judicial determination that RELEASOR was not the appropriate person to receive all or part of the advanced sum of $127,421.

3.    RELEASOR agrees that the international treaty commonly known as the Warsaw Convention governs all claims, and provides the sole and exclusive remedy for any claims, that the estate and family may have against AMERICAN and AMR CORPORATION, and all of their heirs, executors, predecessors, parents, subsidiaries, and affiliated entities, past, present, and future, as well as their respective directors, officers, administrators, successors, reorganized successors, and assigns, past, present, and future, and their employees, agents, attorneys, insurers, coinsurers, reinsurers, and representatives for the death of Sandra D. Teague. This paragraph is not intended to expand the term "carrier" beyond what is provided in the Warsaw Convention and applicable case law; nothing in this paragraph shall preclude the RELEASOR from litigating whether the Warsaw Convention applies to claims against anyone other than AMERICAN and AMR CORPORATION.

4.    RELEASOR understands and agrees that AMERICAN'S payment of 100,000 SDRs is an advance on and a deduction from the total amount of any settlement by or judgment against RELEASEES in any action as a result of the death of Sandra D. Teague. RELEASOR understands that the advance payment does not have to be returned to AMERICAN unless the RELEASOR was not the appropriate person to receive the payment for the death of Sandra D. Teague.

5.    RELEASOR understands that receipt of the advance payment and the execution of this Partial Release and Receipt is not an admission of liability or responsibility of the RELEASEES for any wrongdoing, negligence, or other culpable conduct in connection with American Flight 77, all of which is denied.

3

6.    RELEASOR had the right to obtain legal counsel to review and evaluate this Partial Release and Receipt and has done so or has agreed to waive this right.  RELEASOR is not relying on the advice of AMERICAN, or anyone associated with AMERICAN, as to any legal, tax (income, estate, gift, or otherwise), or other consequences of any kind arising out of this Partial Release and Receipt or the payment of any advances.  RELEASOR has not relied on any representations or statements by AMERICAN or its representatives, written or oral, except those set forth in this Partial Release and Receipt.  RELEASOR knowingly and voluntarily signs this Partial Release and Receipt and is not subject to duress, coercion, or undue influence by AMERICAN or anyone else.

7.    RELEASOR is responsible for all legal and income tax consequences related to this advance payment.

8.    RELEASOR understands and agrees that this Partial Release and Receipt may not be waived or changed in any way except in a writing signed by both RELEASOR and a duly authorized representative of AMERICAN.

9.    If, after signing this Partial Release and Receipt, any provision is held to be illegal, invalid, or unenforceable, that provision shall be fully severable.

10.    RELEASOR agrees to cooperate and execute all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Partial Release and Receipt.

4

11.    RELEASOR agrees that this Partial Release and Receipt shall be governed by and construed in accordance with the laws of the State of New York, excluding its choice of law rules.

Dated: _____ day of _____, 2007.

                                        _____
                                        ELAINE S. TEAGUE as personal representative of
                                        the estate of SANDRA D. TEAGUE.


STATE OF _____                )
                                       ) ss.
COUNTY OF _____                  )


        BEFORE ME, the undersigned authority, on this day personally appeared  Elaine S. Teague known to me as the Personal Representative of the estate of Sandra D. Teague, and as the person whose name is subscribed to the foregoing 100,000 SDR Advance Payment Partial Release and Receipt who after being duly sworn by me, on oath stated that she has read the 100,000 SDR Advance Payment Partial Release and Receipt, it is a correct and complete statement of the matters to which it relates, and all the contents thereof are true, complete, and correct.

        SWORN AND SUBSCRIBED TO BEFORE ME by the said _____, on this _____ day of _____ to certify which witness my hand and seal of office.


                                        _____
                                        NOTARY PUBLIC
                                        In and for the County of
                                        _____
                                        State of _____


My Commission Expires _____

5



**MotleyRice**

Mary F. Schiavo
Licensed in MO, DC, MD
DIRECT DIAL 843.216.9138
DIRECT FAX 843.216.9440
MSchiavo@motleyrice.com

January 25, 2008

**Via Electronic Mail and U.S. Mail**
Desmond T. Barry, Jr.
Condon & Forsyth, LLP
Times Square Tower
7 Times Square
New York, NY 10036

    Re:    Teague v. AMR Corp., et al.; 03-CV-6899 (AKH)

Dear Des,

    Thank you for your letter of January 24, 2008, a copy of which you emailed to me at 4:18 p.m. I shall take this opportunity to correct your many erroneous facts, misstatements of the law and outright misrepresentations.

    As you know, your office altered the settlement documents of the ███████ settlement in the Teague case to attempt to deduct the $153,078.00 that was paid to the Plaintiffs as a result of Partial Summary Judgment entered in Plaintiffs' favor on the issue of Special Drawing Rights. You now state that in addition to subtracting as an advance payment the $25,000.00 which our clients received from American Airlines in the immediate aftermath of the crash, you sought to deduct from the settlement the SDRs paid as a result of Summary Judgment as an "advance payment."

    As you admit in your letter, at no time during settlement negotiation, did you or any other person on behalf of any defendants ask, raise, discuss, insert, demand or in any way request the subtraction of the SDRs from the settlement. Apparently you seem to be relying on a document you proffered to us after we won Partial Summary Judgment and you refused to pay. We unequivocally rejected that document. You seem to be arguing that because we rejected the whole document and refused any of your requested conditions on payment of the judgment in our favor, that somehow we accepted those we didn't specifically enumerate as rejected. Des, we rejected the whole document. I myself told you personally exactly that and your associate Eric McNamar was told that many times.

    The rest of your allegations are also erroneous. Here are the facts:

    After extensive opposing briefing, an Order was entered by the Court on August 14, 2007, awarding Plaintiffs Partial Summary Judgment.

www.motleyrice.com

Motley Rice LLC
Attorneys at Law

MT. PLEASANT
28 BRIDGESIDE BLVD.
P.O. BOX 1792
MT. PLEASANT, SC 29465
843-216-9000
843-216-9450 FAX

PROVIDENCE
321 SOUTH MAIN ST.
P.O. BOX 6067
PROVIDENCE, RI 02940
401-457-7700
401-457-7708 FAX

HARTFORD
ONE CORPORATE CENTER
20 CHURCH ST. 17TH FLOOR
HARTFORD, CT 06103
860-882-1681
860-882-1682 FAX

Desmond T. Barry, Jr.
January 25, 2008
Page 2 of 5

On August 23, 2007, Eric McNamar, with copy to you, informed me that you would not make payment of the 100,000 SDRs pursuant to Judge Hellerstein's Order without the Plaintiffs' execution of a partial release and receipt by our clients. Eric McNamar further stated "the partial releases we have sent to you have been used for several years in aviation cases governed by Warsaw and the Intercarrier Agreement. The bottom line is if your clients want this money right now they will have to sign the partial releases." That is the extent of his August 23, 2007, email. Of course, we did not sign.

You now clearly admit Mr. McNamar's "partial release" entitled "100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising from American Airlines Flight 77 Incident in Arlington, Virginia on September 11, 2001" was an attempt to recharacterize our clients' Summary Judgment and the Court's Judgment Order as an "advanced payment" and to coerce them to agree to subtract it from any subsequent settlement. What is really outrageous is that even though it was rejected in its entirety, you still seek to force upon our clients parts of the rejected Release and Receipt. I guess some men just still don't seem to understand that no means no. In that document which we rejected, paragraph 4 sought to have Plaintiffs agree that American's payment of our partial summary judgment was an advance to be deducted from the total amount of any settlement or judgment. Neither our clients nor did their counsel agree to your document or any part of it. In that document, your office also attempted to coerce our clients to subtract the $25,000.00 advance payment from the Court-ordered Judgment. McNamar's email threatened them that otherwise they would not receive payment of their judgment.

Your letter admits we rejected and refused to sign the document entitled "100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising from American Airlines Flight 77 Incident in Arlington, Virginia on September 11, 2001." There is no document, email or phone call in which we accepted any of the terms, any of the parts or any of the representations. Not only did we refuse to accept any part, we declined to even redline, edit, amend or proffer different language in the agreement. We refused. No means no.

I responded to your associate Eric McNamar on the same day, August 23rd, and informed him that I found no legal precedent to support your demands, and if you had any precedent to support your demands to forward it. None was forwarded and we agreed to nothing in your document.

As we possessed a final judgment, we dispensed with further discussion on your document once we rejected it entirely. Frankly we were preparing for execution and attachment.

You seem to be forgetting that in the midst of the settlement negotiations Joe Rice, you, and others telephoned me from the negotiation room to ask why the Teagues had withdrawn their authority to settle. I expressly and clearly told Joe, you and others in the room that it was precisely your attempt to coerce our clients to agree to your conditions before paying their lawful judgment, and that no law required them to do so to receive payment on their judgment, and they withdrew settlement authority. In that call you disputed that your office demanded we sign such a document,

make those side agreements and execute a partial release before American Airlines would pay the judgment. In my opinion, you stopped barely short of calling me a liar when I told you that indeed your office had done so and my clients would have none of it. Soon after that call to me from the negotiation room, my office was contacted by your associate Eric McNamar and informed that the payment would be forthcoming and without requiring the "advance payment" partial release. The only document which was executed by this office was simply a satisfaction of partial judgment. There is no agreement in that or any other document to subtract the SDRs from any subsequent settlement.

With the assurance from you on that call that the judgment would be paid without my clients agreeing to and signing the objectionable side agreement, the Teagues again agreed to the negotiation and a settlement. On October 26, 2007, you responded to Joe Rice by a letter stating, "I write in response to your letter of October 24, 2007. The aviation defendants agree to settle the Teague case for ████████ This settlement is subject to our standard terms and conditions letter which you signed on July 20, 2005." If you now claim it was also subject to terms of a rejected document entitled, "100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising from American Airlines Flight 77 Incident in Arlington, Virginia on September 11, 2001," it is simply not credible that your terms and conditions letter mentioned the July 20, 2005, terms and conditions but failed to make any mention of the rejected "100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising from American Airlines Flight 77 Incident in Arlington, Virginia on September 11, 2001."

Now let us review that settlement agreement signed in 2005. Paragraph 6 states, "All sums advanced by a defendant will be deducted from their share of the settlement amount payable under the release. Prior payments for amounts such as funeral expenses will be recited in the release, but amounts for those prior payments will be deemed paid."

If there was any confusion about what "all sums advanced," means other than funeral expenses, it was soundly resolved in the standard settlement documents drafted by defendants' counsel and already used in dozens of cases which lists the advance payment as $25,000.00 received by families and allegedly accompanied in all cases by a letter (which we dispute for the record in some cases), stating it was an advance payment to be later deducted from any settlement. Any ambiguity is of course resolved against the drafter of the document. Thus it is clear that advance payment refers to the $25,000.00 paid by American to the Plaintiffs, and not any Court ordered judgment.

The Southern District of New York and the Second Circuit enforce settlement agreements in circumstances such as these. See *Loewenson v. London Market Companies, Certain Underwriters at Lloyd's London*, 351 F.3d 58, (2nd Cir. 2003). The circuit judge made an interesting observation, "Most people would think that insurance underwriters are very good at numbers. This appeal demonstrates that sometimes they are not….the parties agreed not only to the amount…but also…[how] the amount was determined and that such circumstances do not constitute the sort of mutual mistake that warrants reaffirmation under applicable New York law." In that case Lloyd's attempted to use its self-created ambiguous documents to its advantage in reducing a settlement. In

Desmond T. Barry, Jr.
January 25, 2008
Page 4 of 5

the *Loewenson* case, the Court of Appeals made it clear against Lloyd's that a mutual mistake is necessary. Here not only is there no mistake on the part of the Plaintiffs, there doesn't appear to be any mistake on the part of the defendants either. Your associate tried to get us to agree to a document to subtract our judgment from any subsequent settlement and we refused. We rejected it entirely. We agreed to no part. We refused to even mark up or negotiate your proposal. You discussed our refusal to accept those terms in the midst of negotiations. Soon thereafter your associate called us to pay and without any accompanying agreement by our Plaintiffs to subtract the judgment from the settlement.

As to your citation to *Maddox*, for those who do not have time to actually read the cases, both in district and appellate court, you forgot to mention that in that case the parties jointly agreed to reduce the ELEVEN MILLION DOLLAR ($11,000,000.00) single no dependant college student verdict by the amount of the $134,453.00 Special Drawing Rights which American Airlines voluntarily paid well before trial. I believe the trial record would show that the jury was not given the opportunity to adjust the award for the SDR prepayment. See *Maddox v. American Airlines*, 115 F. Supp. 2d 993, 99 (second and third paragraph of the opinion, where the Court simply states the parties agree to the reduction), (E.D. Ark. 2000); *aff'd in part, rev'd in part*, 298 F.3d 694, 700 (last paragraph of the opinion where the court clearly states "both parties agree") (8th Cir. 2002).

As concerns your using the issue of my delay in my response to your unilateral document amendments, there are two reasons. First it was not immediately noticed because the documents were not supposed to be unilaterally altered and our client was exploring structures. Thus, the document was not immediately needed. Second, it was not noticed until after my father was mortally injured in a horrible accident, went into a coma in a life flight helicopter somewhere over the Midwest, and I immediately caught a flight upon receipt of such news (fortunately on a kinder airline than American). He subsequently died. Your associate is well aware of my father's horrible accident and death and the reason for my few weeks of absence. I am sure Judge Hellerstein will understand, even if you do not, that I suspended settlement document review to attend to the aftermath of my father's death in a fatal accident caused by someone else, and to cope with autopsies, a funeral, investigations, insurance counsel and arrangements for surviving dependants. Unfortunately, my clients understand all too well.

In summary, the facts are clear:

1) American Airlines lost on the issue of the SDRs and Plaintiffs won a partial Summary Judgment motion for $153,078.00.
2) Defendants attempted to force Plaintiffs to sign a document agreeing to subtract the SDRs from a subsequent settlement.
3) Plaintiffs refused.
4) Joe Rice, you and others in the room called me from the negotiations to ask why my clients had withdrawn settlement authority and you were told it was because you refused to pay the judgment without attempting to coerce these Plaintiffs to agree to additional terms, which they would not do, and because they insisted you pay the judgment without further shenanigans.

Desmond T. Barry, Jr.
January 25, 2008
Page 5 of 5

5) Defendants paid to Plaintiffs the partial judgment with any written or oral agreement to treat the SDRs as an advance payment or subtract them from any subsequent settlement.

6) Defendants and Plaintiffs negotiated a settlement for ███████ after confirming they would pay the judgment without requiring the Plaintiffs to agree to the "Advance Payment Partial Release."

7) Defendants never once asked to have the settlement reduced by the Court-entered SDR judgment.

8) Nonetheless in the settlement documents, in violation of your own protocol, you changed the terms of the advanced payment to include the Court-ordered judgment, despite your clear knowledge our rejection of your proffered agreement document.

9) Ambiguity is resolved against the defendants who were the scribes of the 2005 terms.

10) Plaintiffs will seek enforcement of the ███████ settlement.

As I am,

Mary Schiavo

Mary Schiavo

MS/des

## CONDON & FORSYTH LLP

NEW YORK
LOS ANGELES

Direct Dial: (212) 894-6770
Direct Fax: (212) 894-6771
dbarry@condonlaw.com

January 28, 2008

**VIA EMAIL**

Mary F. Schiavo, Esq.
Motley Rice LLC
28 Bridgeside Blvd., P.O. Box 1792
Mount Pleasant, SC 29465

Re:     In re September 11 Litigation, 21 MC 97 (AKH)
        *Teague v. AMR Corp, et al.*, 03 CV 6899 (AKH)
        C & F Ref: DTB/CRC/28079

Dear Mary:

I have your letter of January 25, 2008.

For the record, I take issue with each and every accusation you make and the "facts" as you state them. Further correspondence between us on this subject would not be productive.

Sincerely yours,

Desmond T. Barry, Jr.

DTB/jl

cc:     Via Email
        Joseph F. Wayland, Esq.
        Roger E. Podesta, Esq.
        Joseph F. Rice, Esq.
        Donald A. Migliori, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- x
                                                   :
IN RE SEPTEMBER 11 LITIGATION      :      21 MC 97 (AKH)
                                                   :
                                                   :      This document relates to:
                                                   :
                                                   :      *Falkenberg v. AMR Corp.*, et al.
                                                   :      02 Civ. 7145 (AKH)
                                                   :
                                                   :      *Teague v. AMR Corp.*, et al.
                                                   :      03 Civ. 6800 (AKH)
-------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

## AMENDED OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Warsaw Convention)[1]

On September 11, 2001, five terrorists hijacked American Airlines Flight 77 en route from Washington Dulles International Airport to Los Angeles International Airport, and crashed it into the Pentagon, killing themselves, 53 passengers and the six-person crew. Leslie Ann Whittington and Sandra D. Teague were two of the unfortunate passengers. They had purchased tickets for onward travel from Los Angeles to Sydney, Australia.

Plaintiff Ruth Falkenberg, as Personal Representative for the Estate of Leslie Ann Whittington, and plaintiff Elaine Teague, as Personal Representative for the Estate of Sandra D. Teague ("Plaintiffs") brought suit against American Airlines and others ("Defendants") under the Air Transportation Safety and System Stabilization Act of 2001, alleging claims under the Warsaw Convention and on various other grounds.[2] On March 21, 2007, Plaintiffs moved for

---

[1] This Amended Opinion and Order replaces my Opinion and Order of July 30, 2007, In re September 11 Litig., No. 21 MC 97, 2007 U.S. Dist. LEXIS 54847, 2007 WL 2171778 (S.D.N.Y. Jul. 30, 2007).

[2] Defendants in both complaints are: American Airlines, Inc.; AMR Corp.; Airtran Airways, Inc.; Atlantic Coast Airlines, Inc.; Continental Airlines, Inc.; Delta Airlines, Inc; National Airlines Corp.; Northwest Airlines Corp.; United Airlines, Inc.; U.S. Airways, Inc.; Argenbright Security, Inc.; Securicor, PLC; Metropolitan Washington Airports Authority; and the Boeing Company. The counts in both complaints are: 1) negligence of American

summary judgment, arguing that under Article 17 of the Warsaw Convention, defendant American Airlines, Inc. ("Defendant") is strictly liable for Plaintiffs' injuries and further, because of facts claimed not to be in dispute, that Defendant cannot sustain an affirmative defense under Article 20 of the Warsaw Convention that the carrier and its agents had "taken all necessary measures to avoid the damage or that it was impossible for them to take such measures." American Airlines opposed the motion.

For the reasons stated below, Plaintiffs' motion is GRANTED in part and DENIED in part.

## Discussion

### I. Applicable Law

#### A. Warsaw Convention and Montreal Protocol No. 4

In 1934, President Franklin D. Roosevelt, with the advice and consent of the Senate, proclaimed adherence by the United States to a treaty applying "to all international transportation of persons, baggage, or goods performed by aircraft for hire." Convention for Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, October 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), reprinted in note following 49 U.S.C. § 40105 ("Warsaw Convention"); Andreas F. Lowenfeld & Allan I. Mendelsohn, The United States and the Warsaw Convention, 80 HARV. L. REV. 497, 502 (1967). In 1998, the United States ratified Montreal Protocol No. 4 to Amend the [Warsaw Convention] as Amended by the Protocol Done at the Hague on 28 September 1955, 2145 U.N.T.S. 36

---

Airlines; 2) negligence of all airline defendants; 3) Warsaw Convention liability of American Airlines; 4) negligence of security company defendants; 5) negligence of airport defendant; 6) strict liability of Boeing; 7) negligence of Boeing; 8) breach of warranty by Boeing; 9) wrongful death against all defendants; 10) survival against all defendants; 11) wrongful death and survival based on res ipsa loquitur against all defendants; and 12) negligent infliction of emotional distress against all defendants.

("Montreal Protocol No. 4"), which took effect on March 4, 1999. See Avero Belgium Ins. v. American Airlines, Inc., 423 F.3d 73, 83 (2d Cir. 2005).

        i.   Air Carrier's Presumptive Liability under Article 17

Article 17 of the Warsaw Convention makes air carriers presumptively liable for injuries to passengers:

> The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passengers, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Warsaw Convention, art. 17; Magan v. Lufthansa German Airlines, 339 F.3d 158, 161 (2d Cir. 2003) ("[Article 17] creates a presumption of carrier liability for passenger injuries sustained in the course of air travel.").

To prevail under Article 17, the plaintiff must show that an "accident" caused his injuries. Air France v. Saks, 470 U.S. 392, 396 (1985). An "accident" is "an unexpected event or happening that is external to the passenger" and causes the passenger's injury. Id. at 405. By contrast with the common law tort of negligence, under Article 17 the plaintiff need only prove that an "accident" caused his injuries; he need not prove that the defendant carrier caused his injuries. See id. at 407 ("Article 17 … involves an inquiry into the nature of the event which caused the injury rather than the care taken by the airline to avert injury") (emphasis in original); cf. Kinney Shoe Corp. v. Alitalia Airlines, No. 79 Civ. 919, 1980 U.S. Dist. Lexis 9565 (S.D.N.Y. 1980) ("The relevant inquiry is not whether an act of the carrier proximately caused the loss in a traditional tort sense, but rather whether the loss was caused by an occurrence during the transportation."). And because "[a]ny injury is the product of a chain of causes," the passengers must only "be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." Id. at 406; see also Olympic Airways v. Husain, 540 U.S. 644

3

(2004).  As Defendant concedes, a terrorist hijacking is an "accident" within the meaning of

Article 17.  See Def. Mem. at 7 (citing Pflug v. Egyptair Corp., 961 F.2d 26, 29 (2d Cir. 1992)).

ii.  Air Carrier's Affirmative Defense under Article 20

Article 20 of the Warsaw Convention provides an affirmative defense to air

carriers against Article 17's presumptive liability.  Article 20, as amended by Montreal Protocol

No. 4, provides:

> In the carriage of passengers and baggage, and in the case of
> damage occasioned by delay in the carriage of cargo, the carrier
> shall not be liable if he proves that he and his servants have taken
> all necessary measures to avoid the damage or that it was
> impossible for them to take such measures.[3]

Montreal Protocol No. 4, art. V (amending Warsaw Convention, art. 20).  Most courts that have

considered the meaning of "all necessary measures" have concluded that Article 20 cannot

literally require a defendant to take all necessary measures because if all such measures had

actually been taken, the plaintiff's injury—the damage—would not have occurred.  Rather, the

clause is to be "construed to mean 'all reasonable measures.'"  Manufacturers Hanover Trust Co.

v. Alitalia Airlines, 429 F. Supp. 964, 967 (S.D.N.Y. 1977) aff'd 573 F.2d 1292 (2d Cir. 1977);

see also Verdesca v. American Airlines, Inc., No. 3-99 Civ. 2022, 2000 WL 1538704 (N.D. Tex.

2000); Obuzor v. Sabena Belgian World Airlines, No. 98 Civ. 0224, 1999 WL 223162 (S.D.N.Y.

1999); Vildex S.A.I.C. v. United Airlines, No. 94 Civ. 4304, 1996 WL 733081 (E.D.N.Y. 1996).

The burden of proving an affirmative defense under Article 20, even construed as

"all reasonable measures," is high.  Article 20 requires "an undertaking embracing all

precautions that in sum are appropriate to the risk, i.e., measures reasonably available to

---

[3] Montreal Protocol No. 4 left the relevant language of the 1929 Warsaw Convention, as translated into English,
intact.  In the original French, Article 20(1) of the Convention read in relevant part:  "Le transporteur n'est pas
responsable s'il prouve que lui ses préposés ont pris toutes les mesures nécessaires pour éviter le dommage ou qu'il
leur était impossible de les prendre."  49 Stat. 3005.

defendant and reasonably calculated, in cumulation, to prevent the subject loss."  <u>Manufacturers</u> <u>Hanover Trust</u>, 429 F. Supp. at 967 (emphasis added).  Thus the carrier may not "escape liability under Article 20 … by demonstrating no more than its recourse to some—as opposed to all—reasonable measures."  <u>Id.</u>

   The scope of "all reasonable measures" is not limited to that which the relevant statutes and regulations require.  Even if Congress has regulated the field of aviation security so pervasively that no room is left for concurrent state regulation—an open question of law in this Circuit**,** <u>see</u> <u>Aldana v. Air East Airways, Inc.</u>, 477 F. Supp. 2d 489, 491 (D. Conn. Mar. 15, 2007); <u>Shupert v. Contintental Airlines, Inc.</u>, No. 00 Civ. 2743 (LMM), 2004 WL 784859 at *3 (S.D.N.Y. 2004)—a duly ratified treaty retains its force as co-equal federal law under the Supremacy Clause, U.S. CONST. art. VI, cl. 2.  Thus a jury may find that an air carrier complied with all of its regulatory obligations, but nevertheless failed to take all reasonable measures to avoid the damage caused by the accident.  An air carrier may be able to show, however, that particular statutes or regulations constrained its acts and omissions such that it did, in fact, take all the precautions it was legally permitted to take, for it would hardly be "reasonable" to expect a carrier to violate regulations.  <u>Cf.</u> <u>Witty v. Delta Airlines, Inc.</u>, 366 F.3d 380 (5th Cir. 2004) (holding that "any warning that passengers should not stay in their seats, but should instead move about to prevent [deep vein thrombosis], would necessarily conflict with any federal determination that, all things considered, passengers are safer in their seats").  The carrier has the burden to prove the defense that it took all reasonable measures within the context of the regulatory scheme.  <u>See e.g.</u>, <u>Grey v. American Airlines, Inc.</u>, 227 F.2d 282, 285 (2d Cir. 1955).

### iii.   Limits on Air Carrier's Liability under Article 22

An air carrier's liability to passengers under Article 17 is limited to 125,000 francs per passenger unless, "by special contract, the carrier and the passenger … agree to a higher limit of liability."  Warsaw Convention, art. 22(1).  In 1996, all domestic airlines and a majority of foreign airlines operating in the United States signed and implemented the International Air Transport Association ("IATA") Intercarrier Agreement on Passenger Liability, see Blanca I. Rodriguez, Recent Developments in Aviation Liability Law 66 J. AIR L. & COM. 21, 35 (2000), pursuant to which the carriers agreed to "take action to waive the limitation of liability on recoverable compensatory damages in Article 22 … so that recoverable compensatory damages may be determined and awarded by reference to the law of the domicile of the passenger."  IATA Intercarrier Agreement on Passenger Liability ¶ 1, Ex. 1 to Pls. Local Civ. Rule 56.1 Stmt.

Defendant American Airlines incorporated the IATA Intercarrier Agreement into its tariff—the terms and conditions of carriage between passenger and carrier—as follows:

> (a) The carrier shall not invoke the limitation of liability in Article 22(1) of the Convention as to any claim for recoverable compensatory damages arising under Article 17 of the Convention.
>
> (b) The carrier shall not avail itself of any defense under Article 20(1) of the Convention with respect to that portion of such claim which does not exceed 100,000 Special Drawing Rights.[4]
>
> (c) Except as provided in paragraphs (a) and (b) hereof, the carrier reserves all defenses available under the Convention to such claims.

---

[4] Montreal Protocol No. 4 provides that the Special Drawing Rights unit of measurement refers to Special Drawing Rights as defined by the International Monetary Fund.  The International Monetary Fund, in turn, defines Special Drawing Rights as a fluctuating, weighted basket of currencies, with each currency periodically evaluated according to its relative importance to world trade and finance.  Conversion of an award made in Special Drawing Rights into a national currency is made at the date of the judgment.  See Montreal Protocol No. 4, art. VII (amending Article 22 of the Warsaw Convention).  On July 30, 2007, the IMF valued 100,000 Special Drawing Rights at $153,078.  See International Monetary Fund, SDR Valuation, http://www.imf.org/external/np/fin/data/rms_sdrv.aspx.

American Airlines Int'l Passenger Rules Tariff Rule 55(B), Ex. 4 to Pls. Local Civ. Rule 56.1 Stmt.  By contract, therefore, Defendant waived the Warsaw Convention's limits on liability; waived the Article 20 defense below 100,000 Special Drawing Rights; and reserved the Article 20 defense above 100,000 Special Drawing Rights.

Thus, Plaintiffs are entitled to partial judgment in the amount of the equivalent in United States dollars of 100,000 Special Drawing Rights.  I do not rule at this point on the issue of interest—if it should be available, in what amount, and from which date.  The parties may address the issues of interest at such time as the remaining issues of this case are tendered for decision.

B.  <u>Summary Judgment under Rule 56</u>

i.  <u>General Principles</u>

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).   The moving party must demonstrate the absence of any material factual issue genuinely in dispute, and the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The non-moving party may not rely, however, "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 12 (2d Cir. 1987).

Rule 56 of the Federal Rules of Civil Procedure requires the court to engage in a two-step inquiry:  First, the court must determine whether the moving party has properly supported its motion for summary judgment, as the burden of production lies with the moving party.  <u>See</u> <u>Amaker v. Foley</u>, 274 F.3d 677, 681 (2d Cir. 2001) ("[T]he the burden of the

nonmovant to respond arises only if the motion is properly 'supported'—and therefore summary judgment only is 'appropriate' when the moving party has met its burden of production."). Where the nonmoving party bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 325. Second, if the moving party has properly supported its motion, the court must determine whether the nonmovant's response, "by affidavits or as otherwise provided [in Rule 56], sets forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

     ii. <u>Summary Judgment under Articles 17 and 20 of the Warsaw Convention</u>

    As at trial, to sustain a motion for summary judgment under Article 17, the plaintiff must show that an accident taking place on board an aircraft caused his injuries. Once plaintiff has made this showing, the burden of proof shifts to the defendant carrier, who may rebut the presumption of liability thus established by showing, pursuant to Article 20, that it took all reasonable measures to avoid the damage that plaintiff suffered. At this stage, the defendant must "come forward with relevant proof." <u>Kinney Shoe</u>, <u>supra</u>. In reply, if the plaintiff demonstrates that defendant failed to take a specified measure, such that no reasonable jury could find that defendant had taken all precautions that in sum were appropriate to the risk, the plaintiff is entitled to summary judgment. Plaintiff must make this final showing, whether by admissible evidence or by pointing out the absence of evidence to support the carrier's claims, because the moving party bears the burden of establishing its entitlement to summary judgment.

## II. **Analysis**

  A. <u>Defendant's Arguments that the Motion is Premature</u>

    Defendant concedes that Plaintiffs' injuries were caused by an "accident" within the meaning of Article 17 of the Warsaw Convention. <u>See</u> Def. Local Civ. Rule 56.1 Stmt. ¶¶ 5,

11. Defendant further concedes its liability for 100,000 Special Drawing Rights per passenger under its carrier tariff, but reserves its right to assert an "all reasonable measures" defense under Article 20 of the Warsaw Convention for damages above 100,000 Special Drawing Rights. Rather than come forward with proof that it and its agents took all reasonable measures, however, Defendant argues that summary judgment is premature because: 1) the relevant standard of care is undefined; 2) the admissibility of passages of the 9/11 Commission Report is undetermined; and 3) discovery is incomplete. I rule on each of these arguments, and then turn to Defendant's contention that, in any event, genuine issues of material fact exist that preclude summary judgment.

    i. <u>Relevant Standard of Care</u>

Defendant's argument that the Court must rule on the relevant standard of care before it can respond to a motion for summary judgment under the Warsaw Convention is without merit. Lawyers often must argue their case without the benefit of an advance ruling on issues of law. In any event, the standard of care that Defendant must satisfy in order to sustain its affirmative defense is set forth in the Warsaw Convention treaty itself: Defendant must prove that it took "all [reasonable] measures to avoid damages." Warsaw Convention, art. 20. <u>See also</u> Part I.A.ii, <u>supra</u>.

    ii. <u>Admissibility of Passages of 9/11 Commission Report</u>

Defendant's argument that the Court must rule on the admissibility of information derived from the 9/11 Commission Report before it can respond to a motion for summary judgment under the Warsaw Convention, <u>see</u> Def. Opp. Mem. at 2, 10, is also without merit. Defendant should argue that Plaintiffs' evidence is inadmissible, if that is its position. Instead, Defendant argues that statements in the 9/11 Commission Report might be inadmissible, but if not, the Report supports its position in this litigation more than it supports Plaintiffs' position,

and thus creates disputed issues of material fact. Indeed, both sides make the identical claim that, in light of the 9/11 Commission Report and other evidence, a ruling on this motion in favor of the other side would be "inconceivable." Def. Opp. Mem. at 14; Pls. Reply Mem. at 21.

Both sides argue improperly. If findings of the 9/11 Commissioners are moved into evidence, and apparently both parties intend to do so, the parties' burden is to identify specifically the particular findings they respectively wish to proffer, and support their proffers by arguments why the findings should be admissible, pursuant to Rule 803(8), or other sections of the Federal Rules of Evidence. The Court would then be in a position to make rulings on admissibility. I decline to make abstract and hypothetical rulings on extended narratives found in the 9/11 Report.

### iii. Discovery is Incomplete

Defendant's objection that it cannot present by affidavit facts essential to justify its opposition, Fed. R. Civ. P. 56(f), because discovery at this stage is incomplete and ongoing, is sustained. In order to carry its affirmative defense, Defendant must prove that it took all reasonable measures appropriate to the risk to avoid the damage. Thus, Defendant has the burden to show the risks of which it was or reasonably should have been aware, the measures it took to avoid or mitigate the risk, the nature and scope of government regulations and whether such regulations were guides to its conduct or imposed limitations on actions that it otherwise would have taken, and how all of these measures, and others that might be relevant, relate to the damage suffered by Plaintiffs.

Some, perhaps much, of what is known about the measures Defendant took and the manner in which the hijackers executed the September 11th plot is the result of government investigation. Defendant argues, however, that its discovery needs are broader and more extensive than that found in the 9/11 Report. As Defendant's Rule 56(f) affidavit states, this

discovery, as well as expert discovery, is not complete.  See Affidavit of Desmond T. Barry, Jr. ¶¶ 6, 7 (May 7, 2007) ("Barry Aff.").  To meet its burden, Defendant is entitled to conduct that discovery before having to present evidence supporting its affirmative defense.  Plaintiffs' motion, to the extent it seeks recovery beyond 100,000 Special Drawing Rights, as clearly they do, is premature, and is denied on that basis.

    B.  <u>Genuine Issues of Material Fact</u>

        American Airlines argues that it is now clear from the record that genuine issues of material fact exist regarding the screening of the terrorists before they boarded, and for that reason, I should deny Plaintiffs' motion.  I disagree.

        Plaintiffs' principal assertion, for the purpose of obtaining summary judgment, is that a screener at Dulles Airport failed adequately to handwand—that is, examine with a handheld metal detector—one of the hijackers as he passed through a security checkpoint. Defendant's Checkpoint Operations Guide in effect on September 11, 2001 demonstrates how to conduct an inspection with the handwand and instructs that "[b]y the time a screener has completed a hand-held metal detector inspection he or she should have neared the floor eight times."  Barry Aff., Ex. B at 4-8.  Defendant does not seriously contest Plaintiffs' assertion that the screener failed to move the handwand to the floor more than two times, but argues that whether the screener took all reasonable measures is a question of fact for the jury to decide. Defendant further argues that "there is no evidence that the two hijackers depicted in the video even carried a prohibited item on their persons through the checkpoint."  Def. Opp. Mem. at 12.

        Defendant, not Plaintiffs, bears the burden of showing that it took all reasonable measures and that anything less did not affect the hijackers' ability to board the airplane. Defendant's suggestion that the hijackers may not have smuggled contraband past the Dulles

screeners is speculative, and cannot satisfy its burden under Article 17. But it is premature to find against Defendant on this point, for Defendant has not had sufficient opportunity to complete discovery. The determination, whether or not there is a genuine issue of material fact requiring trial, is one to be made after relevant and appropriate discovery has been completed, and not at this stage. Plaintiffs may move for summary judgment again when it is appropriate to do so.

C.  Attorneys' Fees and Litigation Expenses under the Hague Protocol

Plaintiffs argue that in addition to their recovery of damages, they are entitled also to recover their litigation expenses, including their attorneys' fees. Plaintiffs claim that Article 22(4) of the Warsaw Convention, as Amended by the Protocol Done at The Hague on 28 September 1955, 478 U.N.T.S. 371 (the "Hague Protocol"), gives them this additional right. The Hague Protocol provides in relevant part:

> The limits prescribed in this Article shall not prevent the court from awarding, in accordance with its own law, in addition, the whole or part of the court costs and of the other expenses of the litigation incurred by the plaintiff.

Article 22(4).

Plaintiffs argue that Article 22(4) of the Hague Protocol was adopted to make clear that the limits of recovery provided by the Warsaw Convention were not to limit the prevailing party's right to recover litigation expenses, including attorneys' fees. I address this point, even though Plaintiffs' claims are not entirely adjudicated, because it is clear that Plaintiffs are prevailing parties at least to the extent of 100,000 Special Drawing Rights, and thus their claim for litigation expenses, including attorneys' fees, at least on this portion of their potential recovery, must be decided. A decision can be postponed until Plaintiffs' entire claim becomes ripe for adjudication, but a decision cannot be avoided.

Article 22(4) of the Warsaw Convention, as amended by the Hague Protocol, provides that "the limits prescribed in [Article 22] shall not prevent the court from awarding" attorneys' fees "in accordance with its own law." The intent of this provision was to make clear to American courts that an award of attorneys' fees was not prevented by the limits to recovery provided by the Warsaw Convention, since "no one outside the United States had previously thought that the Warsaw Convention prevented a charge on the defendant for the plaintiff's costs." Motorola, Inc. v. Fireman's Fund Ins. Co., 308 F.3d 995, 1007 (9th Cir. 2002) (quoting Lowenfeld & Mendelsohn, 80 HARV. L. REV. at 508)). But removing treaty impediments to an award of attorneys' fees is not the same as creating a right to attorneys' fees. That issue, whether a prevailing party has the right to recover attorneys' fees, is to be determined by the treaty nation's "own law," in this case, either federal law or the law of the appropriate state. Article 22(4) of the Hague Protocol does not itself create a right to reimbursement of attorneys' fees.

Section 408(b)(2) of the Air Transportation Safety and System Stabilization Act of 2001, Pub. L. 107-42, 115 Stat. 230, reprinted as amended in note following 49 U.S.C. § 40101 ("Stabilization Act"), provides that the "substantive law for decision in any such suit shall be derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law." Plaintiffs' flight originated and crashed in Virginia. There is nothing in Virginia law or federal law to support an award of attorneys' fees. See Va. Code Ann. § 8.01-52 (enumerating damages awards); Va. Code Ann. § 8.01-54(C) (distinguishing between attorneys' fees and damages); Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975) ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."); see also Boehringer-Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc., 737 F.2d 456,

459 (5th Cir. 1984) (holding that Warsaw Convention plaintiff may not recover attorneys' fees under Texas law or federal law). In the absence of argument by one or the other party that some other law applies, it is not necessary to analyze the laws of other states or sovereigns. See Zicherman v. Korean Air Lines Co., 516 U.S. 217, 229 (1996) (declining to determine which sovereign's law applied where parties had not contested the issue).

Thus, United States' law, both federal and state, do not support Plaintiffs' right to recover litigation expenses, including attorneys' fees. And, in light of this ruling, it is unnecessary to decide if the United States, as of September 11, 2001, had consented to be bound by the Hague Protocol by reason of having adhered later to Montreal Protocol No. 4. See Avero Belgium Ins., 423 F.3d at 83 (acknowledging this "difficult question") (quoting Letter of Submittal by Secretary of State Colin L. Powell, June 15, 2002, S. Treaty Doc. 107-14 at ix). Since it is clear that Article 22(4) does not authorize a recovery of litigation expenses, including attorneys' fees, and that Plaintiffs' motion in this respect has to be denied, it is unnecessary to determine if the United States became a party to the Hague Protocol as of September 11, 2001.

## Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED as to Count Three in plaintiff Falkenberg's and plaintiff Teague's Amended Complaints for that portion of their Warsaw Convention claims equivalent to 100,000 Special Drawing Rights, and DENIED without prejudice as to that portion of their Warsaw Convention claims in excess of 100,000 Special Drawing Rights. Plaintiffs may renew their motion for summary judgment for the remaining amount of their Warsaw Convention claims at a more appropriate point.

Plaintiffs' motion to recover litigation expenses, including attorneys' fees, is

DENIED.

The parties have stipulated that the equivalent in United States dollars of 100,000

Special Drawing Rights for the purpose of this order is $153,078, without interest at this point,

but subject to further consideration at the time of entry of final judgment.

The Clerk shall enter partial judgment for plaintiff Ruth Falkenberg, as Personal

Representative for the Estate of Leslie Ann Whittington, and for plaintiff Elaine Teague, as

Personal Representative for the Estate of Sandra D. Teague, against defendant American

Airlines, Inc., in the amount of $153,078, without interest or costs.

SO ORDERED.

Date:  August 14, 2007
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

15

**Lester, LeAnn C.**

| | |
|---|---|
| **From:** | McNamar, Eric [emcnamar@condonlaw.com] |
| **Sent:** | Thursday, August 23, 2007 2:59 PM |
| **To:** | Schiavo, Mary |
| **Cc:** | Barry Jr., Desmond T.; Lester, LeAnn C |
| **Subject:** | 9/11 Litigation: Teague & Whittington |

Mary:

We will not make payment of the 100,000 SDRs pursuant to Judge Hellerstein's July 30, 2007 Order without the protection of an executed Partial Release and Receipt by your clients.  The partial releases we sent you have been used for several years in aviation cases governed by Warsaw and the Intercarrier Agreement, they do not jeopardize your clients' rights in any way and they provide our client with the necessary protections.  The bottom line is that if your clients want this money right now they will have to sign the partial releases.


Eric

Eric C. McNamar, Esq.
**Condon & Forsyth LLP**
Times Square Tower
7 Times Square
New York, NY  10036
Tel: (212) 894-6729
Fax: (212) 370-4453
www.condonlaw.com

***************************************************

**NOTICE:** This message is intended only for use by the named addressee and may contain privileged and/or confidential information. If you are not the named addressee you should not disseminate, copy or take any action in reliance on it. If you have received this message in error please notify info@condonlaw.com and delete this message and any attachments accompanying it immediately.  Thank you.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
           :  No.:  21 MC 97 (AKH)
           :
           :  **THIS DOCUMENT RELATES TO:**
           :
IN RE SEPTEMBER 11 LITIGATION  :  *Falkenberg v. AMR Corp., et al.*
           :  **02 CV 7145 (AKH)**
           :
           :  *Teague v. AMR Corp., et al.*
           :  **03 CV 6899 (AKH)**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### 100,000 SDR ADVANCE PAYMENT PARTIAL RELEASE AND RECEIPT RELATING TO CLAIMS ARISING FROM THE AMERICAN AIRLINES FLIGHT 77 INCIDENT AT ARLINGTON, VIRGINIA ON SEPTEMBER 11, 2001

I, Elaine S. Teague, having been duly appointed by a court of competent jurisdiction as the personal representative of the estate of decedent Sandra D. Teague (hereinafter referred to as "RELEASOR"), accept AMERICAN AIRLINES, INC.'S ("AMERICAN") check in the amount of $128,0781.00, as the sum equivalent of 100,000 Special Drawing Rights ("SDRs") as of the date of judgment, July 30, 2007 ($153,078.00), less the $25,000 already advanced to the decedent's family, as consideration for the release and discharge of AMERICAN and AMR CORPORATION and all of their heirs, executors, predecessors, parents, subsidiaries, and affiliated entities, past, present, and future, as well as their respective directors, officers, administrators, successors, reorganized successors, and assigns, past, present, and future, and their employees, agents, attorneys, insurers, coinsurers, reinsurers, representatives, and all other persons, partnerships, firms, and corporations, not specifically identified in this Partial Release and Receipt (hereinafter referred to collectively as the "RELEASEES" whether or not specifically named herein) who are or may be liable to RELEASOR, in whole or in part from any

liability or responsibility for payment of the initial SDR 100,000 in damages ($153,078.00)

sustained under Articles 17 and 22 of the Warsaw Convention, as supplemented by the Intercarrier

Agreement that has been implemented in AMERICAN'S tariffs on file with the United States

Department of Transportation, as a result of the accident involving American Airlines Flight 77 on

September 11, 2001 at Arlington, Virginia and the death of Sandra D. Teague as a result thereof.

It is expressly understood and agreed that:

1.      The payment and receipt of the sum of $128,078.00, the previous advance of

$25,000.00, and this Partial Release and Receipt are without prejudice to the rights of the

undersigned to pursue claims for additional damages, if any, against RELEASEES and other

third parties.

2.      RELEASOR agrees to defend, indemnify, and hold harmless RELEASEES from

all claims and actions of any kind (including liens or liabilities relating to or arising out of any

worker's compensation payments), and for all costs and expenses (including reasonable

attorneys' fees) in defending any claims and actions, relating to or arising out of any other person

or entity claiming that they are the persons to whom American's 100,000 SDR advance payment,

or any part thereof, should have been made.  This indemnification is limited as follows:  (a) If it

is judicially determined that RELEASOR was not the appropriate person to receive all or part of

the advanced sum, RELEASOR shall immediately return that amount to American; and (b)

RELEASOR'S obligations under this paragraph for payment of American's costs and expenses

(including reasonable attorneys' fees) shall in no event exceed an additional sum of $153,078.00

(i.e., exclusive of any amount of the advance that is returned to AMERICAN under clause (a),

and shall be limited to AMERICAN'S costs and expenses (including reasonable attorneys' fees)

2

only for claims and actions that result in a judicial determination that RELEASOR was not the appropriate person to receive all or part of the advanced sum of $127,421.

3.      RELEASOR agrees that the international treaty commonly known as the Warsaw Convention governs all claims, and provides the sole and exclusive remedy for any claims, that the estate and family may have against AMERICAN and AMR CORPORATION, and all of their heirs, executors, predecessors, parents, subsidiaries, and affiliated entities, past, present, and future, as well as their respective directors, officers, administrators, successors, reorganized successors, and assigns, past, present, and future, and their employees, agents, attorneys, insurers, coinsurers, reinsurers, and representatives for the death of Sandra D. Teague.  This paragraph is not intended to expand the term "carrier" beyond what is provided in the Warsaw Convention and applicable case law; nothing in this paragraph shall preclude the RELEASOR from litigating whether the Warsaw Convention applies to claims against anyone other than AMERICAN and AMR CORPORATION.

4.      RELEASOR understands and agrees that AMERICAN'S payment of 100,000 SDRs is an advance on and a deduction from the total amount of any settlement by or judgment against RELEASEES in any action as a result of the death of Sandra D. Teague.  RELEASOR understands that the advance payment does not have to be returned to AMERICAN unless the RELEASOR was not the appropriate person to receive the payment for the death of Sandra D. Teague.

5.      RELEASOR understands that receipt of the advance payment and the execution of this Partial Release and Receipt is not an admission of liability or responsibility of the RELEASEES for any wrongdoing, negligence, or other culpable conduct in connection with American Flight 77, all of which is denied.

6.      RELEASOR had the right to obtain legal counsel to review and evaluate this Partial Release and Receipt and has done so or has agreed to waive this right.  RELEASOR is not relying on the advice of AMERICAN, or anyone associated with AMERICAN, as to any legal, tax (income, estate, gift, or otherwise), or other consequences of any kind arising out of this Partial Release and Receipt or the payment of any advances.  RELEASOR has not relied on any representations or statements by AMERICAN or its representatives, written or oral, except those set forth in this Partial Release and Receipt.  RELEASOR knowingly and voluntarily signs this Partial Release and Receipt and is not subject to duress, coercion, or undue influence by AMERICAN or anyone else.

7.      RELEASOR is responsible for all legal and income tax consequences related to this advance payment.

8.      RELEASOR understands and agrees that this Partial Release and Receipt may not be waived or changed in any way except in a writing signed by both RELEASOR and a duly authorized representative of AMERICAN.

9.      If, after signing this Partial Release and Receipt, any provision is held to be illegal, invalid, or unenforceable, that provision shall be fully severable.

10.      RELEASOR agrees to cooperate and execute all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Partial Release and Receipt.

NYOFFICE 668255v1

11.    RELEASOR agrees that this Partial Release and Receipt shall be governed by and construed in accordance with the laws of the State of New York, excluding its choice of law rules.

Dated: _____ day of _____, 2007.

_____
ELAINE S. TEAGUE as personal representative of the estate of SANDRA D. TEAGUE.


STATE OF _____          )
                                 ) ss.
COUNTY OF _____            )


BEFORE ME, the undersigned authority, on this day personally appeared  Elaine S. Teague known to me as the Personal Representative of the estate of Sandra D. Teague, and as the person whose name is subscribed to the foregoing 100,000 SDR Advance Payment Partial Release and Receipt who after being duly sworn by me, on oath stated that she has read the 100,000 SDR Advance Payment Partial Release and Receipt, it is a correct and complete statement of the matters to which it relates, and all the contents thereof are true, complete, and correct.

SWORN AND SUBSCRIBED TO BEFORE ME by the said _____, on this _____ day of _____ to certify which witness my hand and seal of office.


_____
NOTARY PUBLIC
In and for the County of
_____
State of _____


My Commission Expires _____

NYOFFICE 668255v1

**Lester, LeAnn C.**

| | |
|---|---|
| **From:** | Schiavo, Mary |
| **Sent:** | Thursday, August 23, 2007 3:19 PM |
| **To:** | McNamar, Eric |
| **Subject:** | RE: 9/11 Litigation: Teague & Whittington |

Thanks Eric, I appreciate this clarification of your position.  I just don't seem to find any Warsaw judgments in recent years for the SDRs; thus I'm also not finding any requirement for my clients to sign the documents you propose.  I think you'd have to agree, they include many concessions the judge did not order.  If you have precedent, I'll gladly look at it.  I'm sure if any knows about it, it would be you and Des.  Can you forward to me the authority and precedents you referenced?
Thanks again.

Mary Schiavo
Motley Rice LLC
mschiavo@motleyrice.com
Office - 843-216-9138
Fax- 843-216-9440


Motley Rice LLC, Attorneys at Law
*Litigating Today For A Better Tomorrow*

----

**From:** McNamar, Eric [mailto:emcnamar@condonlaw.com]
**Sent:** Thursday, August 23, 2007 2:59 PM
**To:** Schiavo, Mary
**Cc:** Barry Jr., Desmond T.; Lester, LeAnn C
**Subject:** 9/11 Litigation: Teague & Whittington

Mary:

We will not make payment of the 100,000 SDRs pursuant to Judge Hellerstein's July 30, 2007 Order without the protection of an executed Partial Release and Receipt by your clients.  The partial releases we sent you have been used for several years in aviation cases governed by Warsaw and the Intercarrier Agreement, they do not jeopardize your clients' rights in any way and they provide our client with the necessary protections.  The bottom line is that if your clients want this money right now they will have to sign the partial releases.

Eric

Eric C. McNamar, Esq.
**Condon & Forsyth LLP**
Times Square Tower
7 Times Square
New York, NY  10036

Tel: (212) 894-6729
Fax: (212) 370-4453
www.condonlaw.com

**************************************************

**NOTICE:** This message is intended only for use by the named addressee and may contain privileged and/or confidential information. If you are not the named addressee you should not disseminate, copy or take any action in reliance on it. If you have received this message in error please notify info@condonlaw.com and delete this message and any attachments accompanying it immediately.  Thank you.

2/6/2008

# CONDON & FORSYTH LLP

NEW YORK
LOS ANGELES

Direct Dial: (212) 894-6729
Direct Fax:  (212) 370-4453
emcnamar@condonlaw.com

September 14, 2007

**VIA EMAIL & FEDERAL EXPRESS**

Mary F. Schiavo, Esq.
Motley Rice LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mount Pleasant, South Carolina 29465

Re:    In re September 11 Litigation
       *Teague v. AMR Corp., et al.*, 03 Civ. 6899 (AKH)
       *Falkenberg v. AMR Corp., et al.*, 02 Civ. 7145 (AKH)
       C & F Ref: DTB/CRC/28079

Dear Mary:

In connection with the partial judgment entered on August 14, 2007, enclosed please find two original Satisfaction of Partial Judgment forms for your execution. Kindly sign and notarize the Satisfaction of Partial Judgment forms and return them to me so that we may file them with the Court. We will hold the signed forms in escrow and issue to you two checks in the amount of $153,078.00 and we will file the two Partial Satisfaction of Judgment forms after you receive the checks.

Please contact me if you have any comments or questions.

Sincerely yours,

CONDON & FORSYTH LLP

By_____
       Eric C. McNamar

Enclosures

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| : | No.: 21 MC 97 (AKH) |
| : |  |
| : | **THIS DOCUMENT RELATES TO:** |
| : |  |
| : | *Teague v. AMR Corp., et al.* |
| : | **03 CV 6899 (AKH)** |
| : |  |
| : | **SATISFACTION OF** |
| : | **PARTIAL JUDGMENT** |

IN RE SEPTEMBER 11 LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

WHEREAS, a partial judgment was entered in the above action on the 14th day of August, 2007 in favor of plaintiff ELAINE S. TEAGUE, Individually and as Personal Representative of the Estate of SANDRA D. TEAGUE, and against AMERICAN AIRLINES, INC. in the amount of $153,078.00 and said judgment with interest and costs thereon having been fully paid, and it is certified that there are no outstanding executions with any Sheriff or Marshall,

THEREFORE, full and complete satisfaction of said partial judgment is hereby acknowledged, and the Clerk of the Court is hereby authorized and directed to make an entry of the full and complete satisfaction on the docket of said partial judgment.

Dated: New York, New York
      September \_\_\_, 2007

 

                         _____
                         Mary F. Schiavo
                         (    )
                         Motley Rice LLC
                         28 Bridgeside Blvd
                         P.O. Box 1792
                         Mt. Pleasant, South Carolina 29465
                         (843) 216-9000

                         Attorneys for Plaintiff
                         ELAINE S. TEAGUE

STATE OF _____    )
                          )    ss.:
COUNTY OF _____    )

On the _____ day of _____, 2007 before me personally came MARY F.

SCHIAVO to me known and known to be a member of the firm of MOTLEY RICE LLC, attorneys

for ELAINE S. TEAGUE, an Individual and Personal Representative of the Estate of SANDRA D.

TEAGUE in the above-entitled action, and to be the same person described in and who executed the

within satisfaction of judgment and acknowledged to me that she executed the same.

_____
Notary Public

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
                                                        :    No.: 21 MC 97 (AKH)
                                                        :
                                                        :    **THIS DOCUMENT RELATES TO:**
                                                        :
IN RE SEPTEMBER 11 LITIGATION                           :    *Falkenberg v. AMR Corp., et al.*
                                                        :    **02 CV 7145 (AKH)**
                                                        :
                                                        :    **SATISFACTION OF**
                                                        :    **PARTIAL JUDGMENT**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WHEREAS, a partial judgment was entered in the above action on the 14th day of

August, 2007 in favor of plaintiff RUTH FALKENBERG, Individually and as Personal Representative

of the Estate of LESLIE ANN WHITTINGTON, and against AMERICAN AIRLINES, INC. in the

amount of $153,078.00 and said judgment with interest and costs thereon having been fully paid, and it

is certified that there are no outstanding executions with any Sheriff or Marshall,

THEREFORE, full and complete satisfaction of said partial judgment is hereby

acknowledged, and the Clerk of the Court is hereby authorized and directed to make an entry of the

full and complete satisfaction on the docket of said partial judgment.

Dated: New York, New York
       September ___, 2007

_____
Mary F. Schiavo
(        )
Motley Rice LLC
28 Bridgeside Blvd
P.O. Box 1792
Mt. Pleasant, South Carolina 29465
(843) 216-9000

Attorneys for Plaintiff
RUTH FALKENBERG

1

STATE OF _____      )
                           )    ss.:
COUNTY OF _____     )


On the _____ day of _____, 2007 before me personally came MARY F.

SCHIAVO to me known and known to be a member of the firm of MOTLEY RICE LLC, attorneys

for RUTH FALKENBERG, an Individual and Personal Representative of the Estate of LESLIE ANN

WHITTINGTON in the above-entitled action, and to be the same person described in and who

executed the within satisfaction of judgment and acknowledged to me that she executed the same.


_____

Notary Public

# CONDON & FORSYTH LLP

NEW YORK
LOS ANGELES

Direct Dial: (212) 894-6770
Direct Fax: (212) 894-6771
dbarry@condonlaw.com

June 5, 2006

**VIA FACSIMILE AND E-MAIL**

Joseph F. Rice, Esq.
Motley Rice LLC
28 Bridgeside Blvd., P.O. Box 1792
Mount Pleasant, SC 29465

Re:    In re September 11 Litigation
       C & F Ref: DTB/CRC/28079

Dear Joe:

On June 1, 2006 you telephoned me to discuss the issue of the funds advanced by American and United to the families of deceased passengers after the September 11, 2001 terrorist hijackings. You advised me that you had conveyed to your clients the defendants' final offers in the cases which have been mediated to date, but that you did not advise your clients that any prior advance payments would be deducted from the gross amount of any settlement. You requested that the defendants waive the express settlement conditions set forth in paragraph 6 of my July 20, 2005 letter which you executed in our office that same day prior to the commencement of settlement negotiations. Paragraph 6 of that letter provides in pertinent part: "All sums advanced by a defendant will be deducted from their share of the settlement amount payable under the release. Prior payments for amounts such as funeral expenses will be recited in the release, but amounts for these prior payments will be deemed paid." A copy of my July 20, 2005 letter executed by you is enclosed.

I have discussed your request for a waiver of that express condition with the principals and insurers of United and American as well as with counsel for the other settling defendants. Neither American, United nor their respective insurers will agree to waive the condition that all sums advanced by them must be deducted from their share of the settlement amount payable under the release. This position is consistent with what has been done in all the other passenger cases that have settled. Accordingly, any payments made by American or United in settlement of their passengers' wrongful death actions must reflect a deduction of any advances previously paid.

CONDON & FORSYTH LLP

Joseph F. Rice, Esq.
June 5, 2006
Page 2

Sheila Birnbaum also relayed to us a question from Don Migliori concerning the workers'
compensation liens asserted by the separate workers' compensation insurers in the crew cases.
As stated in paragraph 4(d) of the July 20, 2005 settlement conditions letter, it is the
responsibility of the plaintiffs to satisfy all liens, including workers' compensation liens and
attorneys' liens.  No payments will be made in any settled case unless all liens have been
satisfied.

I trust this letter explains the position of the settling defendants on both issues.

Sincerely yours,

Desmond T. Barry, Jr.

Enclosure

cc:    Sheila Birnbaum, Esq. (w/enclosure)
       Thomas Fox, Esq. (w/enclosure)
       Roger E. Podesta, Esq. (w/enclosure)
       Jeffrey Ellis, Esq. (w/enclosure)
       James Connors, Esq. (w/enclosure)
       H. Lee Godfrey, Esq. (w/enclosure)
       Joseph Wayland, Esq. (w/enclosure)

# CONDON & FORSYTH LLP

NEW YORK
LOS ANGELES
WASHINGTON, D.C

Direct Dial: (212) 894-6770
Direct Fax: (212) 370-4483
dbarry@condonlaw.com

**PRIVATE & CONFIDENTIAL**

July 20, 2005

Joseph F. Rice, Esq.
Motley Rice LLC
28 Bridgeside Blvd., P.O. Box 1792
Mount Pleasant, SC 29465

Re:   September 11, 2001
      Terms of Settlement Negotiations
      C & F Ref: DTB/CRC/28079

Dear Joe:

Before the aviation defendants convey settlement offers in appropriate September 11th cases, please review the following conditions of settlement and execute the second page indicating your agreement to the same:

1.   Plaintiffs, claimants, their counsel of record and co-counsel agree that offers of settlement are confidential, are for their exclusive knowledge and the use of their experts and consultants, and should not be disclosed by them to anyone else. Likewise, defendants shall not share any information concerning settlement offers with any other plaintiffs' counsel and no party involved in the negotiations will reveal any settlement information or the substance of any discussions during negotiations to the media. Offers and negotiations are not admissible under Federal Rule of Evidence 408 or like state law.

2.   Offers generally stay open for 45 days, unless withdrawn before then, and are deemed withdrawn if not accepted.

3.   Offers and settlements are contingent upon: (a) aviation defendants' receipt of mutually acceptable releases; (b) dismissal with prejudice of all proceedings against aviation defendants, commenced by anyone, arising out of the events of September 11th relating to the particular passenger, decedent or claimant (except Surrogate's Court proceedings); (c) the Court issuing an order approving the settlement and meeting the requirements of paragraph 4(b) of this letter; and (d) plaintiffs' or claimants' satisfaction of all liens.

CONDON & FORSYTH LLP
Joseph F. Rice, Esq.
July 20, 2005
Page 2

4.   Settlement funds should be available to be paid within 45 days after: (a) defendants receive all of the above-described documents (with the exception of a dismissal with prejudice which will be exchanged simultaneously with payment of the settlement funds) and (b) an order is issued by the United States District Court for the Southern District of New York or an appropriate federal appellate court, not subject to any further appellate review, providing that the amount of the settlement is reasonable and that the full amount of any payments pursuant to the settlements will be credited against the limitation of liability provided by Section 408(a)(1) of the ATSSSA, as amended, or any other statute. Notwithstanding the provisions of subsections 4(a) and 4(b) above, if payment is not made to plaintiffs within 45 days of delivery of the documents referenced in paragraph 3, the settlement funds shall be placed in an interest bearing escrow account maintained by defendants for the benefit of plaintiffs.

5.   Statutes providing for interest on settlement proceeds are agreed to be inapplicable.

6.   All sums advanced by a defendant will be deducted from their share of the settlement amount payable under the release. Prior payments for amounts such as funeral expenses will be recited in the release, but the amounts for these prior payments will be deemed paid.

7.   Parties bear their own fees, costs and expenses (e.g., plaintiff's guardian *ad litem* fees).

8.   Advise us in writing as soon as practicable if plaintiffs are interested in structuring part of the settlement. If offered, structures will be written only by companies approved by defendants and only brokers approved by defendants will be involved.

Lastly, please contact us if you have any questions regarding the settlement process.

Sincerely yours,

Desmond T. Barry, Jr.

CONDON & FORSYTH LLP
Joseph F. Rice, Esq.
July 20, 2005
Page 3


The conditions of settlement listed above are agreed to by:

_Joe Rice_____

On behalf of plaintiff/claimant:

_Joe Rice, Motley Rice_____

Date: _7-20-05_____



**MotleyRice**

**JOSEPH F. RICE**
Licensed in SC
Direct Dial: 843.216.9159
Direct Fax: 843.216.9290
JRice@motleyrice.com

October 24, 2007

Desmond T. Barry, Jr., Esq.
Condon & Forsyth
7 Times Square
New York, NY 10036

Roger Podesta, Esq.
Debevoise & Plimpton
919 Third Avenue
New York, NY 10022

Joseph Wayland, Esq.
Simpson Thatcher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954

     Re:    911 Litigation – Flight 77 - Teague

Dear Gentlemen,

    I have been given authority to settle the above-referenced matter for ▮▮▮▮▮ This is with the understanding the money will be paid as soon as possible and clearly in time for all disbursements to occur this year.  If this agreeable to your clients please sign a copy of this letter and return to me today.

    As I am,

                    Sincerely,

                    Joseph F. Rice

JFR:dlg

Agreed:

_____
On behalf of Desmond Barry,
Roger Podesta and Joseph Wayland

www.motleyrice.com | MT. PLEASANT | BARNWELL | PROVIDENCE | HARTFORD | ATLANTA

Motley Rice LLC
Attorneys at Law

28 BRIDGESIDE BLVD.
P.O. BOX 1792
MT. PLEASANT, SC 29465
843-216-9000
843-216-9450 FAX

1750 JACKSON ST.
P.O. BOX 365
BARNWELL, SC 29812
803-224-8800
803-259-7048 FAX

321 SOUTH MAIN ST.
P.O. BOX 6067
PROVIDENCE, RI 02940
401-457-7700
401-457-7708 FAX

ONE CORPORATE CENTER
20 CHURCH ST, 17TH FLOOR
HARTFORD, CT 06103
860-882-1681
860-882-1682 FAX

600 WEST PEACHTREE ST.
SUITE 800
ATLANTA, GEORGIA 30308
404-201-6900
404-201-6959 FAX

# CONDON & FORSYTH LLP

NEW YORK
LOS ANGELES

Direct Dial: (212) 894-6770
Direct Fax: (212) 894-6771
dbarry@condonlaw.com

October 26, 2007

**VIA FACSIMILE & EMAIL**

Joseph F. Rice, Esq.
Motley Rice LLC
28 Bridgeside Blvd., P.O. Box 1792
Mount Pleasant, SC 29465

Re:    In re September 11 Litigation
       Passenger: Sandra Teague
       <u>C & F Ref: DTB/CRC/28079</u>

Dear Joe:

I write in response to your letter of October 24, 2007. The Aviation Defendants agree to settle the *Teague* case for ▮▮▮▮▮▮▮ This settlement is subject to our standard terms and conditions letter which you signed on July 20, 2005 and the settlement amount is not to be publicly disclosed or characterized in any way.

The time required to conclude this settlement is dictated by the court approved settlement procedures that have been in place for several years and is largely contingent upon your firm and your clients promptly signing and returning the settlement papers, filing the application for a compromise order in a timely manner and Judge Hellerstein issuing an order of final judgment promptly. Any delay in these procedural steps would be out of the Aviation Defendants' control and could delay the disbursement of settlement funds beyond the end of the year.

Sincerely yours,

Desmond T. Barry, Jr.

cc:    <u>Via Email</u>
       Roger E. Podesta, Esq.
       Joseph F. Wayland, Esq.

RECEIVED
OCT 16 2007
JUDGMENT CLERK'S OFFICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
                                            :   No.: 21 MC 97 (AKH)
                                            :
                                            :   THIS DOCUMENT RELATES TO:
                                            :
IN RE SEPTEMBER 11 LITIGATION               :
                                            :   *Teague v. AMR Corp., et al.*
                                            :   **03 CV 6899 (AKH)**
                                            :
                                            :   **SATISFACTION OF**
                                            :   **PARTIAL JUDGMENT**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

WHEREAS, a partial judgment was entered in the above action on the 14th day of

August, 2007 in favor of plaintiff ELAINE S. TEAGUE, Individually and as Personal

Representative of the Estate of SANDRA D. TEAGUE, and against AMERICAN AIRLINES,

INC. in the amount of $153,078.00, without interest at this point, but subject to further

consideration at the time of final judgment, and plaintiff makes no waiver of interest.  It is

certified that there are no outstanding executions with any Sheriff or Marshall.

THEREFORE, full and complete satisfaction of said partial judgment is hereby

acknowledged, and the Clerk of Court is hereby authorized and directed to make an entry of the

full and complete satisfaction of the docket of said partial judgment.

Effective Date: October 12, 2007
(Date of Receipt of Payment)
Mt. Pleasant, South Carolina

_____
Mary F. Schiavo
(     )
Motley Rice LLC
28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, SC 29465
(843) 216-9000

Attorneys for Plaintiff
ELAINE S. TEAGUE

# CONDON & FORSYTH LLP

NEW YORK
LOS ANGELES

Direct Dial: (212) 894-6770
Direct Fax: (212) 894-6771
dbarry@condonlaw.com

October 11, 2007

## VIA EMAIL AND FEDERAL EXPRESS

Mary F. Schiavo, Esq.
Motley Rice LLC
28 Bridgeside Blvd., P.O. Box 1792
Mount Pleasant, SC 29465

Re:    In re September 11 Litigation, 21 MC 97 (AKH)
       Passenger:  Sandra D. Teague
       C & F Ref: DTB/CRC/28079

Dear Mary:

This letter is to notify you that Global Aerospace, Inc. will wire transfer settlement funds on October 12, 2007 in the amount of $153,078.00 to Motley Rice LLC General Trust Account #2. The amount represents the funds due and owing on behalf of American Airlines, Inc., as Ordered in the partial judgment dated August 14, 2007 in the *Teague* case.

Sincerely yours,

Desmond T. Barry, Jr.

Enclosure

DTB/ml

cc:    Via Email

       Michael L. Baum, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :

                            :   No.: 21 MC 97 (AKH)

                            :

IN RE SEPTEMBER 11 LITIGATION    :   **THIS DOCUMENT RELATES TO:**

                            :   **03 CV 6800 (AKH)**

                            :   **ELAINE TEAGUE v.**

                            :   **AMERICAN AIRLINES, INC., et al.**

                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## CONFIDENTIAL STIPULATION OF SETTLEMENT

By and through their attorneys, Defendants AMERICAN AIRLINES, INC. (hereinafter "AMERICAN"), AMR CORPORATION (hereinafter "AMR") and ARGENBRIGHT SECURITY, INC. (hereinafter "ARGENBRIGHT"), and ELAINE TEAGUE, Individually, and as Personal Representative of the Estate of SANDRA TEAGUE, and on behalf of all survivors, heirs and next of kin of SANDRA TEAGUE, deceased (hereinafter "PLAINTIFF"), hereby agree:

1.   In consideration of the sum of ███████████████████████ ████████ to be paid by the Insurers of AMERICAN and AMR, and the sum of ██████ ████████████████████ ████████ to be paid by the Insurers of ARGENBRIGHT, for a total of the payments to PLAINTIFF of ████████████ ██████████████████ PLAINTIFF agrees to release and discharge AMERICAN, AMR, ARGENBRIGHT and any and all other defendants named in any of the individual or Master Complaints filed under civil action number 21 MC 97 (AKH), and agrees to execute a Confidential Release in the form attached hereto as "Exhibit 1".

PLAINTIFF agrees that the sum of ONE HUNDRED SEVENTY-EIGHT THOUSAND, SEVENTY-EIGHT DOLLARS AND NO/100 ($178,078.00) paid by the insurers of

1

AMERICAN and AMR, shall be deducted from the settlement amount payable by AMERICAN and AMR.

2.    The parties to this Agreement recognize the legitimate interest of AMERICAN, AMR and ARGENBRIGHT in ensuring that the full amounts paid pursuant to this Agreement count against the limits on their respective liability established by Section 408(a)(1) of the Air Transportation Safety and System Stabilization Act ("ATSSSA").    AMERICAN, AMR and ARGENBRIGHT are not willing to enter into this Agreement absent that assurance.    The parties therefore agree that:

(a)    AMERICAN, AMR and ARGENBRIGHT shall have no obligations hereunder, unless and until a final, non-appealable determination is issued by a court of competent jurisdiction confirming that all amounts paid hereunder count against the limits of liability established by Section 408(a)(1) of the ATSSSA; and

(b)    No settlement payments shall be made pursuant to this Agreement unless and until a final, non-appealable determination is issued by a court of competent jurisdiction confirming that all amounts to be paid hereunder count against the limits of liability established by Section 408(a)(1) of the ATSSSA.

3.    Within 21 days after execution of this Confidential Stipulation of Settlement, AMERICAN, AMR and ARGENBRIGHT shall seek from the United States District Court for the Southern District of New York or an appropriate federal appellate court the non-appealable determination described in paragraph "2".    The parties agree, and PLAINTIFF specifically consents, that the motion for the non-appealable final determination will include a request that

2

the Court dismiss with prejudice all proceedings by PLAINTIFF against AMERICAN, AMR and ARGENBRIGHT, and any and all other defendants named in any of the individual or Master Complaints filed under civil action number 21 MC 97 (AKH), including without limitation each of the defendants listed in "Appendix A" to the Confidential Release in the form attached hereto as "Exhibit 1" ("RELEASEES"), and all RELEASEES' parents, subsidiaries, affiliated corporations, partnerships, insurers, related business entities, officers, directors, employees, agents, heirs, executors, administrators, successors and assigns.

4.    Following execution of this Confidential Stipulation of Settlement, PLAINTIFF shall submit to Judge Alvin K. Hellerstein a Motion for a Compromise Order approving the settlement and the distribution of the settlement proceeds and authorizing PLAINTIFF to execute and deliver a Confidential Release in the form attached hereto as "Exhibit 1".

5.    Upon receipt of authorization from the Court, PLAINTIFF shall deliver to AMERICAN, AMR and ARGENBRIGHT an executed Confidential Release in the form attached hereto as "Exhibit 1". The execution of said Confidential Release does not preclude PLAINTIFF from continuing any direct action filed against terrorists and/or sponsors of terrorism arising from or relating to the death of SANDRA TEAGUE as identified in *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:02-CV-01616, United States District Court, District of Columbia (JR); *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570; and *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:03-CV-09849, United States District Court, Southern District of New York (RCC).

6.    Subject to compliance with all conditions set forth above, within 30 days after the non-appealable determination described in paragraphs "2" and "3" is issued or within 30 days after receipt by counsel for AMERICAN, AMR and ARGENBRIGHT of the executed

3

Confidential Release, whichever is later, AMERICAN, AMR and ARGENBRIGHT'S insurers will pay to PLAINTIFF the settlement funds as indicated in the Confidential Release. In the event that a court of competent jurisdiction declines to enter the final non-appealable determination referenced in paragraphs "2" and "3", this Confidential Stipulation of Settlement shall be void, and PLAINTIFF shall be entitled to reinstate her case against RELEASEES.

7.    The parties acknowledge that this Agreement is entered into solely for the purpose of amicably resolving the parties' dispute and the parties specifically acknowledge and agree that this Agreement does not constitute an admission of liability, responsibility or proportionate responsibility by any party.

8.    This Agreement and the performance thereunder shall be governed by and construed under the laws of the State of New York, without giving effect to its conflict of law provisions that would result in the application of the law of any other jurisdiction.

9.    This Agreement may not be modified orally and can only be modified by means of a written agreement signed by PLAINTIFF, AMERICAN, AMR and ARGENBRIGHT.

10.    The amount of the payments under this settlement shall remain confidential. Dissemination of the amount of payments under this settlement shall be restricted to only the parties, their attorneys, employees, agents, and insurance representatives who have a need to know the amount of the settlement and to any court referenced in paragraphs "2" and "3". No party, attorney, employee, agent or insurance representative of a party shall disclose the settlement amount unless required to do so by court order.

11.    This Agreement may be executed in counterparts.

4

Dated: New York, New York
    This _____ day of _____, 2007.


MOTLEY RICE LLC

By:_____
    Mary F. Schiavo (    )

28 Bridgeside Blvd
PO Box 1792
Mt. Pleasant, SC  29465
Tel.: (843) 216-9000

Attorneys for Plaintiff
ELAINE TEAGUE


SIMPSON THACHER & BARTLETT LLP


By:_____
    Charles E. Koob (CEK 1601)
    Joseph F. Wayland (JFW 7549)

425 Lexington Avenue
New York, New York 10017-3954
Tel.: (212)455-2000
Fax: (212)455-2502


Attorneys for Defendant
ARGENBRIGHT SECURITY, INC.


ACE GLOBAL MARKETS


By:_____


For and on behalf of the insurers for
ARGENBRIGHT SECURITY, INC.


CONDON & FORSYTH LLP

By:_____
    Desmond T. Barry, Jr. (DB 8066)

Times Square Tower
7 Times Square
New York, New York  10036
Tel.: (212)490-9100
Fax: (212)370-4483

-and-

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
Tel.: (212)909-6000
Fax: (212)909-6836

Attorneys for Defendants
AMERICAN AIRLINES, INC. and
AMR CORPORATION


GLOBAL AEROSPACE UNDERWRITING
MANAGERS


By:_____
    John P. Meehan

For and on behalf of the insurers for
AMERICAN AIRLINES, INC. and AMR
CORPORATION

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :

                        :   No.: 21 MC 97 (AKH)

                        :

IN RE SEPTEMBER 11 LITIGATION    :   **THIS DOCUMENT RELATES TO:**

                        :   **03 CV 6800 (AKH)**

                        :   **ELAINE TEAGUE v.**

                        :   **AMERICAN AIRLINES, INC., et al.**

                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## CONFIDENTIAL RELEASE

ELAINE TEAGUE, Individually, and as Personal Representative of the Estate of SANDRA TEAGUE, and on behalf of all survivors, heirs and next of kin of SANDRA TEAGUE, deceased, as RELEASOR, and in consideration of the sum of ██████████ DOLLARS AND NO/100 ██████████ to be paid by the Insurers of AMERICAN AIRLINES, INC. (hereinafter, "AMERICAN") and AMR CORPORATION (hereinafter, "AMR"), and the sum of ██████████████████████ to be paid by the Insurers of ARGENBRIGHT SECURITY, INC. (hereinafter, "ARGENBRIGHT"), for a total of the payments to RELEASOR of ████████████████ ██████████ hereby releases and discharges AMERICAN, AMR, ARGENBRIGHT and any and all other defendants named in any of the individual or Master Complaints filed under civil action number 21 MC 97 (AKH), including without limitation each of the defendants listed in "Appendix A" hereto ("RELEASEES"), and all RELEASEES' parents, subsidiaries, affiliated corporations, partnerships, insurers, related business entities, officers, directors, employees, agents, heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, executions,

claims, and demands whatsoever, in law, admiralty or equity, which RELEASOR, RELEASOR'S heirs, executors, administrators, successors and/or assigns ever had, now have or hereafter can, shall or may, have against RELEASEES for, upon, or by reason of any matter, cause, or thing whatsoever relating to or arising out of the following: wrongful death of and personal injuries to SANDRA TEAGUE, whether assertable by the survivors, heirs or personal representative of SANDRA TEAGUE or by any other person or entity entitled by law to recover damages as a result of the death of or personal injury to SANDRA TEAGUE, and whether characterized as wrongful death claims, survival or survivorship claims, personal injuries or otherwise; loss of or damage to the baggage, personal effects, or other property of SANDRA TEAGUE; amounts paid by or on behalf of SANDRA TEAGUE for transportation; and any and all other losses, damages and/or injuries relating to or arising out of SANDRA TEAGUE having been a passenger on American Airlines Flight 77 on September 11, 2001 (hereinafter, "the death of SANDRA TEAGUE") from the beginning of the world to the day of the date of this Confidential Release.

RELEASOR agrees that the sum of ONE HUNDRED SEVENTY-EIGHT THOUSAND, SEVENTY-EIGHT DOLLARS AND NO/100 ($178,078.00) p aid by the insurers of AMERICAN and AMR, shall be deducted from the settlement amount payable by AMERICAN and AMR.

FOR AND IN FURTHER CONSIDERATION of the payments described above, RELEASOR agrees as follows:

1.    RELEASOR agrees to protect, indemnify, and hold harmless RELEASEES from and against all actions, causes of action, remedies, suits, debts, covenants, contracts, controversies, agreements, promises, damages (including, but not limited to, pecuniary, non-

2                    EXHIBIT 1

pecuniary, moral, patrimonial, compensatory and punitive damages), liabilities, judgments, executions, claims, demands of whatsoever nature, known and unknown (including, but not limited to, liens or liabilities of whatsoever nature, including without limitation, those relating to or arising out of any workers' compensation payments and those that may arise by reason of the legal or tax consequences of this Confidential Release), and all costs and expenses (including, but not limited to, reasonable attorneys' fees) in defending any such actions, etc., brought against RELEASEES by anyone claiming by, through, or under RELEASOR, relating to or arising out of the death of SANDRA TEAGUE whether anticipated or unanticipated, however caused and whether by sole, joint, or concurrent negligence, strict liability, treaty liability, Intercarrier Agreement liability, contractual liability, or otherwise of RELEASEES.

    2.    RELEASOR recognizes, acknowledges, and accepts that there is a risk that, after the execution of this Confidential Release, (a) RELEASOR will claim or suffer personal bodily discomfort, emotional distress, or economic loss that are in some way caused by or related to the death of SANDRA TEAGUE, but which are unknown and unanticipated at the time this Confidential Release is executed; (b) the damages presently known may be or may become more extensive than RELEASOR now expects or anticipates; and (c) the laws governing what damages are available to her may change. RELEASOR accepts these risks, and this Confidential Release shall apply to all unknown and unanticipated results of the death of SANDRA TEAGUE as well as those known and anticipated. The provisions of any local, state, federal, or foreign law, statute, or judicial decision providing in substance that releases shall not extend to unknown or unanticipated claims, damages, or injuries are hereby expressly waived.

    3.    The payments described above and the execution of this Confidential Release are the result of a compromise of disputed claims and shall not at any time for any purpose be

**EXHIBIT 1**

considered as an admission of liability, responsibility, or proportionate responsibility of RELEASEES for any wrongdoing, negligence, or other culpable conduct in connection with the death of SANDRA TEAGUE. RELEASOR acknowledges that RELEASEES expressly continue to deny and disclaim such liability and responsibility and intend merely to avoid further litigation and buy their peace. This Confidential Release is a final and full settlement of all claims against RELEASEES and shall not be subject to any claim of mistake of fact or law by RELEASOR.

4.    The amount of the payments of the settlement shall remain confidential. The parties shall not disclose the amount of the payments of the settlement agreement, except to the parties, their attorneys, employees, agents, and insurance representatives who have a need to know the amount of the settlement, and to any court of competent jurisdiction. No party, attorney, employee, agent or insurance representative of a party shall disclose the amount of the settlement payments unless required to do so by court order.

5.    RELEASOR represents and warrants that she is not relying on the advice of the RELEASEES, or anyone associated with them, as to legal, tax (income, estate, gift, or otherwise), or other consequences of any kind arising out of this Confidential Release; that she has not relied on any representations or statements, written or oral, of RELEASEES, including but not limited to, any factual representation regarding the death of SANDRA TEAGUE except those set forth in this Confidential Release; and that she is knowingly and voluntarily signing this Confidential Release and is not subject to duress, coercion, or undue influence by RELEASEES or anyone else.

6.    RELEASOR represents and warrants that she has not filed, will not file, or cause to be filed, any other actions, causes of action, suits, claims, or demands, of any nature whatsoever, arising from or relating to the death of SANDRA TEAGUE in any court or tribunal,

**EXHIBIT 1**

NYOFFICE 670749v1

or with any adjudicatory, legislative, executive or other governmental or private body or agency anywhere in the U.S. or abroad against RELEASEES. This Confidential Release does not preclude RELEASOR from continuing any direct action filed against terrorists and/or sponsors of terrorism arising from or relating to the death of SANDRA TEAGUE, as identified in *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:02-CV-01616, United States District Court, District of Columbia (JR); *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570; and *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:03-CV-09849, United States District Court, Southern District of New York (RCC).

7.      RELEASOR understands that she has the right to obtain legal counsel to review and evaluate this Confidential Release, and RELEASOR attests that she has done so or agreed to waive this right. RELEASOR further understands and agrees that she shall be responsible for the payment of all expenses arising from and in connection with any matters related to the death of SANDRA TEAGUE other than any expenses previously paid for by RELEASEES, and that RELEASOR shall be responsible for the payment of any attorneys' fees and legal expenses that she has incurred or may incur. RELEASOR further agrees that statutes providing for payment of interest, costs or expenses with respect to settlement proceeds in this action are inapplicable.

8.      RELEASOR represents and warrants that she will satisfy all outstanding workers' compensation liens, medical liens, attorneys' fees liens, and all other liens, if any, from the proceeds of this settlement.

9.      This Confidential Release and the performance thereunder, shall be governed by and construed under the laws of the State of New York, without giving effect to its conflicts of law provisions that would result in the application of the law of any other jurisdiction.

EXHIBIT 1

10.    This Confidential Release may not be modified orally and can only be modified by means of a written agreement signed by RELEASOR, AMERICAN, AMR and ARGENBRIGHT.

11.    This Confidential Release can be executed in multiple originals.

In witness whereof, RELEASOR has hereunto set RELEASOR'S hand and seal on the _____ day of _____, 2007.

_____
ELAINE TEAGUE, RELEASOR

STATE OF _____ )
                       ) ss.:
COUNTY OF _____ )

On _____, 2007, before me personally came ELAINE TEAGUE, to me known, and known to me to be the individual described herein, and who executed the foregoing CONFIDENTIAL RELEASE, and duly acknowledged to me that she executed the same.

_____
NOTARY PUBLIC

EXHIBIT 1

NYOFFICE 670749v1

## APPENDIX A

AEROFLOT, a Russian corporation;

AIR CANADA

AIR FRANCE, a French corporation

AIR JAMAICA, a Jamaican corporation

AIR TRANSPORT ASSOCIATION OF AMERICA, INC.

AIRTRAN AIRLINES

ALASKA AIRLINES, INC.

AMERICA WEST AIRLINES, INC.

AMERICAN AIRLINES, INC.

AMERICAN EAGLE AIRLINES

AMERICAN TRANS AIR, INC.

AMR CORPORATION

ANA, a Japanese corporation

ARGENBRIGHT SECURITY, INC.

ATA AIRLINES, INC.

ATLANTIC COAST AIRLINES, INC.

AUSTRIAN AIRLINES, an Austrian corporation

BARKSHIRE, INC.

BRITISH AIRWAYS, a United Kingdom corporation

BRITISH MIDLAND AIRWAYS, LTD, a United Kingdom corporation

BURNS INTERNATIONAL SECURITY SERVICES CORP.

BURNS INTERNATIONAL SERVICES CORP.

EXHIBIT 1

BWIA INTERNATIONAL AIRWAYS, a Trinidad/Tobago corporation

CAPE AIR

CITY OF PORTLAND, MAINE

COLGAN AIR, INC.

CONTINENTAL AIRLINES, INC.

DELTA AIR LINES INC.

DELTA EXPRESS

EMERY ROTH AND PARTNERS LLC d/b/a EMERY ROTH & SONS

ETHIOPIAN AIRLINES S.C.

FRONTIER AIRLINES, INC.

GLOBE AVIATION SERVICES CORPORATION

GLOBE AIRPORT SECURITY SERVICES, INC.

HEIMANN SYSTEMS CORP.

HUNTLEIGH AVIATION SERVICES CORPORATION

HUNTLEIGH USA CORP.

ICTS INTERNATIONAL NV

INVISION TECHNOLOGIES, INC.

JETBLUE

KLM, a Dutch corporation

KOREAN AIRLINES

L-3 COMMUNICATIONS CORPORATION

L-3 COMMUNICATIONS CORPORATION SECURITY AND DETECTION SYSTEMS

L-3 COMMUNICATIONS HOLDINGS, INC.

8                                                        **EXHIBIT 1**

LESLIE E. ROBERTSON ASSOCIATES

LUFTHANSA, a German corporation

MAGNUSSON KLEMENCIC ASSOCIATES

MASSACHUSETTS PORT AUTHORITY

METROPOLITAN WASHINGTON AIRPORT AUTHORITY

MIDWEST EXPRESS AIRLINES

MINORU YAMASAKI ASSOCIATES

NATIONAL AIRLINES

NORTHWEST AIRLINES

PAN AMERICAN AIRWAYS

PINKERTON'S, INC.

PORT AUTHORITY OF NEW YORK & NEW JERSEY

QANTAS AIRWAYS LIMITED

QUANTUM MAGNETICS, INC.

SAUDI ARABIAN AIRLINES, a Saudi Arabian corporation

SCANDINAVIAN AIRLINES SYSTEM, SAS, a Swedish corporation

SECURICOR PLC

SECURITAS AB

SILVERSTEIN PROPERTIES, INC.

SKILLING WARD MAGNUSSON

SWISS, a Swiss corporation

SWISSAIR TRANSPORT COMPANY

TACA INTERNATIONAL AIRLINES, an El Salvador corporation

9

EXHIBIT 1

TEM ENTERPRISES d/b/a CASINO EXPRESS

THE BOEING COMPANY

TISHMAN REALTY & CONSTRUCTION CO., INC.

UAL CORPORATION

UNITED AIR LINES, INC.

US AIRWAYS, INC.

VIRGIN ATLANTIC AIRWAYS LTD, a United Kingdom corporation

WORLD TRADE CENTER PROPERTIES LLC

10                                    **EXHIBIT 1**

**Lester, LeAnn C.**

| | |
|---|---|
| **From:** | McNamar, Eric [emcnamar@condonlaw.com] |
| **Sent:** | Thursday, January 10, 2008 5:18 PM |
| **To:** | Lester, LeAnn C |
| **Cc:** | Archambault, Nicole A. |
| **Subject:** | RE: Teague Stipulation and Release |

LeAnn:

We do not agree to the changes below.

Eric

---

**From:** Lester, LeAnn C [mailto:llester@motleyrice.com]
**Sent:** Thursday, January 10, 2008 4:47 PM
**To:** McNamar, Eric
**Cc:** Archambault, Nicole A.
**Subject:** Teague Stipulation and Release

Eric,

Mary Schiavo has reviewed the draft stipulation and release for the Teague case attached to your 10/26/07 email.  We are requesting the following changes:

**Stipulation and Release**

1)   The amount paid by the insurers of American and AMR to be deducted from the settlement amount should be $25,000.00, as in all other flight 77 cases, not $178,078.00 as stated.  Joe Rice has confirmed that the judgment awarded by the court in the amount of $153,078.00 on 8/14/07 for this case was never discussed during the settlement negotiations and the parties did not agree that a deduction would be made for this amount from the final settlement.

**Release only**

2)   page 4,  line 3, delete **'RELEASOR acknowledges that'**

3)   page 4,  line 4, insert **'state they'** after responsibility and

Please let me know if you have any questions.

LeAnn C. Lester
Paralegal to Mary Schiavo
Motley Rice LLC
llester@motleyrice.com

2/6/2008

Office - 843-216-9374



Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

# AmericanAirlines®

September 16, 2001

To the family of ██████████████████

Dear ██████████, on behalf of the ██████████ family,

On behalf of all the employees of American Airlines, we wish to express our sincere condolences to you and your family at this difficult time.

We also realize that you may be facing unanticipated expenses and we would like to offer our assistance. Therefore, enclosed is a check in the amount of $25,000.00 per passenger. It is our sincere hope that this payment, along with the assistance of our Care Team, will help you and your family in avoiding any immediate economic hardships.

This payment is an advance against any future sum that may be realized by settlement or judgment. Please be assured that by accepting this payment you are not waiving any rights or claims against any person or any entity.

Again, please accept our heartfelt condolences at this time.

Very truly yours,

AMERICAN AIRLINES, INC.