UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
                              :  No.: 21 MC 97 (AKH)
                              :
                              :  THIS DOCUMENT RELATES TO:
IN RE SEPTEMBER 11 LITIGATION :
                              :  Teague v. American Airlines, Inc., *et al.*
                              :  03 CV 6800 (AKH)
                              :
                              :
                              :
                              :
------------------------------x


**MEMORANDUM OF LAW OF DEFENDANTS AMERICAN AIRLINES, INC.,
AMR CORPORATION, AND ARGENBRIGHT SECURITY, INC.
IN OPPOSITION TO PLAINTIFF'S MOTION FOR ENFORCEMENT
<u>OF SETTLEMENT AGREEMENT AMONG THE PARTIES</u>**


SIMPSON THACHER & BARTLETT LLP
Joseph F. Wayland (JFW 7549)
425 Lexington Avenue
New York, New York 10017-3954
Tel.: (212)455-2000

Attorneys for Defendant
ARGENBRIGHT SECURITY, INC

CONDON & FORSYTH LLP
Desmond T. Barry, Jr. (DB 8066)
Times Square Tower
7 Times Square
New York, New York 10036
Tel.: (212)894-6770

- and -

DEBEVOISE & PLIMPTON LLP
Roger E. Podesta (RP 1749)
919 Third Avenue
New York, New York 10022
(212) 909-6000

Attorneys for Defendants
AMERICAN AIRLINES, INC. and
AMR CORPORATION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS.. .................................................................................................2

ARGUMENT.........................................................................................................................5

I. THE SETTLEMENT SHOULD BE ENFORCED SUBJECT TO DEDUCTION FOR AMERICAN'S 100,000 SDR ADVANCE PAYMENT.......................................................5

II. PLAINTIFF'S REQUEST FOR A TRIAL DATE SHOULD BE DENIED......................10

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**CASES:**

*Adasar Group, Inc. v. Netcom Solutions Int'l, Inc.*, No. 01 Civ. 0279, 2003 WL 1107670
(S.D.N.Y. Mar. 13, 2003) ...................................................................................................7

*Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 47 F. Supp. 2d 239
(S.D.N.Y. 2006) ..................................................................................................................6

*Canada Life Ins. Assurance Co. v. Guardian Life Ins. Co. of Am.*,
242 F. Supp. 2d 344 (S.D.N.Y. 2003) .................................................................................7

*Linder v. Am. Express Corp.*, No. 06 Civ. 3834, 2007 WL 1623110
(S.D.N.Y. June 5, 2007) ......................................................................................................6

*Maddox v. American Airlines, Inc.*, 115 F. Supp. 2d 993, 994 (E.D. Ark. 2000)
*aff'd in part, rev'd in part*, 298 F.3d 694, 700 (8th Cir. 2000)............................................9

*S. New Jersey Rail Group, LLC v. Lumbermens Mutual Casualty Co.*,
No. 06 Civ. 4946, 2007 WL 2296506 (S.D.N.Y. Aug. 13, 2007) .......................................6

**TREATIES & REGULATIONS:**

Convention for Certain Rules Relating to International Transportation by Air,
concluded at Warsaw, Poland, October 12, 1929, 49 Stat. 3000, T.S. No. 876,
137 L.N.T.S. 11 (1934), *reprinted in note following* 49 U.S.C. 40105
("Warsaw Convention") Article 17.......................................................................................3

Defendants American Airlines, Inc. ("American"), AMR Corporation, and Argenbright Security, Inc. ("Argenbright") (hereinafter the "Settling Defendants") respectfully submit this Memorandum of Law in opposition to Plaintiff's motion for enforcement of a settlement agreement among the parties.

## PRELIMINARY STATEMENT

Plaintiff Elaine Teague seeks to enforce a settlement agreement in order to achieve terms never agreed by the Settling Defendants. Plaintiff is attempting to collect not only the full amount of a generous settlement, but an additional 100,000 SDRs that she received from American as an advance payment.

Ignoring the relevant facts and applicable law, Plaintiff's motion attempts to confuse the issue before the Court by leveling unsupportable charges that American engaged in "unethical strong arm tactics," employed "threats," did not "act in good faith," and slipped "new terms" into the settlement documents "that were not in any other settlement documents." *See* Plaintiff's Motion for Enforcement of Settlement Agreement Between the Parties at 5, 6, 9. Personal (and baseless) attacks aside, if the Court finds that the parties reached an enforceable settlement agreement, it will be necessary for the Court to focus on the meaning of the term "advance" as used by American in the July 20, 2005 Settlement Terms and Conditions letter signed and agreed to by counsel for Plaintiff. In such event, the relevant extrinsic evidence clarifies any ambiguity regarding the parties' intent concerning the term "advance" as used in the settlement documentation. The accompanying Declaration of Desmond T. Barry, Jr. and the attached exhibits (the "Barry Decl.") establish beyond doubt that Plaintiff was aware at all times of American's intent to treat the 100,000 SDR payment as an advance of any subsequent payment of settlement funds, and never objected to that intended treatment until this dispute (which arose

1

nearly three months after the required Teague settlement documentation was provided to Plaintiff's counsel). Based on this failure to object and the prior course of dealings between counsel for Plaintiff and Defendants, including the negotiation and payment of numerous settlements without any specific negotiation of deduction for advances (*i.e.*, deduction occurred as a matter of course), the Court should find that the settlement agreement is enforceable and the 100,000 SDR payment is an advance to be credited against the settlement in favor of American.

## STATEMENT OF FACTS

Throughout its negotiations with the Motley Rice firm, American has always made clear its position that "all sums advanced" are to be deducted from any subsequent final settlement payments. *See* Letter from Desmond T. Barry, Jr. to Joseph F. Rice dated July 20, 2005 ("Settlement Terms and Conditions Letter"), attached as Exhibit "A" to Barry Decl. In most cases, the sum advanced involved a          payment made by American to the family of each passenger aboard American Flight 11 and Flight 77 on September 11, 2001. In connection with the first 9/11 settlement reached with the Motley Rice firm in 2006, Plaintiff's counsel first objected, but then agreed, to the deduction for advance payments in all future settlements. Barry Decl. at ¶ 6. All subsequent passenger settlements have included advance payment deductions, and Plaintiff's counsel never objected or even raised the issue until almost three months after conclusion of the group settlement that included the Teague case. *Id.*

Plaintiff Elaine Teague's 31-year-old, single daughter was traveling to Australia on American Flight 77 on September 11, 2001, and was killed when terrorists crashed the flight into

2

the Pentagon. Because Ms. Teague was traveling on an international ticket, the Warsaw Convention[1] applies to Plaintiff's lawsuit arising out of the death of her daughter.

Plaintiff moved for summary judgment against American in March 2007, arguing that American was strictly liable for unlimited compensatory damages as well as attorneys' fees and costs pursuant to the Warsaw Convention. Although American did not contest liability for compensatory damages below 100,000 SDRs[2], it successfully opposed that part of the motion seeking damages above 100,000 SDRs and attorney's fees. *See* Memorandum of Law of Defendant American Airlines, Inc. in Opposition to Plaintiffs' Motion for Summary Judgment (Docket No. 81); Amended Opinion and Order Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment (Warsaw Convention) dated August 14, 2007 (Docket No. 88) (hereinafter "Partial Summary Judgment Order"). The Court entered partial summary judgment on July 30, 2007 and then entered an amended order on August 14, 2007.

In response to the partial summary judgment order, on August 22, 2007 counsel for American forwarded Plaintiff's counsel a document entitled "100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising from American Airlines Flight 77 in Arlington, Virginia on September 11, 2001" (hereinafter "the Draft Partial Release"). *See* E-mail and attachment from Eric McNamar to Mary Schiavo, counsel for Plaintiffs, dated August 22, 2007, attached as Exhibit "C" to Barry Decl. The Draft Partial Release communicated

---

[1] Convention for Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, October 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted in note following* 49 U.S.C. 40105 ("Warsaw Convention").

[2] SDR (Special Drawing Right) is an international basket of currencies established by the International Monetary Fund. *See Special Drawing Rights – A Factsheet*, http://www.imf.org/external/x10/changecss/changestyle.aspx. The dollar equivalent of the SDR fluctuates daily, and the daily conversion rate can be obtained from the International Monetary Fund Website at http://www.imf.org. *Id.*

3

unequivocally, and no fewer than ten times, American's clear intent to treat the 100,000 SDR payment as an "advance" towards any future settlement or judgment.

Upon receipt of the Draft Partial Release, Ms. Schiavo questioned the need for such a document in light of the Court's amended order of August 14, 2007, and also stated that the document contained "many concessions the judge did not order." *See* E-mail from Mary Schiavo to Eric McNamar dated August 23, 2007, attached as Exhibit "D" to the Barry Decl. Ms. Schiavo, however, never objected to the Draft Partial Release based on the advance deduction language, and never identified any specific provisions of the Draft Partial Release that were problematic to Plaintiff. Barry Decl. at ¶¶ 9, 10. At all times, her objections were to the propriety of a Release considering that the advance payment was being made pursuant to a Partial Summary Judgment Order. Barry Decl. at ¶ 10. As a result of these objections, American paid the 100,000 SDRs pursuant to a Satisfaction of Partial Judgment. *See* Satisfaction of Partial Judgment dated October 12, 2007 (Docket No. 92).

After the payment of the 100,000 SDRs, settlement negotiations continued in the Teague case and the other unsettled Motley Rice Flight 77 cases. On October 23, 2007, the parties reached an agreement to settle a group of eight cases, including Teague. *See* Letter from Joseph F. Rice to Desmond T. Barry, Jr. dated October 24, 2007, attached as Exhibit "E" to Barry Decl. Neither party discussed at any time during these negotiations American's previously (and consistently) expressed intent to credit the 100,000 SDR payment in the Teague case. *Id.*

On October 26, 2007, American sent Plaintiff's counsel a letter agreeing to settlement of the Teague case subject to the Settlement Terms and Conditions letter previously signed by the parties and to the signature and return of the required settlement documentation – the Confidential Stipulation of Settlement and the Confidential Release – both of which included a

4

credit for the 100,000 SDR advance payment. *See* Letter from Desmond T. Barry, Jr. to Joseph F. Rice dated October 26, 2007, attached to the Barry Decl. as Exhibit "F"; E-mail from Eric McNamar to Donald Migliori, et al. dated October 26, 2007, attached to the Barry Decl. as Exhibit "G."

Plaintiff's counsel did not object to the settlement documents until January 10, 2008, almost three months after receipt thereof. *See* E-mail from LeAnn Lester to Eric McNamar dated January 10, 2008, attached to the Barry Decl. as Exhibit "H." Despite an attempt to resolve the dispute,[3] the draft Confidential Stipulation of Settlement remains unsigned, and none of the other 9/11 settlement requirements have been met.

## ARGUMENT

### I.

### THE SETTLEMENT SHOULD BE ENFORCED SUBJECT TO DEDUCTION FOR AMERICAN'S 100,000 SDR ADVANCE PAYMENT

Ignoring the hyperbole directed at counsel for American, Plaintiff's motion is based on the premise that the correspondence between the parties constitutes an enforceable settlement agreement because defense counsel's October 26, 2007 letter was an "acceptance" of Plaintiff's October 24, 2007 "offer" to settle for         . Plaintiff further argues that the term "advance," as used in the Settlement Terms and Conditions letter and defined by Black's Law

---

[3] Plaintiff's counsel asserts that "attempts to resolve this conflict with defendants have been in vain" and that defendants will not "further discuss the issue." *See* Plaintiff's Motion for Enforcement of Settlement Agreement Between the Parties at 2. American initially did attempt to resolve the dispute, but terminated discussions after Ms. Schiavo responded with unfounded, hysterical charges of ethical misconduct on the part of counsel for American. *See* Letter from Desmond T. Barry, Jr. to Joseph F. Rice dated January 24, 2008, attached to the Barry Decl. as Exhibit "K"; Letter from Mary F. Schiavo to Desmond T. Barry, Jr. dated January 25, 2008, attached to Barry Decl. as Exhibit "L." After receipt of Ms. Schiavo's letter, it became clear to American that further discussions would be fruitless.

Dictionary, unambiguously excludes American's 100,000 SDR payment pursuant to the Court's partial summary judgment order.

Settlement agreements are construed according to contract law principles. *See Linder v. Am. Express Corp.*, No. 06 Civ. 3834, 2007 WL 1623110, at *3 n.1 (S.D.N.Y. June 5, 2007) ("In practice, both the Court of Appeals for the Second Circuit and district courts have applied the highly developed New York State law of contracts to determine the validity of alleged settlement agreements allegedly entered into in this state . . . ."). As with any contract, a valid settlement agreement must consist of an offer, acceptance, consideration, mutual assent, and an intent to be bound. *See Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006). The fundamental precept of a valid contract is a meeting of the minds of the parties on all essential terms, and whether the parties have reached a meeting of the minds on all essential terms is a question of fact resolved by analyzing the totality of the circumstances. *Id.* If there is substantial uncertainty or ambiguity whether both parties have mutually assented to all material terms, no enforceable contract exists. *Id.* (refusing to enforce settlement agreement because the parties were aware that they lacked a common understanding of a material term of the proffered release before the purported acceptance).

If this Court accepts the argument that the parties' correspondence constitutes a binding, enforceable settlement agreement, it then will be necessary for the Court to determine whether the term "advance" as used in the Settlement Terms and Conditions letter is ambiguous and, more specifically, whether that term, as understood and intended by the parties at the time of the agreement, includes American's 100,000 SDR payment.

Contract language is deemed ambiguous if it is reasonably susceptible to more than one meaning. *S. New Jersey Rail Group, LLC v. Lumbermens Mutual Casualty Co.*, No. 06 Civ.

4946, 2007 WL 2296506, at *8 (S.D.N.Y. Aug. 13, 2007). Where parties are in dispute over differing meanings or interpretations of a particular contractual provision and the intent of the parties cannot be determined from the language of the contract itself, interpretation of the contract becomes a question of fact and consideration of extrinsic evidence is permissible, including "evidence surrounding the negotiation and execution of the ambiguous terms, and the subsequent course of conduct of the parties." *Adasar Group, Inc. v. Netcom Solutions Int'l, Inc.*, No. 01 Civ. 0279, 2003 WL 1107670, at *7 (S.D.N.Y. Mar. 13, 2003) (collecting cases). The party who moves to enforce the agreement in accordance with her own interpretation has the burden to demonstrate that the other party knew what the moving party meant. *Canada Life Ins. Assurance Co. v. Guardian Life Ins. Co. of Am.*, 242 F. Supp. 2d 344, 358 (S.D.N.Y. 2003) (finding that any ambiguity regarding the meaning of terms in reinsurance contract was not substantial enough to void contract when "the parties had a two-and-a-half year course of dealing and certain terms were agreed upon and never previously disputed. Only the meaning of such terms is now in contention.").

In each of the 9/11 passenger wrongful death settlements that the Settling Defendants reached with the Motley Rice firm, American deducted a ____ advance payment made to the family of each passenger from the final settlement payment. *See* Barry Decl. at ¶ 5. In addition to making the same deduction here, American notified Plaintiff of its intent to deduct the 100,000 SDR partial summary judgment payment from any subsequent settlement or judgment when it sent to Plaintiff the Draft Partial Release in August of 2007. *See* Exhibit "C" to Barry Decl.; Barry Decl. at ¶ 8. That intention was and is consistent with the Settlement Terms and Conditions Letter, which expressly provides that "all sums advanced" are to be deducted from final settlement payments. *See* Exhibit "A" to Barry Decl. While the parties could have

7

negotiated different terms in the Teague case from those set forth in the Settlement Terms and Conditions Letter, the parties did not do so, nor did Plaintiff's counsel ever object to or question American's stated intent to treat the 100,000 SDR payment as an advance at any time during the group settlement negotiations. *See* Barry Decl. at ¶¶ 9, 10. In fact, by asserting that American attempted to "mischaracterize" the payment as an advance from the beginning, Ms. Schiavo concedes awareness of American's intent to treat the 100,000 SDR payment as an advance from the outset. *See* Memorandum of Law in Support of Plaintiff's Motion for Enforcement of Settlement Agreement Between the Parties at 15.

In her attempt to avoid the 100,000 SDR deduction, Ms. Schiavo attempts to rely somehow on her vague, unspecified objections to the Draft Partial Release proffered by American before the 100,000 SDR payment. *See* Exhibit "D" to Barry Decl. Those objections can hardly be offered as sufficient indicia of disagreement concerning the term "advance" when no objection to (or even mention of) that term ever was raised by Plaintiff's counsel. *See* Plaintiff's Motion for Enforcement of Settlement Agreement Between the Parties at 3-4; E-mail from Mary Schiavo to Eric McNamar dated August 23, 2007, attached to the Barry Decl. as Exhibit "D."

Had counsel for American ever been made aware that Plaintiff objected to American treating the 100,000 SDR payment as an "advance," American would have raised the issue during the settlement negotiations or in the subsequent exchange of letters acknowledging the purported settlement. It is notable that Plaintiff's counsel never specifically raised this now-asserted objection to such treatment at any time during negotiations and, in fact, never specifically objected until almost three months after the Settling Defendants sent counsel the required draft settlement papers.

Clearly, the parties have differing interpretations of the term "advance." American has always used the term broadly to include all sums paid before a settlement or judgment. Plaintiff now asserts a more limited definition. Based on the foregoing, the meaning of the term "advance" as used by the parties is ambiguous and the Court must look to relevant extrinsic evidence surrounding the negotiation of the term and the course of conduct between the parties.

Counsel for American have negotiated and concluded more than twenty settlements with Motley Rice, and in the majority of the cases, American applied an advance payment to reduce the final settlement payment without having to negotiate the reduction. *See* Barry Decl. at ¶¶ 5, 6. Consistent with the Settlement Terms and Conditions Letter and with the prior dealings with Plaintiff's counsel in connection with the proffered Draft Settlement Release, counsel for American notified Plaintiff's counsel that American intended to treat the 100,000 SDR payment as an advance reducing any final settlement payment. Barry Decl. at ¶ 8; Exhibit "C" to Barry Decl. At no time during discussions surrounding the Draft Settlement Release, or subsequently during the group settlement negotiations, did Plaintiff's counsel ever take issue with the meaning of the term "advance" or object to American's stated position that the 100,000 SDR payment was to be treated as such. *See* Barry Decl. at ¶¶ 9, 10, 12. If the Teague case had proceeded to trial and Plaintiff obtained a judgment, American unquestionably would have been entitled to credit the payment of 100,000 SDRs against the amount due. *See Maddox v. American Airlines, Inc.*, 115 F. Supp. 2d 993, 994 (E.D. Ark. 2000) ("[T]he Court ruled from the bench that the Defendant would be given a credit against any Judgment in an amount equal to the special drawing rights (SDR) payment made to the Plaintiff pursuant to the terms of the Warsaw Convention Treaty. . . . American is entitled to a credit for its SDR payment to [Plaintiff] . . . ."), *aff'd in part, rev'd in part*, 298 F.3d 694, 700 (8th Cir. 2000).

Based upon the relevant extrinsic evidence surrounding the negotiations and the course of conduct among the parties and their counsel, the Court should adopt the obvious interpretation of "advance" and reduce the ⬛⬛⬛ settlement by the 100,000 SDRs previously paid to Plaintiff by American.

## II.

### PLAINTIFF'S REQUEST FOR A TRIAL DATE SHOULD BE DENIED

Should the Court deny Plaintiff's motion, Plaintiff's request for a trial date need not be considered in light of the fact that all unsettled cases "will be transferred to the 21 MC 101 docket to proceed in normal course with cases in that docket." Transcript of February 8, 2008 Conference at 17:1-4, In re September 11 Litigation, 21 MC 97.

### CONCLUSION

Plaintiffs' motion should be denied in all respects and the Court should enforce the settlement in the amount of ⬛⬛⬛ less the 100,000 SDRs previously paid to Plaintiff by American.

Dated: New York, New York
       February 22, 2008

10

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Tel.: (212)455-2000
Fax: (212)455-2502
JWayland@stblaw.com

By: _____
Joseph F. Wayland (JFW 7549)

Attorneys for Defendant
ARGENBRIGHT SECURITY, INC.

CONDON & FORSYTH LLP
7 Times Square
New York, New York  10036
Tel.:  (212) 490-9100
Fax:  (212) 370-4453
DBarry@condonlaw.com

By: _____
Desmond T. Barry, Jr., Esq. (DB 8066)

-and-

DEBEVOISE & PLIMPTON LLP
Roger E. Podesta
919 Third Avenue
New York, New York 10022
Tel.: (212) 909-6000
Fax: (212) 909-6836
REPodesta@debevoise.com

Attorneys for Defendant
AMERICAN AIRLINES, INC. and
AMR CORPORATION

11