UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

          :  No.: 21 MC 97 (AKH)
          :
          :  **THIS DOCUMENT RELATES TO:**

IN RE SEPTEMBER 11 LITIGATION    :

          :  **Teague v. American Airlines, Inc.,** *et al.*
          :  **03 CV 6800 (AKH)**
          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## DECLARATION OF DESMOND T. BARRY, JR.
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR ENFORCEMENT
## OF SETTLEMENT AGREEMENT AMONG THE PARTIES

       1.     I am an attorney and member of the firm of Condon & Forsyth LLP, co-counsel

for defendants American Airlines, Inc. ("American") and AMR Corporation ("AMR") in this

litigation.  I have participated in the defense of this litigation since its inception and am fully

familiar with all prior pleadings and proceedings.

       2.     I submit this Declaration in opposition to Plaintiff Elaine Teague's motion for

enforcement of a settlement agreement among the parties in *Teague v. American Airlines, Inc.,*

03 Civ. 6800 (AKH).

       3.     On September 16, 2001, American made a voluntary advance payment of

to the families of each passenger aboard Flights 77 and 11 when those flights were hijacked by

terrorists on September 11, 2001.  The letter enclosing the check expressly notified recipients

that the payment constituted an advance on any future sum reached through settlement or

judgment.

       4.     Before American and Argenbright (the "Settling Defendants") entered into

settlement negotiations with Plaintiff's counsel in 2005, I sent a letter outlining the Settling

Defendants' specific conditions of settlement to Joseph F. Rice, counsel for Plaintiff. Letter from Desmond T. Barry, Jr. to Joseph F. Rice dated July 20, 2005 ("Terms and Conditions Letter"), attached as Exhibit "A." The letter explains that, in addition to other conditions, "[a]ll sums advanced by a defendant will be deducted from their share of the settlement amount payable under the release." *Id.* at ¶ 6. Mr. Rice co-signed the letter the same day, confirming his agreement to the conditions on behalf of all Motley Rice clients involved in the September 11, 2001 litigation. *Id.*

5.    Over the course of more than two years of settlement negotiations and mediations, American has settled twenty-five cases with the Motley Rice firm – including sixteen cases under the direction of Mary F. Schiavo as lead counsel for the settling plaintiffs – and has made final settlement payments in twenty of those cases. In each of the settlements that have been paid to date, Ms. Schiavo or her associate signed and returned a Confidential Stipulation of Settlement. Each signed Confidential Stipulation of Settlement contains a provision similar to the one Plaintiff now disputes, stating that plaintiff agrees that all sums previously paid will be deducted from the final settlement amount. *See, e.g.*, Confidential Stipulation of Settlement at ¶ 1, attached as Exhibit "B."

6.    In connection with the first 9/11 settlement reached with the Motley Rice firm in 2006, Plaintiff's counsel objected, but then agreed, to the deduction for advance payments. All subsequent passenger settlements negotiated with Motley Rice have included advance payment deductions, and no attorney from that firm ever objected to such deductions or even raised the issue, until three months after conclusion of the group settlement that included the Teague case.

7.    On March 21, 2007, Plaintiff Elaine Teague and another plaintiff moved for summary judgment pursuant to Article 17 of the Warsaw Convention, asserting that American

was strictly liable for full compensatory damages as well as attorneys' fees and costs. *See* Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment Against Defendant American Airlines, Inc. (Docket No. 79). American did not contest liability for damages below 100,000 SDRs, but did contest, and defeat, the motion on all other issues. *See* Amended Opinion and Order Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment (Warsaw Convention) dated August 14, 2007 (Docket No. 88) ("Partial Summary Judgment Order").

8.      On August 22, 2007, my associate, Eric McNamar, sent a document entitled "100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising From the American Airlines Incident at Arlington, Virginia on September 11, 2001" (the "Draft Partial Release") to Plaintiff's counsel, Ms. Mary Schiavo. *See* E-mail and attachment from Eric McNamar to Mary Schiavo dated August 22, 2007, attached as Exhibit "C." The Draft Partial Release unequivocally states American's intent to treat the 100,000 SDR payment as an advance towards any future settlement or judgment no fewer than ten times. *Id.*

9.      Ms. Schiavo questioned the Draft Partial Release on the grounds that it contained "many concessions the judge did not order." *See* E-mail from Mary Schiavo to Eric McNamar dated August 23, 2007, attached as Exhibit "D." However, Plaintiff's counsel never identified which portion(s) of the draft partial release she found objectionable, nor did she return any suggested edits or other proposals in response.

10.     On September 13, 2007, during the continuing settlement negotiations regarding the remaining unsettled Flight 77 cases handled by Motley Rice, I had a telephone conversation with Ms. Schiavo regarding the Draft Partial Release. Even though she said that her client refused to sign the document, at no time did she state that this refusal was due to American's

3

intent to treat the 100,000 SDR payment as an advance. Her objections were to the propriety of using a Release considering that payment was being made pursuant to a partial summary judgment order.

11.    American ultimately agreed to pay the 100,000 SDRs pursuant to the partial summary judgment order on October 12, 2007. *See* Satisfaction of Partial Judgment dated October 12, 2007 (Docket No. 92).

12.    On October 23, 2007, Joseph Rice, Esq. of the Motley Rice firm and counsel for American and Argenbright Security, Inc. reached an agreement to settle a group of eight cases, including the Teague case. During the negotiation of that group settlement, neither party discussed whether American intended to credit the 100,000 SDR payment in the Teague case against the final settlement amount. The following day, Mr. Rice sent a letter to me explaining that he had the authority to settle the Teague case for            , "with the understanding that the money will be paid as soon as possible." *See* Letter from Joseph F. Rice to Desmond T. Barry, Jr. dated October 24, 2007, attached as Exhibit "E."

13.    After receiving that letter, I sent a reply to Mr. Rice confirming our agreement to settle for that amount, subject to the July 20, 2005 Terms and Conditions Letter. *See* Letter from Desmond T. Barry, Jr. to Joseph F. Rice dated October 26, 2007, attached as Exhibit "F." The same day, Mr. McNamar sent draft Confidential Stipulations of Settlement and draft Confidential Releases for each of the eight cases settled in this group, including the Teague case, to Ms. Schiavo and other attorneys and paralegals at Motley Rice. *See* E-mail from Eric McNamar to Don Migliori, et al. dated October 26, 2007, attached as Exhibit "G." Both documents contained a provision explaining that the sums advanced "shall be deducted from the settlement amount payable" by American and AMR. *See e.g.*, Exhibit "B" at 1.

4

14.     Not until January 10, 2008, did Ms. Schiavo, via her paralegal, LeAnn Lester, ask

Mr. McNamar to amend the draft settlement documents to exclude credit for American's

100,000 SDR payment American made on October 12, 2007. *See* E-mail from LeAnn Lester to

Eric McNamar dated January 10, 2008, attached as Exhibit "H." This e-mail was the first time

that Plaintiff's counsel objected to American's long-declared intent to take credit for the 100,000

SDR advance – close to three months after the case was settled. Per my instructions, Mr.

McNamar declined to incorporate the requested amendment. *See* E-mail from Eric McNamar to

LeAnn Lester dated January 10, 2008, attached as Exhibit "I."

15.     On January 21, 2008, I received a letter from Mr. Rice explaining his position

why American should not claim credit for the 100,000 SDR payment. *See* Letter from Joseph F.

Rice to Desmond T. Barry, Jr. dated January 21, 2008, attached as Exhibit "J." I responded by

letter to Mr. Rice dated January 24, 2008, reminding him that American has consistently notified

all parties to the settlement negotiations of its intent to deduct all sums it previously paid from

any final settlement amount. *See* Letter from Desmond T. Barry, Jr. to Joseph F. Rice dated

January 24, 2008, attached as Exhibit "K."

16.     Seemingly in response, I received a letter from Ms. Schiavo on January 25, 2008,

in which she cast personal aspersions on myself and Mr. McNamar. *See* Letter from Mary F.

Schiavo to Desmond T. Barry, Jr. dated January 25, 2008, attached as Exhibit "L." Upon receipt

of Ms. Schiavo's letter, I concluded that these negotiations could no longer proceed on a

professional level and declined to participate in any further dialogue. *See* Letter from Desmond

5

T. Barry, Jr. to Mary F. Schiavo dated January 28, 2008, attached as Exhibit "M."

I declare under penalty of perjury that the foregoing is true and correct.

_____
Desmond T. Barry, Jr. (DB 8066)

Sworn to before me this
22nd day of February 2008

_____
Notary Public

MARIA PAGAN
Notary Public, State of New York
No. 01PA4670337
Qualified in Queens County
Commission Expires 10/31/___ 2010

# Exhibit A

# CONDON & FORSYTH LLP

NEW YORK
LOS ANGELES
WASHINGTON, DC

Direct Dial: (212) 894-6770
Direct Fax: (212) 370-4483
dbarry@condonlaw.com

**PRIVATE & CONFIDENTIAL**

July 20, 2005

Joseph F. Rice, Esq.
Motley Rice LLC
28 Bridgeside Blvd., P.O. Box 1792
Mount Pleasant, SC 29465

Re:    September 11, 2001
       Terms of Settlement Negotiations
       C & F Ref: DTB/CRC/28079

Dear Joe:

Before the aviation defendants convey settlement offers in appropriate September 11th cases, please review the following conditions of settlement and execute the second page indicating your agreement to the same:

1.    Plaintiffs, claimants, their counsel of record and co-counsel agree that offers of settlement are confidential, are for their exclusive knowledge and the use of their experts and consultants, and should not be disclosed by them to anyone else. Likewise, defendants shall not share any information concerning settlement offers with any other plaintiffs' counsel and no party involved in the negotiations will reveal any settlement information or the substance of any discussions during negotiations to the media.    Offers and negotiations are not admissible under Federal Rule of Evidence 408 or like state law.

2.    Offers generally stay open for 45 days, unless withdrawn before then, and are deemed withdrawn if not accepted.

3.    Offers and settlements are contingent upon:  (a) aviation defendants' receipt of mutually acceptable releases; (b) dismissal with prejudice of all proceedings against aviation defendants, commenced by anyone, arising out of the events of September 11th relating to the particular passenger, decedent or claimant (except Surrogate's Court proceedings); (c) the Court issuing an order approving the settlement and meeting the requirements of paragraph 4(b) of this letter; and (d) plaintiffs' or claimants' satisfaction of all liens.

CONDON & FORSYTH LLP
Joseph F. Rice, Esq.
July 20, 2005
Page 2

4.  Settlement funds should be available to be paid within 45 days after: (a) defendants receive all of the above-described documents (with the exception of a dismissal with prejudice which will be exchanged simultaneously with payment of the settlement funds) and (b) an order is issued by the United States District Court for the Southern District of New York or an appropriate federal appellate court, not subject to any further appellate review, providing that the amount of the settlement is reasonable and that the full amount of any payments pursuant to the settlements will be credited against the limitation of liability provided by Section 408(a)(1) of the ATSSSA, as amended, or any other statute. Notwithstanding the provisions of subsections 4(a) and 4(b) above, if payment is not made to plaintiffs within 45 days of delivery of the documents referenced in paragraph 3, the settlement funds shall be placed in an interest bearing escrow account maintained by defendants for the benefit of plaintiffs.

5.  Statutes providing for interest on settlement proceeds are agreed to be inapplicable.

6.  All sums advanced by a defendant will be deducted from their share of the settlement amount payable under the release. Prior payments for amounts such as funeral expenses will be recited in the release, but the amounts for these prior payments will be deemed paid.

7.  Parties bear their own fees, costs and expenses (e.g., plaintiff's guardian *ad litem* fees).

8.  Advise us in writing as soon as practicable if plaintiffs are interested in structuring part of the settlement. If offered, structures will be written only by companies approved by defendants and only brokers approved by defendants will be involved.

Lastly, please contact us if you have any questions regarding the settlement process.

Sincerely yours,

Desmond T. Barry, Jr.

CONDON & FORSYTH LLP
    Joseph F. Rice, Esq.
    July 20, 2005
    Page 3

The conditions of settlement listed above are agreed to by:

_____

On behalf of plaintiff/claimant:

_____

Date: 7-20-05

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- x
                                            :
                                            :   No.: 21 MC 97 (AKH)
                                            :
                                            :
IN RE SEPTEMBER 11 LITIGATION               :   **THIS DOCUMENT RELATES TO:**
                                            :   **03 CV 6800 (AKH)**
                                            :   **ELAINE TEAGUE v.**
                                            :   **AMERICAN AIRLINES, INC., et al.**
                                            :
                                            :
------------------------------------------- x

## CONFIDENTIAL STIPULATION OF SETTLEMENT

By and through their attorneys, Defendants AMERICAN AIRLINES, INC. (hereinafter

"AMERICAN"), AMR CORPORATION (hereinafter "AMR") and ARGENBRIGHT

SECURITY, INC. (hereinafter "ARGENBRIGHT"), and ELAINE TEAGUE, Individually, and

as Personal Representative of the Estate of SANDRA TEAGUE, and on behalf of all survivors,

heirs and next of kin of SANDRA TEAGUE, deceased (hereinafter "PLAINTIFF"), hereby

agree:

1.      In consideration of the sum of

        to be paid by the Insurers of AMERICAN and AMR, and the sum of

                                        to be paid by the Insurers of

ARGENBRIGHT, for a total of the payments to PLAINTIFF of

                        , PLAINTIFF agrees to release and discharge AMERICAN,

AMR, ARGENBRIGHT and any and all other defendants named in any of the individual or

Master Complaints filed under civil action number 21 MC 97 (AKH), and agrees to execute a

Confidential Release in the form attached hereto as "Exhibit 1".

        PLAINTIFF agrees that the sum of

                                                paid  by  the  insurers  of

1

AMERICAN and AMR, shall be deducted from the settlement amount payable by AMERICAN and AMR.

2.    The parties to this Agreement recognize the legitimate interest of AMERICAN, AMR and ARGENBRIGHT in ensuring that the full amounts paid pursuant to this Agreement count against the limits on their respective liability established by Section 408(a)(1) of the Air Transportation Safety and System Stabilization Act ("ATSSSA").  AMERICAN, AMR and ARGENBRIGHT are not willing to enter into this Agreement absent that assurance.  The parties therefore agree that:

(a)    AMERICAN, AMR and ARGENBRIGHT shall have no obligations hereunder, unless and until a final, non-appealable determination is issued by a court of competent jurisdiction confirming that all amounts paid hereunder count against the limits of liability established by Section 408(a)(1) of the ATSSSA; and

(b)    No settlement payments shall be made pursuant to this Agreement unless and until a final, non-appealable determination is issued by a court of competent jurisdiction confirming that all amounts to be paid hereunder count against the limits of liability established by Section 408(a)(1) of the ATSSSA.

3.    Within 21 days after execution of this Confidential Stipulation of Settlement, AMERICAN, AMR and ARGENBRIGHT shall seek from the United States District Court for the Southern District of New York or an appropriate federal appellate court the non-appealable determination described in paragraph "2".  The parties agree, and PLAINTIFF specifically consents, that the motion for the non-appealable final determination will include a request that

2

the Court dismiss with prejudice all proceedings by PLAINTIFF against AMERICAN, AMR and ARGENBRIGHT, and any and all other defendants named in any of the individual or Master Complaints filed under civil action number 21 MC 97 (AKH), including without limitation each of the defendants listed in "Appendix A" to the Confidential Release in the form attached hereto as "Exhibit 1" ("RELEASEES"), and all RELEASEES' parents, subsidiaries, affiliated corporations, partnerships, insurers, related business entities, officers, directors, employees, agents, heirs, executors, administrators, successors and assigns.

4.      Following execution of this Confidential Stipulation of Settlement, PLAINTIFF shall submit to Judge Alvin K. Hellerstein a Motion for a Compromise Order approving the settlement and the distribution of the settlement proceeds and authorizing PLAINTIFF to execute and deliver a Confidential Release in the form attached hereto as "Exhibit 1".

5.      Upon receipt of authorization from the Court, PLAINTIFF shall deliver to AMERICAN, AMR and ARGENBRIGHT an executed Confidential Release in the form attached hereto as "Exhibit 1".  The execution of said Confidential Release does not preclude PLAINTIFF from continuing any direct action filed against terrorists and/or sponsors of terrorism arising from or relating to the death of SANDRA TEAGUE as identified in *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:02-CV-01616, United States District Court, District of Columbia (JR); *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570; and *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:03-CV-09849, United States District Court, Southern District of New York (RCC).

6.      Subject to compliance with all conditions set forth above, within 30 days after the non-appealable determination described in paragraphs "2" and "3" is issued or within 30 days after receipt by counsel for AMERICAN, AMR and ARGENBRIGHT of the executed

3

Confidential Release, whichever is later, AMERICAN, AMR and ARGENBRIGHT'S insurers will pay to PLAINTIFF the settlement funds as indicated in the Confidential Release.  In the event that a court of competent jurisdiction declines to enter the final non-appealable determination referenced in paragraphs "2" and "3", this Confidential Stipulation of Settlement shall be void, and PLAINTIFF shall be entitled to reinstate her case against RELEASEES.

7.      The parties acknowledge that this Agreement is entered into solely for the purpose of amicably resolving the parties' dispute and the parties specifically acknowledge and agree that this Agreement does not constitute an admission of liability, responsibility or proportionate responsibility by any party.

8.      This Agreement and the performance thereunder shall be governed by and construed under the laws of the State of New York, without giving effect to its conflict of law provisions that would result in the application of the law of any other jurisdiction.

9.      This Agreement may not be modified orally and can only be modified by means of a written agreement signed by PLAINTIFF, AMERICAN, AMR and ARGENBRIGHT.

10.     The amount of the payments under this settlement shall remain confidential. Dissemination of the amount of payments under this settlement shall be restricted to only the parties, their attorneys, employees, agents, and insurance representatives who have a need to know the amount of the settlement and to any court referenced in paragraphs "2" and "3". No party, attorney, employee, agent or insurance representative of a party shall disclose the settlement amount unless required to do so by court order.

11.     This Agreement may be executed in counterparts.

4

Dated: New York, New York
      This _____ day of _____, 2007.


MOTLEY RICE LLC

CONDON & FORSYTH LLP


By:_____

By:_____
    Mary F. Schiavo (    )

    Desmond T. Barry, Jr. (DB 8066)

28 Bridgeside Blvd
PO Box 1792
Mt. Pleasant, SC  29465
Tel.: (843) 216-9000

Times Square Tower
7 Times Square
New York, New York  10036
Tel.: (212)490-9100
Fax: (212)370-4483

Attorneys for Plaintiff
ELAINE TEAGUE

-and-


SIMPSON THACHER & BARTLETT LLP

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York  10022
Tel.: (212)909-6000
Fax: (212)909-6836


By:_____
    Charles E. Koob (CEK 1601)
    Joseph F. Wayland (JFW 7549)

Attorneys for Defendants
AMERICAN AIRLINES, INC. and
AMR CORPORATION

425 Lexington Avenue
New York, New York 10017-3954
Tel.: (212)455-2000
Fax: (212)455-2502


GLOBAL AEROSPACE UNDERWRITING
MANAGERS

Attorneys for Defendant
ARGENBRIGHT SECURITY, INC.


By:_____
    John P. Meehan

ACE GLOBAL MARKETS

For and on behalf of the insurers for
AMERICAN AIRLINES, INC. and AMR
CORPORATION


By:_____


For and on behalf of the insurers for
ARGENBRIGHT SECURITY, INC.

5

NYOFFICE 670748v.1

# Exhibit C

**McNamar, Eric**

| | |
|---|---|
| **From:** | McNamar, Eric |
| **Sent:** | Wednesday, August 22, 2007 3:28 PM |
| **To:** | 'mschiavo@motleyrice.com'; 'Archambault, Nicole A.' |
| **Subject:** | 9/11 Litigation: Partial Releases - Teague & Whittington |
| **Attachments:** | Partial Release - Teague.pdf; Partial Release - Falkenberg.pdf |

Attached please find the Partial Releases for the Teague and Whittington cases.

Best regards,
Eric

Eric C. McNamar, Esq.
**Condon & Forsyth LLP**
Times Square Tower
7 Times Square
New York, NY 10036
Tel: (212) 894-6729
Fax: (212) 370-4453
www.condonlaw.com


*******************************************

**NOTICE:** This message is intended only for use by the named addressee and may contain privileged and/or confidential information. If you are not the named addressee you should not disseminate, copy or take any action in reliance on it. If you have received this message in error please notify info@condonlaw.com and delete this message and any attachments accompanying it immediately. Thank you.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| IN RE SEPTEMBER 11 LITIGATION | No.: 21 MC 97 (AKH)<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*Falkenberg v. AMR Corp., et al.*<br>**02 CV 7145 (AKH)**<br><br>*Teague v. AMR Corp., et al.*<br>**03 CV 6899 (AKH)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### 100,000 SDR ADVANCE PAYMENT PARTIAL RELEASE AND RECEIPT RELATING TO CLAIMS ARISING FROM THE AMERICAN AIRLINES FLIGHT 77 INCIDENT AT ARLINGTON, VIRGINIA ON SEPTEMBER 11, 2001

I, Elaine S. Teague, having been duly appointed by a court of competent jurisdiction as the personal representative of the estate of decedent Sandra D. Teague (hereinafter referred to as "RELEASOR"), accept AMERICAN AIRLINES, INC.'S ("AMERICAN") check in the amount of                   , as the sum equivalent of 100,000 Special Drawing Rights ("SDRs") as of the date of judgment, July 30, 2007 ($153,078.00), less the               already advanced to the decedent's family, as consideration for the release and discharge of AMERICAN and AMR CORPORATION and all of their heirs, executors, predecessors, parents, subsidiaries, and affiliated entities, past, present, and future, as well as their respective directors, officers, administrators, successors, reorganized successors, and assigns, past, present, and future, and their employees, agents, attorneys, insurers, coinsurers, reinsurers, representatives, and all other persons, partnerships, firms, and corporations, not specifically identified in this Partial Release and Receipt (hereinafter referred to collectively as the "RELEASEES" whether or not specifically named herein) who are or may be liable to RELEASOR, in whole or in part from any

liability or responsibility for payment of the initial SDR 100,000 in damages ($153,078.00)

sustained under Articles 17 and 22 of the Warsaw Convention, as supplemented by the Intercarrier

Agreement that has been implemented in AMERICAN'S tariffs on file with the United States

Department of Transportation, as a result of the accident involving American Airlines Flight 77 on

September 11, 2001 at Arlington, Virginia and the death of Sandra D. Teague as a result thereof.

It is expressly understood and agreed that:

1.    The payment and receipt of the sum of :          , the previous advance of

, and this Partial Release and Receipt are without prejudice to the rights of the

undersigned to pursue claims for additional damages, if any, against RELEASEES and other

third parties.

2.    RELEASOR agrees to defend, indemnify, and hold harmless RELEASEES from

all claims and actions of any kind (including liens or liabilities relating to or arising out of any

worker's compensation payments), and for all costs and expenses (including reasonable

attorneys' fees) in defending any claims and actions, relating to or arising out of any other person

or entity claiming that they are the persons to whom American's 100,000 SDR advance payment,

or any part thereof, should have been made.  This indemnification is limited as follows:  (a) If it

is judicially determined that RELEASOR was not the appropriate person to receive all or part of

the advanced sum, RELEASOR shall immediately return that amount to American; and (b)

RELEASOR'S obligations under this paragraph for payment of American's costs and expenses

(including reasonable attorneys' fees) shall in no event exceed an additional sum of $153,078.00

(i.e., exclusive of any amount of the advance that is returned to AMERICAN under clause (a),

and shall be limited to AMERICAN'S costs and expenses (including reasonable attorneys' fees)

2

only for claims and actions that result in a judicial determination that RELEASOR was not the appropriate person to receive all or part of the advanced sum of       .       .

       3.    RELEASOR agrees that the international treaty commonly known as the Warsaw Convention governs all claims, and provides the sole and exclusive remedy for any claims, that the estate and family may have against AMERICAN and AMR CORPORATION, and all of their heirs, executors, predecessors, parents, subsidiaries, and affiliated entities, past, present, and future, as well as their respective directors, officers, administrators, successors, reorganized successors, and assigns, past, present, and future, and their employees, agents, attorneys, insurers, coinsurers, reinsurers, and representatives for the death of Sandra D. Teague.  This paragraph is not intended to expand the term "carrier" beyond what is provided in the Warsaw Convention and applicable case law; nothing in this paragraph shall preclude the RELEASOR from litigating whether the Warsaw Convention applies to claims against anyone other than AMERICAN and AMR CORPORATION.

       4.    RELEASOR understands and agrees that AMERICAN'S payment of 100,000 SDRs is an advance on and a deduction from the total amount of any settlement by or judgment against RELEASEES in any action as a result of the death of Sandra D. Teague.  RELEASOR understands that the advance payment does not have to be returned to AMERICAN unless the RELEASOR was not the appropriate person to receive the payment for the death of Sandra D. Teague.

       5.    RELEASOR understands that receipt of the advance payment and the execution of this Partial Release and Receipt is not an admission of liability or responsibility of the RELEASEES for any wrongdoing, negligence, or other culpable conduct in connection with American Flight 77, all of which is denied.

3

6.    RELEASOR had the right to obtain legal counsel to review and evaluate this Partial Release and Receipt and has done so or has agreed to waive this right. RELEASOR is not relying on the advice of AMERICAN, or anyone associated with AMERICAN, as to any legal, tax (income, estate, gift, or otherwise), or other consequences of any kind arising out of this Partial Release and Receipt or the payment of any advances. RELEASOR has not relied on any representations or statements by AMERICAN or its representatives, written or oral, except those set forth in this Partial Release and Receipt. RELEASOR knowingly and voluntarily signs this Partial Release and Receipt and is not subject to duress, coercion, or undue influence by AMERICAN or anyone else.

7.    RELEASOR is responsible for all legal and income tax consequences related to this advance payment.

8.    RELEASOR understands and agrees that this Partial Release and Receipt may not be waived or changed in any way except in a writing signed by both RELEASOR and a duly authorized representative of AMERICAN.

9.    If, after signing this Partial Release and Receipt, any provision is held to be illegal, invalid, or unenforceable, that provision shall be fully severable.

10.    RELEASOR agrees to cooperate and execute all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Partial Release and Receipt.

4

11.    RELEASOR agrees that this Partial Release and Receipt shall be governed by and construed in accordance with the laws of the State of New York, excluding its choice of law rules.

Dated: _____ day of _____, 2007.

_____
ELAINE S. TEAGUE as personal representative of the estate of SANDRA D. TEAGUE.


STATE OF _____           )
                                   ) ss.
COUNTY OF _____             )


BEFORE ME, the undersigned authority, on this day personally appeared  Elaine S. Teague known to me as the Personal Representative of the estate of Sandra D. Teague, and as the person whose name is subscribed to the foregoing 100,000 SDR Advance Payment Partial Release and Receipt who after being duly sworn by me, on oath stated that she has read the 100,000 SDR Advance Payment Partial Release and Receipt, it is a correct and complete statement of the matters to which it relates, and all the contents thereof are true, complete, and correct.

SWORN AND SUBSCRIBED TO BEFORE ME by the said _____, on this _____ day of _____ to certify which witness my hand and seal of office.


_____
NOTARY PUBLIC
In and for the County of
_____
State of _____.


My Commission Expires _____

5

# Exhibit D

**McNamar, Eric**

| | |
|---|---|
| **From:** | Schiavo, Mary [mschiavo@motleyrice.com] |
| **Sent:** | Thursday, August 23, 2007 3:19 PM |
| **To:** | McNamar, Eric |
| **Subject:** | RE: 9/11 Litigation: Teague & Whittington |

Thanks Eric, I appreciate this clarification of your position. I just don't seem to find any Warsaw judgments in recent years for the SDRs; thus I'm also not finding any requirement for my clients to sign the documents you propose. I think you'd have to agree, they include many concessions the judge did not order. If you have precedent, I'll gladly look at it. I'm sure if any knows about it, it would be you and Des. Can you forward to me the authority and precedents you referenced? Thanks again.

Mary Schiavo
Motley Rice LLC
mschiavo@motleyrice.com
Office - 843-216-9138
Fax- 843-216-9440



MotleyRice

Motley Rice LLC, Attorneys at Law
*Litigating Today For A Better Tomorrow*

----

**From:** McNamar, Eric [mailto:emcnamar@condonlaw.com]
**Sent:** Thursday, August 23, 2007 2:59 PM
**To:** Schiavo, Mary
**Cc:** Barry Jr., Desmond T.; Lester, LeAnn C
**Subject:** 9/11 Litigation: Teague & Whittington

Mary:

We will not make payment of the 100,000 SDRs pursuant to Judge Hellerstein's July 30, 2007 Order without the protection of an executed Partial Release and Receipt by your clients. The partial releases we sent you have been used for several years in aviation cases governed by Warsaw and the Intercarrier Agreement, they do not jeopardize your clients' rights in any way and they provide our client with the necessary protections. The bottom line is that if your clients want this money right now they will have to sign the partial releases.

Eric

Eric C. McNamar, Esq.
**Condon & Forsyth LLP**
Times Square Tower
7 Times Square
New York, NY 10036
Tel: (212) 894-6729
Fax: (212) 370-4453
www.condonlaw.com

*************************************************

2/20/2008

**NOTICE:** This message is intended only for use by the named addressee and may contain privileged and/or confidential information. If you are not the named addressee you should not disseminate, copy or take any action in reliance on it. If you have received this message in error please notify info@condonlaw.com and delete this message and any attachments accompanying it immediately.  Thank you.

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above.  If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

2/20/2008

# Exhibit E



**JOSEPH F. RICE**
Licensed in SC
Direct Dial: 843.216.9159
Direct Fax: 843.216.9290
JRice@motleyrice.com

October 24, 2007

Desmond T. Barry, Jr., Esq.
Condon & Forsyth
7 Times Square
New York, NY 10036

Roger Podesta, Esq.
Debevoise & Plimpton
919 Third Avenue
New York, NY 10022

Joseph Wayland, Esq.
Simpson Thatcher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017-3954

      Re:    911 Litigation – Flight 77 - Teague

Dear Gentlemen,

    I have been given authority to settle the above-referenced matter for        . This is with the understanding the money will be paid as soon as possible and clearly in time for all disbursements to occur this year. If this agreeable to your clients please sign a copy of this letter and return to me today.

    As I am,

               Sincerely,

               Joseph F. Rice

JFR:dlg

Agreed:

_____
On behalf of Desmond Barry,
Roger Podesta and Joseph Wayland

www.motleyrice.com

Motley Rice LLC
Attorneys at Law

MT. PLEASANT
28 BRIDGESIDE BLVD.
P.O. BOX 1792
MT. PLEASANT, SC 29465
843-216-9000
843-216-9450 FAX

BARNWELL
1750 JACKSON ST.
P.O. BOX 365
BARNWELL, SC 29812
803-224-8800
803-259-7048 FAX

PROVIDENCE
321 SOUTH MAIN ST.
P.O. BOX 6067
PROVIDENCE, RI 02940
401-457-7700
401-457-7708 FAX

HARTFORD
ONE CORPORATE CENTER
20 CHURCH ST. 17TH FLOOR
HARTFORD, CT 06103
860-882-1681
860-882-1682 FAX

ATLANTA
600 WEST PEACHTREE ST.
SUITE 800
ATLANTA, GEORGIA 30308
404-201-6900
404-201-6959 FAX

# Exhibit F

CONDON & FORSYTH LLP

NEW YORK
LOS ANGELES

Direct Dial: (212) 894-6770
Direct Fax: (212) 894-6771
dbarry@condonlaw.com

October 26, 2007

**VIA FACSIMILE & EMAIL**

Joseph F. Rice, Esq.
Motley Rice LLC
28 Bridgeside Blvd., P.O. Box 1792
Mount Pleasant, SC 29465

Re:     In re September 11 Litigation
        Passenger: Sandra Teague
        C & F Ref: DTB/CRC/28079

Dear Joe:

I write in response to your letter of October 24, 2007.   The Aviation Defendants agree to settle the *Teague* case for          .  This settlement is subject to our standard terms and conditions letter which you signed on July 20, 2005 and the settlement amount is not to be publicly disclosed or characterized in any way.

The time required to conclude this settlement is dictated by the court approved settlement procedures that have been in place for several years and is largely contingent upon your firm and your clients promptly signing and returning the settlement papers, filing the application for a compromise order in a timely manner and Judge Hellerstein issuing an order of final judgment promptly.  Any delay in these procedural steps would be out of the Aviation Defendants' control and could delay the disbursement of settlement funds beyond the end of the year.

Sincerely yours,

Desmond T. Barry, Jr.

cc:     Via Email
        Roger E. Podesta, Esq.
        Joseph F. Wayland, Esq.

# Exhibit G

**McNamar, Eric**

---

| | |
|---|---|
| **From:** | McNamar, Eric |
| **Sent:** | Friday, October 26, 2007 5:36 PM |
| **To:** | 'Migliori, Don'; Schiavo, Mary; Rice, Joe |
| **Cc:** | Barry Jr., Desmond T.; 'Roger Podesta'; 'Joe Wayland'; 'Graves, Charles C'; 'Lester, LeAnn C'; 'Archambault, Nicole A.'; 'Strobel, Dotty' |
| **Subject:** | 9/11 Litigation: Settlement Documents - Ambrose, Brown, Cottom, Darlene Flagg, Wilson Flagg, Teague and Hunt |
| **Attachments:** | Confidential Release - Flaggs.pdf; Confidential Stipulation of Settlement - Hunt.pdf; Confidential Release - Hunt.pdf; Confidential Release - Teague.pdf; Confidential Stipulation of Settlement - Flagg.pdf; Confidential Stipulation of Settlement - Flaggs.pdf; Confidential Release - Cottom.pdf; Confidential Stipulation of Settlement - Cottom.pdf; Confidential Release - Brown.pdf; Confidential Stipulation of Settlement - Brown.pdf; Confidential Release - Ambrose.pdf; Confidential Stipulation of Settlement - Ambrose.pdf; Confidential Stipulation of Settlement - Teague.pdf; Confidential Release - Flagg.pdf |



Attached are the draft Confidential Stipulation of Settlements and the draft Confidential Releases for the Ambrose, Brown, Cottom, Flagg (Darlene), Flagg (Wilson), Teague and Hunt settlements. We will be sending the Gallop documents within the next few days. Please review the settlement documents and confirm that they are acceptable to your client. These documents have been approved by American and we expect final approval from Argenbright once you approve the documents. After all parties confirm that the settlement documents are acceptable, the Confidential Stipulation of Settlement can be executed by the signatories. We will file our motion for an Order approving the settlement and ruling that the settlement payments count against the ATSSSA cap once we receive the fully executed Confidential Stipulation of Settlement. Since this is a Flight 77 action, Judge Hellerstein has typically granted our motion and issued the Order of Final Judgment with a day or two of the motion being submitted.

Please do not hesitate to contact me if you have any questions.

Best regards,
Eric

Eric C. McNamar, Esq.
Condon & Forsyth LLP
Times Square Tower
7 Times Square
New York, NY 10036
Tel: (212) 894-6729
Fax: (212) 370-4453

www.condonlaw.com

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

NOTICE: This message is intended only for use by the named addressee and may contain privileged and/or confidential information. If you are not the named addressee you should not disseminate, copy or take any action in reliance on it. If you have received this message in error please notify info@condonlaw.com and delete this message and any attachments accompanying it immediately.  Thank you.

# Exhibit H

**McNamar, Eric**

| | |
|---|---|
| **From:** | Lester, LeAnn C [llester@motleyrice.com] |
| **Sent:** | Thursday, January 10, 2008 4:47 PM |
| **To:** | McNamar, Eric |
| **Cc:** | Archambault, Nicole A. |
| **Subject:** | Teague Stipulation and Release |

Eric,

Mary Schiavo has reviewed the draft stipulation and release for the Teague case attached to your 10/26/07 email. We are requesting the following changes:

## Stipulation and Release

1) The amount paid by the insurers of American and AMR to be deducted from the settlement amount should be _____, as in all other flight 77 cases, not _____ as stated. Joe Rice has confirmed that the judgment awarded by the court in the amount of $153,078.00 on 8/14/07 for this case was never discussed during the settlement negotiations and the parties did not agree that a deduction would be made for this amount from the final settlement.

## Release only

2) page 4, line 3, delete **'RELEASOR acknowledges that'**

3) page 4, line 4, insert **'state they'** after responsibility and

Please let me know if you have any questions.

LeAnn C. Lester
Paralegal to Mary Schiavo
Motley Rice LLC
llester@motleyrice.com
Office - 843-216-9374



Motley Rice LLC, Attorneys at Law
*Litigating Today For A Better Tomorrow*

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work

2/21/2008

Motley Rice LLC    Case 1:03-cv-06800-AKH    Document 108    Filed 02/26/2008    Page 36 of 57

product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

# Exhibit I

**McNamar, Eric**

---

**From:**  McNamar, Eric
**Sent:**  Thursday, January 10, 2008 5:18 PM
**To:**  'Lester, LeAnn C'
**Cc:**  Archambault, Nicole A.
**Subject:** RE: Teague Stipulation and Release


LeAnn:

We do not agree to the changes below.

Eric

---

**From:** Lester, LeAnn C [mailto:llester@motleyrice.com]
**Sent:** Thursday, January 10, 2008 4:47 PM
**To:** McNamar, Eric
**Cc:** Archambault, Nicole A.
**Subject:** Teague Stipulation and Release

Eric,

Mary Schiavo has reviewed the draft stipulation and release for the Teague case attached to your 10/26/07 email.  We are requesting the following changes:

**Stipulation and Release**

1)   The amount paid by the insurers of American and AMR to be deducted from the settlement amount should be          , as in all other flight 77 cases, not          as stated.  Joe Rice has confirmed that the judgment awarded by the court in the amount of $153,078.00 on 8/14/07 for this case was never discussed during the settlement negotiations and the parties did not agree that a deduction would be made for this amount from the final settlement.

**Release only**

2)   page 4,  line 3, delete **'RELEASOR acknowledges that'**

3)   page 4,  line 4, insert **'state they'** after responsibility and


Please let me know if you have any questions.




LeAnn C. Lester
Paralegal to Mary Schiavo
Motley Rice LLC
llester@motleyrice.com
Office - 843-216-9374


2/21/2008



Motley Rice LLC, Attorneys at Law

*Litigating Today For A Better Tomorrow*

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

# Exhibit J



**JOSEPH F. RICE**
Licensed in SC
Direct Dial: 843.216.9159
Direct Fax: 843.216.9290
JRice@motleyrice.com

January 21, 2008

Desmond T. Barry, Jr., Esq.
Condon & Forsyth                                    **Via Facsimile:**
7 Times Square                                      **(212) 894-6771**
New York, NY 10036

      Re:    Teague v. American Airlines, et al., 03 CV 6800

Dear Des:

      It has come to my attention that your office has unilaterally sought to adjust the settlement in Teague by subtracting the court ordered judgment of $153,078.00 of Special Drawing Rights. As you know American Airlines was ordered to pay the SDR as a result of the partial summary judgment. As you also know, you attempted to force our clients to sign an agreement and stipulation before American Airlines would pay that court ordered judgment. We refused. There was no agreement that the SDRs would be subtracted from any future settlement. Furthermore, there was no request by you, nor any discussion or agreement in our negotiation to subtract from the Teague settlement any of the previously paid judgment.

      As deducting said amount from our settlement was not agreed to, discussed, or ever raised by you in the settlement negotiations, we do not agree to your unilateral alteration of the settlement documents to include this provision. Therefore, please be advised that we will move to seek enforcement of this settlement for the full          amount if proper settlement documents reflecting the proper          amount are not provided within three business days.

      We look forward to immediately receiving the proper settlement documents.

                        Sincerely,

                        Joseph F. Rice

JFR:ll
cc: Don Migliori, Esq.

www.motleyrice.com    Mt. Pleasant        Barnwell           Providence           Hartford                    Atlanta
Motley Rice LLC       28 Bridgeside Blvd   1750 Jackson St    321 South Main St.   One Corporate Center        600 West Peachtree St
Attorneys at Law      P.O. Box 1792        P.O. Box 365       P.O. Box 6067        20 Church St., 17th Floor    Suite 800
                      Mt. Pleasant, SC 29465  Barnwell, SC 29812  Providence, RI 02940  Hartford, CT 06103       Atlanta, Georgia 30308
                      843-216-9000         803-224-8800       401-457-7700         860-882-1681                404-201-6900
                      843-216-9450 FAX     803-259-7048 FAX   401-457-7708 FAX     860-882-1682 FAX            404-201-6959 FAX

# Exhibit K

CONDON & FORSYTH LLP

NEW YORK
LOS ANGELES

Direct Dial: (212) 894-6770
Direct Fax: (212) 894-6771
dbarry@condonlaw.com

January 24, 2008

**VIA FACSIMILE AND REGULAR MAIL**

Joseph F. Rice, Esq.
Motley Rice LLC
28 Bridgeside Blvd., P.O. Box 1792
Mount Pleasant, SC 29465

Re:    In re September 11 Litigation
       *Teague v. American Airlines, Inc., et al.*
       C & F Ref: DTB/CRC/28079

Dear Joe:

I was quite surprised to receive your letter of January 21, 2008 regarding the Teague settlement, and I write to correct your misconceptions.

You have been on notice since signing our July 20, 2005 settlement terms and conditions letter that "[a]ll sums advanced by a defendant" will be deducted from their share of any settlement amount. In all the settlements negotiated since then, you have recognized that all advances would be credited towards American's ultimate settlement payment without the need to negotiate the issue separately in each case. The draft partial release in the Teague case that my associate, Eric McNamar, sent to Mary Schiavo on August 22, 2007 (a copy of which is attached hereto) communicated unequivocally no less than ten (10) times our clear intent to apply the 100,000 SDR payment toward any future settlement or judgment. Eric's email to Mary on August 23, 2007 confirmed this intent.

Despite being fully aware of our consistent position considering advances, and our clear and unequivocal position in the Teague case as set forth in the draft partial release and the referenced email, you never stated during the subsequent negotiation of the settlement package involving nine (9) cases (including Teague) that the Teague settlement must consist entirely of "new money." Clearly, you were on notice of our intent to deduct the full amount of the SDR payment from any settlement. In addition to your failure to raise this issue during negotiations of the group settlement of nine (9) cases, your letter of October 24, 2007 confirming the settlement amount you attributed to the Teague case as part of the group settlement also failed to raise the issue. My reply dated October 26, 2007, however, specifically stated that the Teague settlement "is subject to our standard terms and conditions letter which you signed on July 20, 2005…"

CONDON & FORSYTH LLP
Joseph F. Rice, Esq.
January 24, 2008
Page 2

Mary never stated that the reason she did not sign the draft partial release was because of American's intent to treat the 100,000 SDR payment as an "advance" as that term is used in our settlement terms and conditions letter. Mary simply stated that the draft partial releases included "many concessions the judge did not order." Eric invited her to provide a revised partial release, but she never sent us a revised document and ultimately signed a Satisfaction of Partial Judgment that was filed on October 16, 2007. The argument that her non-specific refusal to sign a partial release was a rejection of our intent to treat the 100,000 SDR payment as an advance cannot be substantiated.

In summary, your position concerning the 100,000 SDR payment is contradicted by the following facts: 1) the Teague case was not negotiated separately but was part of a group settlement; 2) the draft partial release Mary received in August of this year, before the settlement package that included the Teague case was negotiated, clearly expressed our intent to deduct the payment from any settlement; 3) you were aware of the terms of the settlement conditions letter that you signed on July 20, 2005 as confirmed by our history of negotiating many other settlements in the 9/11 litigation with you where similar advances were credited; 4) we sent you draft settlement documents explicitly noting our intent to take the credit three days after receiving your letter advising us of the Teague settlement amount and you did not take issue with any of their terms until three months later; and 5) we are entitled to a set-off for the 100,000 SDR payment under the applicable law should the case proceed to verdict. *See Maddox v. American Airlines, Inc.*, 115 F. Supp. 2d 993, 994, 996 (E.D. Ark. 2000), *aff'd in part, rev'd in part*, 298 F.3d 694, 700 (8th Cir. 2000).

We intend to take full credit for the 100,000 SDR payments against the             settlement amount allocated to the Teague case as well as against any settlement ultimately negotiated in the Whittington case.

Sincerely yours,

Desmond T. Barry, Jr.

Attachment

cc:    Joseph F. Wayland, Esq.
       Roger E. Podesta, Esq.
       Donald A. Migliori, Esq.
       Mary F. Schiavo, Esq.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| : | No.: 21 MC 97 (AKH) |
| : | |
| : | **THIS DOCUMENT RELATES TO:** |
| IN RE SEPTEMBER 11 LITIGATION : | |
| : | *Falkenberg v. AMR Corp., et al.* |
| : | **02 CV 7145 (AKH)** |
| : | |
| : | *Teague v. AMR Corp., et al.* |
| : | **03 CV 6899 (AKH)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### 100,000 SDR ADVANCE PAYMENT PARTIAL RELEASE AND RECEIPT RELATING TO CLAIMS ARISING FROM THE AMERICAN AIRLINES FLIGHT 77 INCIDENT AT ARLINGTON, VIRGINIA ON SEPTEMBER 11, 2001

I, Elaine S. Teague, having been duly appointed by a court of competent jurisdiction as

the personal representative of the estate of decedent Sandra D. Teague (hereinafter referred to as

"RELEASOR"), accept AMERICAN AIRLINES, INC.'S ("AMERICAN") check in the amount

of                , as the sum equivalent of 100,000 Special Drawing Rights ("SDRs") as of the

date of judgment, July 30, 2007 ($153,078.00), less the              already advanced to the

decedent's family, as consideration for the release and discharge of AMERICAN and AMR

CORPORATION and all of their heirs, executors, predecessors, parents, subsidiaries, and

affiliated entities, past, present, and future, as well as their respective directors, officers,

administrators, successors, reorganized successors, and assigns, past, present, and future, and

their employees, agents, attorneys, insurers, coinsurers, reinsurers, representatives, and all other

persons, partnerships, firms, and corporations, not specifically identified in this Partial Release

and Receipt (hereinafter referred to collectively as the "RELEASEES" whether or not

specifically named herein) who are or may be liable to RELEASOR, in whole or in part from any

liability or responsibility for payment of the initial SDR 100,000 in damages ($153,078.00)

sustained under Articles 17 and 22 of the Warsaw Convention, as supplemented by the Intercarrier

Agreement that has been implemented in AMERICAN'S tariffs on file with the United States

Department of Transportation, as a result of the accident involving American Airlines Flight 77 on

September 11, 2001 at Arlington, Virginia and the death of Sandra D. Teague as a result thereof.

It is expressly understood and agreed that:

1.     The payment and receipt of the sum of                   , the previous advance of

, and this Partial Release and Receipt are without prejudice to the rights of the

undersigned to pursue claims for additional damages, if any, against RELEASEES and other

third parties.

2.     RELEASOR agrees to defend, indemnify, and hold harmless RELEASEES from

all claims and actions of any kind (including liens or liabilities relating to or arising out of any

worker's compensation payments), and for all costs and expenses (including reasonable

attorneys' fees) in defending any claims and actions, relating to or arising out of any other person

or entity claiming that they are the persons to whom American's 100,000 SDR advance payment,

or any part thereof, should have been made.  This indemnification is limited as follows:  (a) If it

is judicially determined that RELEASOR was not the appropriate person to receive all or part of

the advanced sum, RELEASOR shall immediately return that amount to American; and (b)

RELEASOR'S obligations under this paragraph for payment of American's costs and expenses

(including reasonable attorneys' fees) shall in no event exceed an additional sum of $153,078.00

(i.e., exclusive of any amount of the advance that is returned to AMERICAN under clause (a),

and shall be limited to AMERICAN'S costs and expenses (including reasonable attorneys' fees)

2

only for claims and actions that result in a judicial determination that RELEASOR was not the
appropriate person to receive all or part of the advanced sum of

3.      RELEASOR agrees that the international treaty commonly known as the Warsaw
Convention governs all claims, and provides the sole and exclusive remedy for any claims, that
the estate and family may have against AMERICAN and AMR CORPORATION, and all of
their heirs, executors, predecessors, parents, subsidiaries, and affiliated entities, past, present, and
future, as well as their respective directors, officers, administrators, successors, reorganized
successors, and assigns, past, present, and future, and their employees, agents, attorneys,
insurers, coinsurers, reinsurers, and representatives for the death of Sandra D. Teague. This
paragraph is not intended to expand the term "carrier" beyond what is provided in the Warsaw
Convention and applicable case law; nothing in this paragraph shall preclude the RELEASOR
from litigating whether the Warsaw Convention applies to claims against anyone other than
AMERICAN and AMR CORPORATION.

4.      RELEASOR understands and agrees that AMERICAN'S payment of 100,000
SDRs is an advance on and a deduction from the total amount of any settlement by or judgment
against RELEASEES in any action as a result of the death of Sandra D. Teague. RELEASOR
understands that the advance payment does not have to be returned to AMERICAN unless the
RELEASOR was not the appropriate person to receive the payment for the death of Sandra D.
Teague.

5.      RELEASOR understands that receipt of the advance payment and the execution
of this Partial Release and Receipt is not an admission of liability or responsibility of the
RELEASEES for any wrongdoing, negligence, or other culpable conduct in connection with
American Flight 77, all of which is denied.

3

6.     RELEASOR had the right to obtain legal counsel to review and evaluate this Partial Release and Receipt and has done so or has agreed to waive this right.  RELEASOR is not relying on the advice of AMERICAN, or anyone associated with AMERICAN, as to any legal, tax (income, estate, gift, or otherwise), or other consequences of any kind arising out of this Partial Release and Receipt or the payment of any advances.  RELEASOR has not relied on any representations or statements by AMERICAN or its representatives, written or oral, except those set forth in this Partial Release and Receipt.  RELEASOR knowingly and voluntarily signs this Partial Release and Receipt and is not subject to duress, coercion, or undue influence by AMERICAN or anyone else.

7.     RELEASOR is responsible for all legal and income tax consequences related to this advance payment.

8.     RELEASOR understands and agrees that this Partial Release and Receipt may not be waived or changed in any way except in a writing signed by both RELEASOR and a duly authorized representative of AMERICAN.

9.     If, after signing this Partial Release and Receipt, any provision is held to be illegal, invalid, or unenforceable, that provision shall be fully severable.

10.     RELEASOR agrees to cooperate and execute all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Partial Release and Receipt.

4

11.    RELEASOR agrees that this Partial Release and Receipt shall be governed by and construed in accordance with the laws of the State of New York, excluding its choice of law rules.

Dated: _____ day of _____, 2007.

_____
ELAINE S. TEAGUE as personal representative of the estate of SANDRA D. TEAGUE.


STATE OF _____          )
                                  ) ss.
COUNTY OF _____            )

BEFORE ME, the undersigned authority, on this day personally appeared  Elaine S. Teague known to me as the Personal Representative of the estate of Sandra D. Teague, and as the person whose name is subscribed to the foregoing 100,000 SDR Advance Payment Partial Release and Receipt who after being duly sworn by me, on oath stated that she has read the 100,000 SDR Advance Payment Partial Release and Receipt, it is a correct and complete statement of the matters to which it relates, and all the contents thereof are true, complete, and correct.

SWORN AND SUBSCRIBED TO BEFORE ME by the said _____, on this _____ day of _____ to certify which witness my hand and seal of office.


_____
NOTARY PUBLIC
In and for the County of
_____
State of _____


My Commission Expires _____

5

# Exhibit L



**MotleyRice**

Mary F. Schiavo
Licensed in MO, DC, MD
DIRECT DIAL 843.216.9138
DIRECT FAX 843.216.9440
MSchiavo@motleyrice.com

January 25, 2008

**Via Electronic Mail and U.S. Mail**
Desmond T. Barry, Jr.
Condon & Forsyth, LLP
Times Square Tower
7 Times Square
New York, NY 10036

     Re:    Teague v. AMR Corp, et al.; 03-CV-6899 (AKH)

Dear Des,

    Thank you for your letter of January 24, 2008, a copy of which you emailed to me at 4:18 p.m. I shall take this opportunity to correct your many erroneous facts, misstatements of the law and outright misrepresentations.

    As you know, your office altered the settlement documents of the        settlement in the Teague case to attempt to deduct the $153,078.00 that was paid to the Plaintiffs as a result of Partial Summary Judgment entered in Plaintiffs' favor on the issue of Special Drawing Rights. You now state that in addition to subtracting as an advance payment the        which our clients received from American Airlines in the immediate aftermath of the crash, you sought to deduct from the settlement the SDRs paid as a result of Summary Judgment as an "advance payment."

    As you admit in your letter, at no time during settlement negotiation, did you or any other person on behalf of any defendants ask, raise, discuss, insert, demand or in any way request the subtraction of the SDRs from the settlement. Apparently you seem to be relying on a document you proffered to us after we won Partial Summary Judgment and you refused to pay. We unequivocally rejected that document. You seem to be arguing that because we rejected the whole document and refused any of your requested conditions on payment of the judgment in our favor, that somehow we accepted those we didn't specifically enumerate as rejected. Des, we rejected the whole document. I myself told you personally exactly that and your associate Eric McNamar was told that many times.

    The rest of your allegations are also erroneous. Here are the facts:

    After extensive opposing briefing, an Order was entered by the Court on August 14, 2007, awarding Plaintiffs Partial Summary Judgment.

www.motleyrice.com    MT. PLEASANT    PROVIDENCE    HARTFORD

Motley Rice LLC    28 BRIDGESIDE BLVD.    321 SOUTH MAIN ST.    ONE CORPORATE CENTER
Attorneys at Law    P.O. BOX 1792    P.O. BOX 6067    20 CHURCH ST., 17TH FLOOR
    MT. PLEASANT, SC 29465    PROVIDENCE, RI 02940    HARTFORD, CT 06103
    843-216-9000    401-457-7700    860-882-1681
    843-216-9450 FAX    401-457-7708 FAX    860-882-1682 FAX

Desmond T. Barry, Jr.
January 25, 2008
Page 2 of 5

On August 23, 2007, Eric McNamar, with copy to you, informed me that you would not make payment of the 100,000 SDRs pursuant to Judge Hellerstein's Order without the Plaintiffs' execution of a partial release and receipt by our clients. Eric McNamar further stated "the partial releases we have sent to you have been used for several years in aviation cases governed by Warsaw and the Intercarrier Agreement. The bottom line is if your clients want this money right now they will have to sign the partial releases." That is the extent of his August 23, 2007, email. Of course, we did not sign.

You now clearly admit Mr. McNamar's "partial release" entitled "100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising from American Airlines Flight 77 Incident in Arlington, Virginia on September 11, 2001" was an attempt to recharacterize our clients' Summary Judgment and the Court's Judgment Order as an "advanced payment" and to coerce them to agree to subtract it from any subsequent settlement. What is really outrageous is that even though it was rejected in its entirety, you still seek to force upon our clients parts of the rejected Release and Receipt. I guess some men just still don't seem to understand that no means no. In that document which we rejected, paragraph 4 sought to have Plaintiffs agree that American's payment of our partial summary judgment was an advance to be deducted from the total amount of any settlement or judgment. Neither our clients nor their counsel agree to your document or any part of it. In that document, your office also attempted to coerce our clients to subtract the                    advance payment from the Court-ordered Judgment. McNamar's email threatened them that otherwise they would not receive payment of their judgment.

Your letter admits we rejected and refused to sign the document entitled "100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising from American Airlines Flight 77 Incident in Arlington, Virginia on September 11, 2001." There is no document, email or phone call in which we accepted any of the terms, any of the parts or any of the representations. Not only did we refuse to accept any part, we declined to even redline, edit, amend or proffer different language in the agreement. We refused. No means no.

I responded to your associate Eric McNamar on the same day, August 23rd, and informed him that I found no legal precedent to support your demands, and if you had any precedent to support your demands to forward it. None was forwarded and we agreed to nothing in your document.

As we possessed a final judgment, we dispensed with further discussion on your document once we rejected it entirely. Frankly we were preparing for execution and attachment.

You seem to be forgetting that in the midst of the settlement negotiations Joe Rice, you, and others telephoned me from the negotiation room to ask why the Teagues had withdrawn their authority to settle. I expressly and clearly told Joe, you and others in the room that it was precisely your attempt to coerce our clients to agree to your conditions before paying their lawful judgment, and that no law required them to do so to receive payment on their judgment, and they withdrew settlement authority. In that call you disputed that your office demanded we sign such a document,

Desmond T. Barry, Jr.
January 25, 2008
Page 3 of 5

make those side agreements and execute a partial release before American Airlines would pay the judgment. In my opinion, you stopped barely short of calling me a liar when I told you that indeed your office had done so and my clients would have none of it. Soon after that call to me from the negotiation room, my office was contacted by your associate Eric McNamar and informed that the payment would be forthcoming and without requiring the "advance payment" partial release. The only document which was executed by this office was simply a satisfaction of partial judgment. There is no agreement in that or any other document to subtract the SDRs from any subsequent settlement.

With the assurance from you on that call that the judgment would be paid without my clients agreeing to and signing the objectionable side agreement, the Teagues again agreed to the negotiation and a settlement. On October 26, 2007, you responded to Joe Rice by a letter stating, "I write in response to your letter of October 24, 2007. The aviation defendants agree to settle the Teague case for         . This settlement is subject to our standard terms and conditions letter which you signed on July 20, 2005." If you now claim it was also subject to terms of a rejected document entitled, "100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising from American Airlines Flight 77 Incident in Arlington, Virginia on September 11, 2001," it is simply not credible that your terms and conditions letter mentioned the July 20, 2005, terms and conditions but failed to make any mention of the rejected "100,000 SDR Advance Payment Partial Release and Receipt Relating to Claims Arising from American Airlines Flight 77 Incident in Arlington, Virginia on September 11, 2001."

Now let us review that settlement agreement signed in 2005. Paragraph 6 states, "All sums advanced by a defendant will be deducted from their share of the settlement amount payable under the release. Prior payments for amounts such as funeral expenses will be recited in the release, but amounts for those prior payments will be deemed paid."

If there was any confusion about what "all sums advanced," means other than funeral expenses, it was soundly resolved in the standard settlement documents drafted by defendants' counsel and already used in dozens of cases which lists the advance payment as         received by families and allegedly accompanied in all cases by a letter (which we dispute for the record in some cases), stating it was an advance payment to be later deducted from any settlement. Any ambiguity is of course resolved against the drafter of the document. Thus it is clear that advance payment refers to the         paid by American to the Plaintiffs, and not any Court ordered judgment.

The Southern District of New York and the Second Circuit enforce settlement agreements in circumstances such as these. See *Loewenson v. London Market Companies, Certain Underwriters at Lloyd's London*, 351 F.3d 58, (2nd Cir. 2003). The circuit judge made an interesting observation, "Most people would think that insurance underwriters are very good at numbers. This appeal demonstrates that sometimes they are not....the parties agreed not only to the amount...but also...[how] the amount was determined and that such circumstances do not constitute the sort of mutual mistake that warrants reaffirmation under applicable New York law." In that case Lloyd's attempted to use its self-created ambiguous documents to its advantage in reducing a settlement. In

Desmond T. Barry, Jr.
January 25, 2008
Page 4 of 5

the *Loewenson* case, the Court of Appeals made it clear against Lloyd's that a mutual mistake is necessary. Here not only is there no mistake on the part of the Plaintiffs, there doesn't appear to be any mistake on the part of the defendants either. Your associate tried to get us to agree to a document to subtract our judgment from any subsequent settlement and we refused. We rejected it entirely. We agreed to no part. We refused to even mark up or negotiate your proposal. You discussed our refusal to accept those terms in the midst of negotiations. Soon thereafter your associate called us to pay and without any accompanying agreement by our Plaintiffs to subtract the judgment from the settlement.

As to your citation to *Maddox*, for those who do not have time to actually read the cases, both in district and appellate court, you forgot to mention that in that case the parties jointly agreed to reduce the ELEVEN MILLION DOLLAR ($11,000,000.00) single no dependant college student verdict by the amount of the $134,453.00 Special Drawing Rights which American Airlines voluntarily paid well before trial. I believe the trial record would show that the jury was not given the opportunity to adjust the award for the SDR prepayment. See *Maddox v. American Airlines*, 115 F. Supp. 2d 993, 99 (second and third paragraph of the opinion, where the Court simply states the parties agree to the reduction), (E.D. Ark. 2000); *aff'd in part, rev'd in part*, 298 F.3d 694, 700 (last paragraph of the opinion where the court clearly states "both parties agree") (8ᵗʰ Cir. 2002).

As concerns your using the issue of my delay in my response to your unilateral document amendments, there are two reasons. First it was not immediately noticed because the documents were not supposed to be unilaterally altered and our client was exploring structures. Thus, the document was not immediately needed. Second, it was not noticed until after my father was mortally injured in a horrible accident, went into a coma in a life flight helicopter somewhere over the Midwest, and I immediately caught a flight upon receipt of such news (fortunately on a kinder airline than American). He subsequently died. Your associate is well aware of my father's horrible accident and death and the reason for my few weeks of absence. I am sure Judge Hellerstein will understand, even if you do not, that I suspended settlement document review to attend to the aftermath of my father's death in a fatal accident caused by someone else, and to cope with autopsies, a funeral, investigations, insurance counsel and arrangements for surviving dependants. Unfortunately, my clients understand all too well.

In summary, the facts are clear:

1) American Airlines lost on the issue of the SDRs and Plaintiffs won a partial Summary Judgment motion for $153,078.00.
2) Defendants attempted to force Plaintiffs to sign a document agreeing to subtract the SDRs from a subsequent settlement.
3) Plaintiffs refused.
4) Joe Rice, you and others in the room called me from the negotiations to ask why my clients had withdrawn settlement authority and you were told it was because you refused to pay the judgment without attempting to coerce these Plaintiffs to agree to additional terms, which they would not do, and because they insisted you pay the judgment without further shenanigans.

Desmond T. Barry, Jr.
January 25, 2008
Page 5 of 5

5) Defendants paid to Plaintiffs the partial judgment with any written or oral agreement to treat the SDRs as an advance payment or subtract them from any subsequent settlement.

6) Defendants and Plaintiffs negotiated a settlement for                after confirming they would pay the judgment without requiring the Plaintiffs to agree to the "Advance Payment Partial Release."

7) Defendants never once asked to have the settlement reduced by the Court-entered SDR judgment.

8) Nonetheless in the settlement documents, in violation of your own protocol, you changed the terms of the advanced payment to include the Court-ordered judgment, despite your clear knowledge our rejection of your proffered agreement document.

9) Ambiguity is resolved against the defendants who were the scribes of the 2005 terms.

10) Plaintiffs will seek enforcement of the                settlement.

As I am,

Mary Schiavo

MS/des

# Exhibit M

# CONDON & FORSYTH LLP

NEW YORK
LOS ANGELES

Direct Dial: (212) 894-6770
Direct Fax: (212) 894-6771
dbarry@condonlaw.com

January 28, 2008

**VIA EMAIL**

Mary F. Schiavo, Esq.
Motley Rice LLC
28 Bridgeside Blvd., P.O. Box 1792
Mount Pleasant, SC 29465

Re:   In re September 11 Litigation, 21 MC 97 (AKH)
      *Teague v. AMR Corp, et al.*, 03 CV 6899 (AKH)
      C & F Ref: DTB/CRC/28079

Dear Mary:

I have your letter of January 25, 2008.

For the record, I take issue with each and every accusation you make and the "facts" as you state them. Further correspondence between us on this subject would not be productive.

Sincerely yours,

Desmond T. Barry, Jr.

DTB/jl

cc:   Via Email
      Joseph F. Wayland, Esq.
      Roger E. Podesta, Esq.
      Joseph F. Rice, Esq.
      Donald A. Migliori, Esq.